ACCEPTED
15-25-00102-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
7/24/2025 12:08 PM
CHRISTOPHER A. PRINE
CLERK

NO. 15-25-00102-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
7/24/2025 12:08:32 PM
CHRISTOPHER A. PRINE
Clerk

# IN THE COURT OF APPEALS
# FOR THE FIFTEENTH JUDICIAL DISTRICT OF TEXAS
# AT AUSTIN, TEXAS

## IN RE FORT BEND COUNTY,
**Realtor,**

## RELATING TO TRIAL COURT CAUSE NO. 2024-78536
## 11TH DISTRICT COURT OF HARRIS COUNTY, TEXAS
## THE HONORABLE KRISTIN B. HAWKINS, PRESIDING JUDGE

## REAL PARTY IN INTEREST JOSHUA HEILIGER'S RESPONSE TO RELATOR'S PETITION FOR WRIT OF MANDAMUS

## ORAL ARGUMENT REQUESTED

Respectfully Submitted,

*/s/ Russell L.  Morris*

Russell L. Morris
State Bar No. 24099150
Pablo A. Franco
State Bar No. 24121625
Gavin McBryde
State Bar No. 24045045
Andrew W. Bruce
State Bar No. 24113627
MCBRYDE FRANCO, PLLC
11000 Richmond Avenue, Suite 350
Houston, TX 77042
(713) 223-7699
(512) 691-9072 [facsimile]
serv.russell@mf-txlaw.com

**ATTORNEYS FOR REAL PARTY IN
INTEREST JOSHUA DAVID HEILIGER**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................3

INDEX OF AUTHORITIES ...........................................................................4

STATEMENT REGARDING MANDAMUS RECORD............................8

STATEMENT OF ISSUES PRESENTED ...............................................10

STATEMENT OF THE FACTS ...................................................................11

SUMMARY OF THE ARGUMENT .........................................................20

ARGUMENT AND AUTHORITY ............................................................21

PRAYER .........................................................................................................58

RULE 52.3 (J) CERTIFICATION ..............................................................59

CERTIFICATE OF COMPLIANCE ........................................................59

CERTIFICATE OF SERVICE ...................................................................60

APPENDIX .....................................................................................................61

# INDEX OF AUTHORITIES

**Cases**

*American Motorists Ins. Co., v. Fodge*, 63 S.W.3d 801
(Tex. 2001) .................................................................................................. 35

*Apollo Enterprises, Inc. v. ScripNet Inc.,* 301 S.W.3d
848 (Tex. App. – Austin 2009, no pet.) ................................................. 44-45

*Berrelez v. Mesquite Logistics USA, Inc.*, 562 S.W.3d 69 ........................... 38

*Bland ISD v. Blue*, 34 S.W.3d 547 (Tex. 2000) ......................................... 26

*Botts v. Hartford Underwriters Ins*. Co., 2001 WL 259128
(Tex. App.—Dallas Mar. 16, 2001, pet. denied) ....................................... 36

*Cash Am. Intern. Inc. v. Bennett,* 35 S.W.3d 12 (Tex. 2000) ................. 55-56

*City of Willow Park v. Squaw Creek Downs, L.P.*,
166 S.W.3d 336 (Tex. App. – Fort Worth 2005, no pet.) ........................... 51

*City of Houston v. Williams, 99 S.W.3d 709 (Tex. App. -*
Houston [14th Dist.] 2003, no pet.) ........................................................... 54

*County of Cameron v. Brown*, 80 S.W.3d 549 (Tex. 2002) ...................... 26-27

*Continental Cas. Ins. Co. v. Functional Restoration*
*Associates,* 19 S.W.3d 393 (Tex. 2000) ....................................... 30, 39, 42

*Henry v. Dillard Dep't Stores, Inc.,* 70 S.W.3d 808 (Tex. 2002) ................. 28

*Henry v. Dillard Dept. Stores Inc*., 21 S.W.3d 414 (Tex. App.
– San Antonio 2000, no pet.) ..................................................................... 35

*Honig v. Doe*, 484 U.S. 305 (1988) .......................................................... 49

*Houston Indep. Sch. Dist. v. Durrell,* 547 S.w.3d 299 [Tex.
App. - Houston [14th Dist.] 2018, no pet.) ................................................ 51

*Houston Gen. Ins. Co. v. Ass'n Cas. Ins. Co.,* 977 S.W.2d 634
(Tex.App.-Tyler 1998, no pet.) .................................................................. 36

*Huntsville Mem'l Hosp. v. Earnst*, 763 S.W.2d 856 (Tex. App.
-Houston [14th Dist.] 1988, no writ) .......................................................... 28

*In re Adan*, No. 14-11-00382-CV, 2011 WL 3208009 (Tex. App.
- Houston [14th Dist.] July 28, 2011, no pet.) ........................................ 56-57

*In re AIU Ins. Co*., 148 S.W.3d 109 (Tex. 2004) (orig. proceeding) .............. 21

*In re Contractor's Supplies, Inc.*, 2009 WL 2488374 (Tex. App.
- Tyler Aug. 17, 2009, no pet.) .................................................................. 51

*In re CSX Corp*., 124 S.W.3d 149 (Tex. 2003) (orig. proceeding) ................ 22

*In re Entergy Corp.*, 142 S.W.3d 316 (Tex. 2004) (orig. proceeding) ....... 22-23, 45

*In re Fisher & Paykeel Appliances, Inc.*, 420 S.W.3d (Tex. App.
- Dallas 2014, no pet.) ............................................................................... 14

*In re Hartford Underwriters Ins. Co.,* 168 S.W.3d 293
(Tex.App.-Eastland 2005, orig. proceeding)...............................................37

*In re Prentis*, 702 S.W.3d 762 ......................................................................38

*In re Prudential*, 148 S.W.3d 124 (Tex. 2004) ...........................................21

*In re Rogers*, 690.S.W.3d 296 (Tex. 2004) (orig. proceeding)................20-21

*In re Santander Consumer USA, Inc.,* 445 S.W.3d 218
(Tex. App. - Houston [1st Dist.] 2013, no pet.) .......................................23-24

*In re Southwestern Bell Telephone Co.,* 226 S.W. 3d 400
(Tex. 2007) ....................................................................................................56

*In re Tex. Dept' Family & Protective Servs.*, 210 S.W.3d 609
(Tex. 2006) (orig. proceeding) ......................................................................23

*In re Tex. Mut. Ins. Co.*, 157 S.W.3d 75 (Tex. App. - Austin
2004, orig. proceeding)...........................................................................35, 43-44

*In re Tex. Mut. Ins.* Co., 2005 WL 1763562 (Tex. App. - Dallas
July 27, 2005, orig. proceeding) ...................................................................35

*In re Tyler Ashphalt & General Co.*, 107 S.W.3d 832 ................................38

*In re University of Texas Health Center at Tyler*, 33 S.W.3d 822
(Tex. 2000) ....................................................................................................17

*Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922 (Tex.1998),
cert. denied, 526 U.S. 1144 (1999) ...............................................................25

*Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514 (Tex. 2007)................35

*Peek v. Equip. Serv. Co.*, 779 S.W.2d 802 (Tex. 1989)...........................26-27

*Public Util. Comm'n v. Pedernales Elec. Coop., Inc.*, 678 S.W.2d
214 (Tex. App. – Austin 1984, writ ref'd n.r.e.) .........................................28

*Southwestern Bell Tel. Co. v. Public Utility Comm.*, 735 S.W.2d
663, (Tex. App. - Austin 1987, no writ) .......................................................28

*State Office of Risk Mgmt. v. Herrera,* 189 S.W.3d 405 (Tex. App.-
Amarillo 2006, no pet.) ..................................................................................36

*Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212
(Tex. 2002) (op. on reh'g) ..................................................................28, 46, 55

*Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835 (Tex. 2007).............22

*Tex. Educ. Agency v. Stamos on Behalf of Class of All Pub. Sch.
Children in State of Tex.*, 817 S.W.2d 378 (Tex. App. - Houston [1st Dist.]
writ denied) ....................................................................................................49

*Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864
(Tex. 2001)......................................................................................................26

*Tex. Prop. & Cas. Guar. Ass'n v. Nat'l Am. Ins. Co.,* 208 S.W.3d
523 (Tex. App.-Austin 2006, pet. filed)........................................................35

*Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440
(Tex. 1993)......................................................................................................26

*Texas Mut. Ins. Co. v. Eckerd Corp*, 162 S.W.3d 261 (Tex. App. 2005, pet. denied).................................................................................. 45

*Texas Mut. Ins. Co. v. Texas Dept. of Ins., Div. of Workers' Compensation*, 214 S.W.3d 613 (Tex. App. – Austin 2006, no pet.) .........................................37, 42-43

*Texas Workers' Compensation Ins. Facility v. Peakload Inc. of Bexar County,* 1998 WL798640, at n.15 (Tex. App. – Austin Nov. 19, 1998, pet. denied).................................................................................. 36-37

*Thomas v. Long*, 207 S.W.3d 334 (Tex. 2006) ........................... 22, 46, 52, 54

*United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63-65, 77 S. Ct. 161, 1 L.Ed.2d 126 (1956) ........................................................ 55

*University of Texas M.D. Anderson Cancer Center v. Techolakian*, 2012 WL 4465349 (Tex. App. - Houston [1st Dist.] Sept. 27, 2012, no pet.) ...................................... 51

*Univ. of Tex. Rio Grande Valley v. Oteka*, No. 23-0167, 2025 WL 1668315 (Tex. June 13, 2025).................................... 27, 28, 29, 35, 37-39, 45-48, 53-54

*Walker v. Packer*, 827 S.W.2d 833 (Tex. 1992) ................................. 21

**Statutes**

Texas Civil Practice & Remedies Code § 51.014(a)(4)............................... 10, 20, 22-24

Texas Civil Practice & Remedies Code § 51.014(a)(8)............................... 10, 20, 22-25

Texas Civil Practice & Remedies Code § 51.016 ......................................23-24

Texas Government Code § 24.007(a) ........................................................ 46

Texas Government Code § 2001.054........................................................ 32

Texas Government Code §§ 2001.061-062 ............................................... 32

Texas Government Code § 2001.141(c) ................................................... 32

Texas Government Code § 2001.201......................................................34, 51-52

Texas Government Code § 2001.202........................................................ 32

Tex. Health & Safety Code §§ 611.002-006..............................................47-48

Texas Labor Code § 401.011(5)............................................................ 29

Texas Labor Code § 401.011(10)........................................................... 29

Texas Labor Code § 401.011(26)........................................................... 29

Texas Labor Code § 401.021 ............................................................... 41

Texas Labor Code §§ 408.181-187 ........................................................ 30

Texas Labor Code § 409.001-008 ......................................................... 30

Texas Labor Code § 409.021 .............................................................. 30

Texas Labor Code § 410.002 .............................................................. 31

Texas Labor Code §§ 410.021-31 ......................................................... 31

Texas Labor Code §§ 410.151-169 ........................................................ 31

Texas Labor Code § 410.163 .............................................................. 32

Texas Labor Code §§ 410.201-205 ........................................................ 31

**Rules**

28 Tex Admin. Code § 142.12 ................................................................................................ 34
28 Tex Admin. Code § 142.13 .............................................................................................33-34
28 Tex. Admin. Code § 140.1 ................................................................................................ 29
Texas Rules of Civil Procedure § 176.5 ................................................................................ 34
 Texas Rules of Civil Procedure § 192.6 ................................................................................ 49

**Constitutional Provisions**

Texas Constitution Article V, Section 8 ........................................................................... 45, 46

## STATEMENT REGARDING MANDAMUS RECORD

The Clerk's Record and the Reporter's Record for this Response are the same as those in the appeal under Cause No. 15-25-00061-CV, currently pending before this Court.

References to the Clerk's Record are noted as "CR[page]."

References to the Supplemental Clerk's Record submitted by Relator are noted as "SCR[letter]."

References to the Reporter's Record are [volume]RR[page]:[line].

References to the exhibits entered into evidence at the oral hearing held on March 21, 2025, are noted as "Heiliger App. [letter]."

## STATEMENT OF CASE

**Nature of the Case:** Mr. Heiliger is seeking workers' compensation death benefits due to the untimely and tragic passing of his wife, Mrs. Lauren Smith, who died from a stroke that occurred within six (6) to eight (8) hours of ending a 48-hour continuous shift as a paramedic for Fort Bend County Emergency Medical Services. Mr. Heiliger claims the stroke was the result of the stressful 48-hour shift. Relator claims the chronic use of legally prescribed amphetamines aggravated Mrs. Smith's pre-existing hypertension and caused the stroke. Prior to the contested case hearing, the administrative law judge (ALJ) issued an administrative subpoena for three (3) years of Mrs. Smith's unredacted mental health records from her psychiatrist, over written objection and assertion of privilege. Mr. Heiliger also submitted a written request asking the ALJ to reconsider and vacate her ruling, which was denied. Mr. Heiliger then sought equitable relief in district court to prevent the psychiatrist from producing the privileged materials.

**Trial Court:** The 11th District Court of Harris County, Texas; the Honorable Kristen B. Hawkins, Presiding.

**Trial Court Proceedings:** Relator accurately stated the Trial Court Proceedings.

**Respondent's Action(s):** Relator accurately stated the Action(s) of the district court being challenged on appeal.

9

## STATEMENT OF ISSUES PRESENTED

1. Whether Relator's Petition for Writ of Mandamus should be denied or dismissed because Relator has an adequate remedy by interlocutory appeal under Civil Practice and Remedies Code §§ 51.014(a)(4) and (8) to challenge the trial court's denial of its plea to the jurisdiction and granting of injunctive relief, precluding the availability or necessity of a writ of mandamus?

2. Whether Texas Department of Insurance, Division of Workers' Compensation's exclusive jurisdiction over "compensability" determinations under the Workers' Compensation Act extends to confer exclusive or primary jurisdiction over discovery matters, depriving the trial court of its subject-matter jurisdiction over claims seeking equitable relief from an administrative discovery subpoena issued by an Administrative Law Judge for the Division compelling the unredacted production and disclosure of mental health records claimed to be privileged?

**STATEMENT OF THE FACTS**

On April 10, 2023, Mrs. Lauren Smith, a 13-year paramedic, experienced a fatal stroke approximately six (6) to eight (8) hours after completing a 48-hour shift as a first responder with Fort Bend Emergency Medical Services ("FBEMS"). (Heiliger App. I; 1RR43:11-15; 1RR44:18-21). On April 2, 2024, Real Party in Interest ("RPI") Joshua Heiliger ("Heiliger"), as the surviving spouse, filed a claim for death benefits with Texas Department of Insurance, Division of Workers' Compensation ("Division") on behalf of himself and his daughter, Ms. Emma Heiliger, who was previously adopted by Mrs. Smith. (SCR B).

Relator, a self-insured entity acting as both employer and carrier, disputes that Mrs. Smith's death constitutes a compensable work-related injury. (Heiliger App. J and M). Relator relies on an autopsy performed by the Relator's Medical Examiner ("ME"), which allegedly attributed Mrs. Smith's stroke to "Hypertensive cardiovascular disease aggravated by recent amphetamine use," as indicated in a corresponding toxicology report. (Heiliger App. F, G, and H).

Mrs. Smith was legally prescribed Adderall and Vyvanse by her psychiatrist, Dr. Marcellus, for the treatment of Attention Deficit Hyperactivity Disorder ("ADHD"). (Heiliger App. Q, R, & S; SCR C). During the administrative proceedings, Heiliger submitted opinions from Mrs. Smith's primary care physician,

Dr. Smith, and her Pulmonologist[1], Dr. Iqbal, both of whom disagreed with the ME's conclusion. (*Id.*). They opined that Mrs. Smith's use of Adderall and Vyvanse would not have caused her stroke. (*Id.*). Instead, they believed her recent 48-hour shift as a first responder was more likely the cause. (*Id.*). Heiliger produced over 800 pages of Mrs. Smith's medical records from Dr. Smith and Dr. Iqbal. He also produced Mrs. Smith's prescription history for Adderall and Vyvanse, documenting more than 10 years of consistent and legal use. (Heiliger App. U).

Heiliger also provided a letter from Mrs. Smith's treating psychiatrist, Dr. Marcellus, who confirmed she was being treated for ADHD and Post-Traumatic Stress Disorder ("PTSD"). (Heiliger App. Q; SCR D). Dr. Marcellus also explained he prescribed Adderall and Vyvanse for her ADHD, that she never requested early refills, specified the prescribed dosages, and the medications were to be taken on an as-needed basis (i.e., "PRN"). (*Id.*). In contrast to Dr. Smith and Dr. Iqbal, however, Dr. Marcellus did not offer any opinion regarding Mrs. Smith's cause of death or whether he agreed with the ME. (*Id.*).

During the administrative proceedings, both parties retained testifying medical experts. (Heiliger App. N and M). Relator's expert supported the ME's

---

[1] Mrs. Smith was hospitalized, including several days in the ICU, in September of 2022 after contracting COVID-19, which kept her away from work until December 2022 (returned on light duty at a desk). Mrs. Smith was finally cleared to work full duty on an ambulance beginning February 2023 – two (2) months before she passed.

conclusions. (Heiliger App. M). In contrast, Heiliger's expert disagreed, opining that Mrs. Smith's recent 48-hour shift as a first responder was likely the proximate cause of her untimely death. (Heiliger App. N). After participating in two mandatory benefit review conferences ("BRCs") with the Division, a contested case hearing ("CCH") was scheduled for September 25, 2024. (Heiliger App. M).

On September 4, 2024, Relator requested Heiliger produce five (5) years of Mrs. Smith's mental health records, citing the letter from Dr. Marcellus. Heiliger objected and asserted privilege, specifically stating the records were irrelevant, sought for harassment, and most importantly privileged and/or confidential and not subject to disclosure or discovery.

On September 5, 2024, Relator submitted a request to RPI Okonkwo for the issuance of an administrative subpoena seeking disclosure of 23 years of Mrs. Smith's mental health records. (CR 167-170). Again, Heiliger objected, asserted privilege, and opposed the request. (CR 184-192). Subsequently, Relator amended its request, reducing the scope of the request to 3 years. (CR 176-179).

On September 6, 2024, RPI Okonkwo denied Relator's original request for 23 years of records.

The CCH commenced on September 26, 2024. (Heiliger App. L). At that time, the subpoena and related discovery issues concerning mental health records were not raised by any party, and all parties announced ready to proceed with the CCH.

However, the hearing was recessed after approximately 2 hours due to scheduling constraints with the Administrative Law Judge - RPI Okonkwo.

Subsequently, on October 21, 2024, Heiliger learned that on September 19, 2024, RPI Okonkwo granted the amended subpoena request ordering the production of the Mrs. Smith's mental health records from January 1, 2020, to April 10, 2023. (CR 201-202).[2] In the following weeks, Relator made multiple attempts to obtain Mrs. Smith's mental health records pursuant to this administrative subpoena, including by facsimile, email, and repeated harassing telephone calls to Dr. Marcellus's office. (CR 208-216, 257-258).

On October 28, 2024, Relator filed a Motion to Compel with RPI Okonkwo seeking an order compelling Dr. Marcellus to comply with the subpoena. (CR 196-198). Heiliger objected, arguing that the subpoena had not been properly served and was legally defective, rendering any motion to compel premature. (CR 218-222).

On October 30, 2024, Heiliger filed a Motion for Reconsideration and to Vacate the Subpoena, again asserting privilege and arguing the subpoena failed to comply with the statutory requirements for a valid subpoena. (CR 230-238).

---

[2] The Administrative Law Judge never issued a formal or written ruling on Heiliger's claim of privilege, but by issuing the subpoenas, over Heiliger's claim of privilege, the ALJ necessarily overruled the claim. *See In re Fisher & Paykel Appliances, Inc.,* 420 S.W.3d 842, 849 (Tex. App. – Dallas 2014, no pet.) ("In ordering the production of the documents, the trial court necessarily reached and overruled the attorney work product privilege objection.").

Nevertheless, on November 4, 2024, RPI Okonkwo granted the Relator's Motion to Compel. (CR 242).

On November 7, 2024, Heiliger filed the underlying action in Harris County District Court seeking declaratory relief, a temporary restraining order, temporary injunction, and permanent injunction seeking judicial review of the administrative subpoena. **(**Heiliger App. Z**)**. On November 11, 2024, Relator filed a Motion for Continuance of the CCH, which was granted on November 14. (CR 269-271).

On November 13, 2024, the Honorable Judge Tonya Garrison granted Heiliger's Application for Temporary Restraining Order, which was modified in part on November 14. (CR 20-24).

On November 14, 2024, Relator intervened as a Real Party in Interest in the district court proceeding.[3] Relator, the Division, it's Commissioner, and RPI Okonkwo each filed separate pleas to the jurisdiction of the trial court for different reasons. (CR 51-57, 83-107, and 109 - 132).

The trial court granted the pleas to the jurisdiction filed by the Division and its Commissioner. (CR 134-135). Before ruling on the remaining pleas, Relator and

---

[3] A motion to strike Relator's intervention is pending with the trial court. (CR 35-45).

Heiliger entered into a Rule 11 agreement in an effort to resolve the discovery dispute.[4]

On December 27, 2024, Relator filed a second request for subpoena to RPI Okonkwo to correct the deficiencies in the form of the first subpoena identified by Heiliger. (CR 296-306). On December 30, 2024, Heiliger again objected, citing the pending litigation, reiterating the prior privilege assertions, and asking RPI Okonkwo to permit the district court litigation, of which she is a party, to proceed before issuing any further rulings. (CR 320-324). On January 15, 2025, Relator filed another opposed continuance of the CCH, which was granted. (CR 359-366).

On January 22, 2025, RPI Okonkwo emailed the parties requesting Relator further amend its subpoena request, specifically stating:

> *Since it was a point of contention in your earlier subpoena, please include the precise language set out in the rule, which states that the subpoena must 'require the person [Dr. Marcellus] to produce evidence at a [particular] deposition.' You may then refile the Request.*

(CR 381-382).

On January 24, 2025, Relator complied, and RPI Okonkwo granted the amended request on February 6, 2025, setting a deposition of Dr. Marcellus for

---

[4] Relator asserts Heiliger failed to comply with the requirement to confer with Plaintiff; however, the facts asserted by Relator regarding Relator's "attempts to confer" are disputed and were represented as such on the record before the trial court. (Heiliger App. Y).

16

February 24, 2025, in which he was also to produce for inspection and copying all the documents claimed as privileged. (CR 385-402).[5]

On February 10, 2025, this second subpoena was personally served[6] on Dr. Marcellus. (CR 406). The same day, Heiliger filed a motion seeking a second temporary restraining order and asking the court to reset the hearing on his Application for Temporary Injunction.[7] (CR 325 - 333). On February 18, 2025, the trial court granted the second temporary restraining order and set Heiliger's Application for Temporary Injunction for hearing. (CR 443-446).

---

[5] Relator, in its Petition for Writ of Mandamus, asserts or implies Heiliger failed to preserve his objection and assertion of privilege, or somehow waived it, by not re-asserting and re-objecting to the amended motions submitted by Relator. *See* Amended Petition for Writ of Mandamus, at pg. 5-6 (No. 15-25-000-61-CV) ("Mr. Heiliger filed no objection at the Division . . . no challenge whatsoever to the January Deposition Subpoena."). First, Mr. Heiliger did object and assert privilege to the second subpoena as noted above in December 2024 when it was originally requested by Relator; Secondly, Mr. Heiliger did not re-object or re-assert to the amended seconded subpoena request in January because he had already done so to the original pleading requesting the second subpoena in December 2024. *See In re University of Texas Health Center at Tyler*, 33 S.W.3d 822, 826 (Tex. 2000) ("McClain contends that the Health Center waived its objections by failing to object to McClain's second notice, the "Amended Notice," served on November 9. We disagree. The Health Center had already made its objections clear in response to the earlier, virtually identical notice and request for documents. It was not required to reiterate its objections when only the date and time of the deposition were changed.").

[6] This was the first instance that Relator properly served its subpoena on Dr. Marcellus.

[7] Multiple temporary injunction hearings were previously set, but rescheduled or passed for various reasons, including December 3, 2024 – continued at request of Relator and RPI Okonkwo; December 5, 2024, passed as Relator and RPI Heiliger entered into a Rule 11 agreement; and January 13, 2025 – passed at request of RPI Okonkwo. However, in the interim, the second subpoena issue began to unfold, which led to the February hearings and March evidentiary hearing on the temporary injunction, pleas, and motions to dismiss.

On March 21, 2025, the trial court held an evidentiary hearing on the Application for Temporary Injunction, the remaining pleas to the jurisdiction, and the motions to dismiss filed by Relator and RPI Okonkwo. (1RR1:1-25, 2:2). On April 2, 2025, the trial court granted the Heiliger's Application for Temporary Injunction, denied the remaining pleas to the jurisdiction,[8] and denied all motions to dismiss. (CR 606-608, 611-613).

The injunction, as granted by the district court, set trial on the merits beginning the two week docket starting on December 1, 2025, and restrains:

> Greater Houston Psychiatric Associates, PLLC, as well as any individuals or entities in active concert or participation with them […] as follows: (a) Disclosing, in any manner, Lauren Smith's mental health records containing privileged communications, or the privileged communications contained therein, from Greater Houston Psychiatric Associates, PLLC, and/or Dr. John Marcellus.

*See* (Relator App. B).

Thereafter, on April 22, 2025, Relator and RPI Okonkwo filed their notices of accelerated appeal. On June 20, 2025, Relator and RPI Okonkwo filed their briefs under Cause No. 15-25-00061-CV, and Relator filed the instant Petition for Writ of Mandamus.

---

[8] Except for RPI Okonkwo's plea to the jurisdiction in her individual capacity, which was granted.

On June 26, 2025, the Court granted Heiliger's Motion for Extension of Time to file his response to Relator's Writ and ordered the response be filed no later than July 23, 2025.

## SUMMARY OF THE ARGUMENT

Because Relator has an adequate remedy by interlocutory appeal, its amended Petition for Writ of Mandamus should be denied and/or dismissed.

A Writ of Mandamus is reserved only to correct a clear abuse of discretion <u>when there is no other adequate legal remedy by appeal</u>. *In re* Rogers, 690 S.W.3d 296 (Tex. 2004) (orig. proceeding) (emphasis added). Relator's adequate remedy is by interlocutory appeal under Texas Civil Practice and Remedies Code, Section 51.014 (4) and (8) ("A person may appeal from an interlocutory order of a district court . . . that: (4) grants . . . a temporary injunction . . ." or "(8) grants or denies a plea to the jurisdiction by a governmental unit . . ."). In fact, the relief requested, and substantive arguments, in this Writ, are virtually identical to those by Relator in its brief submitted to the Court under Cause No. 15-25-00061-CV; demonstrating Relator has an adequate remedy by appeal.

Even if the Court concludes that Relator lacks an adequate remedy at law, the Writ should be denied on substantive grounds. Specifically, the Division does not possess exclusive or primary jurisdiction over the claims or relief sought by Heiliger in the district court because they do not hinge on an entitlement to workers' compensation benefits, nor is there an adequate remedy available for Heiliger to seek redress; therefore, the district court properly retains subject-matter jurisdiction over this matter.

## ARGUMENT AND AUTHORITY

## Mandamus Standard for Relief.

A Writ of Mandamus is reserved only to correct a clear abuse of discretion when there is no other adequate legal remedy by appeal. *In re* Rogers, 690 S.W.3d 296 (Tex. 2004) (orig. proceeding) (emphasis added). The Texas Supreme Court has expressly reaffirmed that persons seeking mandamus relief must establish the lack of an adequate appellate remedy as a "fundamental tenet" of mandamus practice. *Walker v. Packer*, 827 S.W.2d 833, 842 (Tex. 1992) (emphasis added).

To determine whether a party has an adequate remedy by appeal, courts apply a balancing test. *See In re Prudential*, 148 S.W.3d 124, 136 (Tex. 2004); *see In re AIU Ins. Co*., 148 S.W.3d 109, 115 (Tex. 2004) (orig. proceeding). A remedy available on direct appeal is adequate when the detriments of mandamus review outweigh the benefits. *Prudential,* 148 S.W.3d at 136. Conversely, if the benefits of mandamus review outweigh the detriments, the appellate court must determine whether the remedy by appeal is adequate. *Id*.

"Whether an appellate remedy is 'adequate' so as to preclude mandamus review depends heavily on the circumstances presented and is better guided by general principles than by simple rules." *Id*. at 137. Mandamus review should be limited to "exceptional cases" only to prevent impairment of "important substantive and procedural rights." *Id*. at 136.

Lastly, it is the Relator's burden to establish both prerequisites to mandamus relief, and this burden is substantial. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding) (per curiam).

**Relator Has an Adequate Remedy by Interlocutory Appeal.**

Relator has an adequate remedy through interlocutory appeal pursuant to Texas Civil Practice and Remedies Code ("CPRC"), Section 51.014 (4) and (8). *See* Tex. Civ. Prac. & Rem. Code §51.014(a)(8); *see also, Tex. A & M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 846 (Tex. 2007) (government entity or official has right to immediate interlocutory appeal of denial of plea to the jurisdiction); *Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006) ("The Legislature provided for an interlocutory appeal when a trial court denies a governmental unit's challenge to subject matter jurisdiction, irrespective of the procedural vehicle used.").

Relator's reliance on *In re Entergy Corp.*, 142 S.W.3d 316 (Tex. 2004) (orig. proceeding) is misplaced, as Entergy - unlike Relator - did not have a right to pursue an immediate interlocutory appeal. *Id. Entergy* involved an interlocutory writ of mandamus where "Entergy's jurisdictional challenge could [*__only__*] be taken up on appeal after final judgment. . ." *Id.* (emphasis added). Because Entergy's sole remedy to challenge the court's jurisdiction was by appeal after final judgment, the Court held mandamus review was available, reasoning that allowing the case to proceed to trial without first resolving the jurisdictional question would constitute an "improper

appropriation of state agency authority." *Id. Entergy* is readily distinguishable from the present case, as Relator has a statutory right to an immediate interlocutory appeal pursuant to CPRC 51.014 (4) and (8).

This Writ should be denied or dismissed consistent with *In re Santander Consumer USA, Inc.,* in which the First Court of Appeals addressed a nearly identical legal question – whether mandamus was available when a party was provided an interlocutory appeal by statute – in the negative. 445 S.W.3d 216 (Tex. App. – Houston [1st Dist.] 2013, no pet.). In that case, Santander sought to collect a debt it acquired from another third-party, and the debtor filed suit in district court alleging various debt collection violations. *Id.* Santander filed a motion to compel arbitration, which was denied by the trial court. *Id.* Rather than pursuing the statutorily available remedy of an interlocutory appeal, pursuant to CPRC 51.016, Santander filed an original petition with the appellate court seeking a Writ of Mandamus. *Id.*

Considering the Texas Supreme Court's decision in *In re Tex. Dept' Family & Protective Servs.,* 210 S.W.3d 609, 613 (Tex. 2006), wherein the "Court demonstrated judicial restraint in the application of mandamus principles,[9]" the First Court of Appeals specifically noted:

---

[9] In *In re Tex. Dep't of Family & Protective Servs., 210 S.W.3d 609* (Tex. 2006) (orig. proceeding), the Texas Supreme Court held that even in a child custody dispute, where "[j]ustice demands a speedy resolution," mandamus was not available because "an accelerated appeal provided an adequate remedy."

This case could potentially raise the question of whether Santander's petition must be categorically denied because section 51.016 would have afforded Santander a remedy by appeal had Santander timely availed itself of the statute, as mandamus is not ordinarily available if another remedy, though it would have been adequate and complete, was not exercised.

*Santander*, 445 S.W.3d at 221.

Although the court declined to articulate a blanket rule applicable in all cases, the court held "Santander has not demonstrated that a timely filed, accelerated appeal would not have afforded it a complete and adequate remedy." *Id.*

The holding in *Santander* is directly applicable here, as Relator likewise has an adequate remedy through interlocutory appeal. Relator's Writ of Mandamus is premised upon the assertion:

"[Relator's interlocutory appeal] does not provide Appellant Fort Bend County an adequate remedy because Texas Civil Practice & Remedies Code § 51.014 does not allow Appellant to argue jurisdiction when appealing the granting of injunctive relief."

*See* Appellant Fort Bend County's Amended Brief at ix, (No. 15-25-00061-CV).

That is not the case. Relator has an adequate and available remedy to challenge the trial court's denial of its plea to the jurisdiction pursuant to CPRC Section 51.014 - a remedy that Relator has already timely pursued in connection with the trial court's issuance of an injunction. In fact, the relief

sought by Relator in this Petition for Writ of Mandamus is indistinguishable from the relief requested in Relator's interlocutory appeal.[10]

Thus, just as Santander failed to meet the burden required for mandamus relief after its failure to exercise its right to interlocutory appeal, Relator here likewise cannot satisfy that burden. Relator has a clear right to interlocutory appeal under CPRC Section 51.014(8) and has failed to demonstrate that this remedy is incomplete or inadequate.

Therefore, Relator's Petition for Writ of Mandamus should be denied and/or dismissed.

## Plea to the Jurisdiction and Standard of Review.

Whether a trial court has subject matter jurisdiction, and it's ruling on a plea to the jurisdiction, are questions of law reviewed *de novo*. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998), cert. denied, 526 U.S. 1144 (1999). A

---

[10] In its Petition for Writ of Mandamus, Relator's relief requested is as follows:

> Relator Fort Bend County respectfully requests the Court to grant this Writ of Mandamus, direct the Honorable B. (sic) Hawkins to vacate her April 2, 2025, Order Denying Fort Bend County's Plea to the Jurisdiction and Motion to Dismiss and her April 2, 2025, Order Granting Temporary Injunction and Setting Trial on Merits and to dismiss this case for lack of subject matter jurisdiction . . .

In its Appellate Brief filed under Cause No. 15-25-00061-CV, Relator's relief requested is as follows:

> Appellant Fort Bend County respectfully requests the Court to reverse the April 2, 2025, Order Granting Temporary Injunction and Setting Trial on Merits and to render judgment that this case be dismissed . . .

plea to the jurisdiction is a dilatory plea by which a party challenges a court's authority to determine the subject matter of the action. *Bland ISD v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The purpose of a dilatory plea is not to force the plaintiff to preview their case on the merits but to establish a reason why the merits should never be reached. *Id*.

To determine whether a party has affirmatively demonstrated a court's jurisdiction to hear a case, appellate courts consider the facts alleged in the petition, and to the extent it is relevant to the jurisdictional issue, any evidence submitted by the parties to the trial court. *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001); *Bland ISD*, 34 S.W.3d at 555. The reviewing court's task is not to decide the merits of the case, but rather to examine the claims in the pleadings, taking as true the facts pleaded, and determine whether those facts support jurisdiction in the trial court. *Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993).

The reviewing court must construe the pleadings in the plaintiff's favor and look to the pleader's intent. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Peek v. Equip. Serv. Co*., 779 S.W.2d 802, 804 (Tex. 1989). If the plaintiff's pleadings are insufficient to demonstrate the court's jurisdiction, but do not affirmatively show incurable defects in jurisdiction, the proper remedy is to allow

the plaintiff an opportunity to amend before dismissal. *Brown*, 80 S.W.3d at 555; *Peek*, 779 S.W.2d at 805.

Relator challenges the trial court's denial of its plea to the jurisdiction, contending the Division is vested with exclusive jurisdiction over the claims or relief sought by Heiliger in the district court. However, for the reasons set forth below, Heiliger asserts the Writ should be denied on substantive grounds. The Division's exclusive jurisdiction over "compensability" determinations does not extend to the claims or relief sought at issue here, as they neither concern nor depend upon an entitlement to workers' compensation benefits.

**Exclusive Jurisdiction of Agencies and Standard of Review.**

Whether an agency has exclusive jurisdiction to adjudicate an issue is a question of statutory interpretation that is reviewed *de novo*. *University of Texas Rio Grande Valley v. Oteka*, 68 Tex. Sup. Ct. J. 1152, 2025 WL 1668315, at *4 (Tex. June 13, 2025). Administrative agencies, as legislative creations, may exercise "only those powers expressly conferred and necessary to accomplish [their] duties." *Id.* An agency, therefore, has no presumption of adjudicative jurisdiction, either concurrent or exclusive. *Id.* A party resisting a district court's jurisdiction in favor of an agency must demonstrate that the Legislature divested the court of subject-matter jurisdiction by vesting exclusive jurisdiction with an agency. *Id.* The Texas Supreme Court has described this burden as requiring a "compelling showing"; otherwise, it

is "presume[d] that remedies remain intact and that the jurisdiction of a district court—our state's sole court of general jurisdiction—remains undisturbed." *Id.*

Courts look to whether the Legislature has enacted either (1) "an express grant of exclusive original jurisdiction to the agency or [2] a 'pervasive regulatory scheme' indicating that it intended 'the administrative process to be the exclusive means of remedying the problem' presented." *Id.* As to the latter, all regulatory schemes have limits, so the inquiry also requires a determination about whether the disputed issue falls within the scope of the agency's exclusive jurisdiction. *Id.*

If so, the agency has the sole authority to make an initial determination regarding that issue, and a trial court lacks jurisdiction until a party has exhausted administrative remedies. *Id.*[11] [12] [13]

---

[11] In some instances, the statutory scheme may necessitate that an administrative agency with exclusive jurisdiction make certain findings before a trial court may finally adjudicate a claim. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 221 (Tex. 2002). Under those circumstances, if a party files its claims in the trial court before an agency resolves the issue within its exclusive jurisdiction, but the jurisdictional impediment can be removed, then the trial court may abate proceedings to allow a reasonable opportunity for the jurisdictional problem to be cured. *Id.* at 221–22; *Henry v. Dillard Dep't Stores, Inc.,* 70 S.W.3d 808, 809 (Tex. 2002).

[12] The exhaustion of remedies doctrine is sometimes confused with the doctrine of primary jurisdiction. *See Subaru of America, Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002). The primary jurisdiction doctrine applies in cases that fall within the original jurisdiction of the district court. *Id.*; *see also, Southwestern Bell Tel. Co. v. Public Utility Comm.*, 735 S.W.2d 663, 669 n. 3 (Tex. App. – Austin 1987, no writ).

[13] This also presumes an adequate administrative remedy exists. *See Public Util. Comm'n v. Pedernales Elec. Coop., Inc.*, 678 S.W.2d 214, 220 (Tex. App. – Austin 1984, writ ref'd n.r.e.) ("The doctrine of exhaustion of administrative remedies comes into effect only if the administrative remedy is realistically adequate to protect the asserted claims."); *see also, Huntsville Mem'l Hosp. v. Ernst*, 763 S.W.2d 856, 858–59 (Tex. App.—Houston [14th Dist.] 1988, no writ) (citations omitted).

## Workers' Compensation Act - Claims Process and Dispute Resolution Procedures

The Workers' Compensation Act (the "Act") provides that an employee is generally eligible for compensation benefits "without regard to fault or negligence" if (1) "the employee is subject to" the Act at the time of injury and (2) "the injury arises out of and in the course and scope of employment." [14] [15] *Oteka*, 2025 WL 1668315, at *4. The Department of Insurance oversees the workers' compensation system, and the Division of Workers' Compensation (the "Division") administers and operates the system, regulates and administers the business of workers' compensation, and ensures the Act and other laws regarding workers' compensation are executed. *Id.*

To assist in the Division's administration, the Act establishes adjudication procedures to resolve disputes about compensation benefits. [16] [17] *Id.* By statute, these benefits are the exclusive remedy for work-related injuries. *Id.*

---

[14] A "Compensable injury" is an "injury that arises out of and in the course and scope of employment for which compensation is payable under the Act." Tex. Lab. Code §401.011(10).

[15] An "Injury" is "damage or harm to the physical structure of the body and a disease or infection naturally resulting from the damage or harm. The term includes an occupational disease." Tex. Lab. Code §401.011(26).

[16] A "Benefit dispute" means "A disputed issue arising under the Texas Workers' Compensation Act (Act) in a workers' compensation claim regarding compensability or eligibility for, or the amount of, income or death benefits." Tex. Admin. Code § 140.1.

[17] A "Benefit" means "a medical benefit, an income benefit, a death benefit, or a burial benefit based on a compensable injury." Tex. Lab. Code §401.011(5).

Chapter 408 of the Texas Labor Code sets forth the benefits available under the Act, including medical benefits (Subchapter B), income benefits (Subchapter E – I), and death and burial benefits (Subchapter J). Subchapter J specifically governs the death and burial benefits, prescribing the applicable amounts and duration of the benefits, and the procedure for requesting an autopsy when the benefits sought are based upon an occupational disease. Tex. Lab. Code §§ 408.181-187.

Chapter 409 outlines the procedures for seeking compensation, including various notice requirements and deadlines for filing benefit claims. Tex. Labor Code Sections 409.001-008. Specifically, claims for death benefits must be filed with the Division or insurance carrier no later than the first anniversary of the date of the employee's death. *Id.* at Section 409.007. Failure to file timely bars the claim unless the claimant is a minor, incompetent, or can establish good cause. *Id.* at Section 409.007.

Upon receiving written notice of an injury or death, the insurance carrier has 15 days to either commence payment or notify the Division and claimant of its intent to dispute the claim. *Id.* at Section 409.021. This notice triggers the formal dispute resolution process, which includes a benefit review conference (BRC), a contested case hearing (CCH), and, if necessary, an appeal to the commission appeals panel. *Continental Cas. Ins. Co., v. Functional Restoration Associates,* 19 S.W.3d 393, 396

(Tex. 2000); *Id.* at §§ 410.021-31 (BRCs); §§ 410.151-169 (CCHs); and §§ 410.201-205 (Appeals Panels).

The BRC is intended to be a non-adversarial, informal dispute resolution proceeding designed to help the parties understand their rights, the process, the facts and issues, and attempt to resolve any disputed issues prior to proceeding to a CCH. *Id.* at Section 410.021. A BRC is a statutory prerequisite to proceeding with a CCH on a disputed claim seeking compensation under the Act. *Id.* at Section 410.024.

If a dispute is not resolved at the BRC, the benefit review officer shall prepare a report that details each issue that is not resolved at the conference, including a statement of each issue raised but not resolved and a statement of the position of the parties regarding each unresolved issue. *Id.* at Section 410.031. Following this, the parties may elect either arbitration (Subchapter C) or proceed with a CCH (Subchapter D).

**Contested Case Hearings - Administrative Law Judge's Authority.**

Generally, disputes concerning a carrier's liability for benefits are resolved through the dispute resolution procedures of Chapter 410, entitled "Adjudication of Disputes." Tex. Lab. Code § 410.002. The purpose of a contested proceeding under this chapter is "to determine the liability of an insurance carrier for compensation for an injury or death." *Id.* Such proceedings are governed exclusively by the provisions of Chapter 410. *Id.*

Chapter 410 expressly limits the application of the Administrative Procedure Act ("APA"), i.e., Chapter 2001, Government Code, for CCHs "to the extent the commissioner finds appropriate." [18] *Id.* at Section 410.153. The commissioner is also tasked with adopting rules to govern the conduct of contested case hearings. *Id.* at Section 410.157.

These procedural rules are codified in the Texas Administrative Code (the "Code"), specifically under Title 28, Part 2, Texas Department of Insurance, Division of Workers' Compensation. Relevant provisions include Chapter 122 (Compensation Procedure – Claimants), Chapter 140 (Dispute Resolution – General Provisions), Chapter 141 (Benefit Review Conference), Chapter 142 (Dispute Resolution – Benefit Contested Case Hearing), and Chapter 143 (Dispute Resolution Review by the Appeals Panel).

Under the Act, the Administrative Law Judge (ALJ) presiding over a contested case hearing has the authority to: (1) swear witnesses; receive testimony; allow examination of witnesses; accept documents and evidence; and allow evidence by affidavit. Tex. Lab. Code § 410.163. Under the Code, the ALJ may: (1) issue

---

[18] However, § 2001.054 (CCH – Licenses), §§ 2001.061-062 (Ex Parte Consultations and Examination of Record by State Agency), § 2001.202 (Court Enforcement of Final Orders, Decisions, and Rules), and Subchapter F (CCH – Final Decisions and Orders; Motions for Rehearing), Subchapter G (CCH – Judicial Review), Subchapter I (Exceptions), and Subchapter Z (Miscellaneous), except for § 2001.141(c) (Form of Decision), do not apply to CCHs under Chapter 410. Tex. Lab. Code § 410.157.

subpoenas; (2) rule on requests; (3) issue orders, including interlocutory orders, relating to benefits; (4) use summary procedures; (5) hold a prehearing conference to resolve evidentiary and procedural issues; (6) establish time limits for a hearing; (7) administer oaths; (8) rule on admissibility of evidence; (9) determine the relevance, materiality, weight, and credibility of evidence; (10) request additional evidence; (11) take official notice of other laws, ordinances, or rules; (12) examine parties and witnesses; (13) recess, postpone, or dismiss a hearing; and (14) take any other action as authorized by law, or as may facilitate the orderly conduct and disposition of the hearing. *See* Tex. Admin. Code § 142.2.

**Contested Case Hearings - Limited Discovery Procedures Available.**

Parties to a CCH may engage in limited discovery prior to the hearing, subject to certain limitations and requirements. Tex. Lab. Code §§ 410.158-162. Under the Act, discovery is limited to depositions on written questions to any health care provider; depositions of other witnesses upon a showing of good cause; and interrogatories as prescribed by the commissioner. *Id.* at Section 410.158. However, "For good cause shown, a party may obtain permission from the ALJ to conduct additional discovery as necessary."[19] *Id.* at Section 410.162.

---

[19] Under the Code, "The administrative law judge may grant a party permission to conduct discovery beyond that described previously upon a showing of good cause **at a hearing** held for this purpose." Tex. Admin. Code § 142.13 (emphasis added). In this case, additional discovery was granted upon submission of a motion asserting good cause, but not "upon a showing of good cause at a hearing held for this purpose."

Under the Code, the commissioner has expanded on the scope of discovery permitted pursuant to the Act. Tex. Admin. Code, Title 28, Part 2, Chapter 142, §§ 142.12-13. "Discovery" is defined as "the process by which a party may, before the hearing, obtain evidence relating to the disputed issue or issues from the other parties and witnesses. *Id.* at Section 142.13. If evidence is not produced voluntarily, a party may request issuance of a subpoena, as provided in § 142.12. *Id.*

Under § 142.12, "The division may issue a subpoena: (2) at the request of a party, if the administrative law judge determines the party has a good cause." *Id.* at Section 142.12. A party's request must: (1) be in writing; (2) identify the evidence to be produced; (3) explain why it is relevant to a disputed issue; (4) state whether the subpoena is for a deposition or a hearing; (4) be sent to the division; and (5) be served on all parties. *Id.* Service of a subpoena must comply with § 176.5, Texas Rules of Civil Procedure.[20] *Id.* Lastly, a subpoena may be enforced in the manner provided by the Government Code § 2001.201. *Id.*[21]

---

[20] For several months, Relator "served" its administrative subpoena to the psychiatrist office via email and fax. (CR257-258, CR219-221). Despite failing to properly serve its subpoena, which was pointed out by Heiliger in his objection and response to a Motion to Compel submitted by Relator during the administrative phase, the ALJ ignored this and issued an order compelling the psychiatrist office to comply with the subpoena. (Heiliger App. F), (CR219-221).

[21] If a person fails to comply with a subpoena, the state agency issuing the subpoena or the party requesting the subpoena may bring suit to enforce the subpoena in a district court in Travis County or in the county in which a hearing conducted by the agency may be held. Tex. Gov't Code § 2001.201. Moreover, if a court determines that good cause exists for the issuance of the subpoena or commission, it shall order compliance with the subpoena or commission. *Id.*

**The Division's Exclusive Jurisdiction is Limited to Issues of "Compensability."**

In light of the governing regulatory framework, the Texas Supreme Court has held the Division has exclusive jurisdiction to determine a claimant's entitlement to benefits, subject to judicial review. *Oteka*, 2025 WL 1668315, at *4; *see also*, *American Motorists Ins. Co., v. Fodge*, 63 S.W.3d 801 (Tex. 2001) ("The Workers' Compensation Act vests the power to award compensation benefits solely in the Division"). But not all statutory and common-law claims improperly circumvent the Division's exclusive jurisdiction. *Oteka*, 2025 WL 1668315, at *5.

Texas Courts have examined what constitutes an issue of "compensability" and thus within the Division's "exclusive jurisdiction." *E.g., Fodge*, 63 S.W.3d 801 (preauthorization of medical care within exclusive jurisdiction); *Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 519 (Tex. 2007) (determining whether injured workers were within the scope of employment of a covered employer is a question of compensability); *Tex. Prop. & Cas. Guar. Ass'n v. Nat'l Am. Ins. Co.,* 208 S.W.3d 523, 539 (Tex. App.-Austin 2006, pet. filed) (same); *In re Tex. Mut. Ins. Co.*, 157 S.W.3d 75, 78 (Tex. App.-Austin 2004, orig. proceeding) (entitlement to medical and income benefits within exclusive jurisdiction); *In re Tex. Mut. Ins.* Co., 2005 WL 1763562, at *1 (Tex. App.-Dallas July 27, 2005, orig. proceeding) (same) *Henry v. Dillard Dept. Stores Inc*., 21 S.W.3d 414, 419 (Tex. App. – San Antonio 2000, no pet.) (only the TWCC is authorized to resolve factual issues related to coverage);

*State Office of Risk Mgmt. v. Herrera,* 189 S.W.3d 405, 408 (Tex. App. – Amarillo 2006, no pet.) (determining who was employer at the time of injury is an issue of compensability); *Botts v. Hartford Underwriters Ins*. Co., 2001 WL 259128, at *2 (Tex. App.—Dallas Mar. 16, 2001, pet. denied) (despite lawsuit being for tort damages based on carrier's alleged bad faith denial/refusal of benefits, rather than compensation benefits, the central issue was still whether Botts was entitled to the benefits she requested. The trial court, therefore, was without jurisdiction until the Commission resolved the question of coverage).

However, appellate courts have faced multiple instances where, despite there being an underlying dispute over workers' compensation, or a dispute over something within the Division's exclusive jurisdiction, the matter, claims, or relief sought in district court were not within the exclusive jurisdiction of the Division; and thus, the respective district courts had subject matter jurisdiction over the claims. S*ee Oteka*, No. 23-0167, 2025 WL 1668315, at *5 (exclusive-remedy defense raised by employer did not bring claims filed in district court within exclusive jurisdiction of the Division despite involving a determination of compensability or coverage under the Act); *see also*, *Houston Gen. Ins. Co. v. Ass'n Cas. Ins. Co.,* 977 S.W.2d 634, 636 (Tex.App.-Tyler 1998, no pet.) (which insurance carrier responsible for payment not one of compensability, thus not within exclusive jurisdiction of Division); *Texas Workers' Compensation Ins. Facility v. Peakload Inc. of Bexar*

*County,* 1998 WL798640, at n.15 (Tex. App. – Austin Nov. 19, 1998, pet. denied) (Rejecting argument Commissioner has primary jurisdiction to determine application of "single business enterprise" under the Insurance Code because Facility has "power to sue in its own name. No procedure established under [the Insurance Code] is a prerequisite to the exercise of the power by the facility to sue."); *In re Hartford Underwriters Ins. Co.,* 168 S.W.3d 293, 296 (Tex. App. – Eastland 2005, orig. proceeding) (decision dealing only with attorney's fees not an issue of compensability or eligibility within the exclusive jurisdiction of the Division); *Texas Mut. Ins. Co. v. Texas Dept. of Ins., Div. of Workers' Compensation*, 214 S.W.3d 613, 619 (Tex. App. – Austin 2006, no pet.) (Division's exclusive jurisdiction is invoked only when there is "a pending claim whose resolution requires a determination of a claimant's entitlement to workers' compensation benefits" and does not extend to "any and all workers' compensation coverage disputes wherever they might arise.").

**Texas Supreme Court– Division's Exclusive Jurisdiction Limited to Matters that "Hinge on Entitlement to Workers' Compensation Benefits."**

Recently, in *University of Texas Rio Grande Valley v. Oteka*, 2025 WL 1668315, 68 Tex. Sup. Ct. J. 1152 (Tex. June 13, 2025), the Court held that the Division's exclusive jurisdiction does not extend to determining whether an injury was work-related when the issue is raised by an employer's exclusive-remedy

defense and the employee's lawsuit does not hinge on entitlement to workers' compensation benefits.[22]

In that case, the employee filed suit against her employer, alleging a nonwork-related injury. *Id.* In response, the employer invoked the exclusive-remedy defense, asserting the injury was, in fact, work-related, and filed a plea to the jurisdiction contending the Division had exclusive jurisdiction to determine whether the injury occurred within the course and scope of employment. *Id.* The Court said the issue was not "who is right," but rather "who decides: the district court or the Division." *Id.*

The University conceded that "the Legislature did not enact express language granting the Division exclusive jurisdiction to determine the exclusive-remedy defense and its subsidiary issues – e.g., course and scope, workers' compensation coverage, employee and employer status, and injury." *Id.* at *5. Nonetheless, the University argued the initial determination of any "course and scope issue" must fall within the Division's exclusive jurisdiction. *Id.* The Court rejected this argument, stating in relevant part,

> Regardless of who decides–the district court or the Division–the exclusive remedy provision will bar recovery of damages if the injury is work-related. And in considering the Act, we see no indicia in its text

---

[22] Notably, the Court specifically disapproved of *In re Prentis,* 702 S.W.3d 762; *Berrelez v. Mesquite Logistics USA, Inc.*, 562 S.W.3d 69; and *In re Tyler Asphalt & Gravel Co.,* 107 S.W.3d 832, all of which are cited and/or relied upon by Relator.

or structure that the Legislature intended the administrative process to be the exclusive means for determining this defensive issue.

…

Significantly, the Act lacks a procedural mechanism for the employee or employer to obtain a course-and-scope finding from the Division without the employee first filing a compensation claim.

…

In sum, the Workers' Compensation Act's text and structure, the presumption in favor of the district court's jurisdiction, and our precedent all point in the same direction: the Division does not have exclusive jurisdiction to determine whether an injury occurred in the course and scope of employment when (1) the employer raises the issue as an affirmative defense outside the compensability context and (2) the employee's requested relief does not depend on any entitlement to benefits.

*Id.* at *5-8.

Hence, "[b]ecause the Legislature did not divest the district court of subject-matter jurisdiction to decide the issue," the Court affirmed the trial court's denial of the University's plea to the jurisdiction. *Id.*

Another significant, though distinguishable, case is the Court's opinion in *Continental Cas. Ins. Co. v. Functional Restoration Associates,* 19 S.W.3d 393 (Tex. 2000), in which the Texas Supreme Court examined the scope of the Workers' Compensation Commission's (predecessor to the Division) exclusive jurisdiction. Specifically, Continental, the insurance carrier for an injured worker's employer, sought judicial review of an adverse decision in a medical fee dispute without first

obtaining an appeals panel review, alleging the Act did not provide a statutory right of review.

In that case, the employee suffered a compensable on-the-job injury and began receiving medical treatment, for which Continental was financially responsible. *Id.* After treatment commenced, Continental obtained a medical opinion indicating the treatments were not necessary and refused to authorize any further treatment or issue payment. *Id.* In response, the providers initiated a medical dispute resolution with the Commission, pursuant to Chapter 413 of the Texas Labor Code. *Id.* After a hearing, Continental was to pay the medical bills. *Id.* Continental then filed suit in district court seeking judicial review of the Commission's decision. *Id.*

The Commission responded with a plea to the jurisdiction, arguing Continental failed to exhaust its administrative remedies by not pursuing appeals panel review, and thus, the district court lacked subject matter jurisdiction. *Id.* The plea was granted by the district court. *Id.* The court of appeals reversed, finding Continental had an inherent right to judicial review since there was no statutory right to an appeal under the Act. *Id.* The Court reversed, stating in relevant part,

> We hold that Continental does not have a statutory right to judicial review. Further, without deciding whether Continental has a constitutional due process right to judicial review of the commission's order, we conclude that Continental failed to plead such a right in the district court. Therefore, we hold that the district court properly granted the plea to the jurisdiction.

*Id.* at 397.

Continental argued Section 410.255, entitled "Judicial Review of Issues Other Than Compensability or Income or Death Benefits," or § 401.021,[23] granted it a right of judicial review of the order regarding the medical fee dispute. *Id.* The Court started by reviewing the structure of Chapter 410 of the Labor Code and ultimately, concluding Section 410.255 (and relatedly § 410.301 for issues concerning compensability) simply "provides the manner of judicial review, but does not grant a right of judicial review." *Id.* Similarly, the Court held "section 401.021 simply describes the default manner of conducting judicial review when the right to judicial review is granted elsewhere in the Act but the manner of review is not specified." *Id.* at 401. Instead, the Court concluded that the sole statutory provision ranting judicial review under Chapter 410 is § 410.251, which permits review only following a final decision by the appeals panel. *Id.*

Having found no statutory right to judicial review under the Act – given that Continental had not obtained appeals panel review as required by Section 410.251 – the Court next addressed whether Continental possessed an inherent right to judicial review. *Id.*

---

[23] Section 401.021 states, in pertinent part, 'except as otherwise provided by the Act: (1) a proceeding, hearing, judicial review, or enforcement of a commission order, decision, or rule is governed by the following subchapters and sections of Chapter 2001, Government Code: (A) Subchapters A, B, D, E, G, and H. *Id.* at § 401.021. Subchapter G of Chapter 2001 governs judicial review, and section 2001.171 provides that "[a] person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter." *Continental*, 19 S.W.3d 393, 401 (Tex. 2000).

The Court noted

> The right to challenge administrative actions by an original action in district court on the basis that such actions unconstitutionally deprive the plaintiff of a vested property right is a right to judicial review distinctly different from the right to judicial review given by statute.

*Id.* at 404.

Nevertheless, because Continental's petition in the district court relied solely on an invalid statutory basis for judicial review and did not assert an inherent constitutional right to judicial review as a jurisdictional ground, the Court held that the district court properly granted the Commissioner's plea to the jurisdiction. *Id.*

**Third Court of Appeals – Division's Exclusive Jurisdiction Limited to Matters that "Concern an Entitlement to Workers' Compensation Benefits."**

The Third Court of Appeals has also issued several opinions concerning the scope of the Division's exclusive jurisdiction. Consistent with the approach taken by the Texas Supreme Court, the central inquiry for the Third Court has been whether the claims or relief sought implicate an entitlement to workers' compensation benefits or otherwise arise under the Workers' Compensation Act.

In *Texas Mutual Insurance Co., v. Texas Department of Insurance, Division of Workers' Compensation*, 214 S.W.3d 613 (Tex. App. – Austin 2006, no pet.) ("*Texas Mutual*"), the court of appeals held the Division did not have exclusive jurisdiction over a wrongful death action filed in district court because, while there was a dispute over whether the insurance policy was in effect at the time of injury – making it an

issue of "coverage" – it related to the indemnification provision in the insurance policy, not a person's entitlement to workers' compensation benefits. *Id.* And since the claims and relief sought by the plaintiff did not "concern an entitlement to workers' compensation benefits," the court could determine the claims and issues without regard to whether the plaintiffs were entitled to workers' compensation benefits. *Id.* Thus placing the claim and relief sought outside the scope of the Division's exclusive jurisdiction. *Id.*

The appellate court noted earlier precedent where the "foundation" of the courts' rationale for finding claims within the exclusive jurisdiction of the Division was the existence of ". . . a pending claim whose resolution required a determination of a claimant's entitlement to workers' compensation benefits." *Id.* at 619. In those circumstances, "Requiring such claims to be first brought in the Division is necessary to effectuate the legislative intent that 'recovery of workers' compensation benefits' in the manner prescribed in the [Act] be the 'exclusive remedy of an employee covered by [the Act]." *Id.*

In a similar, but factually distinct case, *In re Texas Mut. Ins. Co.*, 157 S.W.3d 75 (Tex. App. – Austin 2004, orig. proceeding) ("*In re Texas Mutual*") the court examined whether claims brought by an employer's assignee were subject to the Division's exclusive jurisdiction. There, the employer had reached a settlement with an injured employee to provide benefits allegedly due under a workers'

compensation policy after a question arose about whether the policy was in effect at the time of the injury. *Id.* After paying the settlement, the employer's assignee sued the insurance carrier for breach of contract and negligence in refusing to pay under the policy. *Id.* The court held the breach of contract claim was within the Division's exclusive jurisdiction, as it presupposed the existence of a valid policy and sought benefits due under that policy. *Id.* In contrast, the negligence claim fell outside the Division's jurisdiction, as it assumed no such policy was in effect. *Id.* Ultimately, the appellate court directed the trial court to abate the proceedings pending resolution of the jurisdictional issues. *Id.*

A similar partial jurisdictional split occurred in *Apollo Enterprises, Inc. v. ScripNet, Inc.*, 301 S.W.3d 848 (Tex. App.−Austin 2009, no pet.). There, Apollo brought tort-based counterclaims alleging that ScripNet orchestrated a scheme to manipulate workers' compensation reimbursement rates and divert claims to other companies. *Id.* ScripNet argued that "threshold issues" of workers' compensation law triggered the Division's exclusive jurisdiction for all four tort claims. *Id.* The court disagreed. *Id.* It found that claims seeking to establish or challenge reimbursement rates fell within the Division's exclusive jurisdiction due to the Legislature's comprehensive regulation of such rates. *Id.* However, the tortious interference claims did not fall within the Division's exclusive jurisdiction, as the

44

Legislature had not provided a mechanism for resolving such issues, indicating no intent to confer exclusive jurisdiction over them. *Id.*

Lastly, in *Texas Mut. Ins. Co. v. Eckerd Corp*, 162 S.W.3d 261 (Tex. App. – Austin 2005, pet. denied) ("*Eckerd*"), the court concluded the claims brought─a negligent misrepresentation claim and money had and received claim─were within the Division's exclusive jurisdiction. In that case, Texas Mutual sought to recover overpayments allegedly made in pursuant to reimbursement claims submitted with allegedly improper reimbursement rates. *Id.* The court held that because the claims arose directly from the statutory framework governing reimbursement rates and because the Division had the authority to grant equivalent relief, the Division had exclusive jurisdiction and therefore, the district court lacked subject-matter jurisdiction. *Id.*

**The Division's Exclusive Jurisdiction over "Compensability" Does Not Supersede the Trial Court's Constitutional Jurisdiction to Grant Equitable Relief or Restrain a Private Party.**

In matters of jurisdictional exclusivity, there exists a constitutional presumption that district court jurisdiction "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." *In re Entergy Corp.,* 142 S.W.3d 316, 322 (Tex.2004) (quoting Tex. Const. art. V, § 8); *Oteka,*

2025 WL 1668315, at *4 (quoting Tex. Const. art. V, § 8); *see also*, Tex. Gov't Code §§ 24.007(a). As courts of general jurisdiction, district courts have the power to 'hear and determine any cause that is cognizable by courts of law or equity' and to 'grant any relief that could be granted by either courts of law or equity. *Thomas v. Long*, 207 S.W.3d 334, 340 (Tex. 2006).

The Division does not possess exclusive jurisdiction over matters involving discovery, privilege, declaratory relief, writs of mandamus, or injunctive relief – particularly when such relief is sought against a private party. The rights and remedies asserted by Heiliger are not created or governed by the Workers' Compensation Act, the Texas Administrative Code, or any rule promulgated by the Division. *See Long*, 207 S.W.3d at 341-42 (because "the commission's rules create rights employees would not have at common law, the commission obtains exclusive jurisdiction over those matters."); *Subaru*, 84 S.W.3d at 226 (bad-faith and breach of oral contract claims within exclusive jurisdiction of administrative agency because Legislature vested authority in administrative body to strictly regulate the factual and legal basis of the asserted claims).

Rather, the claims and relief sought by Heiliger are more aligned to those addressed in: (1) *Oteka,* where the exclusive-remedy defensive issue, despite being a determination of whether workers' compensation coverage existed, was outside the Division's exclusive jurisdiction; (2) *Texas Mutual*, where the issue of whether an

46

insurance policy's indemnification clause was in force, despite it being an issue of "coverage" under a workers' compensation insurance policy, was found to not be within the exclusive jurisdiction of the Division; and (3) the tort claims in *In re Texas Mutual* and *Apollo* which did not require any resolution of an entitlement to benefits, nor were they based on the presumption of the existence of benefits, were outside the Division's exclusive jurisdiction.

In each of these cases, *Oteka*, *Texas Mutual*, *In re Texas Mutual*, and *Apollo*, the courts focused on whether the claims or relief sought "concerned," "presupposed," "hinged upon" or "required a determination of entitlement to" workers' compensation benefits (or involved a medical fee dispute which is also within the Division's exclusive jurisdiction).

Although the subpoenas in question were issued pursuant to the authority granted to the Division in the Act, and to the ALJ in the Texas Administrative Code, the underlying questions—namely, whether the mental health records are protected by privilege, whether the offensive-use doctrine or patient-litigant exception applies, or whether provisions of the Health and Safety Code[24] override the asserted privilege

---

[24] Relator contends the Health and Safety Code's provision permitting a doctor to disclose privileged records upon receipt of a subpoena issued by a Court or Administrative agency demonstrates the records are not privileged. *See* Tex. Health & Safety Code, Section 611.002-006. This assertion is misplaced. The exception permitting a physician to comply with a lawfully issued, validly served, subpoena is a **safe harbor provision** for medical providers. When read in conjunction with the rest of the statute, which creates a private cause of action for improper disclosure, it is clear the purpose of Section 611.006, which states a physician "**may**" disclose privileged records in the enumerated scenarios, is to protect physicians who comply with facially-

(as argued by Relator and RPI Okonkwo)—do not fall within the Division's exclusive jurisdiction. These issues do not hinge upon, concern, or require the determination of whether Heiliger is entitled to workers' compensation benefits.

As in *Oteka,* where the Court found no express language granting the Division exclusive jurisdiction to decide whether the exclusive-remedy doctrine applied to claims brought in district court, there is likewise no express statutory authority here granting the Division exclusive jurisdiction over discovery matters or the adjudication of mental health privilege issues. Similarly, just as the Court in *Continental* concluded there was no express authority granting Continental an appeals panel review of the hearing officer's decision related to Continental's medical fee dispute, there is no express statutory provision here permitting Appeals Panel review of a challenged subpoena—an omission that undermines any assertion of exclusive jurisdiction or a mandatory exhaustion requirement.

The absence of explicit authority compels a review of the statutory framework to determine whether a "pervasive regulatory scheme" exists indicating the Legislature intended "the administrative process to be the exclusive means of remedying the problem presented." *Oteka*, 2025 WL 1668315, at *4. As noted above, while the Act and the Code provide for limited discovery mechanisms, neither the

---

valid, properly served subpoenas – even if they are later determined to be improper subpoenas. The Health and Safety Code does not create an independent basis for piercing privilege in the discovery context.

Act, nor the Code or any Division rule establishes an avenue for Heiliger to challenge the issuance of the subpoena by the ALJ until after a final decision of the ALJ is issued, which then creates the ability to seek appeals panel review.[25]

This limited scope of "discovery," the complete lack of mechanisms available in the realm of discovery under the Act and Code, and the fact there is zero mention in the Act or Code about claiming privilege, privilege logs, challenging privilege, motions to quash[26], motions for protection[27], review of discovery decisions related

---

[25] This has been conceded by both Relator and RPI Okonkwo. *See* RPI Okonkwo's Plea to the Jurisdiction filed on or about December 5, 2024, page 4, (CR112) ("**Q: What right of interim appeal of the ALJ's ruling exists within the agency? What is the effect of such an appeal?** A: The ALJ's ruling on a subpoena or other discovery request may be appealed to the Appeals Panel at the agency once the ALJ has issued a written ruling on the entire case. . .") (emphasis original); *see also*, Relator's Amended Petition for Writ of Mandamus, pg. 25 ("Mr. Heiliger has improperly sought judicial review before obtaining a final decision from the Division."); and Relator's Amended Plea to the Jurisdiction, pg. 6 ("While there is no specific grant of authority to challenge a subpoena issued by a Division ALJ, there is a remedy available for the target of a Division subpoena: the target can stand idly by and do nothing until the Division or the party seeking the subpoena moves to enforce the subpoena. . .").

[26] Relator implies Heiliger should have sought a Motion to Quash the deposition and subpoena – a procedure normally useful to stay a deposition or subpoena issued by an attorney in civil litigation. However, Relator points to no rule that permits or authorizes a Motion to Quash in the administrative contested case hearing process. Relator also ignores the fact any Motion to Quash would have been filed with the ALJ who issued the subpoena in the first place, making the "remedy" futile. *See Tex. Educ. Agency v. Stamos on Behalf of Class of All Pub. Sch. Children in State of Tex.,* 817 S.W.2d 378, 385 (Tex. App.—Houston [1st Dist.] 1991, writ denied) ("the Supreme Court has noted that [Plaintiffs] may bypass the administrative process where exhaustion would be futile or inadequate.") (citing *Honig v. Doe*, 484 U.S. 305, 108 S. Ct. 592, 606, 98 L.Ed.2d 686 (1988).

[27] Relator also implies Heiliger should have sought a Motion for Protection. Similarly, Relator has not identified a rule permitting or authorizing a Motion for Protection in the administrative contested case hearing process. Further, this is not the correct procedure for objecting to or raising privilege regarding a deposition or subpoena. *See* Tex. R. Civ. P. 192.6 ("A person should not move for protection when an objection to written discovery or an assertion of privilege is appropriate."). And again, even if Heiliger could file a Motion for Protection, it would have been filed with the

49

to privilege, the inability of the target of a subpoena or interested party to challenge a subpoena, and so on, show the Legislature did not intend for the Division to have exclusive jurisdiction over discovery, privilege, subpoenas, writs, injunctions, etc.

This is also directly contrary to the constitutional and statutory framework establishing district courts, their jurisdiction, and the types of claims or relief that may be sought. Moreover, unlike the Texas Rules of Civil Procedure—which establish detailed and comprehensive procedures governing discovery, privilege, subpoenas, and related matters—the Workers' Compensation Act and the Texas Administrative Code lack any similarly robust or pervasive regulatory framework addressing these issues. This absence further underscores the Legislature did not intend to confer exclusive jurisdiction over such matters to the Division.

Furthermore, as in *Apollo*, where the court rejected ScripNet's argument that the claims could not proceed in district court without first resolving underlying "workers' compensation issues" or matters of "core workers' compensation law," the Court should likewise find Relator's assertion of exclusive jurisdiction unpersuasive. The absence of any mechanism or procedure within the Act, the Code, or Division rules for raising, litigating, or obtaining substantive review of discovery disputes— particularly those involving privileged materials, as is the case here—strongly

---

ALJ that issued the deposition and subpoena in the first place, making it futile. *Tex. Educ. Agency,* 817 S.W.2d at 385.

supports the conclusion that such matters fall outside the Division's exclusive jurisdiction.

The conclusion the Division lacks exclusive jurisdiction is further reinforced by the well-established principle that district courts retain the authority to grant petitions for pre-suit investigative discovery–even where the underlying claims may ultimately fall within the exclusive jurisdiction of an administrative agency, including the Division. *See In re Contractor's Supplies, Inc.*, 2009 WL 2488374 (Tex. App. – Tyler Aug. 17, 2009, no pet.) (Rule 202 petition not within exclusive jurisdiction of Division as it does not request final or even preliminary adjudication of the petitioner's claims that are subject of the Division's exclusive jurisdiction); *Houston Independent School District v. Durrell,* 547 S.W.3d 299 (Tex. App. – Houston [14th Dist.] 2018, no pet.) (same); *University of Texas M.D. Anderson Cancer Center v. Tcholakian*, 2012 WL 4465349 (Tex. App. – Houston [1st Dist.] Sept. 27, 2012, no pet.) (same); *City of Willow Park v. Squaw Creek Downs, L.P.*, 166 S.W.3d 336 (Tex. App. – Fort Worth 2005, no pet.) (despite exclusive jurisdiction being conferred on municipality and commission, "The issue in this case is one step removed from the question of what body has jurisdiction over the

underlying dispute between Squaw Creek and Willow Park. At issue is jurisdiction over Squaw Creek's rule 202 petition.").[28]

Additionally, Heiliger avers further support for this conclusion may be found in the existence of Texas Government Code Section 2001.201. As Relator acknowledges, Government Code Section 2001.201 is the statutory means for a person, or the Division, to seek enforcement of an administrative subpoena issued pursuant to the Act. Beyond the fact that neither the target of an administrative subpoena nor any other party has a clear mechanism to seek protection from such a subpoena within the Division, the existence of statutory language in Section 2001.201 expressly permitting a district court to review the propriety of a subpoena's issuance further illustrates the Legislature's intent.

Specifically, it demonstrates that: (1) the Legislature intended district courts to have substantive authority to override or nullify an ALJ's decision to issue a subpoena; and (2) the Legislature neither intended nor provided for Appeals Panel review of subpoenas as a prerequisite to judicial intervention. This statutory structure confirms the administrative process established by the Division was not intended to

---

[28] The court also rejected the assertion the municipality or Commission had primary jurisdiction because "the rule 202 petition does not require the district court to interpret the 'laws, rules, and regulations' of Willow Park, the Commission, or the water code." *Id*. Notably, "the water code does not provide a mechanism for taking investigative depositions." *Id*. Furthermore, "the fact that Squaw Creek seeks pre-suit discovery under rule 202 rather than final adjudication of its claims militates against application of the primary jurisdiction doctrine." *Id*.

be the exclusive means of adjudicating the types of claims and relief Heiliger seeks in district court.

Further evidence the Legislature did not intend for the Division to possess exclusive jurisdiction over the issues currently before the district court lies in the fact the rights asserted, the protections sought, and the remedies pursued by Heiliger are not created or governed by the Division, its rules, or the Texas Labor Code. *See Thomas v. Long*, 207 S.W.3d 334, 340-41 (Tex. 2006) (because "the commission's rules create rights employees would not have at common law, the commission obtains exclusive jurisdiction over those matters.").

Moreover, similar to *Oteka* and *Apollo*, where the Court found the absence of express language, or mechanisms to demonstrate, the administrative process was intended to be the exclusive means of obtaining the relief sought, as well as the lack of an independent path for obtaining the relief sought, were determinative that exclusive jurisdiction did not exist, the Court should also find the Legislature did not vest exclusive jurisdiction of Heiliger's claims and the relief he seeks in the Division.

The claims and relief sought by Heiliger in district court, while precipitated by an underlying workers' compensation proceeding, is not a "workers' compensation" claim or issue; nor does it involve or hinge upon a right or entitlement to workers' compensation benefits, or any other right or privilege created by the Act, Code, or the Division. The rights, remedies, and claims being pursued by Heiliger

53

exist outside of the Act, Code, or Division and will not provide any resolution or determination of whether Heiliger is entitled to the benefits he is seeking pursuant to his death benefits claim.

Neither the resolution of Heiliger's claims, nor the relief sought, in the district court seek or require a finding or ruling regarding whether: (a) Mrs. Smith's stroke is compensable under the Act; (b) Mrs. Smith's stroke occurred in the course and scope of her employment; (c) Mrs. Smith was an "employee" of an "employer" pursuant to the Act; or (d) Mr. Heiliger or his daughter are eligible beneficiaries under the Act. Moreover, the claims and relief sought by Heiliger in the district court are not tied to, creations of, or rights or remedies under the Act, the Code, or from the Division. *See Thomas v. Long*, 207 S.W.3d 334, 340-41 (Tex. 2006). Thus, there has been no usurpation of, or interference with, the exclusive jurisdiction of the Division over its duty to determine whether Mrs. Smith's death is a compensable injury.

Rather, Heiliger seeks to prevent the disclosure of, and preserve the privileged nature of, mental health that Relator has requested in discovery pursuant to an administrative subpoena issued by RPI Okonkwo. Heiliger contends he is entitled to equitable relief with respect to the subpoena, which was issued without a hearing or in-camera review and compels the wholly unredacted production of records claimed

to be privileged—all in the context of a workers' compensation proceeding involving a claimant who died from a physical stroke.

Accordingly, as the Texas Supreme Court recently affirmed, the Court should find the Division does not have exclusive jurisdiction as the claims or relief sought do "not hinge on entitlement to workers' compensation benefits." *Oteka*, 2025 WL 1668315, at *4.[29]

## **The Primary Jurisdiction Doctrine.**

The bedrock distinction between primary and exclusive jurisdiction is that primary jurisdiction is prudential, whereas exclusive jurisdiction is jurisdictional. *Subaru of Am., Inc. v. David McDavid Nissan*, 84 S.W.3d 212, 221 (Tex. 2002) (op. on reh'g).

Primary jurisdiction, on the other hand, is an administrative law doctrine that arises when a court and an agency have concurrent original jurisdiction over a dispute. *See Cash America Intern. Inc. v. Bennett,* 35 S.W.3d 12, 18 (Tex. 2000) (citing *United States v. Western Pac.* R.R. Co., 352 U.S. 59, 63–65, 77 S. Ct. 161, 1

---

[29] In the alternative, if the Court finds the issues raised and relief sought by Heiliger in the district court is within the exclusive jurisdiction of the Division, for the same reasons stated herein, Heiliger has alleged an inherent right to judicial review in his Petition with the trial court, which is based upon a lack of due process, irreparable harm/injury, and lack of administrative remedies. *See City of Houston v. Williams*, 99 S.W.3d 709, 715 (Tex. App. – Houston [14th Dist.] 2003, no pet.) (Exceptions [to the exhaustion doctrine] allow immediate access to Texas courts when: (1) the exhaustion of remedies will cause irreparable injury or administrative remedies are inadequate; (2) an administrative agency acts without authority; or (3) the litigant raises a constitutional claim.").

L.Ed.2d 126 (1956)). In such a case, courts must ask whether the policies underlying the primary jurisdiction doctrine require the court to defer to the agency's expertise and responsibility to develop regulatory policy. *Id.*

The primary jurisdiction doctrine requires courts to defer to the administrative agency to decide an issue because (1) the agency has expertise in handling the complex problems in the agency's purview and (2) great benefit is derived from the agency uniformly interpreting its laws, rules, and regulations. *Subaru*, 84 S.W.3d at 221.

Thus, courts should ask "whether the reasons for the existence of the primary jurisdiction doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Cash America,* 35 S.W.3d at 18. Those purposes include ensuring that administrative agencies decide, at least initially, questions that require "the special knowledge, experience and services of the administrative tribunal to determine technical and intricate matters of fact...." *Id.* Primary jurisdiction also comes into play when "uniformity of ruling is essential to comply with the purposes of the regulatory statute administered." *Id.*

**The Primary Jurisdiction Doctrine is Not Applicable.**

Assuming the Court finds the Division does not have exclusive jurisdiction in over the claims or relief sought by Heiliger in the case at bar, Heiliger also asserts the Division does not have primary jurisdiction that would require the trial court to

defer to the Division for the reasons stated herein and articulated in *In re Adan*, No. 14-11-00382-CV, 2011 WL 3208009 (Tex. App. – Houston [14th Dist.] July 28, 2011, no pet.) (TDLR did not have primary jurisdiction over the threshold questions of the applicability of the Texas Architectural Barriers Act (TABA) and the Texas Accessibility Standards (TAS) because there was no specific expertise of the TDLR needed in determining the application of the TABA or TAS); *Cf. In re Southwestern Bell Telephone Co.,* 226 S.W.3d 400 (Tex. 2007) (PUC had primary jurisdiction over action involving threshold questions about meaning and effect of telephone interconnection agreements because staffed with experts "who routinely consider the validity and enforceability of interconnection agreements" and "uniformity of the interpretation of the agreements by the PUC provided great benefit.").

Despite the hyperbolic exaggerations of indefinite chaos and completely overwhelming and crashing the Workers' Compensation system – as urged by Relator – it is clear the Legislature did not intend for the Division to have exclusive, or even primary jurisdiction over the issues, claims, and relief sought before the district court.

**PRAYER**

WHEREFORE, ARGUMENT AND AUTHORITY CONSIDERED, Real Party in Interest, Joshua Heiliger, et al., respectfully request the Court to deny and/or dismiss Relator's Writ of Mandamus and for such further and other relief to which it may be entitled.

Respectfully Submitted,

/s/ Russell L. Morris
Russell L. Morris
State Bar No. 24099150
Pablo A. Franco
State Bar No. 24121625
Gavin McBryde
State Bar No. 24045045
Andrew W. Bruce
State Bar No. 24113627
MCBRYDE FRANCO, PLLC
11000 Richmond Avenue, Suite 350
Houston, TX 77042
(713) 223-7699
(512) 691-9072 [facsimile]
serv.russell@mf-txlaw.com

**ATTORNEYS FOR REAL PARTY IN INTEREST JOSHUA DAVID HEILIGER**

**RULE 52.3 (J) CERTIFICATION**

In compliance with Rule 52.3(j) of the Texas Rules of Appellate Procedure, I certify that I have reviewed this Response and have concluded that every factual statement in the petition is supported by competent evidence included in the record.

*/s/ Russell L. Morris*
Russell L. Morris

**CERTIFICATE OF COMPLIANCE**

This Response complies with the length limitations of Tex. R. App. P. 9.4(i)(3) because this Response consists of 11,684 words as determined by Microsoft Word Count, excluding the parts of the Response exempted by Tex. R. App. 9.4(i)(1).

# CERTIFICATE OF SERVICE

I certify that the foregoing document, including any and all attachments, to which this certificate is attached was served, prepaid and/or facsimile and/or EFILE, on the date below upon each listed party or, if of record in this cause, that party's named attorney of record at the respective last known address, as follows:

**VIA E-FILE:**
Lisa M. Teachey
Dean G. Pappas Law Firm, PLLC
8588 Katy Freeway, Suite 100
Houston, TX 77024
lteachey@dgplawfirm.com

**ATTORNEYS FOR RELATOR FORT BEND COUNTY**

**VIA E:FILE:**
LaVerne Chang
Cardwell & Chang, PLLC
511 Lovett Blvd.
Houston, TX 77006
chang@cardwellchang.com

**ATTORNEYS FOR REAL PARTY IN INTEREST, GREATER HOUSTON PSYCHIATRIC ASSOCIATES, PLLC**

**VIA EMAIL:**
The Honorable Kristen B. Hawkins, Presiding
c/o Veronica Gonzalez, Court Coordinator
veronica_gonzalez@justex.net
11th Civil District Court
Harris County Civil Courthouse
201 Caroline Street, 9th Floor
Houston, Texas 77002

**RESPONDENT**

**VIA E-FILE:**
Sherlyn Harper
Office of the Attorney
General of Texas
808 Travis Street, #1520
Houston, TX 77002
Sherlyn.harper@oag.texas.gov

James Z. Brazell
Assistant Attorney General,
Administrative Law Division
P.O. Box 12548, Capital Station
Austin, TX 78711-2548
james@brazell@oag.texas.gov

**ATTORNEYS FOR REAL PARTY IN INTEREST, FRANCESCA OKONKWO,**

Date: July 23, 2025          _/s/Russell L. Morris_____
                                              Russell L. Morris

# APPENDIX

TAB A:   Notice of Deposition and Administrative Subpoena dated December 27, 2024, to produce Mrs. Smith's Mental Health Records from Dr. John R. Marcellus (CR409-410).

TAB B:   Order Granting Carrier's Amended Motion for Additional Discovery (Deposition Subpoena) from Dr. John Marcellus dated January 27, 2025, (CR411-414).

TAB C:   Tex-Star Legal Support, LLC, Subpoena Service of Process Cover Sheet January 28, 2025 (CR406-408).

TAB D:   Administrative Subpoena dated September 19, 2024 (CR182).

TAB E:   Order Granting Carrier's Motion to Compel Production of Medical Records from Dr. John Marcellus dated October 30, 2024 (CR242-243).

TAB F:   Fort Bend County Medical Examiner's Post-Mortem Examination Report.

TAB G:   National Medical Services Labs Toxicology Report dated April 29, 2023.

TAB H:   Fort Bend County Medical Examiner Office's Memorandum by Chief Medical Examiner Reaffirming Post-Mortem Examination, undated.

TAB I:   Lauren Smith Death Certificate, issued on June 26, 2023.

TAB J:   Notice of Denial of Compensability/Liability and Refusal to Pay Benefits dated May 13, 2024 (CR263-265).

TAB K:   Notice of Denial of Compensability/Liability and Refusal to Pay Benefits dated April 26, 2024.

TAB L:   Contested Case Hearing Notice of Hearing for September 26, 2024 (SCR B).

TAB M:   Benefit Review Conference (BRC) Report dated August 2, 2024 (SCR B).

TAB N:   Heiliger Expert - Dr. Easwar Sundaram Jr. Expert Report and Resume.

TAB O:   Dr. Easwar Sundaram Jr. Response Report to Dr. Suzzane Novak dated August 8, 2024.

TAB P:   Business Records Affidavit of Dr. Easwar Sundaram Jr. dated March 17, 2025.

TAB Q:   Dr. John E. Marcellus Medical Diagnosis and Medication Letter dated September 25, 2023 (SCR D).

TAB R:   Dr. Zachary J. Smith's Letter dated June 30, 2023 (SCR E).

TAB S:   Dr. Abid Iqbal email dated June 14, 2023.

TAB T: Respondent Greater Houston Psychiatric Associates, PLLC's Answer to Petitioner's Application for Second Temporary Restraining Order, Temporary Injunction and Permanent Injunction dated February 25, 2025 (CR447-448)

TAB U: Greater Houston Psychiatric Associates, PLLC's Prescription History of Lauren Smith.

TAB V: Order on Carrier's Second Motion for Continuance dated November 13, 2024.

TAB W: Order on Carrier's Third Motion for Continuance dated January 17, 2025 (CR357-358)

TAB X: Contested Case Hearing notice setting CCH for May 13, 2025.

TAB Y: Oral Hearing Transcript – Cause No. 2024-78536, dated February 18, 2025, 11th District Court of Harris County Texas.

TAB Z: Petitioner's Fourth Amended Verified Original Petition for Declaratory Judgment, Application for Writ of Mandamus, Temporary Restraining Order, Temporary Injunction, Permanent Injunction dated January 9, 2025 (CR136-163).

TAB AA: Texas Government Code § 24.007

TAB BB: Texas Government Code § 2001.054

TAB CC: Texas Government Code § 2001.061-062

TAB DD: Texas Government Code § 2001.141

TAB EE: Texas Government Code § 2001.202

TAB FF: Texas Labor Code § 401.011

TAB GG: Texas Labor Code § 401.021

TAB HH: Texas Labor Code § 408.181-187

TAB II: Texas Labor Code § 409.001-008

TAB JJ: Texas Labor Code § 409.021

TAB KK: Texas Labor Code § 410

TAB LL: 28 Tex. Admin. Code § 140.1

TAB MM: 28 Tex. Admin. Code § 141.1

TAB NN: 28 Tex. Admin. Code § 141.5

TAB OO: 28 Tex. Admin. Code § 141.7

TAB PP:     28 Tex. Admin. Code § 142.1-2

TAB QQ:     28 Tex. Admin. Code § 142.12-13

TAB RR:     28 Tex. Admin. Code § 142.16

TAB SS:     28 Tex. Admin. Code § 143.1-3

TAB TT:     Texas Civil Practice & Remedies Code § 51.014

TAB UU:     Texas Rules of Civil Procedure § 176.5

TAB VV:     Texas Rules of Civil Procedure § 192.6

No. TWCC:24229142-01

LAUREN SMITH

vs                                                         DWC:22343114-02-CC-HW

FORT BEND COUNTY

## NOTICE OF INTENTION
## TO TAKE DEPOSITION BY WRITTEN QUESTIONS

To Plaintiff by and through their attorney(s) of record: Russell L. Morris (McBryde Franco, PLLC)

To other party/parties by and through their attorney(s) of record:

You will please take notice that twenty (20) days from the service of a copy hereof with attached questions, a deposition by written questions will be taken of Custodian of Records for:

Dr. John E. Marcellus (Medical)
4888 Loop Central Drive, Suite 510
Houston, TX 77081

before a Notary Public for      Tex-Stor Legal Support, LLC
                                P.O. Box 701306
                                Houston, TX 77270
                                346-223-2942   Fax 1-800-420-9343

or its designated agent, which deposition with attached questions may be used in evidence upon the trial of the above-styled and numbered cause pending in the above named court. Notice is further given that request is hereby made as authorized under Rule 200, Texas Rules of Civil Procedure, to the officer taking this deposition to issue a subpoena duces tecum and cause it to be served on the witness to produce any and all records as described on the attached questions and/or Exhibit(s) and any other such record in the possession, custody or control of the said witness, and every such record to which this witness may have access, pertaining to:

Lauren Smith

and to turn all such records over to the officer authorized to take this deposition so that photographic reproductions of the same may be made and attached to said deposition.

/s/ Dean G. Pappas
Dean G. Pappas
Dean G. Pappas Law Firm, PLLC
8588 Katy Fwy. Ste. 100
Houston, TX 77024
713-914-6216   Fax 713-914-6201
Attorney for Defendant
SBA # 15454375

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all Counsel of Record by hand delivery, fax, email, e-filing provider and/or certified mail, return receipt requested, on this day.

/s/ Dean G. Pappas
Dated: December 27, 2024                    by_____

TAB A

Order No. 6710

## DEPOSITION SUBPOENA TO TESTIFY OR PRODUCE DOCUMENTS OR THINGS

**THE STATE OF TEXAS**

To any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under RULE 176 OF TEXAS RULES OF CIVIL PROCEDURE. - GREETINGS -

You are hereby commanded to subpoena and summon the following witness(es):
Custodian of Records for:
   Dr. John E. Marcellus
   4888 Loop Central Drive, Suite 510
   Houston, TX 77081   713.346.1551
to be and appear before a Notary Public of my designation for
   Tex-Star Legal Support, LLC   346-223-2942
   P.O. Box 701306, Houston, TX 77270
or its designated agent, on or before 01/27/2025 at the office of the custodian and there under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying
      Any and all medical records from 1/01/2020 to 4/10/2023 including patient information sheets, intake forms, reports, notes, tests, therapy records and mental health reports for Lauren Smith, deceased, date of birth 10/18/1982 and SS# xxx-xx-4261.
and any other such record in the possession, custody or control of the said witness, and every such record to which the witness may have access, pertaining to:  Lauren Smith
               Social Security Number: xxx-xx-4261  Date of Birth: 10/18/1982
at any and all times whatsoever, then and there to give evidence at the instance of the represented by Defendant, FORT BEND COUNTY represented by Dean Pappas, Attorney of Record, in that Certain Cause No. TWCC 24229142-01, pending on the docket of the District Court of the Judicial District of  County, Texas.
This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled
   LAUREN SMITH


   vs


   FORT BEND COUNTY
and there remain from day to day and time to time until discharged according to law.

**WITNESS MY HAND**, this 27th day of December, 2024.



TIFFANY HARRIS
My Notary ID # 132467212
Expires May 6, 2028

NOTARY PUBLIC

**176.8 Enforcement of Subpoena.** (a) *Contempt*. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

### OFFICER'S RETURN

Came to hand this _____ day of _____, 20____, and executed this the _____ day of _____, 20____,

in the following manner: By delivering to the witness _____, a true copy hereof.


Returned this _____ day of _____, 20____.



PROCESS SERVER


Order No. 6710.001

TEXAS DEPARTMENT OF INSURANCE
DIVISION OF WORKERS' COMPENSATION
HOUSTON EAST FIELD OFFICE
HOUSTON, TEXAS

| | | |
|---|---|---|
| Lauren Smith | § | |
| | § | |
| vs. | § | DWC: 24229142-01-CC-HE |
| | § | |
| Fort Bend County | § | |

**Order on Carrier's Amended Motion for
Additional Discovery (Deposition Subpoena) from Dr. John Marcellus**

The Division considered the Carrier's Motion for Additional Discovery in the form of a deposition and subpoena for the production of Medical Records pertaining to Claimant, Lauren Smith, decedent, from medical provider Dr. John Marcellus and/or his custodian of records. Based on the facts stated in the motion, the Division finds good cause exists to approve the Motion for Additional Discovery pursuant to Texas Labor Code § 410.162 and the Adopted Rules 142.12 and 142.13 of the Texas Workers' Compensation Act. It is therefore,

*Ordered that Dr. John Marcellus and/or his Custodian of Records are ordered to appear for deposition at 10 a.m. on February 24, 2025, at the offices of Dr. John Marcellus, located at 4888 Loop Central Drive, Suite 510, Houston, Texas 77081.*

*It is further Ordered that a subpoena be issued forthwith for Dr. John Marcellus and/or his Custodian of Records to produce and permit inspection and copying of the medical records of Lauren Smith (SS# xxx-xx-4261; Date of Birth: 10/18/1982) from January 1, 2020, through April 1, 2023. It is further Ordered that the records produced*

Carrier's Amended Motion for Additional Discovery - Deposition Subpoena - Page 10

TAB B

by Dr. John Marcellus or his Custodian of Records shall be marked "Confidential" for use by the parties, their attorneys and experts during the pendency of the disputed claim and to remain otherwise confidential.

SIGNED this 27th day of __January__, 2025.

*Franca Okonkwo*
Administrative Law Judge



This deposition subpoena is issued in the name of the State of Texas.

**To:**    Any Sheriff or Constable of the State of Texas or any other person authorized to serve and execute subpoena under 28 TAC §142.12 and Rule 176.5(a) of the Texas Rules of Civil Procedure.

**Instructions:**    You are hereby commanded to summon the person named below to appear at the deposition of Dr. John Marcellus or the Custodian of Records for Dr. John Marcellus and to produce and permit inspection and copying of the documents and/or tangible things in the possession, custody, or control of the person summoned, by producing the records to the court reporter at the deposition and/or delivering them to the requesting person at the address indicated.

**Summoned Person:**    Dr. John Marcellus or the Custodian of Records for Dr. John Marcellus.

**Required Action:**    To appear for the deposition and produce and permit inspection and copying of the designated documents or tangible things in the possession, custody, or control of the summoned person as described herein.

**Documents and/or Tangible
Things to be Produced:**    Medical Records from 01/01/2020 to the 04/01/2023 pertaining to Lauren Smith, (SS# xxx-xx-4261; Date of Birth: 10/18/1982).

**Location:**    Office of Dr. John E. Marcellus, 4888 Loop Central Drive, Suite 510, Houston, TX 77081, Phone 713-346-1551, Fax: 713-346-1577.

**Date and Time:** February 24, 2025, at 10:00 a.m.

**Lauren Smith v. Fort Bend County,** Docket Number: 24229142-01, in the Texas Department of Insurance, Division of Workers' Compensation

**Requested By:**    Marilyn J. Allen, Dean Pappas Law Firm, 8588 Katy Freeway, Suite #100 Houston, Texas 77024, Telephone: 713-914-6200

**Sanctions Notice:**    Failure of any person to comply with this deposition subpoena may result in sanctions under Section 415.021 of the Texas Labor Code. This deposition subpoena may be enforced through the provisions of Section 2001.201 of the Texas Government Code.

This deposition subpoena is issued under my official signature on, ___January 27___ , 2025.

*Franca Okonkwo*

Administrative Law Judge
Texas Department of Insurance
Division of Workers' Compensation

**Proof of Service**

I acknowledge receipt of the above deposition subpoena on _____ , and hereby state that the deposition subpoena was executed by personal service of a true and correct copy on said witness, on _____ , at _____.m.

_____
Signature of Process Server



**Division of Workers' Compensation**

PO Box 12050 | Austin, TX 78711 | 800-252-7031 | tdi.texas.gov/wc

January 27, 2025

24229142-01-CC

JOSHUA D. HEILIGER
5804 SPRING RIVER LANE
FULSHEAR TX 77441

EMMA D. HEILIGER
5804 SPRING RIVER LANE
FULSHEAR TX 77441-2053

RUSSELL L MORRIS
MCBRYDE FRANCO PLLC
11000 RICHMOND AVE STE 350
HOUSTON TX 77042-6702

FORT BEND COUNTY
C/O DEAN G PAPPAS LAW FIRM LLC, BOX 29

MARILYN J. ALLEN
DEAN G PAPPAS LAW FIRM PLLC
8588 KATY FWY STE 100
HOUSTON TX 77024-1813

FORT BEND COUNTY
301 JACKSON ST
RICHMOND TX 77469-3108

January 28, 2025

# Tex-Star Legal Support, LLC
P.O. Box 701306
Houston, TX 77270
TEL: 346-223-2942  FAX: 1-800-420-9343

VIA: [ ] MAIL     [ ] FAX:     [X] HAND SERVE:     COVER AND **8** PAGES

Attention:
Dr. John E. Marcellus
4888 Loop Central Drive, Suite 510
Houston, TX 77081

*See attached court order compelling your response.*

Enclosed please find a request for records of:
**Lauren Smith**          DOB: 10/18/1982          SSN: xxx-xx-4261

We are requesting:
Any and all medical records from 1/01/2020 to 4/10/2023 including patient information sheets, intake forms, reports, notes, tests, therapy records and mental health reports for Lauren Smith, deceased, date of birth 10/18/1982 and SS# xxx-xx-4261.

We will call you within 5 days for a page count and fee approval and to assist you with the legal documents. **If your fees exceed $50.00, please call for approval before sending records**. Thank you for your cooperation.

We need these records and legal documents returned BEFORE: __2/24/2025__

[X] Subpoena                    [ ] Cross Questions

[ ] Written Questions          [ ] Certified Copies

[ ] Affidavit                  [ ] No Legal Documents are needed at this time

**ALL LEGAL DOCUMENTS (DWQ or AFF) MUST BE COMPLETED, NOTARIZED, AND MAILED TO OUR OFFICE.**

## REQUEST CONFIRMATION

To help reduce calls to your office, please complete this section and return via fax 800-420-9343 or via email to expeditor@Tex-Star.com.

Request received by: _____          Date received: _____
*Name and Contact Number*

Approximate Turnaround time: _____          Fee: _____ Page Count: _____
*Business days*

Is a notary needed for the legal paperwork? Please circle yes or no.
Does your facility accept credit card payments? Please circle yes or no.

TAB C

Invoices can be faxed 800-420-9343 or emailed to: expeditor@Tex-Star.com.

Records can be emailed to expeditor@Tex-Star.com. Completed legals **may** need to be mailed.

Order No. 6710.001

No. TWCC 24229142-01

| | | |
|---|---|---|
| **LAUREN SMITH** | : | |
| | : | |
| | : | |
| vs | : | |
| | : | **DWC:22343114-02-CC-HW** |
| | : | |
| **FORT BEND COUNTY** | : | |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS

Direct Questions for: Dr. John E. Marcellus
Records Pertaining To: Lauren Smith
Type of Records: Any and all medical records from 1/01/2020 to 4/10/2023 including patient information sheets, intake forms, reports, notes, tests, therapy records and mental health reports for Lauren Smith, deceased, date of birth 10/18/1982 and SS# xxx-xx-4261.

1. State your full name, address and occupation.

   Answer: _____

2. Are you able to identify these records as the original or true and correct copies of originals?

   Answer: _____

3. Were these records kept in the regular course of business?

   Answer: _____

4. In the regular course of business, did the person who signed or otherwise prepared these records either have personal knowledge of these entries on these records or obtain the information from sources who have such personal knowledge to make such records?

   Answer: _____

5. Are these records under your care, supervision, directions, custody or control?

   Answer: _____

6. Are these records made at a time closely related to or simultaneous with the occurrence recorded on these records?

   Answer: _____

7. Were these records kept as described in the previous questions?

   Answer: _____

Order No. 6710.001

8.  Please gather any and all of such records together and deliver same to the officer taking your deposition for inspection and photocopying. (This will be no expense to you , and the officer will return the original records to you after they have been both inspected and copied.) Have you done as requested? If not, why not?

Answer:_____

_____

WITNESS (Custodian of Records)

Before me, the undersigned authority, on this day personally appeared _____,
known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct.  I further certify that the records attached hereto are exact duplicates of the original records.

SWORN TO AND SUBSCRIBED before me this_____ day of _____, 20_____.

NOTARY PUBLIC

My Commission Expires: _____

Order No. 6710.001

TEXAS DEPARTMENT OF INSURANCE
DIVISION OF WORKERS' COMPENSATION
HOUSTON EAST FIELD OFFICE
HOUSTON, TEXAS

| | | |
|---|---|---|
| Lauren Smith,<br>    Claimant | § § § § § | |
| | § | Docket No. 24229142-01 |
| v. | § § § | |
| Fort Bend County,<br>    Carrier | § § | |

## Order on Motion to Subpoena Medical Records

The Division considered the Carrier's Opposed Motion to Subpoena Claimant's Medical Records from *John E. Marcellus, M.D., Diplomate American Board of Psychiatry and Neurology in Child, Adolescent and Adult Psychiatry*, 4888 Loop Central Drive, Suite 510, Houston, TX 77081, Phone 713-346-1551, Fax: 713-346-1577 pertaining to *Claimant, Lauren Smith, deceased, (SS# xxx-xx-4261; Date of Birth: 10/18/1982)*.

The Division finds good cause exists to obtain the medical records, pursuant to Rule 142.12 and 142.13 of the Texas Workers' Compensation Act.

Based on the above, the Carrier's Opposed Motion to Subpoena Medical Records from **January 1, 2020, through April 1, 2023**, from Dr. John E. Marcellus, Release of Information pertaining to Lauren Smith, decedent is approved.

SIGNED this __19th__ day of __September__, 2024.

*Franca Okonkwo*
Administrative Law Judge

CARRIER'S OPPOSED MOTION TO SUBPOENA MEDICAL RECORDS -Page 5

**APPROVED:**

Respectfully submitted,

DEAN G. PAPPAS LAW FIRM, PLLC

By:  _____

       Marilyn J. Allen
       State Bar No: 24025225
       8588 Katy Freeway, Suite 100
       Houston, Texas 77024
       Tel:   (713) 914-6200
       Fax:  (713) 914-6201

ATTORNEYS FOR CARRIER
FORT BEND COUNTY

CARRIER'S OPPOSED MOTION TO SUBPOENA MEDICAL RECORDS -Page 6



**This subpoena is issued in the name of the State of Texas.**

**To:**     Any Sheriff or Constable of the State of Texas or any other person authorized to serve and execute subpoenas under Rule 176.5(a), Texas Rules of Civil Procedure (TRCP)

**Instructions:**    You are hereby commanded to summon the person named below to produce and permit inspection and copying of the documents and/or tangible things in the possession, custody, or control of the person summoned, by delivering them to the requesting person at the address indicated.

**Summoned Person:**    **Custodian of Records for Dr. John Marcellus, Release of Information**

**Required Action:**    Produce and permit inspection and copying of the designated documents or tangible things in the possession, custody, or control of the summoned person.

**Documents and/or Tangible**
**Things to be Produced:**    **Medical Records from 01/01/2020 to the 04/01/2023 pertaining to Lauren Smith, (SS# xxx-xx-4261; Date of Birth: 10/18/1982).**

**Location:**    4888 Loop Central Drive, Suite 510, Houston, TX 77081, Phone 713-346-1551, Fax: 713-346-1577.

**Lauren Smith v. Fort Bend County, Docket Number: 24229142-01,** in the Texas Department of Insurance, Division of Workers' Compensation

**Requested By:**    Marilyn J. Allen, 8588 Katy Freeway, Suite #100 Houston, Texas 77024. Telephone: 713-914-6200

**Sanctions Notice:**    Failure of any person to comply with a subpoena may result in sanctions under Section 415.021 of the Texas Labor Code. A subpoena may be enforced through the provisions of Section 2001.201 of the Texas Government Code.

This subpoena is issued under my official signature on,

*FrancaOkonkwo*

Administrative Law Judge
Texas Department of Insurance
Division of Workers' Compensation

**Proof of Service**

I acknowledge receipt of the above subpoena on _____ , and hereby state that the subpoena was executed by personal service of a true and correct copy on said witness, on _____ , at _____ .m.

_____
Signature of Process Server

TAB D

CARRIER'S OPPOSED MOTION TO SUBPOENA MEDICAL RECORDS -Page 7



RECD
10.31.24.
DGP

TEXAS DEPARTMENT OF INSURANCE
DIVISION OF WORKERS' COMPENSATION
HOUSTON EAST FIELD OFFICE
HOUSTON, TEXAS

| | | |
|---|---|---|
| **Lauren Smith** | § | |
| | § | |
| vs. | § | **DWC: 22343114-02-CC-HW** |
| | § | |
| **Fort Bend County** | § | |

### Order on Carrier's Motion to Compel Production of Medical Records from Dr. John Marcellus

The Division considered the Carrier's Motion to Compel the Production of Medical Records from Dr. John Marcellus, Release of Information pertaining to Claimant, Lauren Smith, deceased. Based on the facts stated in the motion, the Division finds good cause exists to approve the Motion to Compel.

*Ordered that Dr. John Marcellus, Release of Information produce the Medical Records approved on 9/19/2024 by Division Subpoena from January 1, 2020, through April 1, 2023, involving Lauren Smith, decedent.*

SIGNED this 30th day of October , 2024.

*Franca Okonkwo*
Administrative Law Judge

**Carrier's Motion to Compel - Page 4**

| TAB E |
|---|



**Division of Workers' Compensation**

PO Box 12050 | Austin, TX 78711 | 800-252-7031 | tdi.texas.gov/wc

October 30, 2024


24229142-01-CC


JOSHUA D. HEILIGER
5804 SPRING RIVER LANE
FULSHEAR  TX  77441


EMMA D. HEILIGER
5804 SPRING RIVER LANE
FULSHEAR  TX  77441-2053


RUSSELL L MORRIS
MCBRYDE FRANCO PLLC
11000 RICHMOND AVE STE 350
HOUSTON  TX  77042-6702


FORT BEND COUNTY
C/O DEAN G PAPPAS LAW FIRM LLC, BOX 29


MARILYN J. ALLEN
DEAN G PAPPAS LAW FIRM PLLC
8588 KATY FWY STE 100
HOUSTON  TX  77024-1813


FORT BEND COUNTY
301 JACKSON ST
RICHMOND  TX  77469-3108





# MEDICAL EXAMINER OFFICE
## FORT BEND COUNTY, TEXAS

STEPHEN PUSTILNIK, M.D.
CHIEF MEDICAL EXAMINER

## POST-MORTEM EXAMINATION REPORT

| | |
|---|---|
| **CASE NUMBER:** | 23-00852F |
| **NAME OF DECEASED:** | Lauren Brittane Smith |
| **AGE/RACE/GENDER:** | 40 White Female |
| **DATE OF DEATH:** | April 10, 2023 |
| **DATE/TIME OF AUTOPSY:** | April 11, 2023   09:15 hours |
| **PROSECTOR:** | Michele T. Stauffenberg, M.D., Deputy Medical Examiner |
| **REQUESTING AUTHORITY:** | Texas Code of Criminal Procedure, 49.25 |

### SUMMARY OF FINDINGS:

I.   Intraparenchymal/intraventricular brain hemorrhage involving left basal ganglia, left lateral ventricle, and third and fourth ventricles

II.  Hypertensive cardiovascular disease
   A. Cardiomegaly (520 grams)
   B. Left ventricular hypertrophy (1.6 cm)

III. Toxicology positive for amphetamine

IV.  Endometriosis

V.   Liver hemangioma

**CAUSE OF DEATH:**   Intraparenchymal brain hemorrhage (stroke)

**DUE TO:**   Hypertensive cardiovascular disease aggravated by recent amphetamine use

**MANNER OF DEATH:**   Accident

**OPINION:**   It is my opinion that Lauren Brittane Smith, a 40-year-old white female died as a result of a brain hemorrhage (stroke), a complication of hypertension (high blood pressure). Amphetamine, a stimulant drug was detected in blood. Since this drug can raise the blood pressure as one of its effects, the manner of death is classified as accident.

*Michele T. Stauffenberg, M.D.*

TAB F

Michele T. Stauffenberg, M.D.
Deputy Medical Examiner
Fort Bend County, Texas

MS/bb

## REASON FOR PERFORMING AN EXAMINATION

This 40-year-old white female was found dead on her couch. The circumstances were suspicious for a possible drug overdose.

## DATE AND TIME OF EXAMINATION

An autopsy was performed on the body of Lauren Smith on Tuesday, April 11, 2023, commencing at 0915 hours.

## PRESENTATION CLOTHING AND PERSONAL EFFECTS

The body is received in the supine position in a silver-gray plastic body bag. The body is clad in a black camouflage print tank top. A black bra covers the chest over the breasts. A pair of black stretch pants is on the legs with the waistband around the waist of the body. A pair of black panties is around the waist and hips. Three pairs of small hoop earrings are in the earlobes. A braided necklace composed of plastic fish line and a purple chain necklace with a white metal ring as a pendant encircle the neck. Two black ponytail elastics are around the hair and a brown hairpiece is attached to the hair. All items of clothing and personal belongings are released with the body.

## DIAGNOSTIC AND THERAPEUTIC DEVICES AND MARKINGS

A black bandage is on the posterior surface of the right hand covering a healing abrasion.

## POSTMORTEM IMAGING STUDIES

None.

## POSTMORTEM CHANGES

Rigor mortis breaks with moderate force. Fixed lividity is distributed on the right and posterior surfaces of the body. The corneas show film formation. The lips and mucous membranes are moist. The body is well preserved.

## FEATURES OF IDENTIFICATION

The body is unembalmed and that of an adult white female appearing consistent with the reported age of 40 years and measuring 63 inches in length and weighing 189 pounds. The body is well developed and well nourished. The head hair is dark brown with medium brown tips and measures up to 17 inches in length. The irides are brown. The teeth are natural and in an average state of

repair. Eyeliner is tattooed on the eyelids. Additional tattoos are on various body surfaces including the left lower abdomen, the left wrist, the lumbar back, and both feet.

## EVIDENCE OF ACUTE INJURY

None.

## EXTERNAL EXAMINATION

The head is normally formed and free of acute trauma. The face is darkly congested and otherwise unremarkable. There is no evidence of injury to the scalp, skin, or soft tissue of the face. The facial bones, calvarium, and mandible are free of palpable fracture. The conjunctivae are congested without distinct petechiae. The nose and mouth are normally formed and a moderate amount of foam emits from the nostrils. The lips, gums, teeth, tongue, and buccal mucosa are free of injury. The external meati, pinnae, and mastoid regions are unremarkable.

The neck is not crepitant or excessively mobile. There is no evidence of abrasion, contusion or other abnormality of the neck. The trachea is palpable in the midline. No cervical adenopathy, thyromegaly, or other masses are appreciated.

The chest is symmetrical and atraumatic. No rib fractures are apparent. The breasts are average size and free of palpable masses. The abdomen is slightly protuberant and free of palpable organomegaly. The spine appears straight externally and the back is free of injury.

The upper extremities are symmetrical and well developed. No fractures are evident by visual inspection or manipulation. The hands are normally formed and all fingers are present. The lower extremities are symmetrical and well developed. The feet and ankles are normally formed without significant edema.

The external genitalia, perineum, and anorectal areas are normally formed. The inguinal regions and buttocks are normal. No inguinal adenopathy is present. The pubic hair is shaved from the sides leaving a vertical stripe in the midline.

## INTERNAL EXAMINATION

**Chest and abdomen:** The skin of the chest and abdomen is reflected using the usual Y-shaped incision. The subcutaneous fat and musculature are free of injury. The sternum and chest plate are intact and upon their removal there is no abnormal fluid collection or blood in the chest or abdominal cavities. No unusual odors or color changes are noted. Examination of the organs in situ shows normal organ morphology and relationships. The viscera are unremarkable. The diaphragm is normal and shows no defects.

Upon removal of the organs using the Virchow technique the following findings are observed.

**Cardiovascular system:** The heart weighs 520 grams. The left ventricle shows hypertrophy with a wall thickness of 1.6 cm. The coronary arteries are normally distributed with mild atherosclerosis and are widely patent throughout their length. The epicardium, valve leaflets, chordae tendineae, and endocardium appear normally formed. The myocardium is red-tan throughout. No focal myocardial lesions are observed. The thoraco-abdominal aorta and its major branches are normally distributed.

**Respiratory system:** The trachea is grossly normal. The hilar structures are normal and free of injury. The major vessels are normally distributed and free of gross abnormalities. The lungs are normally formed and lobated. The right lung weighs 630 grams. The left lung weighs 450 grams. The pleural surfaces are smooth and glistening. The parenchyma is dark red and demonstrates moderate congestion and edema as evidenced by expression of blood and foamy fluid from the cut surfaces upon manual compression. No pneumonic changes are observed. There is no indication of thrombosis, embolism, infarction, or neoplasia.

**Gastrointestinal system:** The esophagus is lined by an unremarkable tan-gray mucosa. The lining of the stomach is normally rugated. The stomach contains approximately 200 grams of partially digested food. The small bowel, colon and rectum are palpably unremarkable. The appendix is not identified.

**Hepatobiliary system:** The liver weighs 1,790 grams. The capsule is smooth and glistening. The parenchyma is red-brown and essentially uniform. A 2 cm dark red mass consistent with a hemangioma is on the anterior surface of the liver just beneath the capsule. No other focal intrahepatic lesions are seen. The gallbladder contains approximately 15 mL of viscous green bile with no stones. The pancreas is normal size with the usual lobular architecture and is free of fibrosis, hemorrhage, and fat necrosis.

**Urogenital system:** The kidneys are symmetrical. The right kidney weighs 160 grams; the left kidney weighs 130 grams. The capsules strip with ease revealing smooth cortical surfaces. The cut surfaces are red-tan. The pyramids, calyces, pelves, and vessels are unremarkable. The ureters are of normal caliber. The urinary bladder contains clear yellow urine. The uterus, ovaries, and fallopian tubes are of normal configuration. The right ovary has a 2 cm dark red-brown mass on the posterior surface and an additional 2 cm mass with a similar appearance is on the right side of the pouch of Douglas.

**Reticuloendothelial system:** The spleen weighs 180 grams. The capsule is intact and of normal thickness. The cut surface is dark red. The red and white pulp are normally distributed. No focal lesions are seen. A small accessory spleen has a similar cut surface appearance. The nodes of the axillary, hilar, mediastinal, abdominal, and cervical areas are unremarkable. The thymus is involuted.

**Musculoskeletal system:** The axial skeleton is free of fractures. The skeletal muscles are symmetrical and grossly unremarkable.

**Endocrine system:** The thyroid gland is symmetrical and normal size. It is composed of homogeneous red-tan parenchyma without evidence of nodules, hemorrhage or cysts. The adrenal glands are of normal size and are free of hemorrhage and nodularity.

**Neck:** The skin of the neck is dissected up to the angle of the mandible. There is no evidence of trauma to the soft tissues, major airway, or vital structures in the neck. There is no airway mucosal edema. The hyoid bone and laryngeal cartilages are free of fractures. The epiglottis is not inflamed or swollen. No foreign objects are in the airway. The carotid vessels are pliable and patent. The anterior cervical spine and atlanto-occipital joint are stable to manipulation.

**Head:** The scalp is reflected with the standard intermastoidal incision. There is no indication of scalp trauma. The calvarium is intact. The dura is intact and free of discoloration and thickening. The base of the skull is examined after stripping the dura and is intact. The leptomeninges are thin and transparent. There is no evidence of epidural, subdural, or subarachnoid hemorrhage. The brain weight is 1,410 grams. The gyri and sulci are flattened and the brain has an overall swollen appearance. The circle of Willis is intact and free of atherosclerosis and aneurysm. The cerebellum and brainstem are normally formed. Upon sectioning the brain a large hemorrhage fills the left lateral ventricle and the third and fourth ventricles. The origin appears to be in the left basal ganglia.

## MICROSCOPIC DESCRIPTION:

Sections are examined of the brain and masses from the right ovary and pouch of Douglas on two hematoxylin- and eosin-stained glass slides with the following findings:

**Urogenital System:** Sections of the two masses from the right ovary and the pouch of Douglas show degenerated red blood cells associated with endometrial-type stroma with a few glands. The ovary and the pelvic soft tissue are unremarkable.

**Central Nervous System:** Sections of the brain show intraparenchymal hemorrhage confirming the gross impression.

## OTHER PROCEDURES

1. Peripheral blood is submitted to NMS Labs for toxicologic testing. Reported results are as follows: Amphetamine (210 ng/mL) and butalbital (1.2 ng/mL) are detected in postmortem blood. Fentanyl is not detected.
2. A dried blood spot card is retained in this facility.
3. Documentary and identification photographs are obtained.
4. Routine sections of right ovary and left basal ganglia are submitted for histologic studies.
5. Routine tissue sections retained in this facility for possible future studies if indicated.
6. The examined organs are returned to the body cavity.
7. Items of clothing and personal belongings are released with the body.



NMS Labs
200 Welsh Road, Horsham, PA 19044-2208
Phone: (215) 657-4900 Fax: (215) 657-2972
e-mail: nms@nmslabs.com
Robert A. Middleberg, PhD, F-ABFT, DABCC-TC, Laboratory Director

**CONFIDENTIAL**   M.S.

## Toxicology Report

**Report Issued**   04/29/2023 16:02

To:   **148565**
Fort Bend County Medical Examiner's Office
Attn: Medical Examiner
3840 Bamore Rd
Rosenberg, TX   77471

| | |
|---|---|
| **Patient Name** | SMITH, LAUREN |
| **Patient ID** | 23-00852F |
| **Chain** | 23139060 |
| **DOB** | Not Given |
| **Sex** | Not Given |
| **Workorder** | 23139060 |

**Page 1 of 3**

### Positive Findings:

| Analyte | Result | Units | Matrix Source |
|---|---|---|---|
| Amphetamine | 210 | ng/mL | 001 - Femoral Blood |
| Butalbital | 1.2 | mcg/mL | 001 - Femoral Blood |

See Detailed Findings section for additional information

### Testing Requested:

| Test | Test Name |
|---|---|
| 8051B | Postmortem, Basic, Blood (Forensic) |

### Specimens Received:

| ID | Tube/Container | Volume/ Mass | Collection Date/Time | Matrix Source | Labeled As |
|---|---|---|---|---|---|
| 001 | Gray Stopper Glass Tube | 9 mL | 04/11/2023 09:30 | Femoral Blood | 23-00852F |
| 002 | Gray Stopper Glass Tube | 7.75 mL | 04/11/2023 09:30 | Femoral Blood | 23-00852F |
| 003 | Red Stopper Glass Tube | 1.75 mL | 04/11/2023 09:30 | Vitreous Fluid | 23-00852F |
| 004 | Blue Cap Plastic Tube | 13 mL | Not Given | Urine | 23-00852F |

All sample volumes/weights are approximations.
Specimens received on 04/13/2023.

TAB G

NMS v.26.0

 
## Detailed Findings:

| Analysis and Comments | Result | Units | Rpt. Limit | Specimen Source | Analysis By |
|---|---|---|---|---|---|
| Amphetamine | 210 | ng/mL | 5.0 | 001 - Femoral Blood | LC-MS/MS |
| Butalbital | 1.2 | mcg/mL | 0.20 | 001 - Femoral Blood | GC/MS |

**Other than the above findings, examination of the specimen(s) submitted did not reveal any positive findings of toxicological significance by procedures outlined in the accompanying Analysis Summary.**

## Reference Comments:

1. Amphetamine - Femoral Blood:

   Amphetamine (Adderall, Dexedrine) is a central nervous system stimulant. Amphetamine is also a metabolite of methamphetamine, benzphetamine and selegiline. It is used therapeutically in the treatment of narcolepsy and obesity and also in the treatment of attention-deficit hyperactivity disorder (ADHD). Amphetamine has a high potential for abuse. At low doses, amphetamine causes mild stimulation, offset of fatigue, and increase in alertness. It also causes changes in attitude, judgment and impulsivity. At higher doses, amphetamine causes euphoria, excitation, agitation, hypervigilance, rapid speech, dilated pupils which react slowly to light and increased motor restlessness. Pulse and blood pressure may be elevated. Withdrawal from amphetamine following abuse can result in extreme fatigue and uncontrollable sleepiness, agitation, and depression. In the treatment of narcolepsy, amphetamine is administered in daily divided doses of 5 to 60 mg. In abuse doses of several grams may be used on a daily basis in 'runs' lasting a week or more.

   Following a single oral dose of 10 mg amphetamine sulfate, a reported peak blood concentration of 40 ng/mL was reached at 2 hr. Following a single 30 mg dose to adults, an average peak plasma level of 100 ng/mL was reported at 2.5 hr. A steady-state blood level of 2000-3000 ng/mL was reported in an addict who consumed approximately 1000 mg daily.

   Overdose with amphetamine can produce restlessness, hyperthermia, convulsions, hallucinations, respiratory and/or cardiac failure. Reported blood concentrations in amphetamine-related fatalities ranged from 500-41000 ng/mL (mean 9000 ng/mL).

2. Butalbital - Femoral Blood:

   Butalbital is a barbiturate derivative with an intermediate duration of action. Butalbital is often found in combination with other analytes, such as acetaminophen, codeine, or caffeine. Typically, these mixtures contain 50 mg of butalbital. It is used in the treatment of tension headache and migraine. Signs noted following its administration include drowsiness, sedation and ataxia. The reported mean peak blood concentration following a single 100 mg dose of butalbital was 2.1 mcg/mL (range 1.7-2.6 mcg/mL) at 2 hours with a decline to 1.5 mcg/mL (range 1.3-1.7 mcg/mL) by 24 hours. Major adverse effects associated with butalbital derive from its CNS-depressant activity including sedation, drowsiness, lethargy, respiratory depression and coma. In a population of 125 drivers arrested for driving under the influence, Butalbital concentrations ranged from 0.25-29.6 mcg/mL, with a mean of 7.48 mcg/mL. Two reported butalbital-related deaths had blood concentrations of 13 and 26 mcg/mL.

Unless alternate arrangements are made by you, the remainder of the submitted specimens will be discarded one (1) year from the date of this report; and generated data will be discarded five (5) years from the date the analyses were performed.

Workorder 23139060 was electronically signed on 04/29/2023 15:09 by:

*Jolene J. Bierly*

Jolene J. Bierly, M.S.F.S., D-ABFT-FT
Forensic Toxicologist

NMS v.26.0


## Analysis Summary and Reporting Limits:

All of the following tests were performed for this case. For each test, the compounds listed were included in the scope. The Reporting Limit listed for each compound represents the lowest concentration of the compound that will be reported as being positive. If the compound is listed as None Detected, it is not present above the Reporting Limit. Please refer to the Positive Findings section of the report for those compounds that were identified as being present.

### Test 50010B - Amphetamines Confirmation, Blood - Femoral Blood

-Analysis by High Performance Liquid Chromatography/ Tandem Mass Spectrometry (LC-MS/MS) for:

| Analyte | Rpt. Limit | Analyte | Rpt. Limit |
|---------|-----------|---------|-----------|
| Amphetamine | 5.0 ng/mL | MDMA | 5.0 ng/mL |
| MDA | 5.0 ng/mL | Methamphetamine | 5.0 ng/mL |
| MDEA | 5.0 ng/mL | | |

### Test 50011B - Barbiturates Confirmation, Blood - Femoral Blood

-Analysis by Gas Chromatography/Mass Spectrometry (GC/MS) for:

| Analyte | Rpt. Limit | Analyte | Rpt. Limit |
|---------|-----------|---------|-----------|
| Butalbital | 0.20 mcg/mL | Phenobarbital | 0.50 mcg/mL |
| Pentobarbital | 0.20 mcg/mL | Secobarbital | 0.20 mcg/mL |

### Test 8051B - Postmortem, Basic, Blood (Forensic) - Femoral Blood

-Analysis by Enzyme-Linked Immunosorbent Assay (ELISA) for:

| Analyte | Rpt. Limit | Analyte | Rpt. Limit |
|---------|-----------|---------|-----------|
| Amphetamines | 20 ng/mL | Fentanyl / Acetyl Fentanyl | 1.0 ng/mL |
| Barbiturates | 0.040 mcg/mL | Methadone / Metabolite | 25 ng/mL |
| Benzodiazepines | 100 ng/mL | Methamphetamine / MDMA | 20 ng/mL |
| Buprenorphine / Metabolite | 0.50 ng/mL | Opiates | 20 ng/mL |
| Cannabinoids | 10 ng/mL | Oxycodone / Oxymorphone | 10 ng/mL |
| Cocaine / Metabolites | 20 ng/mL | Phencyclidine | 10 ng/mL |

-Analysis by Headspace Gas Chromatography (GC) for:

| Analyte | Rpt. Limit | Analyte | Rpt. Limit |
|---------|-----------|---------|-----------|
| Acetone | 5.0 mg/dL | Isopropanol | 5.0 mg/dL |
| Ethanol | 10 mg/dL | Methanol | 10 mg/dL |




# MEDICAL EXAMINER OFFICE
## Fort Bend County, Texas

STEPHEN PUSTILNIK, M.D.
CHIEF MEDICAL EXAMINER

### MEMORANDUM

**From:**  Stephen Pustilnik, M.D., Chief Medical Examiner
Fort Bend County Medical Examiner Office

**To:**  Attorney Russel Morris
McBryde Franco, PLLC
11000 Richmond, Suite 350
Houston, TX  77042

Re: Lauren Smith, ME case # 23-00852F

Attorney Morris,

I have reviewed the Medical Examiner case file of Ms. Smith.  I have also reviewed the submissions you send on your November 2, 2023 email.  Ms. Smith's death was not related to her prior COVID-19 infection.  She suffered a stroke centered in the lenticulostriate vessels of the brain which is the classic place for hypertensive strokes to originate.  She was well past her COVID-19 infection at the time of her death.  She was hypertensive.  Apparently, her adherence to her antihypertensive regimen may have also been less than ideal.  Also, amphetamines increase intracranial hypertension and make hemorrhagic strokes more likely despite the dose or duration of consumption/therapy.  Consequently, I cannot contribute any part of the circumstances or cause of her death to her prior COVID-19 infection.

Cc: Kenneth Cannata, Fort Bend County Attorney Office

TAB H



# STATE OF TEXAS
## CERTIFICATION OF VITAL RECORD

# DEPARTMENT OF STATE HEALTH SERVICES
## VITAL STATISTICS

TEXAS DEPARTMENT OF STATE HEALTH SERVICES - VITAL STATISTICS
Apr 19 2023

**STATE OF TEXAS** — **CERTIFICATE OF DEATH** — STATE FILE NUMBER **142-23-064920**

DATE OF DEATH: APRIL 10, 2023

NAME: LAUREN BRITTANE SMITH

SEX: FEMALE — DATE OF BIRTH: OCTOBER 18, 1982 — AGE: 40

BIRTHPLACE: SHORT HILLS, NJ

SOCIAL SECURITY NUMBER: 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

RESIDENCE STREET ADDRESS: 5807 SPRING RIVER LANE

SURVIVING SPOUSE: JOSHUA DAVID HEILIGER

CITY OR TOWN: FULSHEAR

FATHER: MICHAEL J SMITH

MOTHER: BARBARA GRAHAM

PLACE OF DEATH / COUNTY OF DEATH: FORT BEND — FULSHEAR 77441

INFORMANT'S NAME & RELATIONSHIP TO DECEASED: JOSHUA HEILIGER - HUSBAND

MAILING ADDRESS: 5807 SPRING RIVER LANE, FULSHEAR, TX 77441

METHOD OF DISPOSITION: Cremation

EMBALMER / FUNERAL DIRECTOR: CYNDI HOOTS, BY ELECTRONIC SIGNATURE - 11Z691

NAME OF FUNERAL FACILITY: SCHMIDT FUNERAL HOME - KATY/BROOKSHIRE FAMILY

CERTIFIER: MICHELE STAUFFENBERG, BY ELECTRONIC SIGNATURE

DATE CERTIFIED: APRIL 12, 2023 — LICENSE NUMBER: K4806 — TIME OF DEATH: 11:56 PM — TITLE: M.D.

PRINTED NAME & ADDRESS OF CERTIFIER: MICHELE STAUFFENBERG  3340 RAMORE ROAD, ROSENBERG, TX 77471

IMMEDIATE CAUSE: PENDING

REGISTRAR FILE NO: 01001105

DATE RECEIVED BY LOCAL REGISTRAR: APRIL 19, 2023

---

## AMENDMENT TO MEDICAL CERTIFICATION OF CERTIFICATE OF DEATH

**STATE OF TEXAS** — STATE FILE NUMBER **142-23-064920**

NAME OF DECEASED: LAUREN BRITTANE SMITH

DATE OF DEATH: APRIL 10, 2023

PLACE OF DEATH (City or Town and County): FULSHEAR FORT BEND

IS THE DATE OF DEATH BEING CORRECTED? No

CERTIFIER: Medical Examiner/Justice of the Peace - On the basis of examination, and/or investigation, in my opinion, death occurred at the time, date and place, and due to the cause(s) and manner stated.

SIGNATURE OF CERTIFIER: MICHELE STAUFFENBERG ...BY ELECTRONIC SIGNATURE

DATE CERTIFIED: JUNE 13, 2023 — LICENSE NUMBER: K4806 — TIME OF DEATH: 11:56 PM — TITLE: M.D.

PRINTED NAME & ADDRESS OF CERTIFIER: MICHELE STAUFFENBERG  3340 RAMORE ROAD, ROSENBERG, TX 77471

IMMEDIATE CAUSE: INTRAPARENCHYMAL BRAIN HEMORRHAGE (STROKE) — Approximate interval: UNKNOWN

WAS AN AUTOPSY PERFORMED? Yes

WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH? Yes

MANNER OF DEATH: Accident

DID TOBACCO USE CONTRIBUTE: Unknown

IF FEMALE: Not pregnant within past year

DATE OF INJURY: JANUARY 1, 2023 — TIME OF INJURY: 11:56 PM — INJURY AT WORK? No — PLACE OF INJURY: DECEDENT'S HOME

COUNTY OF INJURY: FORT BEND

DESCRIBE HOW INJURY OCCURRED: USED AMPHETAMINE

REGISTRAR FILE NO: 01001105 — DATE FILED: JUNE 13, 2023

---

## AMENDMENT TO MEDICAL CERTIFICATION OF CERTIFICATE OF DEATH

**STATE OF TEXAS** — STATE FILE NUMBER **142-23-064920**

NAME OF DECEASED: LAUREN BRITTANE SMITH

DATE OF DEATH: APRIL 10, 2023

PLACE OF DEATH (City or Town and County): FULSHEAR FORT BEND

IS THE DATE OF DEATH BEING CORRECTED? No

CERTIFIER: Medical Examiner/Justice of the Peace - On the basis of examination, and/or investigation, in my opinion, death occurred at the time, date and place, and due to the cause(s) and manner stated.

SIGNATURE OF CERTIFIER: MICHELE STAUFFENBERG ...BY ELECTRONIC SIGNATURE

DATE CERTIFIED: JUNE 22, 2023 — LICENSE NUMBER: K4806 — TIME OF DEATH: 11:56 PM — TITLE: M.D.

PRINTED NAME & ADDRESS OF CERTIFIER: MICHELE STAUFFENBERG  3340 RAMORE ROAD, ROSENBERG, TX 77471

IMMEDIATE CAUSE: INTRAPARENCHYMAL BRAIN HEMORRHAGE (STROKE) — Approximate interval: UNKNOWN

WAS AN AUTOPSY PERFORMED? Yes

WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH? Yes

MANNER OF DEATH: Accident

DID TOBACCO USE CONTRIBUTE: Unknown

IF FEMALE: Not pregnant within past year

DATE OF INJURY: APRIL 10, 2023 — TIME OF INJURY: 11:56 PM — INJURY AT WORK? No — PLACE OF INJURY: DECEDENT'S HOME

COUNTY OF INJURY: FORT BEND

DESCRIBE HOW INJURY OCCURRED: USED AMPHETAMINE

REGISTRAR FILE NO: 01001105 — DATE FILED: JUNE 22, 2023

---

TAB I

Jee

This is a true and correct copy of the record as registered in the State of Texas. Issued under the authority of Section 191.051, Health and Safety Code.

ISSUED **JUN 26 2023**

TARA DAS
STATE REGISTRAR

WARNING: THIS DOCUMENT HAS A DARK BLUE BORDER AND A COLORED BACKGROUND

THE STATE OF TEXAS

DEPARTMENT OF STATE HEALTH SERVICES · VITAL STATISTICS

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE





## Notice of Denial of Compensability/Liability and Refusal to Pay Benefits

Date: May 13, 2024

To: Lauren Smith
5804 Spring River Ln
Fulshear, TX. 77441

Re: Date of injury: 4/10/2023
Nature of injury: Death
Notice of injury date: 4/12/2024
Part of body injured: intraventricular brain hemorrhage
Employee SSN: ███████
DWC claim #: 24229142-HE
Carrier name/TPA name: Fort Bend County/Davies
Carrier claim #: 6000068
Employer name: Fort Bend County
Employer address, city, state, zip: 3001 Jackson St. Richmond, TX 77469

## We, Fort Bend County, self-insured, reviewed your workers' compensation claim. Based on the facts we have about your claim, we are not going to pay income or medical benefits.

### We denied your claim because:

Davies as TPA for Fort Bend County, self-insured, disputes the injured worker, deceased sustained an injury on 4/10/2023 that resulted in her death that happened while the employee was doing activities related to the business of the employer and while furthering the interests of the employer. Further, pursuant to the autopsy report and Dr. Suzanne Novak's peer report, the injured workers' death was caused by intraparenchymal brain hemorrhage (stroke) due to pre-existing chronic hypertensive cardiovascular disease aggravated by recent amphetamine use and unrelated to the Covid 19 infection of 8/28/2022.

Employee, deceased, or a person acting on the employee's behalf failed to timely notify the employer of an injury on 4/10/23 occurring in the course of scope of employment no later than 30 days after the day the injury occurred, therefore the carrier is relieved of liability. Employee, deceased, or a person acting on the employee's behalf has failed to identify the date of injury.

PLN-1 Rev. 07/21 page 1

www.tdi.texas.gov

**eReceived DWC - 05/16/2024**

TAB J

Employee, deceased, or a person acting on the employee's behalf failed to timely file a written claim for compensation with the Division within one year of the injury therefore the carrier is relieved of liability.

The carrier is not liable for death or burial benefits because the employee's death was not the result of a compensable injury sustained on 4/10/23 or any other date but resulted from preexisting chronic conditions unrelated to any work activities.

A presumption under Chapter 607 of the of the Gov't Code and Section 607.056 does not apply because deceased employee was a user of tobacco or the deceased's spouse, has during the marriage been a user of tobacco consumed through smoking. Further, a presumption does not apply because the employee's acute stroke occurred at home and did not occur while the employee was engaged in a situation that involved nonroutine stressful or strenuous physical activity involving fire suppression, rescue, hazardous material response, EMS services or other emergency response activity.

A toxicology report issued on 4/29/23 revealed a positive drug finding of amphetamines and butalbital and the circumstances of employee's death are suspicious for a possible drug intoxication or overdose.

**Contact me if you: (1) have questions, (2) need to give more facts about this claim, or (3) disagree with this decision.**

> Adjuster's name: <u>Mira Johnson</u>
>
> Phone (toll-free): <u>(800) 663-4981, ext. 3221</u>
>
> Fax / email: <u>(512) 600-4494, Mira.Johnson@us.davies-group.com</u>
>
> If you would like to get letters by fax or email, send your fax number or email address to me.



If we are not able to resolve an issue after you contact me:

Call the Texas Department of Insurance, Division of Workers' Compensation at 1-800-252-7031, Monday to Friday, 8 a.m. to 5 p.m. Central time.

You have the right to ask for a benefit review conference. If you ask for a conference, you will meet with: (1) someone from Fort Bend County, and (2) a benefit review officer with the Texas Department of Insurance, Division of Workers' Compensation. To ask for a conference, fill out a

**eReceived DWC - 05/16/2024**

"Request to Schedule, Reschedule, or Cancel a Benefit Review Conference" form (DWC045) - www.tdi.texas.gov/forms/dwc/dwc045brc.pdf.

If you don't have an attorney, the Office of Injured Employee Counsel can help you prepare for the conference. To learn more, go to www.OIEC.texas.gov or call 1-866-393-6432, ext. 44186, Monday to Friday, 8 a.m. to 5 p.m. Central time.

**Making a false workers' compensation claim is a crime that may result in fines or prison.**

A copy of this notice was sent to: Fort Bend County

Russell L. Morris
McBryde Francon PLLC
11000 Richmond Ave. Suite 350
Houston, TX. 77042





**Notice of Denial of Compensability/Liability and Refusal to Pay Benefits**

Date: April 26, 2024

To: Lauren Smith
5804 Spring River Ln
Fulshear, TX. 77441

Re: Date of injury: 4/10/2023
Nature of injury: Death
Notice of injury date: 4/12/2024
Part of body injured: intraventricular brain hemorrhage
Employee SSN: 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
DWC claim #: 24229142-HE
Carrier name/TPA name: Fort Bend County/Davies
Carrier claim #: 6000068
Employer name: Fort Bend County
Employer address, city, state, zip: 3001 Jackson St. Richmond, TX 77469

**We, Fort Bend County, self-insured, reviewed your workers' compensation claim. Based on the facts we have about your claim, we are not going to pay income or medical benefits.**

**We denied your claim because:**

Self-insured disputes the injured worker, deceased sustained an injury on 4/10/2023 that resulted in her death that happened while the employee was doing activities related to the business of the employer and while furthering the interests of the employer. Further, pursuant to the autopsy report and Dr. Suzanne Novak's peer report, the injured workers' death was caused by intraparenchymal brain hemorrhage (stroke) due to pre-existing chronic hypertensive cardiovascular disease aggravated by recent amphetamine use and unrelated to the Covid 19 infection of 8/28/2022.

**Contact me if you: (1) have questions, (2) need to give more facts about this claim, or (3) disagree with this decision.**

Adjuster's name:   Mira Johnson

Phone (toll-free):   (800) 663-4981, ext. 3221

Fax / email:   (512) 600-4494, Mira.Johnson@us.davies-group.com

TAB K

If you would like to get letters by fax or email, send your fax number or email address to me.



If we are not able to resolve an issue after you contact me:

Call the Texas Department of Insurance, Division of Workers' Compensation at 1-800-252-7031, Monday to Friday, 8 a.m. to 5 p.m. Central time.

You have the right to ask for a benefit review conference. If you ask for a conference, you will meet with: (1) someone from Fort Bend County, and (2) a benefit review officer with the Texas Department of Insurance, Division of Workers' Compensation. To ask for a conference, fill out a "Request to Schedule, Reschedule, or Cancel a Benefit Review Conference" form (DWC045) - www.tdi.texas.gov/forms/dwc/dwc045brc.pdf.

If you don't have an attorney, the Office of Injured Employee Counsel can help you prepare for the conference. To learn more, go to www.OIEC.texas.gov or call 1-866-393-6432, ext. 44186, Monday to Friday, 8 a.m. to 5 p.m. Central time.

**Making a false workers' compensation claim is a crime that may result in fines or prison.**

A copy of this notice was sent to: Fort Bend County

Russell L. Morris
 McBryde Francon PLLC
11000 Richmond Ave. Suite 350
Houston, TX. 77042



**Davies**

The
**Littleton Group**
a Davies Group

Insurance Claims Services
P.O. Box 163627
Austin, Texas 78716-3627

AUSTIN TX 786

29 APR 2024 PM



UNITED STATES POSTAGE
PITNEY BOWES
02 1P   $ 000.64⁰
0002775286   APR 29 2024
MAILED FROM ZIP CODE 78746

Russell L. Morris
McBryde Francon PLLC
11000 Richmond Ave., Suite 350
Houston, TX 77042

77042-670275



| | |
|---|---|
| **Injured Employee:** | LAUREN SMITH |
| **DWC Claim/Docket #:** | 24229142-01-CC-HE |
| **Date of Injury:** | April 10, 2023 |
| **Employer:** | FORT BEND COUNTY |
| **Insurance Carrier:** | FORT BEND COUNTY |
| **Insurance Carrier Claim #:** | 6000068 |
| **Date:** | August 8, 2024 |

RUSSELL L. MORRIS
MCBRYDE FRANCO PLLC
11000 RICHMOND AVE STE 350
HOUSTON, TX 77042-6702

## Your claim is set for a contested case hearing.

**You must go to the hearing on September 26, 2024, at 10:30 a.m., Central time.**

| | |
|---|---|
| **Your hearing will be held at:** | **Place: Division of Workers' Compensation (DWC)**<br><br>5425 POLK, SUITE 130<br>ELIAS RAMIREZ BUILDING<br>HOUSTON, TX 77023-1454 |

## What will happen?

During the hearing, an administrative law judge (ALJ) from the Texas Department of Insurance, Division of Workers' Compensation (DWC) will listen as parties offer evidence about issues that were not resolved during the benefit review conference. Witnesses will answer questions under oath and each party will explain its side of the case. After the hearing, the ALJ will review the evidence and make a decision.

A list of the issues to be considered is attached to this letter.

## What if you can't go?

As soon as possible, request a new date and time for the hearing. You must give a good reason (showing "good cause") if you are not able to go. The ALJ will make a decision about your request.

If you do not go to the hearing and don't have a good reason, you may lose your right to explain your side of the case and give evidence about your claim.

| |
|---|
| TAB L |

## How to get ready:

1. Get your important information together and identify your witnesses. Go to www.tdi.texas.gov/wc/idr/exchange.html to learn about what information is needed for a hearing.

2. Share your information and list of witnesses. This is called an exchange. Learn more about the exchange rules in 28 Texas Administrative Code Chapter 142.

3. Get your hearing exhibits ready.
   - Organize the information you want the ALJ to see into exhibits.
   - Mark the exhibits and number the pages. To learn more, see *Preparing for Proceedings* found at www.tdi.texas.gov/wc/idr/documents/cchproced.pdf

4. You should send your exhibits to DWC and the other parties at least three days before your hearing.

## How to exchange your information with DWC and the other parties:

You are responsible for sending your information securely. What you send to DWC must also be sent to the other parties.

## Hearing exhibits may be sent to DWC by:

- **Email:** CCH_exhibits@tdi.texas.gov (Use an underscore between CCH and exhibits.)

- **Fax:** 512-804-4011
  - o Break your documents into separate sections of less than 40 pages each.
  - o Fax each section separately with a cover page.
  - o Each cover page should include:
    - the DWC claim number; and
    - the number of each section. For example, Section 1 of 3, Section 2 of 3, and so on.

- **Mail:** Texas Department of Insurance, Division of Workers' Compensation
  Hearings, Mail Code HRG
  PO Box 12050
  Austin, TX 78711-2050

- **Secure File Transfer Protocol (SFTP):** An SFTP account is a secure, electronic way to upload your documents.
  - o If you want an SFTP account, contact DWC at eFiling-Help@tdi.texas.gov
  - o To learn more, go to www.tdi.texas.gov/wc/carrier/efileoptions.html

## Need help?

- Go to www.tdi.texas.gov/wc/employee/dispute.html to learn more about dispute resolution.
- If you want an attorney and need help finding one, call the **State Bar of Texas** at 1-800-252-9690.
- If you do not have an attorney and want help from an ombudsman, go to www.oiec.texas.gov or call the **Office of Injured Employee Counsel** at 1-866-393-6432, ext. 44186.

## Questions?

Call 1-800-252-7031, Monday through Friday, 8 a.m. to 5 p.m., Central time.

Go to www.tdi.texas.gov/wc to learn more about workers' compensation.

**The *Benefit Review Conference Report* is included with this letter.**

**A copy of this letter was sent to:**

JOSHUA D. HEILIGER
5804 SPRING RIVER LANE
FULSHEAR, TX 77441

EMMA D. HEILIGER
5804 SPRING RIVER LANE
FULSHEAR, TX 77441

FORT BEND COUNTY
301 JACKSON ST
RICHMOND, TX 77469-3108

MARILYN J. ALLEN
DEAN G PAPPAS LAW FIRM PLLC
8588 KATY FWY STE 100
HOUSTON, TX 77024-1813

LAUREN SMITH
5804 SPRING RIVER LN
FULSHEAR, TX 77441-2053

FORT BEND COUNTY
C/O DEAN G PAPPAS LAW FIRM LLC
BOX 29

# Benefit Review Conference (BRC) Report

| | |
|---:|:---|
| Claim No.: | 24229142 |
| Docket No.: | 24229142-01 |
| Carrier No.: | 6000068 |
| Date of Injury: | April 10, 2023 |
| Date of BRC: | July 31, 2024 |
| Claimant: | Lauren Smith, (deceased) |
| Beneficiary 1/ Assisted or Rep. by: | Joshua Heiliger, spouse/ Russell Morris, Attorney |
| Beneficiary 2/Assisted or Rep. by: | Emma Heiliger, Adult child / Russell Morris, Attorney |
| Employer/Assisted or Rep. by: | Fort Bend County/ Dana Elison, Risk Management Manager |
| Carrier/Assisted or Rep. by: | Fort Bend County/ Marilyn Allen, Attorney |

```
┌─────────────────────────┐
│        TDI/DWC          │
│       Received          │
│                         │
│    August 02, 2024      │
│                         │
│     Chief Clerk of      │
│      Proceedings        │
└─────────────────────────┘
```

**The parties were notified that the contested case hearing will be scheduled in Houston TX, on September 26, 2024 , at 10:30 a.m., with an administrative law judge.**

Learn more about requesting a contested case hearing (hearing) or arbitration, the differences between the two proceedings, and the right to appeal the hearing decision or arbitration award:
- Contested case hearings: www.tdi.texas.gov/wc/idr/cch.html
- Arbitration: www.tdi.texas.gov/wc/idr/arbitration.html

**Issues Resolved at the BRC:**

| Disputed Issue | Resolution |
|---|---|
| | |

**Dispute Resolution Disposition:**

[ ] A scheduling order documenting needed information or actions was issued on *.

[ ] Party(s) failed or refused to comply with the scheduling order; therefore, the second BRC was not conducted and a contested case hearing was scheduled.

[ ] Agreement signed at the BRC, if any (see attached Form DWC024).

[ ] Interlocutory Order issued (see attached Form H-B03 or H-B03M).

[ ] Special Accommodations:

[ ] Other:

```
┌──────────────┐
│    TAB M     │
└──────────────┘
```

**Four (4) Issues Unresolved after the BRC:**

| Disputed Issue |
|---|
| Was the employee's death a result of the compensable injury sustained on April 10, 2023? |
| **Beneficiary 1's Position**: His wife, who worked as a first responder, died as a result of her employment. Even though she died at home, she had worked a 48-hours continuous shift when she collapsed at home and died from a brain hemorrhage. He has furnished multiple reports from several medical experts who addressed causation and explained why they disagree with the opinion of the medical examiner on the death certificate. There is Dr. Abid Iqbal, a pulmonologist, Dr. John Marcellus, a psychiatrist, her primary care physician, Dr. Zachry Smith, and Dr. Sundarami, a neurologist. Lastly, his wife legally used Adderall and had done so for about 20 years before her death. |
| **Beneficiary 2's Position**: She agrees with everything stated above in her father's position. |
| **Carrier's Position:** The deceased employee passed away at home due to brain hemorrhage and stroke stemming from hypertensive cardiovascular disease aggravated by recent amphetamine use. The beneficiaries have not been able to establish a nexus between her job and the stroke that caused her death. The self-insured's position is based on the opinion of the reports from Dr. Susan Novak. Dr. Novak is multiple specialist doctor in emergency medicine, anaesthesiology, pain management, epidemiology, and she is also a pharmacist. |

| Disputed Issue |
|---|
| Are Joshua Heiliger and Emma Heiliger proper legal beneficiaries of Lauren Smith, deceased, entitling them to death benefits? |
| **Beneficiary 1's Position**: He was the spouse of the deceased. They were legally married and he has provided supporting documentation to the self-insured. |
| **Beneficiary 2's Position**: She was legally adopted by the deceased, and is a full-time college student. Supporting documentation have been provided to the self-insured. |
| **Carrier's Position:** The self-insured has no position at this time. It is reviewing documentation recently furnished by the potential beneficiaries to make a determination. |

| Disputed Issue |
|---|
| Is the carrier relieved from liability under TEX. LABOR CODE §409.002 because of the claimant's failure to timely notify her employer pursuant to §409.001? |
| **Beneficiary 1's Position:** First, this section of the Texas Labor Code does not apply to the beneficiaries. However, if it does, the time tolled because the employer did not notify the Division within eight days of her death. Furthermore, there are other facts that were discussed at the Benefit Review Conference that parties might need to testify to at the contested case hearing. |
| **Beneficiary 2's Position:** This section of the Texas Labor Code does not apply to the beneficiaries. |
| **Carrier's Position:** The representatives for the deceased failed to notify the employer that her death was related to the employment. The self-insured received notice from the Division on April 11, 2024, and they do not have good cause for the late filing |

| Disputed Issue |
|---|
| Is the carrier relieved from liability for death benefits to Joshua Heiliger and Emma Heiliger under TEXAS LABOR CODE §409.007(b) because of their failure to file a claim for death benefits with the Division pursuant to §409.007? |
| **Beneficiary 1's Position:**  He timely filed his claim for death benefits on April 2, 2024. |
| **Beneficiary 2's Position**: Her claim for death benefits was timely filed on April 2, 2024. |
| **Carrier's Position:** The self -insured should be relieved from liability for death benefits to Joshua Heiliger and Emma Heiliger under TEXAS LABOR CODE §409.007(b) because of their failure to file a claim for death benefits pursuant to §409.007. |

Signed August 2,  2024

*Sotomi...*

Abimbola (Abby) Sotomi,
**Benefit Review Officer**

**TDI** **Division of Workers Compensation**

PO Box 12050 | Austin, TX 78711-2050 | 800-252-7031 | tdi.texas.gov/wc

**RETURN SERVICE REQUESTED**

OFFICIAL BUSINESS
STATE OF TEXAS
PENALTY FOR
PRIVATE USE



quadient
FIRST-CLASS MAIL
AUTO - IMI
$000.59³
08/08/2024   ZIP 78701
043M32206395
US POSTAGE

**McBryde Franco**

AUG 1 2 2024

**RECEIVED**

018   GIF—AAB 77042



Regarding: Lauren Smith

DOD: 4/10/2023

My name is Easwar Sundaram Jr. MD and I am a board-certified neurologist practicing in the state at Texas and president of Texas Institute for Neurological Disorders.
I was asked to do an independent neurological evaluation regarding the circumstances of the death of Ms. Lauren Smith. The date of her death was April 10, 2023.

Her latest medications from her family doctor's records indicate that she was on clonidine 0.1 mg orally twice a day for blood pressure, Adderall 30 mg every day at 3 PM and Vynase 70 mg once in the morning for ADHD, Zomig and Zofran for nausea which is commonly given for migraines on a as needed basis, verapamil 240 mg twice a day for hypertension, sucralfate 1 g 4 times a day and esomeprazole 40 mg daily for reflux esophagitis, butalbital as needed for headaches. She was also on several other medications, notably albuterol as needed for her asthma and she has used prednisone as needed again for the same reason. She was also on several as needed medications but not taking them on a regular basis. She might have been taking iron, but it is not clear if she was complaint with that medication.

I have reviewed extensive records from multiple sources including her primary care doctor, her psychiatrist and reports from the medical examiner and independent evaluations about the patient's death. I have reviewed numerous photographs as well as videos related to this patient's demise on April 10, 2023. There were numerous photographs presented which related to the patient after the death as well as postmortem findings including brain slices. I was able to review videos which showed the patient's home prior to and after her demise.

The patient has a history of ADHD for many years and was on stable doses of Adderall and Vynase for many years with no complications or side effects. Likewise, from extensive notes from her family doctor, it appears she was doing well with her hypertension. For e.g., her routine exam on 2/14/2022 shows a documented BP of 138/84. On 8/15/2022 her BP was noted to be 140/88. These are not considered perfect BP readings, but certainly nothing to suggest impending intracerebral bleed while she was on ADHD medications.

The patient had Covid -19 pneumonia and was admitted to Houston Methodist Hospital on 9/2/2022. I have reviewed extensive records from that hospital admission. Her BP at that time was elevated at 135/113 but that was in the setting of acute Covid pneumonia. She was tachycardic and tachypneic with chest X-ray showing signs of Covid-19 pneumonia. Her chest CT scan showed normal cardiac size. She got better with her BP subsequently and further notes from that hospitalization showed her BP decreasing with treatment of her pneumonia. She was treated with steroids and breathing treatments. She did have elevated lactic acid which usually signifies sepsis as well as elevated WBC which indicates a bacterial infection as well. She was anemic, which is chronic. She also received blood transfusion after it was noted that she had decreased iron and

TAB N



ferritin. She received Remdesivir and oxygen and on 9/7/2022 her oxygen saturation was improved and anemia was better. Her verapamil was increased to 360mg a day to help with higher BP noticed during the hospital stay.

On 11/15/2022 she was seen in post hospital follow up by her pulmonologist when her BP was normal at 133/87 and her only symptoms were shortness of breath thought to be Asthma related worsened by post Covid. She was given Proair HFA and Trelegy Ellipta and prn ipratropium and albuterol inhalers. This same pulmonologist saw her again on 2/2/2023 about 2 months before her death and noted that her BP was elevated at 142/100 and her lungs were much better and her shortness of breath had resolved.

Since then, she had contacted her PCP on 2/3/2023 and 2/28/2023 for refills of her butalbital which is given for headaches. The last medical note was a telephone encounter with her family PCP dated 3/21/2023 about 20 days before her death and she had requested refills for her butalbital for headaches and promethazine for nausea. She had gone back to work since early February 2023 and the assumption is that her headaches were worse since then leading her to take more pain medications. The assumption is also that her BP must have gotten worse leading to the increased headaches. This is the logical assumption.

Now looking at the video of her home prior to her death and after her death, it appears that she was not feeling well and was in distress and to my reading it appears she was having worsening headaches. She had apparently just finished a 48-hour shift at work. I then saw the video of her deceased and it appeared that she had collapsed in her sofa where she was sitting. That video and photos clearly show that what she had was a catastrophic event with no warning. This is classical for a sudden intracerebral hemorrhage and especially a hypertensive intracerebral hemorrhage.

I reviewed the autopsy report from Dr. Michele Stauffenberg MD who clearly states that there was a catastrophic Left basal ganglia bleed with extension into the left lateral ventricle and then into the 3rd and 4th ventricle. This would have undoubtedly caused severe increase in intracerebral pressure leading to brain herniation and death. She probably was in coma prior to expiring. Interestingly the cardiac exam showed cardiomegaly and left ventricular hypertrophy suggesting hypertensive cardiomyopathy. I need to note that her Chest CT from September of 2022 did not show any cardiac abnormality, leading one to believe that the worsening cardiac status and heart enlargement had happened more recently prior to her death. There is a clarifying letter from Stephen Pustilnik MD, Chief Medical Examiner form Fort Bend County, Texas who stated correctly that there was no evidence to suggest that Covid-19 had anything to do with her death but agreed that less than optimal hypertension control was the cause of her death. What he did not mention is the fact that Dr. Michele Stauffenberg MD had incorrectly linked her death to years of stable use of stimulants for ADHD with her hypertensive intracerebral hemorrhage and called it accidental. She should have been classified as natural death due to hypertension.



In reviewing her work schedule, it appears that she was working 48 hours continuously and may be off for about 96 hours. Paramedic work is a high stress job which requires constant vigilance and being awake for extended periods of time working in an incredibly stressful environment and administering lifesaving treatment in challenging circumstances. There is no doubt that such work has to be a definite cause for her hypertension spike which caused the hypertensive bleed. Such a bleed does not always happen at the time of work but can happen several hours after the person finishes the stressful work. It has been well-documented in literature that stressful situation whether it be physical or mental causes spike in adrenaline which then leads to hypertensive crisis prior to hypertensive bleed.

I am concerned that when she went back to work with history of hypertension and recent Covid infection, asthma with chronic anemia and need for blood transfusion, she was not checked for competency to work in a such stressful and compromising environment. Certainly, with her increasing use of headache medications this would have been a tell-tale sign. I would like to see if her work supervisors had required a work release to go back to work with specific questions about her ability to be in a constant 48-hour shift.

Dr. Suzanne Novak, an anesthesiologist and not a neurologist, had given an opinion on this patient's death and wrongfully attributed this sad demise of a young person to hypertensive hemorrhage from use of her ADHD medications. She repeatedly and wrongfully stated that the long-term amphetamine use was the cause for her hypertension and that it caused "cardiac remodeling" and eventually the intracerebral hemorrhage. I would like to know if she did read the Houston Methodist hospital records which show that her chest CT did not show enlarged heart size. I do agree that chronic anemia can cause left ventricular strain but her cardiomyopathy and the persistent elevated BP was more of an issue in 2023.

Dr. Novak's theory of the patient's long standing Amphetamine use was the ultimate and main cause of her uncontrolled hypertension appears biased and without support.  Though the patient had long standing hypertension, the critical issue is to find the most proximate cause of her catastrophic bleed.

1. Did she have chronic hypertension which can lead to intracerebral bleed?
   Yes, she did.

2. Was the chronic use of Amphetamines a proximate cause of her bleed?
   No, it was not. Whether she took her correctly prescribed ADHD medication regularly or sometimes irregularly has no bearing on the eventual bleed.

3. Did Covid-19 infection from September 2022 have any bearing on the intracerebral bleed?
   No, it did not have anything to do with it.

4. Was chronic smoking a contributing cause for the eventual bleed?



Yes, smoking does increase the risk of hypertension and difficulty in managing it.

5. Was the brutal shift of 48 hours on and 96 hours off a contributing factor and a proximal cause of the intracerebral bleed?
Yes, it was a definite factor in leading to the final catastrophic event. While she could have had an event like this on her own due to her hypertension, it without question hastened the situation and was the final factor in leading to a presumed spike in BP and the hypertensive intracerebral bleed.

Easwar M. Sundaram Jr MD
Neurologist
Certified by the American Board of Psychiatry and Neurology in Neurology.

# Easwar Sundaram Jr. MD
## Neurologist
321, N. Highland Ave. Suite 200

Sherman, Texas 75092

**Phone: 903 893 5141    email: esundaramjr@texomaneurology.com**

---

## EDUCATION

| | |
|---|---|
| 1976 - 1977 | Loyola College, Chennai, India |
| | **Pre Med** |
| 1977- 1982 | Madras Medical College, Chennai, India |
| | **M.D.** |

## *POST GRADUATE TRAINING*

| | |
|---|---|
| 1983 – 1984 | Government General Hospital, Chennai, India |
| | **Rotating Internship** |
| | **Internal Medicine, Surgery, ObGyn, Community Medicine** |
| 1984 - 1985 | UT Southwestern Medical School, Dallas, Texas |
| | **Research Assistant, Department of Pathology** |
| | *Report to Dr. Vinay Kumar and Dr. Bennett* |
| 1985 - 1986 | St. Barnabas Hospital, Bronx, NY. |
| | **Internal Medicine Internship** |
| 1986 - 1988 | University of Vermont, Burlington, VT |
| | **Resident in Neurology** |
| 1988 - 1989 | University of Vermont, Burlington, VT |
| | **Chief Resident in Neurology** |
| 1996 | University of Alabama, Birmingham, AL |
| | **Mini Fellowship in Sleep Medicine** |
| 2006 | Kiffin Penry Epilepsy Fellowship, Winston-Salem, NC |
| | **Mini Fellowship in Epilepsy** |

## LICENSES

Since 1989                    Texas
                                **Active**


Since 1989                    Oklahoma
                                **Active**



## CERTIFICATIONS

**Initial Certification**      American Board of Psychiatry and Neurology
                                **Neurology**


**Recertification**            American Board of Psychiatry and Neurology
                                **Neurology**



## PROFESSIONAL APPOINTMENTS

Current                       Baylor McKinney Medical Center, McKinney, Texas
                                **Director of Neuroscience & Stroke Services**


Current                       Medical Center of McKinney, McKinney, Texas
                                **Director of Neuroscience & Stroke Services**


2000 - 2013                   Wilson N Jones Hospital, Sherman, Texas
                                **Director of Stroke Services**



## PRIVATE PRACTICE

1989- Current                  Texas Institute for Neurological Disorders
                                Head Office: Sherman, Texas USA
                                Currently President since 2001 of the largest Private Practice Neurology
                                Group in North Texas consisting of 21 physicians in 2 states and 11 offices.



## MEDICAL AND SCIENTIFIC SOCIETIES

Since 1989                    Texas Medical Association


Since 1989                    Grayson County Medical Society


Since 1987                    American Academy of Neurology


Since 2005                    American Stroke Association


Since 2014                    Consortium of MS Centers


Since 2015                    International Movement Disorders Society

## COMMITTEE APPOINTMENTS

Wilson N Jones Hospital, Sherman, Texas
**Chairman, Department of Internal Medicine.**

Wilson N Jones Hospital, Sherman, Texas
**Member Medical Executive Committee**

## POST DOCTORIAL CONFERENCES

Multiple                      American Academy of Neurology Annual Meetings

Multiple                      International Stroke Conferences

Multiple                      Annual Meetings of the Consortium of MS Centers



Texas Institute For
Neurological Disorders

8/9/2024

Response to Dr. Suzzane Novak MD PhD.

Patient: Lauren Smith
DOD; 4/10/2023
DOB; 10/18/1982

I have opined before on this patient's sudden death and its relationship to her work as a paramedic.

Dr. Novak has responded to my independent opinion about the cause of death and specifically whether the deceased use of medications contributed her death.

Some of the facts are noticeably clear and indisputable.

1. Ms. Smith dies from a massive intracerebral hemorrhage which caused severe increase in intracerebral pressure and edema and subsequent herniation.
2. Patient had a history of chronic hypertension and anemia.
3. She had ADHD for which she used long term amphetamines given to her legally by her psychiatrist with no proof of overdose or misuse.
4. There was no proof or drug screen evidence that Ms. Smith used any illicit drugs.
5. Ms. Smith had a lot of vials of various medications in her possession which are used as part of her job as a paramedic. This led to an initial conclusion that Ms. Smith used them but there is again no proof she used them for personal reasons.
6. It appears that her employer Fort Bend County EMS has a very lax system in accounting for medications used by paramedics with no systematic accounting and inventory of medications used with each particular emergency. That is not Ms. Smith's fault. Her employer's lack of clear inventory management led to paramedics having medications used during an emergency to remain in their possession and not accounted for safely!

Dr. Novak has given a long narrative where she is mixing facts, conjecture, and possibilities but not just sticking with the facts.

1. Shift work:
   a. *On the shift of 4/8/2023-4/9/2023 Ms. Smith responded to 7 total calls. One of the calls involved transport. The total time on calls was 6:20 hours.  The total time at the hospital was 1:17 hours.*
   b. *On the shift of 4/9/2023-4/10/2023 Ms. Smith responded to 7 total calls. Four patients were transported. The total time on calls was 7:21 hours. The total time in the hospital was 3:24 hours.*
      Dr. Novak assumes that a paramedic is sitting around when not on a call and doing nothing. A paramedic is on call 24 hours a day and in this case 48 hours



together. Apart from a call they have to do a lot of paperwork and other work with very little to no sleep. Assuming that in a 48- hour shift you only worked when on a call is grossly erroneous.

2. Use of medications:

a. *I agreed that the cause of death as per the autopsy report was an intraparenchymal brain hemorrhage (stroke) due to hypertensive cardiovascular disease aggravated by recent amphetamine use.*
Again, the records clearly show that Ms. Smith was prescribed and was using her legally prescribed amphetamine drugs for ADHD for a long time and not just recently as noted by Dr. Novak. This is a biased opinion of facts.

b. *The consistency of use of hypertensive meds was not certain.*
That is a conjecture and biased. There is no proof that she did not use her anti-hypertensive medications regularly!

c. *Stimulant drug use is associated with hemorrhagic stroke with an odds ratio from approximately 2.5-5.0 noted in the references I cited.*[1,2]
*[1] Westover AN, McBride S, Haley RW. ==Stroke in young adults who abuse amphetamines or cocaine:== a population- based study of hospitalized patients. Arch Gen Psychiatry. 2007 Apr;64(4):495-502.*
*[2] Patel H, et al. ==Substance Use Disorders (SUDs)== and Risk of Cardiovascular Disease (CVD) and Cerebrovascular Disease (CeVD): Analysis of the Nationwide Inpatient Sample (NIS) Database. Cureus. 2023 May 22;15(5): e39331*

Dr. Novak's references are about patients who abuse amphetamines and substance abuse disorders and not about stable medically prescribed and closely monitored medications. There is no question that long term Amphetamine use can cause increased risk of hypertension and Cardiovascular disease. See below:

Attention-Deficit/Hyperactivity Disorder Medications and Long-Term Risk of Cardiovascular Diseases. *JAMA Psychiatry.* 2024;81(2):178-187. doi:10.1001/jamapsychiatry.2023.4294

The fact is that this patient took a medication legally prescribed with no mention of abuse. She has in fact, by all records and facts took those medications regularly. The fact I want to mention is that the 48-hour shift and associated stress had a role in spiking her blood pressure and the immediate cause for her intracerebral hemorrhage.

d. *The records were inconsistent as to the actual doses of Adderall and Vyvanse. There was no documentation that Ms. Smith was on a "stable dose" of these drugs. There was no documentation of how these scheduled drugs were monitored.*



*Ms. Smith was prescribed her Adderall on a PRN basis. Tolerance to medication adverse effects does not occur when taken this way. [3]Also, any tolerance that is developed in stable dose patients may not occur in patients with hypertension.*

This statement contradicts her psychiatrist Dr. John Marcellus MD who stated in his note from September 25th, 2023, that: Ms. Smith was diagnosed with ADHD combined type moderate to severe and PTSD moderate to severe. She was last seen in his office on February 23rd, 2023, which means she was regular in her appointments. He clearly states that she was seen by him on a regular and ongoing basis. In order to treat her ADHD, Ms. Smith was given Vyvanse 70mg one capsule every morning. It was augmented by a dose of Adderall IR 30mg. one PO every 3 PM. Depending on her duties and responsibilities for those days the Adderall could be taken PRN and may not have been taken every day. He also clearly states the patient was very regular and never asked for early refills or appeared to be taking more medications than prescribed and that the medications had a positive impact on improving her ADHD and helped her immensely with her daily functioning.

Dr. Novak is making independent conjectures on the deceased not based on available facts.

e. Dr. Novak repeatedly in many areas of her report states that Ms. Smith has an addiction problem. When the police first saw her body and all the medications from her work, they were rightfully worried about drug overdose as is seen in the general public. They asked her husband Mr. Joshua Helliger who stated that the deceased had a drug problem from years ago but did NOT say it was recently. This is not an admission by her husband that she had a drug abuse problem but a statement made by him when the police questioned the husband.

*Officer Clee spoke to Ms. Smith's father. He states Ms. Smith was a drug addict for many years but got clean in the 1990s.* Again, all this was in the past and not recently. When the police see multiple vials of several drugs including epinephrine, fentanyl and versed the first question would be whether she overdosed. That is the normal course of inquiry and not a finding of guilt.

The autopsy findings did not show any of those drugs in Ms. Smith's system. She did not overdose but had a hypertensive bleed. The drugs listed extensively by Dr. Novak was used by Ms. Smith as a paramedic and not for personal use.

*A person named BC Lane (who was apparently the EMS Battalion Chief) was on the scene and indicated that the vials were labeled from Fort Bend County and that she would notify command. She stated, "they will start an investigation on their end to determine how she has them in her possession."*



So, in essence the Fort Bend County EMS has an issue with their paramedic accounting for all the medications taken by them during an emergency call and what was used and what is not used. It looks like the EMS had an inventory problem within the EMS/paramedics. Again, none of those drugs were found in Ms. Smith during autopsy and the only plausible explanation is that these were used by her on patient emergencies during her work and not on herself. That is the only confirmatory statement based on facts.

3. Test results.
   a. Dr. Novak conveniently explains that her normal chest CT done on 9/2022 was because of decreased fluids and the heart size will change once fluids were given! That makes no medical sense. The only possible accurate explanation is that the heart size increased within a few months because of progressively increased blood pressure. Other observations are speculation.
   b. Dr. Novak states that the Fulshear County Police Incident Report was disturbing in the fact that epinephrine vials were found in the patients' house and was most likely abused. Epinephrine vials are one of the most common medications paramedics carry with them to an emergency call. There is no proof Ms. Smith used them on herself. There is no video evidence of this. Again, a conjecture on the part of Dr. Novak to substantiate her theory that patient was a drug abuser. Dr. Novak also states that Ms. Smith had Clonidine prescribed and again conjectures that maybe the patient did not take it regularly.
   In this case where there are several issues with the deceased carrying medications from her work and belonged to the Fort Bend County EMS clouds the picture and has led to false statements about drug use and abuse and several what ifs and may be statements.

   The only true confirmed facts are that:
   1. Patient had chronic hypertension. Without doubt that leads to the possibility of hypertensive intracerebral bleed as in this case which caused the death. That is not the doubt and proven.
   2. The chronic regular use of amphetamines in a lawfully and properly prescribed doses in a closely monitored way can still increase the overall risk of hypertension and cardiovascular disease. The patient was still allowed by her employer to come to work as a paramedic with those risk factors.
   3. Chronic smoking does add to the overall hypertension and cardiovascular risk.
   4. She also had a 48-hour shift as a paramedic which is highly stressful and even though the whole 48 hours was not utilized for patient care on several



runs, the fact is that paramedics are on constant vigil in a highly stressful environment.

5. My statement is that the highly stressful job in a patient with preexisting chronic hypertension was a proximal or immediate cause for the intracerebral bleed on that day. There is baseline causes and other mitigating issues which is what I want to state clearly. In any case where a cause of death is analyzed there is baseline issues and overhanging issues which caused a problem on that particular day!
Dr. Novak seems to ignore all facts involved in this unfortunate death and concentrates exclusively on patients use of medications for ADHD and false accusations of current drug use. This appears to be a biased reporting and victimizes the deceased.

Easwar Sundaram Jr. MD
Neurologist
Texas Institute for Neurological Disorders

| | | |
|---|---|---|
| In re Joshua David Heiliger, Individually, and on behalf of the Estate of Lauren Brittane Smith, deceased, and on behalf of Death Benefits Beneficiaries Joshua David Heiliger and Emma Destiny Heiliger<br>*Petitioner,*<br><br>v.<br><br>Texas Department of Insurance, Division of Workers' Compensation; Jeff Nelson, Commissioner, Texas Department of Insurance, Division of Workers' Compensation, in His Official Capacity; Francesca Okonkwo, Administrative Law Judge, Texas Department of Insurance, Division of Workers' Compensation, in Her Official and Individual Capacities; and Greater Houston Psychiatric Associates, PLLC.<br>*Respondents.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT OF<br><br><br><br>11TH JUDICIAL DISTRICT<br><br><br><br>HARRIS COUNTY, TEXAS |

## BUSINESS RECORDS AFFIDAVIT OF DR. EASWAR SUNDARAM, JR.

STATE OF TEXAS

COUNTY OF  Grayson

Before me, the undersigned authority, on this day personally appeared Easwar Sundaram, Jr., who, being known to me and after being duly sworn, on his oath deposed and stated:

1. "My name is Easwar Sundaram, Jr. I am over eighteen years of age, have never been convicted of a felony, and am of sound mind and otherwise competent to execute this

1

TAB P

Affidavit. I have personal knowledge of the facts stated in this affidavit and they are all true and correct.

2. I am the custodian of records, owner, and president of Texas Institute for Neurological Disorders ("TIND") and am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities.

3. Attached are 13 pages of records, as Enclosure (A) to this Affidavit. These are the original records or exact duplicates of the original records.

4. The records were made at or near the time of each act, event, condition, opinion, or diagnosis set forth, and it is the regular practice of the Texas Institute for Neurological Disorders to make this type of record at or near the time of each act, event, condition, opinion, or diagnosis set forth in the records.

5. The records were made by, or from information transmitted by, persons with knowledge of the matters set forth, and it is the regular practice of the Texas Institute for Neurological Disorders for this type of record to be made by, or from information transmitted by, persons with knowledge of the matters set forth in them.

6. The records were kept in the course of our regularly conducted business activity, and it is the regular practice of the Texas Institute for Neurological Disorders to keep these types of record.

Enclosure (A): 13 pages consisting of two reports regarding Lauren Smith, March 3, 2024, and August 12, 2024, and Resume

_____
Easwar Sundaram, Jr., MD

SUBSCRIBED TO AND SWORN BEFORE ME on the 17 day of March 2025 to certify which witness my hand and seal of office.

CLAUDIA Y. RODRIGUEZ
My Notary ID # 134561561
Expires September 19, 2027

_____
Notary Public, State of Texas

2

# John E. Marcellus, M.D.
### Diplomate American Board of Psychiatry and Neurology
### In Child, Adolescent and Adult Psychiatry

4888 Loop Central Drive, Suite 510
Houston, TX 77081
Phone: 713-346-1551 Fax: 713-346-1577

Re: Lauren Smith
DOB: ███████

Subject: Medical Diagnosis and Medication Letter

Delivered via email

To Whom It May Concern:                                September 25, 2023

I am a physician licensed to practice medicine in the state of Texas under license number J4325. Lauren Smith had been my patient for many years. She was diagnosed with ADHD, Combined Type, Moderate to Severe (F90.2) and Post-Traumatic Stress Disorder (PTSD), Unspecified, Moderate to Severe (F43.10). Ms. Smith was last seen by telemedicine in my office on February 23, 2023, and the diagnoses remained current. She had been seen by me on a regular and ongoing basis throughout the time of her treatments with me.

In order to treat her ADHD, Ms. Smith was prescribed Vyvanse, 70 mg, one (1) capsule po every morning. It was augmented by a dose of Adderall (IR), 30 mg, one (1) tablet po every 3:00 pm. Depending upon her duties and responsibilities for those days, the Adderall could be taken PRN and may not have been taken every day. The last time either medication was prescribed was February 3, 2023. This regimen proved very effective in helping my patient address the significant ADHD symptoms she experienced. In addition, I closely monitored all refills of these medicines and Ms. Smith never required early refills or appeared to be taking more of the medications than prescribed. Taking the stimulant medication had a significantly positive impact on improving her attention-deficit symptoms and helped her to maintain reasonable functioning of her daily affairs as is expected for people with this disorder.

Thank you very much for your kind attention and consideration to this matter. If I may be of any further assistance, please do not hesitate to contact my office.

Sincerely,

John E. Marcellus, M.D.

TAB Q

**ZACHARY J. SMITH, M.D.**
**12121 RICHMOND AVENUE, SUITE 420**
**HOUSTON, TEXAS 77082**
**PHONE: 281-597-8555**
**FAX: 281-597-8473**

June 30, 2023

To Whom it May Concern,

Lauren Smith, DOB 10/18/82, has been a patient with my practice since 1999. Her cerebral hemorrhage was likely hypertensive in origin. Increased stress and strenuous work can lead to hypertensive crisis resulting in acute hemorrhage as in Lauren's case. In my professional opinion it is unlikely that her stable dose of Adderall/generic form is Amphetamine Salt Combo contributed to her left basal ganglia hemorrhage.

If any additional information is needed, please feel free to contact my office.

Sincerely,

Dr. Zachary Smith

TAB R

| | |
|---|---|
| **From:** | Josh Heiliger <hhcustomrods@gmail.com> |
| **Sent:** | Tuesday, July 25, 2023 4:03 PM |
| **To:** | Russell Morris |
| **Subject:** | Report from her pulmonologist. |

Sent from my iPhone

Begin forwarded message:

> **From:** Josh Heiliger <hhcustomrods@gmail.com>
> **Date:** June 14, 2023 at 2:56:14 PM CDT
> **To:** Amy Carpenter <carpenterae@hotmail.com>
> **Subject: Fwd: Lauren Smith death report**
>
> Sent from my iPhone
>
> Begin forwarded message:
>
> > **From:** Abid Iqbal <aiqbal@mpsds.com>
> > **Date:** June 14, 2023 at 2:48:52 PM CDT
> > **To:** Josh Heiliger <hhcustomrods@gmail.com>
> > **Subject: Re: Lauren Smith death report**
> >
> > First off Joshua, may I say that I am incredibly disheartened to read this postmortem report of Lauren's. I would like to express my deepest condolences to you and the family once again. She was truly a lovely person and will be remembered very well.
> >
> > The postmortem report, fairly clearly, reveals a left basal ganglia hemorrhage which seems to have extravasated into the lateral, third and fourth ventricles - which are the CSF drainage pathway of the brain. All basal ganglia hemorrhages are considered hypertensive in nature given their deep location, there are usually no aneurysms in the area. Most aneurysms are seen in the circle of Willis and carotid arteries which were examined and were free of aneurysm in her case. Acute hemorrhages such as this can cause cerebral edema and herniation and can lead to quick decompensation and a person's demise.
> >
> > Lauren was taking ADHD medication (Adderall) chronically and was found to have amphetamines in her system at the time of this examination. It is not unfeasible that someone who has finished a long shift with the stressors experienced with her strenuous work may suffer a hypertensive crisis which may lead to an acute cerebral injury such as this.

1

TAB S

Lauren was taking her physician prescribed dosing of ADHD medication chronically, it was not as if this was new medication in her system that she would have had difficulty tolerating to the point of developing an acute hypertensive crisis.  I think it would be prudent to ensure that the medical examiner has her current medication list, maybe they can ascertain if the level of medication in her system was consistent with her taking a regularly prescribed dose, as she had been. If that is the case I would have found it difficult to believe that chronic Adderall use would be the main perpetrator of her hemorrhage. Obviously, that would be a judgement that the medical examiner would make in finality.

Again, I am terribly sorry for your loss.  Thank you for sharing this report with me.

Abid Iqbal MD

---

**From:** Josh Heiliger <hhcustomrods@gmail.com>
**Sent:** Wednesday, June 14, 2023 1:54 PM
**To:** Abid Iqbal <aiqbal@mpsds.com>
**Subject:** Lauren Smith death report

Thank you sir very graciously for taking the time to talk with me today.

I am attaching the report. As we spoke about today, in our conversation about the potential for the stress and duress of her, leaving a 48 hour shift and the possibility of a cardiac event, which is a presumptive state law. Any help that you may be able to provide, or any like that you may be able to shine on this would be muchly appreciated. Sincerely, Joshua Heiliger.
.
713-875-7827

Sent from my iPhone

CAUSE NO. 2024-78536

| | | |
|---|---|---|
| IN RE JOSHUA DAVID HEILIGER, | § | IN THE DISTRICT COURT OF |
| INDIVIDUALLY, AND ON BEHALF | § | |
| OF THE ESTATE OF LAUREN | § | |
| BRITTANY SMITH, DECEASED, | § | |
| AND ON BEHALF OF DEATH | § | |
| BENEFITS BENEFICIARIES JOSHUA | § | |
| DAVID HEILIGER AND EMMA | § | |
| DESTINY HEILIGER | § | |
| | § | |
| V. | § | HARRIS COUNTY, T E X A S |
| | § | |
| TEXAS DEPARTMENT OF | § | |
| INSURANCE; FRANCESCA | § | |
| OKONKWO, ADMINISTRATIVE | § | |
| LAW JUDGE, GREATER HOUSTON | § | |
| PSYCHIATRIC ASSOCIATES, PLLC, | § | |
| ET AL | § | 11TH JUDICIAL DISTRICT |

**RESPONDENT GREATER HOUSTON PSYCHIATRIC ASSOCIATES, PLLC'S ANSWER TO PETITIONER'S APPLICATION FOR SECOND TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION AND PERMANENT INJUNCTION**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Respondent GREATER HOUSTON PSYCHIATRIC ASSOCIATES, PLLC ("GHPA) and files this Answer to Petitioner's Application for Second Temporary Restraining Order, Temporary Injunction and Permanent Injunction.

I.

On February 18, 2025, Respondent GHPA made its first appearance herein at the hearing on Petitioner's Application for Second Temporary Restraining Order and request for hearing on Petitioner's Application for Temporary Injunction.

TAB T

II.

Respondent agrees that the temporary restraining order sought by Petitioner for abuse of discretion as referenced in Petitioner's Application for Second Temporary Restraining Order and Temporary Injunction is appropriate based on an abuse of discretion and should be granted.

III.

Respondent otherwise generally denies each and every allegation against it and demands strict proof thereof.

Respectfully submitted,

CARDWELL & CHANG, PLLC

By: _____
Suzan Cardwell
S.B. No. 03791300
Email: cardwell@cardwellchang.com
LaVerne Chang
S.B. No. 00783819
Email: chang@cardwellchang.com
511 Lovett Blvd.
Houston, Texas 77006
Telephone: (713) 222-6025
Facsimile: (713) 222-0938

**ATTORNEYS FOR RESPONDENT
GREATER HOUSTON PSYCHIATRIC
ASSOCIATES, PLLC**

## CERTIFICATE OF SERVICE

This is to certify that on this 25 day of February 2025, a true and correct copy of the foregoing instrument was served *via ProDoc E-Service* upon all parties in compliance with TRCP 21 and TRCP 21a.

_____
LaVerne Chang

# Greater Houston Psychiatric Associates, PLLC-Loop Central Office

4888 Loop Central Drive, Suite 510
Houston, TX 77081
Phone: 713-346-1551
Fax: 713-346-1577

☐ Robert L. Woodham, M.D.    ☑ John E. Marcellus, M.D.    ☐ Tom Leffler, LPC

☐ Nilgun Giray, M.D.    ☐ Ruben Mendez, M.D.    ☐ Kris Choi, LPC

☐ Shaojie Han, M.D.    ☐ Oladayo Bello, APRN    ☐ Donna Lucco, MA, LPC

☐ Stella Edmondson, LCSW

## Fax Transmittal Form

To: Russell Morris

Attn:_____

Phone:_____

Fax: 713-229-8383

Pages: 13 (W/ Cover Sheet)

Date Sent: 6/6/24

☐ Urgent        ☐ Reply ASAP

Message:

Confidentiality Notice: The information contained in this facsimile may be confidential and legally privileged. It is intended only for use of the individual named. If you are not the intended recipient, you are hereby notified that the disclosure, copying, distribution, or taking of any action in regards to the contents of this fax — except its direct delivery to the intended recipient — is strictly prohibited. If you have received this fax in error, please notify the sender immediately and destroy this cover sheet along with its contents, and delete from your system, if applicable.

TAB U



# GHPA
Greater Houston Psychiatric Associates, PLLC

*Leaders in Psychiatric Medicine*

---

## Patient History

PATIENT: Lauren Smith
DATE OF BIRTH: 10/18/1982
ADDRESS: 5807 Spring River Ln
CITY/STATE/ZIP: Fulshear, TX 77441-
TELEPHONE: (713)922-0582

---

## Medications

| Medication | Dose | Sig Desc | Start Date | Stop Date |
|---|---|---|---|---|
| SINGULAIR | 10 mg | take 1 tablet by oral route every day in the evening | | |
| ALBUTEROL SULFATE HFA | 90 mcg | inhale 2 puff by inhalation route every 4 - 6 hours as needed | | |
| ATROVENT HFA | 17 mcg/actuation | inhale 2 puff by inhalation route 4 times every day | | |
| TRELEGY ELLIPTA | 200 mcg-62.5 mcg-25 mcg/actuation | inhale 1 puff by inhalation route every day at the same time each day | | |
| ADDERALL | 10 mg | take 1 tablet (10MG) by oral route every 3 pm | 10/25/2012 | 12/12/2012 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 10/25/2012 | 12/12/2012 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 12/12/2012 | 01/21/2013 |
| ADDERALL | 10 mg | take 1 tablet (10MG) by oral route every 3 pm | 12/12/2012 | 01/21/2013 |
| ADDERALL | 10 mg | take 1 tablet (10MG) by oral route every 3 pm | 01/21/2013 | 02/18/2013 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 01/21/2013 | 02/18/2013 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 02/18/2013 | 03/19/2013 |
| ADDERALL | 10 mg | take 1 tablet (10MG) by oral route every 3 pm | 02/18/2013 | 03/19/2013 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 03/12/2013 | 04/12/2013 |
| ADDERALL | 10 mg | take 1 tablet (10MG) by oral route every 3:00 pm | 03/12/2013 | 04/12/2013 |
| ADDERALL | 10 mg | take 1 tablet (10MG) by oral route every 3:00 pm | 04/12/2013 | 05/10/2013 |

| | | | | |
|---|---|---|---|---|
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 04/12/2013 | 05/10/2013 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 05/10/2013 | 06/12/2013 |
| ADDERALL | 10 mg | take 1 tablet (10MG) by oral route every 3:00 pm | 05/10/2013 | 06/12/2013 |
| ADDERALL | 10 mg | take 1 tablet (10MG) by oral route every 3:00 pm | 06/12/2013 | 07/08/2013 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 06/12/2013 | 07/08/2013 |
| ADDERALL | 10 mg | take 1 tablet (10MG) by oral route every 3:00 pm | 07/08/2013 | 08/06/2013 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 07/08/2013 | 08/06/2013 |
| ADDERALL | 10 mg | take 1 tablet (10MG) by oral route every 3:00 pm | 08/06/2013 | 09/05/2013 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 08/06/2013 | 09/05/2013 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 09/05/2013 | 10/03/2013 |
| ADDERALL | 10 mg | take 1 tablet (10MG) by oral route every 3:00 pm | 09/05/2013 | 10/03/2013 |
| ADDERALL | 10 mg | take 1 tablet (10MG) by oral route every 3:00 pm | 10/03/2013 | 10/29/2013 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 10/03/2013 | 10/29/2013 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 10/29/2013 | 11/26/2013 |
| ADDERALL | 10 mg | take 1 tablet (10MG) by oral route every 3:00 pm | 10/29/2013 | 11/26/2013 |
| ADDERALL | 10 mg | take 1 tablet (10MG) by oral route every 3:00 pm | 11/26/2013 | 12/24/2013 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 11/26/2013 | 12/24/2013 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 12/24/2013 | 01/27/2014 |
| ADDERALL | 10 mg | take 1 tablet (10MG) by oral route every 3:00 pm | 12/24/2013 | 01/27/2014 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 01/27/2014 | 02/25/2014 |
| ADDERALL | 10 mg | take 1 tablet (10MG) by oral route every 3:00 pm | 01/27/2014 | 02/25/2014 |
| ADDERALL | 10 mg | take 1 tablet (10MG) by oral route every 3:00 pm | 02/25/2014 | 03/26/2014 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 02/25/2014 | 03/26/2014 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 03/26/2014 | 04/23/2014 |
| ADDERALL | 10 mg | take 1 tablet (10MG) by oral route every 3:00 pm | 03/26/2014 | 04/23/2014 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 04/23/2014 | 05/20/2014 |

Smith, Lauren 000000000807 10/18/1982 06/06/2024 12:00 AM Page: 2/12

| Medication | Dose | Instructions | Start | End |
|---|---|---|---|---|
| ADDERALL | 10 mg | take 1 tablet (10MG) by oral route every 3:00 pm | 04/23/2014 | 05/20/2014 |
| ADDERALL | 10 mg | take 1 tablet (10MG) by oral route every 3:00 pm | 05/20/2014 | 06/13/2014 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 05/20/2014 | 06/13/2014 |
| ADDERALL | 20 mg | take 1 tablet by oral route every 3:00 pm | 06/13/2014 | 07/15/2014 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 06/13/2014 | 07/15/2014 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 07/15/2014 | 08/13/2014 |
| ADDERALL | 20 mg | take 1 tablet by oral route every 3:00 pm | 07/15/2014 | 08/13/2014 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 08/13/2014 | 09/10/2014 |
| ADDERALL | 20 mg | take 1 tablet by oral route every 3:00 pm | 08/13/2014 | 09/10/2014 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 09/10/2014 | 10/07/2014 |
| ADDERALL | 20 mg | take 1 tablet by oral route every 3:00 pm | 09/10/2014 | 10/07/2014 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 10/07/2014 | 11/03/2014 |
| ADDERALL | 20 mg | take 1 tablet by oral route every 3:00 pm | 10/07/2014 | 11/03/2014 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 11/03/2014 | 12/03/2014 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 11/03/2014 | 12/03/2014 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 12/03/2014 | 01/06/2015 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 12/03/2014 | 01/06/2015 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 01/06/2015 | 02/02/2015 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 01/06/2015 | 02/02/2015 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 02/02/2015 | 03/03/2015 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 02/02/2015 | 03/03/2015 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 03/03/2015 | 03/31/2015 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 03/03/2015 | 03/31/2015 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 03/31/2015 | 04/30/2015 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 03/31/2015 | 04/30/2015 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 04/30/2015 | 05/28/2015 |

| Drug | Dose | Instructions | Start | End |
|---|---|---|---|---|
| VYVANSE Smith | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 04/30/2015 | 05/28/2015 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 05/28/2015 | 06/25/2015 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 05/28/2015 | 06/25/2015 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 06/25/2015 | 07/23/2015 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 06/25/2015 | 07/23/2015 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 07/23/2015 | 07/24/2015 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 07/23/2015 | 08/19/2015 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 07/23/2015 | 08/19/2015 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 08/19/2015 | 09/18/2015 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 08/19/2015 | 09/18/2015 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 09/18/2015 | 10/16/2015 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 09/18/2015 | 10/16/2015 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 10/16/2015 | 11/13/2015 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 10/16/2015 | 11/13/2015 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 11/13/2015 | 11/18/2015 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 11/13/2015 | 11/18/2015 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 11/18/2015 | 12/15/2015 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 11/18/2015 | 12/15/2015 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 12/15/2015 | 01/12/2016 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 12/15/2015 | 01/12/2016 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 01/12/2016 | 02/10/2016 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 01/12/2016 | 02/10/2016 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 02/10/2016 | 03/08/2016 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 02/10/2016 | 03/08/2016 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 03/08/2016 | 03/09/2016 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 03/08/2016 | 03/09/2016 |

ADDERALL

Smith, Lauren   000000000807 10/18/1982 06/06/2024 12:00 AM Page: 4/12

VYVANSE

VYVANSE

| Medication | Dose | Instructions | Start | End |
|---|---|---|---|---|
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 03/09/2016 | 04/05/2016 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 03/09/2016 | 04/05/2016 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 04/05/2016 | 05/04/2016 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 04/05/2016 | 05/04/2016 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 05/04/2016 | 06/02/2016 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 05/04/2016 | 06/02/2016 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 06/02/2016 | 06/28/2016 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 06/02/2016 | 06/28/2016 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 06/28/2016 | 07/26/2016 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 06/28/2016 | 07/26/2016 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 07/26/2016 | 08/24/2016 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 07/26/2016 | 08/24/2016 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 08/24/2016 | 09/20/2016 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 08/24/2016 | 09/20/2016 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 09/20/2016 | 10/18/2016 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 09/20/2016 | 10/18/2016 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 10/18/2016 | 11/14/2016 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 10/18/2016 | 11/14/2016 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 11/14/2016 | 12/14/2016 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 11/14/2016 | 12/14/2016 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 12/14/2016 | 01/17/2017 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 12/14/2016 | 01/17/2017 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 01/17/2017 | 02/15/2017 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 01/17/2017 | 02/15/2017 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 02/15/2017 | 03/15/2017 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 02/15/2017 | 03/15/2017 |

| Medication | Dose | Instructions | Start | End |
|---|---|---|---|---|
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 03/15/2017 | 04/15/2017 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 03/15/2017 | 04/15/2017 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 04/15/2017 | 05/14/2017 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 04/15/2017 | 05/14/2017 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 05/14/2017 | 06/14/2017 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 05/14/2017 | 06/14/2017 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 06/14/2017 | 07/11/2017 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 06/14/2017 | 07/11/2017 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 07/11/2017 | 08/12/2017 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 07/11/2017 | 08/12/2017 |
| VYVANSE | 70 mg | take 1 capsule (70MG) by oral route every day in the morning | 08/12/2017 | 09/09/2017 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 08/12/2017 | 09/09/2017 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 09/09/2017 | 10/07/2017 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 09/09/2017 | 10/07/2017 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 10/07/2017 | 11/04/2017 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 10/07/2017 | 11/04/2017 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 11/04/2017 | 12/05/2017 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 11/04/2017 | 12/05/2017 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 12/05/2017 | 01/02/2018 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 12/05/2017 | 01/02/2018 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 01/02/2018 | 01/31/2018 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 01/02/2018 | 01/31/2018 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 01/31/2018 | 03/01/2018 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 01/31/2018 | 03/01/2018 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 03/01/2018 | 03/28/2018 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 03/01/2018 | 03/28/2018 |

| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 03/28/2018 | 04/24/2018 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 03/28/2018 | 04/24/2018 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 04/24/2018 | 05/24/2018 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 04/24/2018 | 05/24/2018 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 05/24/2018 | 06/22/2018 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 05/24/2018 | 06/22/2018 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 06/22/2018 | 07/19/2018 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 06/22/2018 | 07/19/2018 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 07/19/2018 | 08/16/2018 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 07/19/2018 | 08/16/2018 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 08/16/2018 | 09/15/2018 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 08/16/2018 | 09/15/2018 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 09/15/2018 | 10/13/2018 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 09/15/2018 | 10/13/2018 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 10/13/2018 | 11/10/2018 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 10/13/2018 | 11/10/2018 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 11/10/2018 | 12/08/2018 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 11/10/2018 | 12/08/2018 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 12/08/2018 | 01/06/2019 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 12/08/2018 | 01/06/2019 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 01/06/2019 | 02/03/2019 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 01/06/2019 | 02/03/2019 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 02/03/2019 | 03/02/2019 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 02/03/2019 | 03/02/2019 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 03/02/2019 | 04/01/2019 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 03/02/2019 | 04/01/2019 |

| | | | | |
|---|---|---|---|---|
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 04/01/2019 | 04/29/2019 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 04/01/2019 | 04/29/2019 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 04/29/2019 | 05/28/2019 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 04/29/2019 | 05/28/2019 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 05/28/2019 | 06/26/2019 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 05/28/2019 | 06/26/2019 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 06/26/2019 | 07/24/2019 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 06/26/2019 | 07/24/2019 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 07/24/2019 | 08/21/2019 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 07/24/2019 | 08/21/2019 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 08/21/2019 | 09/18/2019 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 08/21/2019 | 09/18/2019 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 09/18/2019 | 10/15/2019 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 09/18/2019 | 10/15/2019 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 10/15/2019 | 11/16/2019 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 10/15/2019 | 11/16/2019 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 11/16/2019 | 12/12/2019 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 11/16/2019 | 12/12/2019 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 12/12/2019 | 01/10/2020 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 12/12/2019 | 01/10/2020 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 01/10/2020 | 02/08/2020 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 01/10/2020 | 02/08/2020 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 02/08/2020 | 03/05/2020 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 02/08/2020 | 03/05/2020 |
| PRAZOSIN HCL | 1 mg | take 1 capsule by oral route every bedtime | 02/13/2020 | 06/18/2020 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 03/05/2020 | 04/01/2020 |

ADDERALL

VYVANSE

ADDERALL

| Medication | Dose | Instructions | Start | End |
|---|---|---|---|---|
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 03/05/2020 | 04/01/2020 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 04/01/2020 | 04/04/2020 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 04/01/2020 | 04/30/2020 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 04/04/2020 | 04/30/2020 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 04/30/2020 | 05/28/2020 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 04/30/2020 | 05/28/2020 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 05/28/2020 | 06/29/2020 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 05/28/2020 | 06/29/2020 |
| PRAZOSIN HCL | 1 mg | take 1 capsule by oral route every bedtime | 06/18/2020 | 01/28/2021 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 06/29/2020 | 07/27/2020 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 06/29/2020 | 07/27/2020 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 07/27/2020 | 08/25/2020 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 07/27/2020 | 08/25/2020 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 08/25/2020 | 09/21/2020 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 08/25/2020 | 09/21/2020 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 09/21/2020 | 10/20/2020 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 09/21/2020 | 10/20/2020 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 10/20/2020 | 11/17/2020 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 10/20/2020 | 11/17/2020 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 11/17/2020 | 12/14/2020 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 11/17/2020 | 12/14/2020 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 12/14/2020 | 01/12/2021 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 12/14/2020 | 01/12/2021 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day in the morning | 01/12/2021 | 02/09/2021 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 01/12/2021 | 02/09/2021 |
| LEXAPRO | 10 mg | take 1 tablet by oral route every day | 01/28/2021 | 02/25/2021 |
| VYVANSE | 70 mg | take 1 capsule by oral route every day | 02/09/2021 | 03/10/2021 |

| | | | | |
|---|---|---|---|---|
| | | in the morning | | |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 02/09/2021 | 03/10/2021 |
| VYVANSE | 70 mg | take 1 capsule by oral route  every day in the morning | 03/10/2021 | 04/07/2021 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 03/10/2021 | 04/07/2021 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 04/07/2021 | 05/06/2021 |
| VYVANSE | 70 mg | take 1 capsule by oral route  every day in the morning | 04/07/2021 | 05/06/2021 |
| VYVANSE | 70 mg | take 1 capsule by oral route  every day in the morning | 05/06/2021 | 06/03/2021 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 05/06/2021 | 06/03/2021 |
| VYVANSE | 70 mg | take 1 capsule by oral route  every day in the morning | 06/03/2021 | 07/01/2021 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 06/03/2021 | 07/01/2021 |
| VYVANSE | 70 mg | take 1 capsule by oral route  every day in the morning | 07/01/2021 | 07/29/2021 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 07/01/2021 | 07/29/2021 |
| VYVANSE | 70 mg | take 1 capsule by oral route  every day in the morning | 07/29/2021 | 08/26/2021 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 07/29/2021 | 08/26/2021 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 08/26/2021 | 09/23/2021 |
| VYVANSE | 70 mg | take 1 capsule by oral route  every day in the morning | 08/26/2021 | 09/23/2021 |
| VYVANSE | 70 mg | take 1 capsule by oral route  every day in the morning | 09/23/2021 | 10/22/2021 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 09/23/2021 | 10/22/2021 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 10/22/2021 | 11/19/2021 |
| VYVANSE | 70 mg | take 1 capsule by oral route  every day in the morning | 10/22/2021 | 11/19/2021 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 11/19/2021 | 12/17/2021 |
| VYVANSE | 70 mg | take 1 capsule by oral route  every day in the morning | 11/19/2021 | 12/17/2021 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 12/17/2021 | 01/15/2022 |
| VYVANSE | 70 mg | take 1 capsule by oral route  every day in the morning | 12/17/2021 | 01/15/2022 |
| VYVANSE | 70 mg | take 1 capsule by oral route  every day in the morning | 01/15/2022 | 01/29/2022 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 01/15/2022 | 01/29/2022 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 | 01/29/2022 | 02/23/2022 |

Smith,Lauren   000000000807 10/18/1982 06/06/2024 12:00 AM Page: 10/12

ADDER...

| | | | pm | | |
|---|---|---|---|---|---|
| VYVANSE | 70 mg | take 1 capsule by oral route every morning | | 01/29/2022 | 02/23/2022 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | | 02/23/2022 | 03/29/2022 |
| VYVANSE | 70 mg | take 1 capsule by oral route every morning | | 02/23/2022 | 03/29/2022 |
| VYVANSE | 70 mg | take 1 capsule by oral route every morning | | 03/29/2022 | 04/25/2022 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | | 03/29/2022 | 04/25/2022 |
| VYVANSE | 70 mg | take 1 capsule by oral route every morning | | 04/25/2022 | 05/23/2022 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | | 04/25/2022 | 05/23/2022 |
| VYVANSE | 70 mg | take 1 capsule by oral route every morning | | 05/23/2022 | 06/21/2022 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | | 05/23/2022 | 06/21/2022 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | | 06/21/2022 | 07/18/2022 |
| VYVANSE | 70 mg | take 1 capsule by oral route every morning | | 06/21/2022 | 07/18/2022 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | | 07/18/2022 | 08/16/2022 |
| VYVANSE | 70 mg | take 1 capsule by oral route every morning | | 07/18/2022 | 08/16/2022 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | | 08/16/2022 | 09/14/2022 |
| VYVANSE | 70 mg | take 1 capsule by oral route every morning | | 08/16/2022 | 09/14/2022 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | | 09/14/2022 | 10/12/2022 |
| VYVANSE | 70 mg | take 1 capsule by oral route every morning | | 09/14/2022 | 10/12/2022 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | | 10/12/2022 | 11/09/2022 |
| VYVANSE | 70 mg | take 1 capsule by oral route every morning | | 10/12/2022 | 11/09/2022 |
| VYVANSE | 70 mg | take 1 capsule by oral route every morning | | 11/09/2022 | 12/07/2022 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | | 11/09/2022 | 12/07/2022 |
| VYVANSE | 70 mg | take 1 capsule by oral route every morning | | 12/07/2022 | 01/07/2023 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | | 12/07/2022 | 01/07/2023 |
| VYVANSE | 70 mg | take 1 capsule by oral route every morning | | 01/07/2023 | 02/06/2023 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | | 01/07/2023 | 02/06/2023 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 | | 02/06/2023 | 03/06/2023 |

| | | pm | | |
| VYVANSE | 70 mg | take 1 capsule by oral route every morning | 02/06/2023 | 03/06/2023 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 03/06/2023 | 04/04/2023 |
| VYVANSE | 70 mg | take 1 capsule by oral route every morning | 03/06/2023 | 04/04/2023 |
| ADDERALL | 30 mg | take 1 tablet by oral route every 3:00 pm | 04/04/2023 | |
| VYVANSE | 70 mg | take 1 capsule by oral route every morning | 04/04/2023 | |

## Allergies

| Ingredient | Medication Name | Comment |
|---|---|---|
| IODINE | | |
| SULFA (SULFONAMIDE ANTIBIOTICS) | | |

Provider: PLLC Grtr Houston Psych Assoc 06/06/2024 12:35 PM

## Document generated by: Donna Irby 06/06/2024

Smith, Lauren    000000000807 10/18/1982 06/06/2024 12:00 AM Page: 12/12

TEXAS DEPARTMENT OF INSURANCE
DIVISION OF WORKERS' COMPENSATION
HOUSTON EAST FIELD OFFICE
HOUSTON, TEXAS

| | | |
|---|---|---|
| **Lauren Smith** | § | |
| | § | |
| **vs.** | § | **DWC:  24229142-01-CC-HE** |
| | § | |
| **Fort Bend County** | § | |

### Order on Carrier's Second Motion for Continuance

The Division considered the Carrier's Second Motion for Continuance.  Based on the facts stated in the motion, the Division finds good cause exists to approve the Motion for Continuance.

Ordered that the Contested Case Hearing scheduled for November 15, 2024, at 9:00 AM is continued and rescheduled to a later date to allow the Carrier to obtain the medical records from Dr. John Marcellus by subpoena and approved order on the Carrier's Motion to Compel Production of Medical Records from Dr. John Marcellus approved by the Division on October 30, 2024.

SIGNED this 13th day of  November  , 2024.

*FrancaOkonkwo*
Administrative Law Judge

**Carrier's Second Motion for Continuance - Page 5**

TAB V

TEXAS DEPARTMENT OF INSURANCE
DIVISION OF WORKERS' COMPENSATION
HOUSTON EAST FIELD OFFICE
HOUSTON, TEXAS

**Lauren Smith**                          §
                                          §
vs.                                       §   **DWC:  24229142-01-CC-HE**
                                          §
**Fort Bend County**                      §

### Order on Carrier's Motion for Continuance

The Division considered the Carrier's Opposed Motion for Continuance of the Contested Case Hearing (CCH) scheduled for January 21, 2025 at 10:30 am based on Additional Discovery in the form of a deposition subpoena to accompany Carrier's Notice of Deposition by Written Questions for the production of Medical Records pertaining to Claimant, Lauren Smith, decedent, from medical provider Dr. John Marcellus and/or his custodian of records and pending oral hearings before Harris County 11th District Court involving a lawsuit filed by Claimant on this matter.

Based on the facts stated in the motion, the Division finds good cause exists to approve the Motion for Continuance pursuant to §410.155 and Rules 142.10, 142.12 and 142.13 of the Texas Workers' Compensation Act.  It is therefore,

Ordered that the Contested Case Hearing scheduled for January 21, 2025, at 10:30 am is canceled and rescheduled to a later date to allow the Carrier to obtain the medical records from Dr. John Marcellus by deposition on written questions and pending oral hearings before Harris County 11th District Court involving a lawsuit filed by Claimant on

**Carrier's Opposed Motion for Continuance based on Additional Discovery - Deposition Subpoena - Page 7**

TAB W

this matter.

SIGNED this 17th day of January, 2025.

*Franca Okonkwo*

Administrative Law Judge

 
| | |
|---|---|
| **Injured Employee:** | LAUREN SMITH |
| **DWC Claim/Docket #:** | 24229142-01-CC-HE |
| **Date of Injury:** | April 10, 2023 |
| **Employer:** | FORT BEND COUNTY |
| **Insurance Carrier:** | FORT BEND COUNTY |
| **Insurance Carrier Claim #:** | 6000068 |
| **Date:** | March 13, 2025 |

RUSSELL L. MORRIS
MCBRYDE FRANCO PLLC
11000 RICHMOND AVE STE 350
HOUSTON, TX 77042-6702

## Your contested case hearing has been rescheduled.

The hearing that was scheduled for March 11, 2025, at 8:30 a.m., Central time is changed to the date, time, and place below.

### You must go to the hearing on May 13, 2025, at 8:30 a.m., Central time.

| | |
|---|---|
| **Your hearing will be held at:** | **Place: Division of Workers' Compensation (DWC)**<br><br>5425 POLK, SUITE 130<br>ELIAS RAMIREZ BUILDING<br>HOUSTON, TX 77023-1454 |

## Need help?

- Go to www.tdi.texas.gov/wc/employee/dispute.html to learn more about dispute resolution.
- If you want an attorney and need help finding one, call the **State Bar of Texas** at 1-800-252-9690.
- If you do not have an attorney and want help from an ombudsman, go to www.oiec.texas.gov or call the **Office of Injured Employee Counsel** at 1-866-393-6432, ext. 44186.

## Questions?

Call 1-800-252-7031, Monday through Friday, 8 a.m. to 5 p.m., Central time.
Go to www.tdi.texas.gov/wc to learn more about workers' compensation.

TAB X

DR05-L Hearing Reset Notice Live v2.00

## How to exchange your information with DWC and the other parties:

You are responsible for sending your information securely. What you send to DWC must also be sent to the other parties.

Hearing exhibits should be sent to DWC and the other parties at least **three days** before the hearing.

## Hearing exhibits may be sent to DWC by:

- **Email:** CCH_exhibits@tdi.texas.gov (Use an underscore between CCH and exhibits.)

- **Fax:** 512-804-4011
  - o Break your documents into separate sections of less than 40 pages each.
  - o Fax each section separately with a cover page.
  - o Each cover page should include:
    - the DWC claim number; and
    - the number of each section. For example, Section 1 of 3, Section 2 of 3, and so on.

- **Mail:** Texas Department of Insurance, Division of Workers' Compensation
      Hearings, Mail Code HRG
      PO Box 12050
      Austin, TX 78711-2050

- **Secure File Transfer Protocol (SFTP):** An SFTP account is a secure, electronic way to upload your documents.
  - o If you want an SFTP account, contact DWC at eFiling-Help@tdi.texas.gov
  - o To learn more, go to www.tdi.texas.gov/wc/carrier/efileoptions.html

**A copy of this letter was sent to:**

FORT BEND COUNTY
301 JACKSON ST
RICHMOND, TX 77469-3108

FORT BEND COUNTY
C/O DEAN G PAPPAS LAW FIRM LLC
BOX 29


LAUREN SMITH
5804 SPRING RIVER LN
FULSHEAR, TX 77441-2053

JOSHUA D. HEILIGER
5804 SPRING RIVER LANE
FULSHEAR, TX 77441


EMMA D. HEILIGER
5804 SPRING RIVER LANE
FULSHEAR, TX 77441

MARILYN J. ALLEN
DEAN G PAPPAS LAW FIRM PLLC
8588 KATY FWY STE 100
HOUSTON, TX 77024-1813

DR05-L Hearing Reset Notice Live v2.00

**TDI** Division of Workers' HRG
Compensation

PO Box 12050 | Austin, TX 78711-2050 | 800-252-7031 | tdi.texas.gov/wc

**RETURN SERVICE REQUESTED**

OFFICIAL BUSINESS
STATE OF TEXAS
PENALTY FOR
PRIVATE USE



quadient
FIRST-CLASS MAIL
AUTO - IMI
$000.59³
03/13/2025 ZIP 78701
043M32206395
US POSTAGE

**McBryde Franco**

MAR 17 2025

**RECEIVED**

018    BIE-AAB 77042

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUMES

CAUSE NO. 2024-78536

IN RE:  JOSHUA DAVID             )  IN THE DISTRICT COURT
HEILIGER, INDIVIDUALLY,          )
AND ON BEHALF OF THE             )
ESTATE OF LAUREN BRITTANE        )
SMITH, DECEASED, AND ON          )
BEHALF OF DEATH BENEFITS         )
BENEFICIARIES JOSHUA DAVID       )
HEILIGER AND EMMA DESTINY        )
HEILIGER,                        )
                                 )
               Petitioners,      )
                                 )
VS.                              )  OF HARRIS COUNTY, TEXAS
                                 )
TEXAS DEPARTMENT OF              )
INSURANCE, DIVISION OF           )
WORKERS' COMPENSATION;           )
JEFF NELSON, COMMISSIONER,       )
TEXAS DEPARTMENT OF              )
INSURANCE, DIVISION OF           )
WORKERS' COMPENSATION, IN        )
HIS OFFICIAL CAPACITY;           )
FRANCISCA OKONKWO,               )
ADMINISTRATIVE LAW JUDGE,        )
TEXAS DEPARTMENT OF              )
INSURANCE, DIVISION OF           )
WORKERS' COMPENSATION, IN        )
HER OFFICIAL AND                 )
INDIVIDUAL CAPACITIES,           )
                                 )
               Respondents.      )  11th JUDICIAL DISTRICT


            ------------------------------

                       HEARING

            ------------------------------

TAB Y

Mark A. Miller, Official Court Reporter, CSR #1190
11th Judicial District Court, Harris County, Texas

On the 18th day of February, 2025, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Kristen Brauchle Hawkins, Judge presiding, held in Houston, Harris County, Texas;

Proceedings reported by machine shorthand.


Mark A. Miller, CSR #1190
Official Court Reporter
Harris County, Texas

I N D E X

VOLUME 1 of 1 VOLUMES

(HEARING)

| | Page | Vol. |
|---|---|---|
| Appearances............................ | 4 | 1 |
| Proceedings............................ | 6 | 1 |
| Adjournment............................ | 44 | 1 |
| Court Reporter's Certificate............ | 45 | 1 |

A P P E A R A N C E S


FOR THE PETITIONERS:

Mr. Gavin T. McBryde
State Bar No. 24045045
Mr. Pablo A. Franco
State Bar No. 24121625
Mr. Russell L. Morris
State Bar No. 24099150
Mr. Andrew W. Bruce
State Bar No. 24113627
McBryde Franco, PLLC
11000 Richmond Avenue, Suite 350
Houston, Texas 77042
Telephone: 713-223-7699
Email: serv.gavin@mf-txlaw.com
        serv.pablo@mf-txlaw.com
        serv.russell@mf-txlaw.com
        serv.andrew@mf-txlaw.com


FOR REAL PARTY IN INTEREST FORT BEND COUNTY:

Ms. Mary M. Markantonis
State Bar No. 12986800
Ms. Lisa M. Teachey
State Bar No. 24056416
Ms. Marilyn J. Allen
State Bar No. 24025225
Dean G. Pappas Law Firm, PLLC
8588 Katy Freeway, Suite 100
Houston, Texas 77024
Phone: 713-914-6200
Email: mmarkantonis@dgplawfirm.com
        lteachey@dgplawfirm.com
        mallen@dgplawfirm.com

A P P E A R A N C E S

FOR THE DEFENDANT FRANCISCA OKONKWO, ADMINISTRATIVE LAW JUDGE, TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION, IN HER OFFICIAL AND INDIVIDUAL CAPACITIES:

    Mr. James Z. Brazell
    State Bar No. 02930100
    Assistant Attorney General
    Administrative Law Division
    Office of the Attorney General of Texas
    P.O. Box 12548, Capitol Station
    Austin, Texas 78711-2548
    Phone: 512-475-3204
    Email: james.brazell@oag.texas.gov


FOR DEFENDANT TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION:

    Ms. Sherlyn Harper
    State Bar No. 24093176
    Assistant Attorney General
    Administrative Law Division
    Office of the Attorney General of Texas
    808 Travis Street, #1520
    Houston, Texas 77002
    Phone: 713-225-8913
    Email: sherlyn.harper@oag.texas.gov


FOR RESPONDENT GREATER HOUSTON PSYCHIATRIC ASSOCIATES, PLLC:

    Ms. Susan Cardwell
    State Bar No. 00783819
    Cardwell & Chang, PLLC
    511 Lovett Boulevard
    Houston, Texas 77006
    Phone: 713-222-6025
    Email: cardwell@cardwellchang.com

PROCEEDINGS

THE COURT: All right. We're on the record in 2024-78536, Heiliger versus Texas Department of Insurance. Counsel, make your appearances.

MR. MORRIS: Good afternoon, Your Honor, Russell Morris, Pablo Franco and Andrew Bruce on behalf of the petitioner.

MR. BRAZELL: James Brazell and Sherlyn Harper on behalf to the Department of Insurance Workers' Compensation Division.

MS. TEACHEY: Judge, Lisa Teachey, Mary Markantonis and Marilyn Allen on behalf of Real Party in Interest Fort Bend County.

THE COURT: Anybody else? Nope. Okay.

So, we have two issues today. This case has been before me before. I think you-all had worked out some agreements. It looks like perhaps one of them has fallen apart.

There is still a matter pending in front of the Texas Depart of Insurance regarding the workers' compensation claim.

There is an administrative law Judge who is not part of this case presently --

MR. BRAZELL: She is.

THE COURT: She's back.

MR. MORRIS: She's remained from day one.

MR. BRAZELL: We're waiting on a ruling on her plea to the jurisdiction.

THE COURT: Sorry.

MS. HARPER: If I may, it was TDI that was dismissed.

THE COURT: TDI was dismissed. Hers is pending. You had at some point reached an agreement, a Rule 11 Agreement regarding production of mental health records.

And that is what is really at issue, the administrative law Judge has signed an order allowing for the production of mental health records because there is an issue in the underlying case regarding whether or not her heart attack was caused by the use of ADHD medications and so that was why -- that is why those records are being sought.

MR. BRAZELL: Yes, Your Honor, there was a previous subpoena that was issued and a motion to compel that subpoena. Those have been withdrawn. There is a new subpoena that is in a different form. That's the one we're on.

THE COURT: I'm going to ask a question that is just kind of cutting to the chase. From where I sit

I could see that prescription records would be relevant and I don't think the objection is to the prescription records themselves, whether they were prescribed or not prescribed, how often they were refilled, whether -- and the amounts, and that would go to amounts in her system at the time of her death?

MR. MORRIS: That's correct, Your Honor. We provided those records.

THE COURT: For my own edification, because I wonder if it could short circuit this, why do we need her treatment notes?

MR. BRAZELL: Your Honor, I might have to let the Fort Bend County explain that. They're the ones with the expert that said they need them. They can tell you better than I can.

MS. TEACHEY: Judge, I can, subject to my plea to the jurisdiction. I must state for the record --

THE COURT: I got that.

MS. TEACHEY: I just have to clear my record --

THE COURT: -- and I appreciate that. I'm not asking you all to waive anything and I'm not taking any answer to my question as a waiver of any arguments legal or procedural that you have --

MS. TEACHEY: Thank you, Judge --

THE COURT: -- I was just trying to see, because you all reached an agreement I thought before and I'm just curious as to why the treatment notes would be relevant if we're talking about a medical condition?

MS. TEACHEY: Judge, that is why Ms. Allen is here. She is the Fort Bend lawyer at DWC, I'm going to defer to her because I'm not the DWC lawyer, I'm the procedural lawyer. So Ms. Allen has put these arguments in her motion and has argued them to ALJ.

MS. ALLEN: Ms. Smith was a 40-year-old paramedic from Fort Bend County. She died at her home.

THE COURT: After a long shift?

MS. ALLEN: After --

THE COURT: A 48-hour shift.

MS. ALLEN: -- a 48-hour shift.

And the autopsy report demonstrated and showed that she died, as well as the death certificate, of a brain hemorrhage, stroke, due to high blood pressure, cardiovascular disease, due to hypertensive cardiovascular disease aggravated by recent amphetamine use. Those are the autopsy results.

The beneficiaries brought a claim and it is their position that Ms. Smith died because of her brutal shift and her highly stressful job at an incredibly

stressful environment.

And they believe that physical and mental stress at work caused her hypertensive spike that caused her hypertensive bleed resulting in her death.

THE COURT: Okay.

MS. ALLEN: So they have brought her mental and physical stress into play claiming that that is what caused her death.

THE COURT: And so the reason you need treatment notes is?

MS. ALLEN: Because they claim that she was very stressed out about going back to work. She had COVID in September of 2022 and that was a work-related infection.

She was hospitalized for five days and off work until January of 2023.

So she went back to work part-time and then full-time and then she passed away in April of 2023.

And it's their position that she was incredibly stressed out about going back to work, mentally stressed, and the physical component of her job also caused her death.

MR. BRAZELL: Your Honor, treatment notes then become the central issue because their claim is she didn't die just because of a medical condition, she died

because of the stress. The treatment notes reflect directly on that.

And, Your Honor, one other thing that needs to be put into this record once and for all is this case -- this attempt to obtain the TRO, to bring an injunction, is a grotesque violation of the offensive use doctrine, Your Honor, the use of a privilege as a sword instead of a shield.

The privilege that -- these parties have requested death benefits from the state and they're objecting to allowing relevant evidence, relevant on the central issue that comes in to show that the death benefits should not be granted.

So, Your Honor, as long as the relatives and the deceased are going to seek this benefit and as long as this is the crucial issue, these behavioral notes are crucial to their claim, not to our claim necessarily, but to their claim.

To prevent them from being disclosed, it violates the offensive use doctrine and that's a violation of the whole privilege as well as --

THE COURT: What is the time frame?

MS. ALLEN: It's a three-year period prior to her death and we're asking for those records because Ms. Smith had a very complicated preexisting history.

She had uncontrolled hypertension. Back when she was hospitalized she was in hypertensive urgency.

We believe she was not taking her high blood pressure medication because her blood pressure was elevated at the time she was admitted into the hospital and remained elevated.

She was severely anemic and required a blood transfusion while hospitalized. She had chronic migraines and was taking a combination of Fioricet which is caffeine and butalbital which was also in the autopsy report as well as the amphetamines.

We need to know if Dr. Marcellus knew and understood her complicated preexisting history while he was prescribing amphetamines for her ADHD in the form of Vyvanse and Adderall.

And there is records that show that her ADHD medication increased after she was released from the hospital.

MR. BRAZELL: And, Your Honor, because these are the issues --

THE COURT: Hold on. I want to hear from them next because I've got the issues.

Is this, do you believe, the least intrusive way, and, if so, why is it the least intrusive

way to get the information you seek?

MS. ALLEN: We believe it is the least intrusive way. We limited it to the three-year period to see how often Dr. Marcellus evaluated the decedent, whether his visits were by tele-health medicine or he actually saw her, whether he asked her what her blood pressure was, whether he had an understanding of what medications she was taking for her blood pressure and if she was -- and whether she was -- yes, taking those medications and her complaints of stress.

We need to read those therapy notes and see whether she did complain of physical and mental stress at work.

THE COURT: Do we have -- what exhibit is the most recent subpoena?

MS. TEACHEY: The unexecuted one I believe is in your petition, Russell?

MR. MORRIS: That's correct. Yes, ma'am.

MS. TEACHEY: I have a copy of the executed one.

THE COURT: No, I want the most recent --

MS. TEACHEY: We've served -- we withdrew the other one and served a new one.

THE COURT: Then I want the served one.

MS. TEACHEY: I have a copy. I can give a

copy to him and a copy to you.

THE COURT: Yes.

MS. TEACHEY: Judge, may I approach?

THE COURT: Yes.

MS. TEACHEY: This was served February 10th. Judge, may we mark this as Exhibit A and offer it for this hearing?

THE COURT: Hold on a second. Yes.

MS. TEACHEY: This would be Real Party in Interest Exhibit A.

(Real Party in Interest Exhibit A offered.)

Mr. Morris, do you object?

MR. MORRIS: No objection.

THE COURT: It's admitted.

(Real Party in Interest Exhibit A admitted.)

THE COURT: What was the Rule 11 agreement you all reached? What is the terms of the agreement you reached before? Was it December?

MR. MORRIS: It was, Your Honor, December 5th, the last time we were in front of the Court.

The Rule 11, Your Honor, was essentially that we would agree to permit Fort Bend County to submit deposition by written questions to Dr. Marcellus subject to our objection on the questions.

If we had an objection to questions then we would confer by a certain date on those objections and see if we could come to a resolution on our objections to those questions.

And then if the parties could not come to an agreement on the objections and/or the questions then the parties were permitted to proceed with the legal remedies that both sides are seeking in this case.

MR. BRAZELL: Your Honor, just for your information, the department was not a party to the agreement, although we did not object to it.

THE COURT: Okay. And so then DWQs were served and objections were served and you conferred and the conference failed to resolve the issues?

MR. MORRIS: I think there is going to be a factual dispute on whether the conference occurred. They alleged they attempted to confer with us. I have no record of any phone call or email from them by the deadline that we had set in the Rule 11.

The following Monday I then followed up with them and said because you failed to confer we are considering you in breach of the Rule 11.

I pooled all my phone records from my entire office. I have no record of a call from them, certainly don't have an email from them saying they were

attempting to confer with us, so we took that as they did not intend to confer with us.

THE COURT: Putting that aside. Is there anything that prevents --

(Courthouse fire alarm sounds).

MS. TEACHEY: Judge, you were saying setting the rule aside --

THE COURT: Kind of setting it aside, but going back to it, is there any reason we can't confer now about the objections?

MS. TEACHEY: My belief would be all attempts would be -- I believe any attempt at this point would be futile. We submitted over a hundred DWQ questions via DWQs based on what our expert asked us to retrieve.

They objected to about half of them. First they objected to I think about 16 of them and then the objections came into about half.

And I think that this is only going to be resolved if Fort Bend moves to enforce the subpoena, which has not occurred.

THE COURT: Let me ask the next question. Have you-all entered into any sort of confidentiality agreement?

MS. TEACHEY: Judge, we have always

maintained that we would keep them confidential and I believe that deposition says they are to be marked confidential.

And the Order for the motion on it says that they have to be maintained confidential.

And Fort Bend of course would abide by all requirements of Health and Safety Code 611 which says any disclosure of those records must be maintained confidentially.

Fort Bend has no interest in doing anything with these records except allowing Ms. Allen to review them for the contested case hearing and prepare her arguments.

MR. BRAZELL: And the agency would be agreeable to keeping them confidential and has procedures in place to do so and routinely does that in other cases.

MS. TEACHEY: And, Judge, at a DWC proceeding it is confidential unless it's judicially reviewed. No one can just go make those records public at an administrative hearing, I believe the policy is because you're usually dealing with people's medical records.

So they would only ever reach the light of day if they were ever ruled admissible in a judicial

review is my belief.

THE COURT: Ms. Allen.

MS. ALLEN: Yes, the only records that the petitioner has provided us from Dr. Marcellus was a list of medication that the decedent was taking from outside providers and there was no mention of blood pressure medication in that list. We don't even know if Dr. Marcellus understood --

THE COURT: Hold on. We're getting there. All right. Have you put her mental health at issue in her stress and whether or not she was suffering stress and being treated for it with her mental health provider such that it is fair game?

MR. MORRIS: The short answer is no.

THE COURT: Why not?

MR. MORRIS: The long answer is so with this case our argument is that the stress from the shift is what precipitated and caused the stroke. Right?

When you look at the proximity of the shift ending about 7 -- 8:00 a.m., the signs and symptoms of the stroke shortly occurring about 1:00 p.m. the same day.

We have about a five-hour window and she's experiencing things that our expert is going to testify to as being clear signs and symptoms of onset of stroke

and then she dies.

With regards to everything that we intend to present about how stressful the job was, the impact of that stress. Right? The impact is going to come from our neurologist and his expert opinion as a medical expert.

The facts that are going to support that are either going to come from Mr. Heiliger himself who is a retired firefighter that can speak to the daily life of a first responder, as well as several of the other first responders that worked with Ms. Smith.

Currently we've been denied the ability to depose those witnesses, but when we get to district court and I can issue my own subpoenas they will become witnesses and testify to the facts and stress of being a first responder.

THE COURT: You are assuming an adverse outcome at TDI?

MR. MORRIS: I plan for everything, Your Honor, if we win we win, if we don't they're next on the gambit.

So, that is where all that is coming from. Anything from Dr. Marcellus that is relevant would be the prescription records to show how frequently she was getting the medication.

THE COURT: And you objected to that?

MR. MORRIS: No. We've provided all of the prescription records for the last 12 years that show she's been on the same dosage and the same Vyvance and Adderall since 2012.

Because that is our argument, is she's been on it for 12 years, to say that that is what precipitated her stroke in this moment is -- is --

THE COURT: Who prescribed that?

MR. MORRIS: Dr. Marcellus did.

THE COURT: So have you produced or objected to the production of office notes relating to the prescriptions?

MR. MORRIS: We provided all the prescription --

THE COURT: That's not my question.

MR. MORRIS: I guess I'm not understanding your question, Your Honor.

THE COURT: So, if there were DWQs, were there DWQs related to the dates of the prescriptions and what the prescriptions were?

MR. MORRIS: I'm sure there were. Like she said there was 117 of them. I did my best to try to be reasonable in the objections I asserted.

We have no intent on hiding the information

related to the prescriptions, the dosages, the frequency of the refills, that's why we provided completely unredacted prescription records from Dr. Marcellus that shows how frequently, how often, the dosages and the fact as well, the Vyvanse and the Adderrall for essentially over a decade.

THE COURT: Has Judge Okonkwo -- well, the DWQs, are they withdrawn?

MS. TEACHEY: Judge, we could not ever do anything with them under the Rule 11 Agreement because there was no agreement on them.

THE COURT: So they were never issued?

MS. TEACHEY: Correct. They were never issued.

THE COURT: So the only thing pending is the subpoena --

MS. TEACHEY: The deposition subpoena, yes, under the workers' comp we have to subpoena him either to a hearing or a deposition to get records.

MR. BRAZELL: And, Your Honor, just for the record, this is a subpoena that is fully supported by a a statutory and regulatory authority.

THE COURT: I'm not arguing any of that and that is really not even my question.

I want to make sure the only thing at issue

is whether or not this deposition subpoena is proper, is really what we are here on today?

MS. TEACHEY: Yes, Judge.

THE COURT: Let me rephrase that. This deposition notice signed by Judge Okonkwo, administrative law judge presiding over the workers' compensation hearing that is currently pending at the Texas Department of Insurance, is why we're here today and why you are seeking either a temporary injunction or a temporary restraining order to prevent this deposition from going forward?

MR. MORRIS: That is correct.

THE COURT: You have also in your petition included a writ of mandamus to determine whether or not her order, it's an abuse of discretion, and you have filed it with the district court.

I believe that there is a response, or in the plea to the jurisdiction there is some questions as to whether or not you have exhausted all administrative remedies and some other argument.

But I just want to make sure I am clear on this is the document at issue?

MR. MORRIS: That's correct, Your Honor.

THE COURT: Okay. So, why do you believe that this is not proper?

MR. MORRIS: The most simplest explanation for that, Your Honor, it is an order compelling the production of three years of mental health records with no in camera review and no redactions.

That alone is an abuse of discretion and an overly broad discovery order of privileged materials.

THE COURT: And in response to their statement that your allegations that stress, even if you believe you've limited it just to the shift before her death, that the allegations of stress leading to her death do not create the discovery of more information about whether she was under stress for an extended period of time before her death is not discoverable is what? What is your response to that?

MR. MORRIS: My response, Your Honor, is that I don't believe the privileged communications to her therapist are discoverable for that purpose.

THE COURT: Why?

MR. MORRIS: Well, for starters, to sit here and say we need to see them to know whether or not she made the statement is by definition a fishing expedition. That's not how discovery works.

You have to have some reason to believe those communications were even made in the first place.

Secondly, again, requiring the production

of wholly unredacted mental health records exceeds the bounds of permissible discovery all the way from statute up to the most recent Supreme Court decision in *Ramirez*, that still says even if you demonstrate the relevance and it's not a fishing expedition you still have to curtail the production only to that portion which is responsive or relevant.

And so ordering the production of wholly unredacted records is an abuse of discretion based on current Texas Supreme Court precedent.

THE COURT: Okay.

MS. TEACHEY: Judge, it is not an abuse of discretion because the rules of evidence and the Texas Labor Code and the Health and Safety Code all say these kinds of records come in.

We're not asking for unfettered access to her mental health records. We limited it to the three years before which is a reasonable time period to discern what was going on with her mental state leading up to this day that she had the stroke.

Under Texas Labor Code 410.165, the ALR Judge is the sole determiner of admissibility, the relevancy and the materiality of evidence to come in. So, this is not an abuse of discretion.

Under -- let me find my other list. I have

them all listed out here. Under 408.001 of the Texas Labor Code, 420.165 which I just mentioned which is the one that says the ALR Judge is the sole Judge of the credibility.

410.158, Rule 151 -- I mean 140 -- 41 -- Rule 141.4 Rule 142.2, Rule 142.12 which is the rule that says an ALR Judge can issue a subpoena and Rule 142.13 which are all codified in 28 TAC, which are the rules that the division of workers' compensation follows in these hearings.

Under 410.157 of the Labor Code these records are admissible. Mental health records are -- it is not an improper disclosure of mental health records under Texas Health and Safety Code 611. 611 is the privilege of communication for mental health records.

That statute in its beginning says which records are privileged, which records you can claim the confidentiality privilege for.

.603 and .604 and .605 sections of 611 all say how you keep those records privileged, how you claim the privilege and what you do if there is an improper disclosure.

.605 actually says if there is an improper disclosure this is what you do. Section .606 of -- 611.606 of the Health and Safety Code is entitled

Authorized Disclosure. It's authorized disclosure in a judicial or administrative proceeding.

So the legislature has recognized that there are times when mental health records have to be treated differently from whether you're just going to disclose them.

611.603, 604 and 605 all say how you disclose them in a proceeding other than a judicial or administrative proceeding.

611.606(a) says in a judicial administrative proceeding, it is an authorized disclosure and it gives a laundry list.

THE COURT: This seems to be more narrowly tailored than just all the records.

MS. TEACHEY: Because Judge she was on the medicine for 12 years -- 10 years. Just to complete my record, Judge, 611(a) -- I mean 606(a)11 is what we're moving under just for my appellate record.

THE COURT: I guess my question though is, while you have narrowed the time frame to three years --

MS. TEACHEY: Yes.

THE COURT: -- the documents requested are still all records that he has for her.

Is that overly broad or can that be more narrowly tailored or can there be some request that it

be reviewed before production by perhaps Judge Okonkwo?

MS. TEACHEY: Judge, we never opposed in camera review before and I don't think we would oppose that.

As far as narrowly tailored, I would have to defer to Ms. Allen on what she would need on that three years.

MS. ALLEN: Well, they're claiming that it was a stressful environment and job and so you would reasonably expect those complaints to be in the therapy records.

THE COURT: Well, I understand that, but I think my question is, this does not limit it to notes related to job, doesn't limit it related to prescription records, doesn't limit it related to whether or not she was seen in person or by Zoom, the frequency of her visits, so I guess my question is, is there a way it could be more narrowly tailored?

MS. TEACHEY: Well, Judge, I believe we would need all of them because if there is a record that it's not related to the job then Fort Bend would need to know that.

If Dr. Marcellus says, she's stressed out, her life is miserable, her saving grace is going to work, and we've only asked for when she's mentioned job

as a stress, we lose out on that record. I don't know if that record exists, but as for an example.

And, again, when you're talking about a level of stress that builds up like this, I don't think it's unreasonable to ask to go back to a few years leading up. We're not asking -- she's been with Dr. Marcellus for years and years and years and years and years, we're only asking for three years.

MS. ALLEN: That's correct. We're not seeking any records related to domestic or marital relationships or complaints.

THE COURT: Well, it's not excluded from here which I think is -- you say you're not seeking it, but it's not excluded and if it is included in there --

MS. ALLEN: There were notes in the medical records that her husband was the source of her stress and not her job activities.

THE COURT: So then you are seeking that information?

MS. ALLEN: Well, then, it would be relevant.

MS. TEACHEY: It would be relevant to say it's not job-related. This is all whether benefits should be paid because of work-related.

THE COURT: I know that, but her statement

was we aren't seeking that, but you're not excluding it?

MS. ALLEN: Right. We're not excludeing it.

THE COURT: So, you are seeking it?

MS. ALLEN: Yes.

THE COURT: Back to you. I've got to know why this -- if I were to take any action -- I believe the only action that I might be able to take would be under a mandamus standard of abuse of discretion.

I do not know if, A, I have that authority, but I could see that there might be that authority.

Because my understanding from our last gathering was that there is no other administrative mechanism to review Judge Okonkwo's actions, similar to here there is no review to the appellate panel for individual orders such as issuing subpoenas or discovery orders to determine whether or not there is an abuse of discretion, irreparable harm, such that you would need a mandamus, as there is in the district court level if I issue an order that is an abuse of discretion, especially in discovery, from which there is no adequate remedy on appeal, there is mandamus relief that is available.

And I believe we have decided there is not such a mechanism in the administrative framework for the Texas Department of Insurance.

MR. BRAZELL: There is, but it's just not as clean as you might see it in this situation. There is a mechanism and it's the mechanism of the enforcement of the subpoena in Travis County or in this county and that is the -- that's where the relief is available. The -- after the subpoena --

THE COURT: Hold on. I want to make sure I understand. When you say the enforcement of the subpoena, that would be coming from district court to prevent the enforcement of the subpoena?

MR. BRAZELL: No. To enforce the subpoena with this side having the opportunity to fight that and seek relief in the denial of the enforcement.

So, yes, we're -- not even done that. We haven't exhausted remedies. We haven't completed the process at all. The way it works is the subpoena is issued, it's -- a motion to compel is issued.

If this --

THE COURT: Who does the motion to compel go to? Does it get filed with Judge Okonkwo?

MS. TEACHEY: No, Judge, it gets filed in the district court. What happens with this, the way it works, that subpoena issues, the doctor can do nothing and suffers no harm, no harm.

THE COURT: What if the doctor voluntarily

complies? This appears to be valid on its face, right?

MS. TEACHEY: Right.

THE COURT: So if the doctor complies?

MS. TEACHEY: The petitioner already had their relief. The petitioner had their relief to object and the Judge has found that it's within the scope of relevant -- it's relevant and material and admissible. It's not an abuse -- there is no abuse of discretion to get it -- to get to here.

THE COURT: I think we're maybe not talking the same thing. If their position is the issuing of this subpoena is an abuse of discretion for which there is no adequate remedy on appeal, is there some sort of review in the administrative law system such that her order can be reviewed for an abuse of discretion?

I hear you saying that because she's heard the motion to compel and overruled other objections there is no abuse of discretion. I don't think that is completely accurate because I -- I am just going to go back to district court.

I can overrule objections and the court of appeals can say no, no, no, Judge, that was an abuse of discretion and they can call that back.

But is there such a mechanism in the TDI?

MR. BRAZELL: There is a mechanism through

the enforcement process. The subpoena is issued by the Judge. The other party might ignore the subpoena.

THE COURT: And if they don't?

MR. BRAZELL: First of all, if they do, a motion to compel may be issued.

THE COURT: Okay.

MR. BRAZELL: They may be compelled.

THE COURT: Is the compel issued by Judge Okonkwo?

MR. BRAZELL: By Judge Okonkwo. There also may be a motion to compel in the district court level.

Judge Okonkwo has a right to have a motion to compel filed. Judge Okonkwo can say you must produce them. Their remedy at that point would be to withhold, just like it is in all kind of situations where you have a privilege.

If they withhold then Judge Okonkwo or the other side or the other party could request enforcement of the subpoena. That enforcement is taken to the district court either here or in Travis County.

That enforcement action is one in which the agency seeks to enforce its subpoena. The other side can then contest that and that's their administrative remedy.

That's to -- that's to -- see, we're not

even close to the point where they have no remedy at law.

THE COURT: So, I think you have let that answer the question of what is preventing Dr. Marcellus from complying with this subpoena?

MR. BRAZELL: I think my answer last time and is the answer this time and others may disagree, for them to seek a TRO to keep -- an injunction to keep the doctor from disclosing. Not the agency, the doctor.

THE COURT: All right. Which goes back to, do we have a missing party?

MR. MORRIS: We've added GHPA which is the clinic that Dr. Marcellus works for and is the actual owner of the records.

THE COURT: So then a motion for TRO/TI is against who?

MR. MORRIS: It would be against the clinic, but also against Judge Okonkwo for purposes of not sanctioning or issuing any further orders related to the subject matter.

THE COURT: Okay. So, before -- you-all keep popping up. Hold on a minute. Hold on. Today your motion is for restraint of whom?

MR. MORRIS: It's for restraint from GHPA in turning over the records and restraint against Judge

Okonkwo from issuing any sort of sanctions or punitive actions against Mr. Heiliger or his daughter for withholding the records, or not the records, but withholding consent for the records in the administrative process.

THE COURT: This subpoena appears to be directed to Dr. John Marcellus. Is Dr. John Marcellus a party to this case?

MR. MORRIS: To which case, Your Honor?

THE COURT: The one pending, Heiliger versus Texas Department of Insurance.

MR. MORRIS: So, we added the clinic that he works for because they're the actual owner of the records, not Dr. Marcellus individually.

THE COURT: Have they been served?

MR. MORRIS: They have.

THE COURT: Do they know about today's hearing?

MR. MORRIS: They do.

THE COURT: Have they indicated whether or not they would attend?

MR. MORRIS: Ms. Cardwell is here in the gallery, Your Honor.

THE COURT: You want to join in Ms. Cardwell?

MS. CARDWELL: I hate to make an appearance.

THE COURT: I'm asking if you would like to. Would you like to or not?

MS. CARDWELL: Sure.

THE COURT: This is a fun party, don't you want to join us?  Come on up, Ms. Cardwell.

Who are you here for?

MS. CARDWELL: I represent Dr. John Marcellus.  I represent Greater Houston Psychiatric Association.  I represent the medical records custodian who has received multiple emails, faxes, all kinds of stuff.  So I represent them all.

THE COURT: Do you have any thoughts you would like to share?

MS. CARDWELL:  Well, there has never been valid service as to Dr. Marcellus for anything.

There appears to be absolutely no regard for HIPAA.  According to these folks who don't have a HIPAA, want records, the burden is on the doctor in the event there ever is a claim that there was a violation of HIPAA.

And I have never in 40 years seen an order that just said turn over the records.  So I would think there is some very narrowly drawn request that would be appropriate, that if it is a validly issued order and it

is validly served on a nonparty under I guess Rule 176, or I think it's Texas Administrative Code 141, we would be in a different situation.

THE COURT: Okay. Now, back to you-all.

MS. TEACHEY: Thank you, Judge. Going back to the remedy, I did remember that there is a statute for injunctive relief they could use to stop the doctor and that's 611.605. It actually says you may seek injunctive relief from improper disclosure of medical records.

They do have a remedy at the administrative level and it's the TRO.

THE COURT: Seek it with the TDI, or seek it in district court?

MS. TEACHEY: I think they can seek it in district court. That is the remedy for the issuance of records at exactly like where we are right now.

As far as the service, we had a process server serve the February 10th subpoena and we do have all of the records. I do not have them with me. I can get you-all of them.

THE COURT: When you say records, meaning the service --

MS. TEACHEY: The service -- the service records, yes, Judge. It was signed for by Dr. Marcellus

himself, so -- someone at his office, it was signed. We do have that. We did not bring it today. We didn't think service was going to be at issue here today.

As far as HIPAA, I don't believe HIPAA comes into play when a subpoena and your medical issue is at controversy. Rule 510 of the Texas Rules of Evidence and Rule 509 which is codified in the statute of 611 both say how you can get to these records and there is no mention of HIPAA.

There is confidentiality and, again --

THE COURT: Well, but HIPAA is in the federal statute which places different burdens and really is also --

MS. TEACHEY: HIPAA has an exclusion for litigation --

MR. BRAZELL: Two things, Your Honor, real quickly. One of them is regarding your question of whether or not there is an appeal process.

I believe this is the alternate route, which I have not mentioned, which is an administrative appeal inside the agency to the appellate panel.

We talked about that some last time and the discussion was on the fact that it was probably a long drawn out and somewhat time-consuming process.

THE COURT: I think what I recall from the

last hearing was that that is only an appeal of a final finding by Judge Okonkwo.

MR. BRAZELL: I believe that may be correct.

THE COURT: I have somebody else shaking her head saying no it is not --

MS. HARPER: Your Honor, I would just say the way the statute is written, the plain language, it does not state final decision, it just says to appeal the decision that the ALJ makes, you have 15 days to --

MR. MORRIS: I'm fairly positive the statute says a final decision --

MS. HARPER:  I have it hear, I don't have to lie --

THE COURT: Counsel, direct yourselves this way.

MR. BRAZELL: Your Honor, the other thing I would like to be sure to mention is, all of this discussion has been presuming this information is privileged.

Under Rules 509 and 510 of the Texas Rules of Evidence, 509(e)4 and 510(d)5, it is expressly not privileged.  The privilege does not apply.

So all of that, all of the assumptions that this is privileged and has to be treated that way are incorrect.  And also, as has already been argued under

611.006(a)11 -- I'm sorry, I'm probably not -- 611.006(a)011. Is that right?

MS. TEACHEY: I thought it was 611.006, I have been saying 606 for the record, Judge, but that was my misstatement of --

MR. BRAZELL: Your Honor, the legislature has expressly authorized disclosure of this kind of information in an administrative proceeding or in a Court proceeding.

So there is no privilege to be protected, but if there were, we're back to the offensive use problem, which is you may not --

THE COURT: I got it. I don't need more of that.

All right. Give me about five or 10 minutes.

(Recess from 2:20 to 2:50.)

THE COURT: All right. So, the most urgent pressing issue today is whether or not there can be a TRO to enjoin compliance with the subpoena until we can have a more fulsome hearing on this.

Is that correct?

MR. MORRIS: That's correct, Your Honor.

THE COURT: Anyone?

MS. TEACHEY: Subject to our plea to the

jurisdiction.

MR. BRAZELL: And ours as well, Your Honor.

THE COURT: Yes. I am going to grant the temporary restraining order as to the doctor and the facility. Period.

MS. TEACHEY: Then will there be a hearing, a full hearing? This isn't the end?

THE COURT: It is a TRO. There will be a TI that issues -- or a TI hearing in which you can all be heard and because I am not taking any action as to TDI or to Fort Bend I am going to pass for today the hearing on the plea to the jurisdiction, as I am only entering an order as to the doctor for 14 days until we come back -- the doctor and the healthcare entity, until we come back for a hearing on the TI. That is it.

Any questions? Anything else you think I have missed?

MR. MORRIS: Your Honor, we also would like to get a ruling on our motion for expedited discovery in support of the TI hearing.

THE COURT: Expedited discovery?

MR. MORRIS: Yes.

THE COURT: Who would you like for discovery and what would you like?

MR. MORRIS: We've asked for three

depositions. We would like to depose obviously Respondent Okonkwo as she's claiming that she's relied on various facts and assertions --

THE COURT: No, that is denied.

MR. MORRIS: Second, we would like a 199.2 designee from Fort Bend County to discuss what they believe to be their claims in this case because I think that is an issue --

THE COURT: That's denied. You can talk to the lawyer.

MR. MORRIS: Lastly we would like to depose Dr. Novak about her assertion she believes she needs the --

THE COURT: I'm going to ask you to talk about that if that is something that needs to be discussed.

I mean that sounds like an issue for the underlying case, not for this issue, and so I am not -- I'm not going to order that one either.

MR. MORRIS: Understood, Your Honor.

THE COURT: And as far as why they believe they're entitled to the records, I think she has stated on the record, and you can have further conversations with counsel, I'm not going to authorize a deposition on that one.

MR. MORRIS: Understood. Thank you, Judge.

Nothing else from the petitioner.

MS. TEACHEY: Judge, how long might we have before this hearing is set? We're in trial for a few things and we would like to revamp some of our pleadings as well.

THE COURT: TROs are only good for 14 days. If we are unable to schedule something I think as you know the Court has the ability to extend that without agreement of the parties for another 14 days.

But should the parties reach agreement for something longer because they are otherwise occupied and need some time, I would not interfere with any agreement for it to go longer.

MR. MORRIS: Okay.

THE COURT: The order I will sign today will only be for 14 days and until there is some other extension it will be for 14 days and we'll get you a TI hearing date.

MR. MORRIS: Thank you, Your Honor.

THE COURT: I don't know what that looks like, if that means it ends up being next week because that's when we can fit you in and then you all want to discuss a different date and then you all can come back to me and we can work on dates if you look at calendars

and are amenable to it, otherwise my order today is only 14 days.

MR. MORRIS: Thank you, Judge.

MS. TEACHEY: My last question I think. I hope. At the last --

THE COURT: Doesn't have to be.

MS. TEACHEY: Thank you, Judge. At the last TI hearing you had rescheduled it for some specific briefing.

Is there any specific briefing to save time for when we come back we should be having prepared?

THE COURT: I don't think so. I think we have answered most of the underlying questions regarding authority.

I mean we talked about some more of them today. If you want to supplement with some of the other -- if you want to supplement you're welcome to supplement. My issues are no different than they were previously and my order is limited as it is.

MS. TEACHEY: Thank you. And then lastly I would just like to correct when I said 611 and 606 and 604, I meant 004, 005 and 006 just so the record is clear.

MR. BRAZELL: Your Honor, just one last thing and this may not be something you want to take up

today in light of what you said a few minutes ago, but Ms. Okonkwo was sued both in her official capacity which may be an appropriate way to address the issues, but also in her individual capacity which is simply overreaching.

We've already submitted our plea to the jurisdiction on all those issues. Ms. Okonkwo is entitled to official immunity, judicial immunity, statutory immunity --

THE COURT: I'm taking no action today. I'm taking no action today.

MR. BRAZELL: That's fine. Thank you, Your Honor.

THE COURT: Anything else?

MS. TEACHEY: Not from Fort Bend.

MR. MORRIS: No, Your Honor.

THE COURT: Ms. Cardwell, anything you want to add?

MS. CARDWELL: No, Your Honor. Thank you.

THE COURT: We're off the record.

(Proceedings adjourned.)

REPORTER'S CERTIFICATE

THE STATE OF TEXAS )
COUNTY OF HARRIS )

I, Mark A. Miller, Official Court Reporter in and for the 11th District Court, Harris County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, Volume 1 of 1, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record, Volume 1 of 1 of the proceedings truly and correctly references the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $_____ and was paid by _____.

WITNESS MY OFFICIAL HAND this the 2nd day of March, 2025.

/s/Mark A. Miller
Mark A. Miller, Texas CSR 1190
Expiration Date: 06/30/25
Official Court Reporter
11th Judicial District Court
Harris County, Texas

CAUSE NO: 2024-78536

| | | |
|---|---|---|
| In re Joshua David Heiliger, Individually, and on behalf of the Estate of Lauren Brittane Smith, deceased, and on behalf of Death Benefits Beneficiaries Joshua David Heiliger and Emma Destiny Heiliger *Petitioner*, | § § § § § § § § § § § | IN THE DISTRICT COURT OF |
| v. | § § § | |
| Texas Department of Insurance, Division of Workers' Compensation; Jeff Nelson, Commissioner, Texas Department of Insurance, Division of Workers' Compensation, in His Official Capacity; Francesca Okonkwo, Administrative Law Judge, Texas Department of Insurance, Division of Workers' Compensation, in Her Official and Individual Capacities; and Greater Houston Psychiatric Associates, PLLC. *Respondents.* | § § § § § § § § § § § § § § § § § § § | 11TH JUDICIAL DISTRICT HARRIS COUNTY, TEXAS |

**PETITIONER'S FOURTH AMENDED VERIFIED ORIGINAL
PETITION FOR DECLARATORY JUDGMENT, APPLICATION FOR
WRIT OF MANDAMUS, TEMPORARY RESTRAINING ORDER, TEMPORARY
INJUNCTION, PERMANENT INJUNCTION**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Petitioner, Joshua Heiliger, individually, and on behalf of the Estate of

Lauren Brittane Smith, deceased, and on behalf of Death Benefits Beneficiaries Joshua David

Heiliger and Emma Destiny Heiliger ("Petitioner"), and files this his Fourth Amended Verified

TAB Z

Original Petition for Declaratory Judgment, Application for Writ of Mandamus, Temporary Restraining Order, Temporary Injunction, and Permanent Injunction against Respondents Francesca Okonkwo, Administrative Law Judge, Texas Department of Insurance, Division of Workers' Compensation, in Her Official and Individual Capacities, and Greater Houston Psychiatric Associates, PLLC, and would show unto the Court as follows:

## DISCOVERY CONTROL PLAN

1.      Petitioner intends that discovery in this case be conducted pursuant to Level 2 of Rule 190.3 of the Texas Rules of Civil Procedure.

## STATEMENT PURSUANT TO TEXAS RULE OF CIVIL PROCEDURE 47

2.      Petitioner only seeks non-monetary relief, *See* Tex. R. Civ. P 47(c)(3)

## PARTIES AND SERVICE

3.      Petitioner, Joshua Heiliger, is an individual residing in the State of Texas.

4.      Respondent Francesca Okonkwo, Administrative Law Judge, Texas Department of Insurance, Division of Workers' Compensation is an appointed administrative law judge of the Texas Department of Insurance, Division of Workers' Compensation which is a political subdivision of the State of Texas that administers and conducts administrative, election, and legal proceedings. Respondent Francesca Okonkwo, Administrative Law Judge, Texas Department of Insurance, Division of Workers' Compensation may be served with process at Texas Department of Insurance, Division of Workers' Compensation, Houston East Field Office, 5425 Polk St. Houston, Texas 77023. Issuance of citation for service of process on Respondent Francesca Okonkwo, Administrative Law Judge, Texas Department of Insurance, Division of Workers' Compensation has already been issued and is not requested to be reissued at this time.

5. Greater Houston Psychiatric Associates, PLLC, is a professional limited liability company organized under the laws of the State of Texas, operating in Harris County. Respondent Greater Houston Psychiatric Associates, PLLC, may be served with process at its principal office and registered address of 4888 Loop Central Driver, Suite 510, Houston, Texas 77081. **Issuance of citation for service of process on Respondent Greater Houston Psychiatric Associates, PLLC, at the address and in the manner stated above is hereby requested.**

## JURISDICTION AND VENUE

6. Pursuant to Texas Civil Practice & Remedies Code § 15.002 venue is proper in Harris County, Texas because all or a substantial part of the events which form the basis of this lawsuit were performed in Harris County. Additionally, venue is proper in Harris County pursuant to Texas Health and Safety Code §611.005 as Petitioner resides in Harris County.

7. This Court has subject matter jurisdiction over this case as the damages or relief sought are within the jurisdictional limits of this Court.

## BACKGROUND FACTS

8. Petitioner respectfully appears before this Court seeking equitable relief to prevent the improper disclosure of privileged and confidential mental health records of his deceased spouse, Mrs. Lauren Smith, in a pending administrative proceeding for a claim of death benefits as the surviving relatives of a first responder believed to have died as a result of her duties with Fort Bend County. After completion of the administrative process, the parties may seek subsequent judicial review in District Court.

9. The central issues before this Court are (1) whether the Petitioner's deceased spouse's mental health records are privileged; (2) if so, are the records subject to discovery and

disclosure in the pending administrative hearing; (3) whether the Administrative Law Judge, Ms. Francesca Okonkwo, overseeing Petitioner's death benefits claim, either failed to conduct a purely ministerial act warranting mandamus relief, and/or committed an ultra vires act, by issuing an administrative subpoena that is not authorized under the Texas Administrative Code or Texas Labor Code; and (4) whether the Administrative Law Judge committed a clear abuse of discretion in issuing the administrative subpoena for privileged mental health records such that mandamus relief is warranted.

### *Inherent Right to Judicial Review*

10. As an initial matter, Petitioner believes the Court has the authority and jurisdiction to hear and rule on Petitioner's claims, and request for equitable relief, as Petitioner has an inherent right to judicial review of the discovery dispute at issue given its implication of Petitioner's constitutional rights. *See Public Utility Commission of Texas*, 778 S.W.2d 195 (Tex. App. – Austin 1989, no writ) (holding that a court has jurisdiction to consider an injunction to protect privileged information); *see also, Pelt v. State Bd. Of Ins.,* 802 S.W.2d 822, 828 (Tex. App. – Austin 1990) (citing and quoting *Public Utility Commission of Texas*: **"'[n]otwithstanding equitable relief, the law provides no means to facilitate the review of an interlocutory discovery ruling governing parties appearing before the Commission. We held, therefore, that temporary injunctive relief was available in the declaratory judgment proceeding which had been filed for the purpose of determining whether the information the agency had ordered produced was protected by [privilege].[1] Otherwise, the party resisting discovery had no adequate remedy at law because the order was not appealable until judicial review of the entire case now**

---

[1] The specific case cited pertains to material claimed to be privileged attorney-work product that was being sought as discovery in an administrative proceeding.

**pending before the agency**."). *See also, Continental Casualty Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 404 (Tex. 2000); *Coastal Habitat All. V. Pub. Util. Comm'n of Tex.*, 294 S.W.3d 276, 285 (Tex. App. – Austin 2009, no pet.) ("Under Texas law, a party may have a right to judicial review of an administrative order if the order adversely affects a vested property right or otherwise violates a constitutional right."); and *Public Util. Comm'n v. Pedernales Elec. Coop., Inc.*, 678 S.W.2d 214, 222 n. 6 (Tex.App.-Austin 1984, writ ref'd n.r.e.) (noting that even if legislature denies judicial review of agency action, judicial review is available for deprivation of a property right without due process).

11.     The Texas Administrative Code (Chapter 142 and the related subsection 142.13 (Discovery)), and the Texas Labor Code (Chapter 410) do not provide any mechanism or avenue for the assertion or application of privilege to discovery requests. [2] Moreover, it does not provide any avenue or mechanism for redress if a discovery request seeks privileged information.

### *Right to Mandamus Relief*

12.     A trial court is authorized to issue writs of mandamus. *See* Tex. Gov't Code Section 24.011; *See also, In re Nolo Press/Folk Law, Inc.* 991 S.W.2d 768, 775 (Tex. 1999) (orig. proceeding) ("the district court has exclusive original jurisdiction over mandamus proceedings except when the Constitution or a statute confers original jurisdiction on another tribunal."); *Grimm v. Garner*, 589 S.W.2d 955, 956 (Tex. 1979) ("District courts are empowered by the Texas Constitution 'to issue writs of . . . mandamus[]. We have interpreted that power to be a grant of distinct jurisdiction, carrying the substantive power to issue the writs named in all cases in which

---

[2] Unlike the Labor Code, the Government Code, says "In a contested case, a state agency shall give effect to the rules of privilege recognized by law." *See* Gov't Code Section 2001.083 (Privileges). Likewise, Section 2001.091 (Discovery) states that "a state agency in which a contested case is pending may order a party to produce [for inspection, copying, or photographing a document] that: (A) is not privileged…"

courts of law or equity under settled rules would have the power to issue them, whether they be necessary to enforce some jurisdiction given by other constitutional provisions or not."). Moreover, mandamus may issue in a proper case to correct a clear abuse of discretion, especially where there is no adequate remedy at law. *Cash v. City of Houston*, 426 S.W.2d 624, 626 (Tex. App. – Houston [14th Dist.] 1968, writ ref'd n.r.e.).

13. Further, sovereign immunity does not apply when constitutional rights are at stake. Article 1, Section 19 of the Texas Constitution safeguards citizens' privileges, including the Doctor-Patient privilege. *See City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995); *see City of El Paso v. Heinrich*, 284 S.W.3d 366, 374 (Tex. 2009).

14. Accordingly, the Petitioner seeks mandamus relief from decisions Petitioner believes are arbitrary and capricious, and ultra vires action, by Respondent Okonkwo, the Administrative Law Judge for the Texas Department of Insurance, Division of Workers' Compensation, at the Houston East Field Office, where the underlying administrative claim remains pending.

*Ultra Vires Action*

15. Additionally, Petitioner asserts the Court has authority and jurisdiction to hear and rule on Petitioner's claim that the Administrative Law Judge, Respondent Okonkwo, committed an ultra vires action by issuing an administrative subpoena that is not permitted under the Texas Administrative Code or the Labor Code. *See* Tex. Admin. Code Section 142.12(a)-(f)(administrative subpoenas). The express legislative authority delegated upon Respondent permits the issuance of either a "deposition subpoena" or a "hearing subpoena," commanding/summoning a person to appear and either testify or produce evidence **at a deposition or at a hearing**. The subpoena at issue solely commands the production of records – without

requiring the individual commanded to appear at a deposition or at a hearing.[3] *See* Exhibits A and C. Thus, the subpoena does not comply with the Texas Administrative Code and is improper on its face. *See* Exhibit G.[4]

16. Considering the statutory and constitutional protections, and binding Texas Supreme Court precedent on the privileged nature of mental health records, as well as the express legislative authority delegated to Respondents, Petitioner respectfully requests this Court declare the mental health records of Mrs. Lauren Brittane Smith privileged, confidential, and not subject of disclosure in the underlying administrative proceeding, as well as issue a temporary injunction order requiring Respondents to vacate the subpoena and subsequent order compelling production and disclosure of the privileged and confidential mental health records.

17. Additionally, Petitioner respectfully requests this Court declare the discovery rules and statutes at issue unconstitutional as they deprive Petitioner of the right to due process of law by not providing for an avenue for assertion or claim of privilege, nor redress in the event of a discovery request or order implicating the disclosure of privileged information or records.

18. Petitioner also requests the Court declare that Respondent Okonkwo exceeded the express statutory authority conferred upon her by issuing an administrative subpoena that is not permitted by the Texas Administrative Code as it exceeds the scope of permissible subpoenas under the Code by not requiring the subpoenaed individual to appear for a deposition or hearing to produce evidence.

---

[3] The subpoena also does not have a stated time for compliance with the subpoena. Despite no compliance date, and the County failing to properly serve the subpoena, a subsequent order to compel pursuant to the subpoena was issued by the Administrative Law Judge.

19.     Further, upon hearing and ultimately trial in this cause, Petitioner respectfully requests this Court issue a temporary, and subsequently a permanent, injunction preventing Respondents from seeking, enforcing, or compelling the production and disclosure of the privileged mental health records of Mrs. Lauren Brittane Smith.

***Administrative Procedural History for Underlying Death Benefits Claim***

20.     On or about April 10, 2023, Mrs. Lauren Smith (deceased), a dedicated paramedic with Fort Bend County Emergency Medical Services (FBEMS), tragically suffered a fatal stroke shortly after returning home after ending an arduous 48-hour shift as a shift supervisor with FBEMS.

21.     On or about April 2, 2024, Petitioner Joshua Heiliger, the surviving spouse of Mrs. Smith, timely filed a death benefits claim with the Texas Department of Insurance, Division of Workers' Compensation on behalf of himself and his daughter, Ms. Emma Heiliger, in accordance with the statutory limitations period.[5]

22.     Fort Bend County (the "County"), a self-insured entity, and thus acting as both the employer and the carrier, has contested whether Mrs. Smith's stroke qualifies as compensable work-related injury. *See* Exhibit J (Denial of Liability/Compensability). The parties are currently navigating the required statutory administrative process before seeking judicial review of the substantive issues in the case.

23.     The County contests the compensability of the death of Mrs. Smith based on the autopsy conducted by the Fort Bend County Medical Examiner who attributed the cause of Mrs. Smith's stroke to "Hypertensive cardiovascular disease aggravated by recent amphetamine use."

---

[5] Ms. Emma Heiliger is also the adopted daughter of Mrs. Lauren Smith.

Mrs. Smith was legally prescribed Adderall and Vyvanse, which were found in her system by the toxicology report. *See* Exhibit J.

24. Mrs. Smith had been legally prescribed, and taking, Adderall and Vyvanse for most of her adult life – without incident. Petitioner, after learning this was the alleged cause of death, sought opinions from Mrs. Smith's treating physicians, including her Primary Care Physician and Pulmonologist[6] both disagreed with the Medical Examiner's conclusion, and asserting that Mrs. Smith's legally prescribed medications, in their opinions, would have not caused her stroke. But that more likely, her recent 48-hour shift as a first responder is what led to the stroke.

25. As part of the administrative discovery phase, Petitioner disclosed over 800 pages of Mrs. Smith's medical records from her primary care physician and pulmonologist to the County. He also provided Mrs. Smith's entire prescription history for the legally prescribed medications which included the dates the prescriptions were filled and the dosages. Lastly, Petitioner provided a letter from Mrs. Smith's Psychiatrist who prescribed the Adderall and Vyvanse, explaining that Mrs. Smith was being treated for ADHD and PTSD, never sought early refills of her medications, and provided the dosages of her medications. However, the Psychiatrist provided no opinion as to Mrs. Smith's cause of death or whether he agreed with the medical examiner.

26. Both Petitioner and the County have engaged medical experts during the administrative process. The County's expert supports the medical examiner's findings that Mrs. Smith's use of legally prescribed amphetamines, in conjunction with her pre-existing hypertension, caused her stroke. In contrast, Petitioner's expert disagrees and has opined that it is unlikely the lawfully prescribed medications caused the stroke given the length of time Mrs. Smith had been

---

[6] Mrs. Smith was hospitalized, including several days in the ICU, in September of 2022 after contracting COVID-19, which kept her away from work until December 2023 (returned on light duty at a desk). Mrs. Smith was finally cleared to work full duty on an ambulance beginning February 2023 – 2 months before she passed.

taking the same dosage of the medications; suggesting instead that Mrs. Smith's recent 48-hour shift as a first responder more likely caused her untimely death.

27.     After attending two required benefit review conferences ("BRCs") with the Texas Department of Insurance, Division of Workers' Compensation, a Contested Case Hearing ("CCH") was scheduled for September 25, 2024.

28.     This hearing occurred, but did not finish as scheduled and has been rescheduled three times – the most recently being reset for January 21, 2025, in light of the parties pending matters before the Court.

*Administrative Subpoena Requesting Mental Health Records*

29.     On or about September 4, 2024, the County, through their counsel, requested Petitioner turn over five (5) years of Mrs. Smith's mental health records from her psychiatrist. Petitioner objected to the request on the basis "these materials are irrelevant, sought for harassment, and most importantly privileged and/or confidential and not subject to disclosure or discovery."

30.     Thereafter, on or about September 5, 2024, the County requested an administrative subpoena from the Texas Department of Insurance, Division of Workers' Compensation, for the disclosure of 23 years of Mrs. Smith's mental health records. *See* Exhibit A. Petitioner objected to this request on the same basis as previously asserted. *See* Exhibit B. On the same day as Petitioner's objection, the County amended its request, reducing the scope to 3 years of records. *See* Exhibit A.

31.     On or about September 6, 2024, the Administrative Law Judge, Ms. Francesca Okonkwo, denied the County's original request for 23 years of records, which was received by Petitioner on or about September 13, 2024.

32. The originally scheduled Contested Case Hearing occurred on or about September 25, 2024. During this hearing, the subpoena, nor any request for mental health records was addressed by any party, and all parties announced ready to proceed with the Hearing. Due to time constraints, the hearing did not finish on September 25, 2024.

33. On or about October 21, 2024, almost 30-days later, Petitioner was informed by the County the Administrative Law Judge had in fact granted its request for an amended subpoena on or about September 19, 2024, ordering the production and disclosure of the Mrs. Smith's mental health records from January 1, 2020, to April 10, 2023. *See* Exhibit A.

34. Neither Petitioner nor his counsel received previous notification of this order from the County, the Administrative Law Judge, or the Texas Department of Insurance, Division of Workers' Compensation.

35. Between on or about September 19, 2024, and the present, the County has attempted to obtain Mrs. Smith's privileged and confidential mental health records pursuant to this administrative subpoena. In addition to emailing and faxing the subpoena request to the psychiatrist office, legal staff for the County, as well as a third-party service provider hired by the County, have placed phone calls into the psychiatrist office between 1-3 times per day. *See* Exhibit E and Exhibit I.

36. On or about October 28, 2024, the County filed a Motion to Compel the production and disclosure of the records with the Administrative Law Judge asking for an Order to compel the production and disclosure pursuant to the subpoena. *See* Exhibit C.

37. On or about October 29, 2024, Petitioner filed a response to the Motion to Compel pointing out that County had not yet properly served the subpoena (and thus the issue was not yet

ripe), and that the subpoena was deficient as it failed to provide a time for compliance. *See* Exhibit D.

38.    Additionally, on or about October 30, 2024, Petitioner filed a Motion for Reconsideration and to Vacate the Subpoena on the grounds that the Mental Health Records are confidential and privileged under the Health and Safety Code, and the Texas Rules of Evidence, the subpoena as issued exceeds the express statutory authority delegated per the Texas Administrative Code, and the subpoena does not contain a time for compliance. *See* Exhibit E.

39.    On or about November 4, 2024, Petitioner received notification from the Texas Department of Insurance, Division of Workers' Compensation the Administrative Law Judge, Ms. Francesca Okonkwo, granted the County's Motion to Compel. *See* Exhibit F.

40.    On or about November 8, 2024, Petitioner received notification from counsel for the County that it intended to file a Motion for Continuance of the Contested Case Hearing based on its failure to receive the protected and confidential mental health records from the psychiatrist office pursuant to the subpoena and order to compel. Thereafter, on or about November 11, 2024, the County filed its Motion for Continuance.

41.    On or about November 14, 2024, the Administrative Law Judge granted the County's opposed motion for second continuance.

42.    As of the filing of this Fourth Amended Petition, on or about December 27, 2024, a second subpoena request was submitted by Fort Bend County to Respondent Okonkwo, which has not yet been ruled upon as far as Petitioner is aware. The substance of the second subpoena is the same as the first subpoena, in that it is seeking production of three years of all of Mrs. Smith's mental health records – wholly unredacted – as a "deposition subpoena." *See* Exhibit M and N. Petitioner timely objected to this request. *See* Exhibit O. Should Respondent Okonkwo grant this

Second Subpoena prior to a ruling by the Court on the discoverability of the mental health records – as requested by Petitioner herein – Petitioner intends to present evidence of this additional subpoena in support of his claims and requested relief.

***Medical/Mental Health Records are Privileged Under the Texas and U.S. Constitution***

43.     The medical records of an individual have been held to be within the zone of privacy protected by the United States Constitution. *See In re Xeller*, 6 S.W.3d 618, 625 (Tex. App.—Houston [14th. Dist.] 1999, orig. proceeding). To determine whether the pursuit of justice between litigants outweighs the protection of privacy, the courts balance the privacy interest against competing claims of relevance and need. *See Maresca v. Marks*, 362 S.W.2d 299, 301 (Tex. 1962) (orig. proceeding). Because the protection of privacy is fundamental and of constitutional import, discovery must be scrupulously limited to what is material and relevant to the cause of action at issue. *In re United Servs. Auto Ass'n*, 76 S.W.3d 112, 115 (Tex. App.—San Antonio 2002, orig. proceeding).

***The Texas Health and Safety Code Confidentiality of Mental Health Records***

44.     Per the Texas Health and Safety Code, Section 611.002, the mental health records requested are privileged and confidential between the patient and a professional, such as her psychiatrist, and may not be disclosed except for in extremely limited circumstances – none of which are present here. Tex. Health & Safety Code § 611.002 (a)-(b). Specifically, the code states "[c]ommunications between a patient and professional, and records of the identity, diagnosis, evaluation, or treatment of a patient that are created or maintained by a professional, are confidential." *Id; see also,* Exhibit H.

45.     Seeing as the County wishes to obtain the "progress notes" and "records" from Mrs. Smith's psychiatrist, the requested records will undeniably contain Mrs. Smith communications as well as any diagnosis, evaluations, or treatment of a patient by the psychiatrist

46.     The Texas Health and Safety Code, Section 611.002 states the only exceptions to the confidential and privileged status of mental health records, permitting disclosure, are found in Sections 611.004, 611.0041, and 611.0045. None of the enumerated exceptions are applicable in this case to justify disclosure of the mental health records.

47.     Section 611.004 provides a list of eleven scenarios where a professional may disclose confidential information without being liable for improper disclosure. *Id.* at § 611.004. None of the eleven scenarios enumerated are applicable here or provide a specific basis to authorize or order the disclosure.

48.     The only portion that is relevant from Section 611.004 is subsection (a)(1) which simply says "if the disclosure is required or authorized by law" the records may be disclosed to a governmental agency. However, this does not provide an independent basis to pierce the confidentiality and privilege, nor does it make the mental health records relevant and material or bring them out of the realm of the request being harassing, abusive, overly burdensome, vague, or not proportional to the needs of the case. This section simply provides a safe harbor for the professional to avoid possible civil or criminal liability for complying with an order to produce the records.

49.     Section 611.0041 permits a professional to disclose confidential to the descendant of a patient of a state hospital if the patient has been deceased for 50 years and the professional does have information that disclosure is against the patient's or the estate's previously expressed preference. *Id.* at §611.0041. This clearly does not apply here.

50. Section 611.0045 entitles a patient the right to have access to their own confidential, mental health records. *Id.* at §611.0045. Again, not applicable here.

51. Therefore, the records are per se confidential and may not be disclosed unless an enumerated exception applies, or consent of the patient or representative of the patient is provided. *See* Tex. Health & Safety Code, § 611.002 (a)-(b). The Petitioner does not provide consent.

***The Texas Rules of Evidence and Texas Supreme Court Case Law on Privilege and Confidentiality of Mental Health Records***

52. Per the Supreme Court of Texas, and the Texas Rules of Evidence, the standard for the discoverability of privileged mental health records in a legal dispute is whether the "records are 'relevant to the condition at issue' and whether the condition itself is of legal consequence to a claim or defense." *R.K. v. Ramirez*, 887 S.W.2d 836, 842 (Tex. 1994) ("As a general rule, a mental condition will be 'part' of the claim or defense if the pleadings indicate that the jury must make a factual determination concerning the condition itself.").

53. The only issue of dispute in this case is whether Mrs. Smith's stroke resulted from her use of legally prescribed amphetamines (as argued by the County) or whether it was a result of the 48-hour shift she had just ended mere hours prior to the stroke (as argued by the Petitioner). There is nothing in this case that revolves around or turns on whether Mrs. Smith had ADHD or PTSD such that a fact finder would be required to make a finding of these conditions themselves. *See* Exhibit J. Moreover, the prescription records, which dictate the dosage and frequency of refills – which would be useful to the County's "defense" – have already been turned over in their entirety. Thus, the County is on a fishing expedition.

54. Petitioner, as the surviving spouse and party representative of Mrs. Lauren Smith's estate, does not consent to the release of his wife's mental health records and now seeks equitable

relief in the form of a Declaratory Judgment, a Temporary Restraining Order, Temporary Injunction, and Permanent Injunction.

<u>EVIDENCE IN SUPPORT OF RELIEF REQUESTED</u>

55. The following exhibits are offered in support of the requested relief and fully incorporated as if restated herein:

EXHIBIT A: COUNTY'S ORIGINAL AND AMENDED MOTION FOR SUBPOENA OF MENTAL HEALTH RECORDS, ORDER, AND SUBPOENA

EXHIBIT B: PETITIONER'S OBJECTION TO SUBPOENA REQUEST

EXHIBIT C: COUNTY'S MOTION TO COMPEL PRODUCTION OF MENTAL HEALTH RECORDS

EXHIBIT D: PETITIONER'S RESPONSE TO MOTION TO COMPEL

EXHIBIT E: PETITIONER'S MOTION FOR RECONSIDERATION AND TO VACATE SUBPOENA

EXHIBIT F: ADMINISTRATIVE LAW JUDGE'S ORDER COMPELLING PRODUCTION OF MENTAL HEALTH RECORDS

EXHIBIT G: TEXAS ADMINISTRATIVE CODE, SECTION 142.12

EXHIBIT H: TEXAS HEALTH AND SAFETY CODE

EXHIBIT I: DECLARATION OF GERRI BAKER

EXHIBIT J: DENIAL OF LIABILITY/COMPENSABILITY

EXHIBIT K: COUNTY'S OPPOSED MOTION FOR SECOND CONTINUANCE

EXHIBIT L: PETITIONER'S RESPONSE TO SECOND CONTINUANCE

EXHIBIT M: COUNTY'S MOTION FOR ADDITIONAL DISCOVERY ("DEPOSITION SUBPOENA") SUBMITTED DEC 27, 2024

EXHIBIT N: NOTICE OF DEPOSITION AND SUBPOENA ISSUED BY COUNTY

## CAUSES OF ACTION

### *Declaratory Judgment*

56.    All factual allegations set forth above are incorporated by reference in support of this cause of action.

57.    Petitioner asks that the Court determine and declare:

a.  Petitioner has a constitutional and statutory right to assert or claim privilege over the mental health records of his deceased wife, Mrs. Lauren Smith to prevent the disclosure of the sought mental health records;

b.  Petitioner asserted or invoked said privilege;

c.  Mrs. Smith's mental health records are not discoverable in the underlying administrative proceeding now pending before the Texas Department of Insurance, Division of Workers' Compensation, Claim No. 24229142; and,

d.  The Administrative Law Judge's order dated September 19, 2024, and the resulting subpoena, are ultra vires actions because the subpoena does not summon or compel production of the requested documents at a deposition or hearing, as required by the Texas Administrative Code, Section 142.12.

### *Writ of Mandamus*

58.    All factual allegations set forth above are incorporated by reference in support of this cause of action.

59.    The Court has jurisdiction over this mandamus action under Tex. Gov't code Section 24.011. *Anderson v. City of Seven Points,* 806 S.W.2d, 791, 792 n.1 (Tex. 1991) ("an original proceeding for a writ of mandamus initiated in the trial court is a civil action subject to trial and appeal on substantive law issues and the rules of procedure as any other civil suit."); *Id.* at 793 ("A writ of mandamus will issue to compel a public official to perform a ministerial act."). Additionally, "Mandamus may issue in a proper case to correct a clear abuse of discretion, especially where there is no adequate remedy at law." *Cash v. City of Houston,* 426 S.W.2d 624,

627 (Tex. App. – Houston [14th Dist.] 1968, writ ref'd n.r.e.) (citing *Dykes v. City of Houston*, 406 S.W.2d 176 (Tex. 1966) and *Womack v. Berry*, 291 S.W.2d 677 (Tex. 1956); *see also, Driggs v. City of Denison*, 420 S.W.2d 446, 448 (Tex. App. – Dallas 1967, no writ) ("a mandamus will lie to correct a gross abuse of discretion. . .").

60.     Generally, privileged matters are not discoverable. *In re Fort Worth Children's Hosp.*, 100 S.W.3d 582, 587 (Tex.App.- Fort Worth 2003, orig. proceeding); *see In re Nance*, 143 S.W.3d 506, 510 (Tex.App.-Austin 2004, orig. proceeding). A discovery order is improper if it compromises a person's right to possible claims of privilege or mandates the disclosure of privileged information that exceeds the scope of discovery. *Fort Worth Children's Hosp.*, 100 S.W.3d at 587. Mandamus is the appropriate remedy when an official has erroneously granted discovery of privileged documents. *Id.* Remedy by appeal in that case is ineffective because, once revealed, the documents cannot be protected. *Id.*

61.     Petitioner seeks mandamus relief for the Respondent Okonkwo's failure to perform a ministerial act, asserting that Respondent Okonkwo lacks the discretion to issue an invalid subpoena that exceeds the authority granted under the Texas Administrative Code and Texas Labor Code. While the initial determination to issue a subpoena may involve discretion, the law prescribes the specific form and manner of the subpoena, leaving no room for deviation.

62.     Petitioner also seeks mandamus relief for Respondent Okonkwo's exercise of discretion that Petitioner believes was arbitrary or capricious, i.e. clear or gross abuse of discretion, in issuing an administrative subpoena mandating the full disclosure of three years of privileged mental health records – contrary to Texas law, and the U.S. Constitution.

63.     Petitioner respectfully requests the Court to issue writs compelling Respondent Okonkwo to fulfill her ministerial duty in accordance with the law. Additionally, Petitioner seeks

a writ directing Respondent Okonkwo to void or withdraw her orders granting the disputed subpoena and motion to compel, as these actions constitute a clear or gross abuse of discretion, or were manifestly arbitrary and capricious, and contrary to the law.

*Ultra Vires Acts*

64. All factual allegations set forth above are incorporated by reference in support of this cause of action.

65. Sovereign immunity does not bar a declaratory judgment suit against a government official seeking a declaration that the official has acted outside her constitutional or statutory authority or has failed to perform a purely ministerial action. *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009).

66. The subpoena issued by the Administrative Law Judge exceeds the permissible scope of the express legislative authority conferred upon Respondents. *See* Tex. Admin. Code Section 142.12. Specifically, the subpoena does not command or summon the custodian of records to appear for a deposition or a hearing. Rather, it only commands or summons the custodian of records to produce for inspection and copying the mental health records with no time or date for compliance. *See* Exhibit A.

67. This is directly contrary to the express language of Texas Administrative Code, Section 142.12 – the legal basis of the subpoena itself. *See* Tex. Admin. Code §142.12(a)(3) (Definitions . . . Subpoena – A division order issued by the administrative law judge requiring a person to attend or produce evidence **at a deposition (deposition subpoena) or at a hearing (hearing subpoena)**; *see also*, Tex. Admin. Code §142.12(c) (Request for subpoena. A party may request a subpoena in the following manner: (1) If the requester is a carrier . . . the request shall:

**(C) state whether the subpoena is for a deposition or a hearing);** Tex. Admin. Code §142.12(f) (costs for "**attend[ing] a hearing or deposition**.") (emphasis added).

68.     Thus, the subpoena issued by the Administrative Law Judge exceeds the permissible scope of the express legislative authority conferred upon Respondents.

### INJUNCTIVE RELIEF

*Temporary Restraining Order, Temporary Injunction, and Permanent Injunction*

69.     Petitioner will suffer immediate and irreparable harm, loss, and damage in the form of improper disclosure and waiver of privilege, a constitutional and statutory right that cannot be undone if Petitioner is required to wait for judicial review of the entire administrative proceeding before having the ability to challenge a discovery ruling ordering the production of privileged materials. The mental health records sought are constitutionally, and statutorily, protected as privileged records.[7] Petitioner's right to assert any sort of privilege over his wife's mental health records would be immediately destroyed and unable to be remedied, directly resulting from Respondents' wrongful acts unless a Temporary Restraining Order is entered in this matter.

70.     There is an imminent danger that Petitioner will incur immediate and irreparable injury, loss, and damage if the Respondents are not ordered to refrain from these actions. Petitioner has no adequate remedy at law due to the nature of the administrative process at issue and the lack of an alternative remedy in the administrative process. *See In re Fort Worth Children's Hops.*, 100 S.W.3d 582, 587 (Tex. App. – Fort Worth, 2003, orig. proceeding) ("A discovery order is improper if it compromises a person's right to possible claims of privilege or mandates the disclosure of

---

[7] The U.S. and Texas Constitutions, the Texas Rules of Evidence (509-510), and the Health and Safety Code (Section 611.002) all recognized the privileged and confidential nature of mental health or medical records.

privileged information that exceeds the scope of discovery" and "[r]emedy by appeal in that case is ineffective because, once revealed, the documents cannot be protected.").

71.     The irreparable injury which Petitioner seeks to avoid by obtaining equitable relief arises from the very nature of the privilege and confidentiality that attaches to the mental health records being sought by the County and ordered disclosed by Respondent Okonkwo. The Legislature and the Courts have gone so far as to explicitly protect these mental health records except in very limited circumstances –which are not applicable here. If these mental health records are disclosed, the resulting harm is irreparable as Petitioner will have no further recourse to enforce the privilege and confidential nature of these records in either the administrative phase or the judicial review phase as the privilege would effectively be waived and ceased to exist. *See In re Fort Worth Children's Hops.*, 100 S.W.3d 582, 587 (Tex. App. – Fort Worth, 2003, orig. proceeding) ("A discovery order is improper if it compromises a person's right to possible claims of privilege or mandates the disclosure of privileged information that exceeds the scope of discovery" and "[r]emedy by appeal in that case is ineffective because, once revealed, the documents cannot be protected.").

72.     Likely, the County will be utilizing the same expert witness[8] at the de novo judicial review of this matter, and even if a subsequent Court finds the mental health records (or the information contained therein) inadmissible pursuant to the Texas Rules of Evidence, Rule 509-510, the County and its expert(s) will already have reviewed these mental health records by way of this disclosure occurring at the administrative phase pursuant to Respondent Okonkwo's orders and subpoena.

---

[8] Even if they change expert witnesses, the Mental Health Records will already be in possession of the County.

73.     There is a strong probability that Petitioner has a meritorious right of recovery against Respondents should the improper disclosure occur given the facts and legal framework outlined above. While the disclosure has not yet occurred, the risk of improper disclosure and resulting irreparable harm – given the scope of administrative subpoena, and the steps taken by the County to get the mental health records via the subpoena – is substantial enough to warrant seeking the Court's immediate relief. Due to the difficulty of precisely measuring any monetary damages incurred as a result of improper disclosure of protected mental health records, injunctive relief is required to adequately limit its damages, and to prevent future injury.

74.     Petitioner respectfully requests the Court issue a temporary restraining order and to grant such other injunctive or equitable relief against Respondents, and all those in active concert and participation with them, preventing or prohibiting the disclosure of Mrs. Smith's mental health records.

### *Injunctive Relief Sought:*

75.     Petitioner seeks a temporary restraining order that Respondents, and those persons in active concert or participation with Respondents who receive notice of this Order, by personal service, through their counsel of record, or otherwise, including facsimile transmission or email, be immediately ordered to refrain from directly or indirectly:

    a.  seeking to obtain in any way, or disclosing in any way, Lauren Smith's mental health records, or the information contained therein, from Greater Houston Psychiatric Associates, PLLC, and/or Dr. John Marcellus;

    b.  enforcing, or attempting to enforce, the orders of Ms. Francesca Okonkwo, Administrative Law Judge, dated September 19, 2024, and October 30, 2024, granting the administrative subpoena for Lauren Smith's records from Dr. John Marcellus and compelling production and disclosure of Lauren Smith's records from Dr. John Marcellus, respectively; and,

c. sanctioning, or seeking to impose sanctions, or any other type of administrative penalty or recourse against Petitioner for withholding consent to provide or produce the privileged records pertaining to Mrs. Lauren Brittane Smith from Dr. John Marcellus.

76. Petitioner further seeks a temporary injunction and, upon final trial hereof, a permanent injunction as set forth herein.

77. Unless they are enjoyed, the Respondents, and those acting in concert with Respondents, have made it apparent they will continue to seek to obtain or disclose Lauren Smith's mental health records in violation of Texas Law and the US Constitution. If not restrained, these actions will cause, and continue to cause, imminent and irreparable harm for which there is no adequate remedy at law. In the absence of a temporary restraining order and an injunction, Respondents, and those acting in concert with them, will continue to engage in activities directly contrary to the legal protections and privileges to shield the improper disclosure of mental health records.

78. Should the improper disclosure occur, Petitioner has a probable right of recovery against Respondents, and others, for the improper disclosure of said mental health records.

79. Petitioner has provided Respondents with sufficient notice of this application and the hearing on the merits, consistent with Texas Rule of Civil Procedure 681.

80. Petitioner is willing and able to post bond, as ordered by the Court, in support of any injunctive order issued by the Court. As of the filing of this Fourth Amended Petition, Petitioner has already posted the previously order bond in the amount of $500 with the Clerk of Court. Petitioner further asks that this bond be applied to any future equitable relief granted by the Court.

## EXPEDITED DISCOVERY IS NECESSARY TO PROTECT PETITIONER

81.     In order to assure that Respondents do not continue their wrongful conduct, and to allow Petitioner to minimize and/or mitigate the damages that Respondents' wrongful conduct has, may, or will cause to Petitioner, and to properly prepare for a temporary injunction hearing, Petitioner requests that the Court issue an order granting expedited discovery. Petitioner has filed a Motion for Expedited Discovery, wherein Petitioner will be seeking limited deposition testimony regarding Respondents conduct as alleged herein.

## ATTORNEY'S FEES

82.     Respondents have made it necessary for Petitioner to employ the undersigned attorneys to institute this action. Petitioner will incur reasonable attorney fees in the prosecution of this matter and in the event of appeal. Petitioner, therefore, requests an award of his reasonable and necessary attorney fees as provided under the Texas Civil Practice and Remedies Code Chapter 37 because this suit includes a request for declaratory judgment.

## CONDITIONS PRECEDENT

83.     All conditions precedent to Petitioner's right to relief and the claims made the subject of this suit have been performed or have occurred.

## NOTICE PURSUANT TO TEXAS RULE OF CIVIL PROCEDURE 193.7

84.     Please take notice that pursuant to Texas Rule of Civil Procedure Section 193.7, Petitioner intend to use any and all documents produced in response to written discovery by Respondents, all other parties to this action, against such party in any pretrial proceeding and in trial of this cause.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Petitioner pray that Respondents be cited to appear and answer herein and that upon trial or final hearing Petitioner has judgment of this Court as follows:

    a.  A temporary restraining order;

    b.  A temporary and permanent injunction;

    c.  A writ of mandamus;

    d.  Declaratory judgment; and

    e.  Such other equitable and legal relief to which Petitioner may be justly entitled.

Respectfully submitted,

/s/ Russell L. Morris
Russell L. Morris
State Bar No. 24099150
Andrew W. Bruce
State Bar No. 24113627
Pablo A. Franco
State Bar No. 24121625
MCBRYDE FRANCO, PLLC
11000 Richmond Avenue, Suite 350
Houston, TX 77042
(713) 223-7699
(512) 691-9072 [facsimile]
serv.russell@mf-txlaw.com

**ATTORNEYS FOR PETITIONER**

## VERIFICATION

The undersigned states under oath: "I am the Petitioner in the above styled matter. I have read the facts asserted in the paragraphs of the above pleading, and the statements contained therein are within my personal knowledge and are true and correct to the best of my knowledge."


Joshua David Heiliger (Jan 9, 2025 11:37 CST)

Joshua David Heiliger,

*Pursuant to Texas Civil Practice and Remedies Code Section 132.001, an unsworn declaration may be used in lieu of a written sworn declaration, verification, certification, oath or affidavit required by statute or required by rule, order or requirement adopted as provided by law.*

"My name is Joshua David Heiliger, my date of birth is 02/09/1973 and my address is

1748 Nina Lee Lane, Houston, Texas 77018, USA.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Harris County, State of Texas on the 9th day of January 2025.

Joshua David Heiliger (Jan 9, 2025 11:37 CST)

Declarant"

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Shauna O'Brien on behalf of Russell Morris
Bar No. 24099150
shauna@mf-txlaw.com
Envelope ID: 96036735
Filing Code Description: Amended Filing
Filing Description: Petitioner's 4th Amended Petition
Status as of 1/9/2025 4:19 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Russell Morris | 24099150 | serv.russell@mf-txlaw.com | 1/9/2025 12:18:03 PM | SENT |
| Pablo Franco | | serv.pablo@mf-txlaw.com | 1/9/2025 12:18:03 PM | SENT |
| Andrew Bruce | | serv.andrew@mf-txlaw.com | 1/9/2025 12:18:03 PM | SENT |
| Catherine Hughes | | catherine.hughes@oag.texas.gov | 1/9/2025 12:18:03 PM | SENT |
| Sherlyn Harper | | Sherlyn.Harper@oag.texas.gov | 1/9/2025 12:18:03 PM | SENT |
| Meridith Fischer | | Meridith.Fischer@oag.texas.gov | 1/9/2025 12:18:03 PM | SENT |
| James Z.Brazell | | james.brazell@oag.texas.gov | 1/9/2025 12:18:03 PM | SENT |
| Marilyn Allen | 24025225 | mallen@dgplawfirm.com | 1/9/2025 12:18:03 PM | SENT |
| Mary Markantonis | 12986800 | mmarkantonis@dgplawfirm.com | 1/9/2025 12:18:03 PM | SENT |
| Dean Pappas | 15454375 | dpappas@dgplawfirm.com | 1/9/2025 12:18:03 PM | SENT |
| Lisa Teachey | | lteachey@dgplawfirm.com | 1/9/2025 12:18:03 PM | SENT |
| Sherlyn Harper | | Sherlyn.Harper@oag.texas.gov | 1/9/2025 12:18:03 PM | SENT |

Vernon's Texas Statutes and Codes Annotated
    Government Code (Refs & Annos)
        Title 2. Judicial Branch (Refs & Annos)
            Subtitle A. Courts
                Chapter 24. District Courts (Refs & Annos)
                    Subchapter A. General Provisions

V.T.C.A., Government Code § 24.007

§ 24.007. Jurisdiction

Currentness

(a) The district court has the jurisdiction provided by Article V, Section 8, of the Texas Constitution.

(b) A district court has original jurisdiction of a civil matter in which the amount in controversy is more than $500, exclusive of interest.

**Credits**

Acts 1985, 69th Leg., ch. 480, § 1, eff. Sept. 1, 1985. Amended by Acts 1987, 70th Leg., ch. 148, § 1.36, eff. Sept. 1, 1987; Acts 2011, 82nd Leg., 1st C.S., ch. 3 (H.B. 79), § 3.02, eff. Jan. 1, 2012.

V. T. C. A., Government Code § 24.007, TX GOVT § 24.007
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

TAB AA

Vernon's Texas Statutes and Codes Annotated
  Government Code (Refs & Annos)
    Title 10. General Government (Refs & Annos)
      Subtitle A. Administrative Procedure and Practice
        Chapter 2001. Administrative Procedure (Refs & Annos)
          Subchapter C. Contested Cases: General Rights and Procedures (Refs & Annos)

V.T.C.A., Government Code § 2001.054

§ 2001.054. Licenses

Currentness

(a) The provisions of this chapter concerning contested cases apply to the grant, denial, or renewal of a license that is required to be preceded by notice and opportunity for hearing.

(b) If a license holder makes timely and sufficient application for the renewal of a license or for a new license for an activity of a continuing nature, the existing license does not expire until the application has been finally determined by the state agency. If the application is denied or the terms of the new license are limited, the existing license does not expire until the last day for seeking review of the agency order or a later date fixed by order of the reviewing court.

(c) A revocation, suspension, annulment, or withdrawal of a license is not effective unless, before institution of state agency proceedings:

(1) the agency gives notice by personal service or by registered or certified mail to the license holder of facts or conduct alleged to warrant the intended action; and

(2) the license holder is given an opportunity to show compliance with all requirements of law for the retention of the license.

(c-1) A state agency that has been granted the power to summarily suspend a license under another statute may determine that an imminent peril to the public health, safety, or welfare requires emergency action and may issue an order to summarily suspend the license holder's license pending proceedings for revocation or other action, provided that the agency incorporates a factual and legal basis establishing that imminent peril in the order. Unless expressly provided otherwise by another statute, the agency shall initiate the proceedings for revocation or other action not later than the 30th day after the date the summary suspension order is signed. The proceedings must be promptly determined, and if the proceedings are not initiated before the 30th day after the date the order is signed, the license holder may appeal the summary suspension order to a Travis County district court. This subsection does not grant any state agency the power to suspend a license without notice and an opportunity for a hearing.

(d) A license described in Subsection (a) remains valid unless it expires without timely application for renewal, is amended, revoked, suspended, annulled, or withdrawn, or the denial of a renewal application becomes final. The term or duration of a

TAB BB

license described in Subsection (a) is tolled during the period the license is subjected to judicial review. However, the term or duration of a license is not tolled if, during judicial review, the licensee engages in the activity for which the license was issued.

(e) In a suit for judicial review of a final decision or order of a state agency brought by a license holder, the agency's failure to comply with Subsection (c) shall constitute prejudice to the substantial rights of the license holder under Section 2001.174(2) unless the court determines that the failure did not unfairly surprise and prejudice the license holder or that the license holder waived the opportunity provided in Subsection (c)(2) to show compliance with all requirements of law for the retention of the license.

**Credits**

Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993. Amended by Acts 1995, 74th Leg., ch. 589, § 1, eff. Sept. 1, 1995; Acts 2015, 84th Leg., ch. 625 (S.B. 1267), § 2, eff. Sept. 1, 2015; Acts 2017, 85th Leg., ch. 430 (S.B. 1446), § 2, eff. Sept. 1, 2017.

V. T. C. A., Government Code § 2001.054, TX GOVT § 2001.054

Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
    Government Code (Refs & Annos)
        Title 10. General Government (Refs & Annos)
            Subtitle A. Administrative Procedure and Practice
                Chapter 2001. Administrative Procedure (Refs & Annos)
                    Subchapter C. Contested Cases: General Rights and Procedures (Refs & Annos)

V.T.C.A., Government Code § 2001.061

§ 2001.061. Ex Parte Consultations

Currentness

(a) Unless required for the disposition of an ex parte matter authorized by law, a member or employee of a state agency assigned to render a decision or to make findings of fact and conclusions of law in a contested case may not directly or indirectly communicate in connection with an issue of fact or law with a state agency, person, party, or a representative of those entities, except on notice and opportunity for each party to participate.

(b) A state agency member may communicate ex parte with another member of the agency unless prohibited by other law.

(c) Under Section 2001.090, a member or employee of a state agency assigned to render a decision or to make findings of fact and conclusions of law in a contested case may communicate ex parte with an agency employee who has not participated in a hearing in the case for the purpose of using the special skills or knowledge of the agency and its staff in evaluating the evidence.

**Credits**
Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993.

V. T. C. A., Government Code § 2001.061, TX GOVT § 2001.061
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

TAB CC

Vernon's Texas Statutes and Codes Annotated
  Government Code (Refs & Annos)
    Title 10. General Government (Refs & Annos)
      Subtitle A. Administrative Procedure and Practice
        Chapter 2001. Administrative Procedure (Refs & Annos)
          Subchapter C. Contested Cases: General Rights and Procedures (Refs & Annos)

V.T.C.A., Government Code § 2001.062

§ 2001.062. Examination of Record by State Agency; Proposal for Decision

Currentness

(a) In a contested case, if a majority of the state agency officials who are to render a final decision have not heard the case or read the record, the decision, if adverse to a party other than the agency itself, may not be made until:

(1) a proposal for decision is served on each party; and

(2) an opportunity is given to each adversely affected party to file exceptions and present briefs to the officials who are to render the decision.

(b) If a party files exceptions or presents briefs, an opportunity shall be given to each other party to file replies to the exceptions or briefs.

(c) A proposal for decision must contain a statement of the reasons for the proposed decision and of each finding of fact and conclusion of law necessary to the proposed decision. The statement must be prepared by the individual who conducted the hearing or by one who has read the record.

(d) A proposal for decision may be amended in response to exceptions, replies, or briefs submitted by the parties without again being served on the parties.

(e) The parties by written stipulation may waive compliance with this section.

**Credits**
Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993.

V. T. C. A., Government Code § 2001.062, TX GOVT § 2001.062
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Vernon's Texas Statutes and Codes Annotated
  Government Code (Refs & Annos)
    Title 10. General Government (Refs & Annos)
      Subtitle A. Administrative Procedure and Practice
        Chapter 2001. Administrative Procedure (Refs & Annos)
          Subchapter C. Contested Cases: General Rights and Procedures (Refs & Annos)

V.T.C.A., Government Code § 2001.062

§ 2001.062. Examination of Record by State Agency; Proposal for Decision

Currentness

(a) In a contested case, if a majority of the state agency officials who are to render a final decision have not heard the case or read the record, the decision, if adverse to a party other than the agency itself, may not be made until:

  (1) a proposal for decision is served on each party; and

  (2) an opportunity is given to each adversely affected party to file exceptions and present briefs to the officials who are to render the decision.

(b) If a party files exceptions or presents briefs, an opportunity shall be given to each other party to file replies to the exceptions or briefs.

(c) A proposal for decision must contain a statement of the reasons for the proposed decision and of each finding of fact and conclusion of law necessary to the proposed decision. The statement must be prepared by the individual who conducted the hearing or by one who has read the record.

(d) A proposal for decision may be amended in response to exceptions, replies, or briefs submitted by the parties without again being served on the parties.

(e) The parties by written stipulation may waive compliance with this section.

**Credits**
Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993.

V. T. C. A., Government Code § 2001.062, TX GOVT § 2001.062
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

**End of Document**                                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Government Code (Refs & Annos)
    Title 10. General Government (Refs & Annos)
      Subtitle A. Administrative Procedure and Practice
        Chapter 2001. Administrative Procedure (Refs & Annos)
          Subchapter F. Contested Cases: Final Decisions and Orders; Motions for Rehearing (Refs & Annos)

V.T.C.A., Government Code § 2001.141

§ 2001.141. Form of Decision; Findings of Fact and Conclusions of Law

Currentness

(a) A decision or order of a state agency that may become final under Section 2001.144 that is adverse to any party in a contested case must be in writing and signed by a person authorized by the agency to sign the agency decision or order.

(b) A decision or order that may become final under Section 2001.144 must include findings of fact and conclusions of law, separately stated.

(c) Findings of fact may be based only on the evidence and on matters that are officially noticed.

(d) Findings of fact, if set forth in statutory language, must be accompanied by a concise and explicit statement of the underlying facts supporting the findings.

(e) If a party submits under a state agency rule proposed findings of fact or conclusions of law, the decision or order shall include a ruling on each proposed finding or conclusion.

**Credits**
Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993. Amended by Acts 2015, 84th Leg., ch. 625 (S.B. 1267), § 3, eff. Sept. 1, 2015.

V. T. C. A., Government Code § 2001.141, TX GOVT § 2001.141
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

TAB DD

Vernon's Texas Statutes and Codes Annotated
  Government Code (Refs & Annos)
    Title 10. General Government (Refs & Annos)
      Subtitle A. Administrative Procedure and Practice
        Chapter 2001. Administrative Procedure (Refs & Annos)
          Subchapter H. Court Enforcement (Refs & Annos)

V.T.C.A., Government Code § 2001.202

§ 2001.202. Court Enforcement of Final Orders, Decisions, and Rules

Currentness

(a) The attorney general, on the request of a state agency to which it appears that a person is violating, about to violate, or failing or refusing to comply with a final order or decision or an agency rule, may bring an action in a district court authorized to exercise judicial review of the final order or decision or the rule to:

(1) enjoin or restrain the continuation or commencement of the violation; or

(2) compel compliance with the final order or decision or the rule.

(b) The action authorized by this section is in addition to any other remedy provided by law.

**Credits**
Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993.

V. T. C. A., Government Code § 2001.202, TX GOVT § 2001.202
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

TAB EE

Vernon's Texas Statutes and Codes Annotated
   Labor Code (Refs & Annos)
      Title 5. Workers' Compensation (Refs & Annos)
         Subtitle A. Texas Workers' Compensation Act (Refs & Annos)
            Chapter 401. General Provisions
               Subchapter B. Definitions

V.T.C.A., Labor Code § 401.011

§ 401.011. General Definitions

Currentness

In this subtitle:

(1) "Adjuster" means a person licensed under Chapter 4101, Insurance Code.

(2) "Administrative violation" means a violation of this subtitle, a rule adopted under this subtitle, or an order or decision of the commissioner that is subject to penalties and sanctions as provided by this subtitle.

(3) "Agreement" means the resolution by the parties to a dispute under this subtitle of one or more issues regarding an injury, death, coverage, compensability, or compensation. The term does not include a settlement.

(4) "Alien" means a person who is not a citizen of the United States.

(5) "Benefit" means a medical benefit, an income benefit, a death benefit, or a burial benefit based on a compensable injury.

(5-a) "Case management" means a collaborative process of assessment, planning, facilitation, and advocacy for options and services to meet an individual's health needs through communication and application of available resources to promote quality, cost-effective outcomes.

(6) "Certified self-insurer" means a private employer granted a certificate of authority to self-insure, as authorized by this subtitle, for the payment of compensation.

(7) "Child" means a son or daughter. The term includes an adopted child or a stepchild who is a dependent of the employee.

(8) "Commissioner" means the commissioner of workers' compensation.

TAB FF

(9) "Commute" means to pay in a lump sum.

(10) "Compensable injury" means an injury that arises out of and in the course and scope of employment for which compensation is payable under this subtitle.

(11) "Compensation" means payment of a benefit.

(12) "Course and scope of employment" means an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer. The term includes an activity conducted on the premises of the employer or at other locations. The term does not include:

  (A) transportation to and from the place of employment unless:

    (i) the transportation is furnished as a part of the contract of employment or is paid for by the employer;

    (ii) the means of the transportation are under the control of the employer; or

    (iii) the employee is directed in the employee's employment to proceed from one place to another place; or

  (B) travel by the employee in the furtherance of the affairs or business of the employer if the travel is also in furtherance of personal or private affairs of the employee unless:

    (i) the travel to the place of occurrence of the injury would have been made even had there been no personal or private affairs of the employee to be furthered by the travel; and

    (ii) the travel would not have been made had there been no affairs or business of the employer to be furthered by the travel.

(12-a) "Credentialing" has the meaning assigned by Chapter 1305, Insurance Code.

(13) "Death benefit" means a payment made under this subtitle to a legal beneficiary because of the death of an employee.

(13-a) "Department" means the Texas Department of Insurance.

(14) "Dependent" means an individual who receives a regular or recurring economic benefit that contributes substantially to the individual's welfare and livelihood if the individual is eligible for distribution of benefits under Chapter 408.

(15) "Designated doctor" means a doctor appointed by mutual agreement of the parties or by the division to recommend a resolution of a dispute as to the medical condition of an injured employee.

(16) "Disability" means the inability because of a compensable injury to obtain and retain employment at wages equivalent to the preinjury wage.

(16-a) "Division" means the division of workers' compensation of the department.

(17) "Doctor" means a doctor of medicine, osteopathic medicine, optometry, dentistry, podiatry, or chiropractic who is licensed and authorized to practice.

(18) "Employer" means, unless otherwise specified, a person who makes a contract of hire, employs one or more employees, and has workers' compensation insurance coverage. The term includes a governmental entity that self-insures, either individually or collectively.

(18-a) "Evidence-based medicine" means the use of current best quality scientific and medical evidence formulated from credible scientific studies, including peer-reviewed medical literature and other current scientifically based texts, and treatment and practice guidelines in making decisions about the care of individual patients.

(19) "Health care" includes all reasonable and necessary medical aid, medical examinations, medical treatments, medical diagnoses, medical evaluations, and medical services. The term does not include vocational rehabilitation. The term includes:

(A) medical, surgical, chiropractic, podiatric, optometric, dental, nursing, and physical therapy services provided by or at the direction of a doctor;

(B) physical rehabilitation services performed by a licensed occupational therapist provided by or at the direction of a doctor;

(C) psychological services prescribed by a doctor;

(D) the services of a hospital or other health care facility;

(E) a prescription drug, medicine, or other remedy; and

(F) a medical or surgical supply, appliance, brace, artificial member, or prosthetic or orthotic device, including the fitting of, change or repair to, or training in the use of the appliance, brace, member, or device.

(20) "Health care facility" means a hospital, emergency clinic, outpatient clinic, or other facility providing health care.

(21) "Health care practitioner" means:

  (A) an individual who is licensed to provide or render and provides or renders health care; or

  (B) a nonlicensed individual who provides or renders health care under the direction or supervision of a doctor.

(22) "Health care provider" means a health care facility or health care practitioner.

(22-a) "Health care reasonably required" means health care that is clinically appropriate and considered effective for the injured employee's injury and provided in accordance with best practices consistent with:

  (A) evidence-based medicine; or

  (B) if that evidence is not available, generally accepted standards of medical practice recognized in the medical community.

(23) "Impairment" means any anatomic or functional abnormality or loss existing after maximum medical improvement that results from a compensable injury and is reasonably presumed to be permanent.

(24) "Impairment rating" means the percentage of permanent impairment of the whole body resulting from a compensable injury.

(25) "Income benefit" means a payment made to an employee for a compensable injury. The term does not include a medical benefit, death benefit, or burial benefit.

(25-a) "Independent review organization" has the same meaning as in Section 1305.004(a)(11), Insurance Code.

(26) "Injury" means damage or harm to the physical structure of the body and a disease or infection naturally resulting from the damage or harm. The term includes an occupational disease.

(27) "Insurance carrier" means:

  (A) an insurance company;

(B) a certified self-insurer for workers' compensation insurance;

(C) a certified self-insurance group under Chapter 407A; or

(D) a governmental entity that self-insures, either individually or collectively.

(28) "Insurance company" means a person authorized and admitted by the Texas Department of Insurance to do insurance business in this state under a certificate of authority that includes authorization to write workers' compensation insurance.

(29) "Legal beneficiary" means a person entitled to receive a death benefit under this subtitle.

(30) "Maximum medical improvement" means the earlier of:

(A) the earliest date after which, based on reasonable medical probability, further material recovery from or lasting improvement to an injury can no longer reasonably be anticipated;

(B) the expiration of 104 weeks from the date on which income benefits begin to accrue; or

(C) the date determined as provided by Section 408.104.

(31) "Medical benefit" means payment for health care reasonably required by the nature of a compensable injury and intended to:

(A) cure or relieve the effects naturally resulting from the compensable injury, including reasonable expenses incurred by the employee for necessary treatment to cure and relieve the employee from the effects of an occupational disease before and after the employee knew or should have known the nature of the disability and its relationship to the employment;

(B) promote recovery; or

(C) enhance the ability of the employee to return to or retain employment.

(31-a) "Network" or "workers' compensation health care network" means an organization that is:

(A) formed as a health care provider network to provide health care services to injured employees;

(B) certified in accordance with Chapter 1305, Insurance Code, and rules of the commissioner of insurance; and

(C) established by, or operates under contract with, an insurance carrier.

(32) "Objective" means independently verifiable or confirmable results that are based on recognized laboratory or diagnostic tests, or signs confirmable by physical examination.

(33) "Objective clinical or laboratory finding" means a medical finding of impairment resulting from a compensable injury, based on competent objective medical evidence, that is independently confirmable by a doctor, including a designated doctor, without reliance on the subjective symptoms perceived by the employee.

(34) "Occupational disease" means a disease arising out of and in the course of employment that causes damage or harm to the physical structure of the body, including a repetitive trauma injury. The term includes a disease or infection that naturally results from the work-related disease. The term does not include an ordinary disease of life to which the general public is exposed outside of employment, unless that disease is an incident to a compensable injury or occupational disease.

(34-a) "Orthotic device" means a custom-fitted or custom-fabricated medical device that is applied to a part of the human body to correct a deformity, improve function, or relieve symptoms related to a compensable injury or occupational disease.

(35) "Penalty" means a fine established by this subtitle.

(35-a) "Prosthetic device" means an artificial device designed to replace, wholly or partly, an arm or leg.

(36) "Repetitive trauma injury" means damage or harm to the physical structure of the body occurring as the result of repetitious, physically traumatic activities that occur over time and arise out of and in the course and scope of employment.

(37) "Representative" means a person, including an attorney, authorized by the commissioner to assist or represent an employee, a person claiming a death benefit, or an insurance carrier in a matter arising under this subtitle that relates to the payment of compensation.

(38) "Research center" means the research functions of the Texas Department of Insurance required under Chapter 405.

(38-a) "Retrospective review" means the utilization review process of reviewing the medical necessity and reasonableness of health care that has been provided to an injured employee.

(39) "Sanction" means a penalty or other punitive action or remedy imposed by the commissioner on an insurance carrier, representative, employee, employer, or health care provider for an act or omission in violation of this subtitle or a rule, order, or decision of the commissioner.

(40) "Settlement" means a final resolution of all the issues in a workers' compensation claim that are permitted to be resolved under the terms of this subtitle.

(41) "Subjective" means perceivable only by an employee and not independently verifiable or confirmable by recognized laboratory or diagnostic tests or signs observable by physical examination.

(42) "Treating doctor" means the doctor who is primarily responsible for the employee's health care for an injury.

(42-a) "Utilization review" has the meaning assigned by Chapter 4201, Insurance Code.

(42-b) "Utilization review agent" has the meaning assigned by Chapter 4201, Insurance Code.

(42-c) "Violation" means an administrative violation subject to penalties and sanctions as provided by this subtitle.

(43) "Wages" includes all forms of remuneration payable for a given period to an employee for personal services. The term includes the market value of board, lodging, laundry, fuel, and any other advantage that can be estimated in money that the employee receives from the employer as part of the employee's remuneration.

(44) "Workers' compensation insurance coverage" means:

  (A) an approved insurance policy to secure the payment of compensation;

  (B) coverage to secure the payment of compensation through self-insurance as provided by this subtitle; or

  (C) coverage provided by a governmental entity to secure the payment of compensation.

**Credits**

Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993. Amended by Acts 1997, 75th Leg., ch. 1443, § 1, eff. Sept. 1, 1997; Acts 2003, 78th Leg., ch. 275, § 2, eff. Sept. 1, 2003; Acts 2005, 79th Leg., ch. 265, § 3.003, eff. Sept. 1, 2005; Acts 2005, 79th Leg., ch. 728, § 11.131, eff. Sept. 1, 2005; Acts 2007, 80th Leg., ch. 133, § 1, eff. Sept. 1, 2007; Acts 2007, 80th Leg., ch. 134, § 1, eff. Sept. 1, 2007; Acts 2007, 80th Leg., ch. 147, § 1, eff. Sept. 1, 2007; Acts 2009, 81st Leg., ch. 1330, § 13, eff. Sept. 1, 2009.

V. T. C. A., Labor Code § 401.011, TX LABOR § 401.011

Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Labor Code (Refs & Annos)
    Title 5. Workers' Compensation (Refs & Annos)
      Subtitle A. Texas Workers' Compensation Act (Refs & Annos)
        Chapter 401. General Provisions
          Subchapter C. Miscellaneous Provisions

V.T.C.A., Labor Code § 401.021

§ 401.021. Application of Other Acts

Currentness

Except as otherwise provided by this subtitle:

(1) a proceeding, hearing, judicial review, or enforcement of a commissioner order, decision, or rule is governed by the following subchapters and sections of Chapter 2001, Government Code:

(A) Subchapters A, B, D, E, G, and H, [1] excluding Sections 2001.004(3) and 2001.005;

(B) Sections 2001.051, 2001.052, and 2001.053;

(C) Sections 2001.056 through 2001.062; and

(D) Section 2001.141(c);

(2) a proceeding, hearing, judicial review, or enforcement of a commissioner order, decision, or rule is governed by Subchapters A and B, Chapter 2002, Government Code, excluding Sections 2002.001(3) and 2002.023;

(3) Chapter 551, Government Code, applies to a proceeding under this subtitle, other than:

(A) a benefit review conference;

(B) a contested case hearing;

(C) a proceeding of the appeals panel;

TAB GG

(D) arbitration; or

(E) another proceeding involving a determination on a workers' compensation claim; and

(4) Chapter 552, Government Code, applies to a workers' compensation record of the division, the department, or the office of injured employee counsel.

**Credits**

Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993. Amended by Acts 1995, 74th Leg., ch. 76, §§ 5.92, 5.95(82), (88), eff. Sept. 1, 1995; Acts 2005, 79th Leg., ch. 265, § 3.005, eff. Sept. 1, 2005.

---

**Footnotes**

1	V.T.C.A., Government Code § 2001.001 et seq., § 2001.021 et seq., § 2001.081 et seq., § 2001.121 et seq., § 2001.171 et seq., and § 2001.201 et seq.

V. T. C. A., Labor Code § 401.021, TX LABOR § 401.021

Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

**End of Document**	© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
    Labor Code (Refs & Annos)
        Title 5. Workers' Compensation (Refs & Annos)
            Subtitle A. Texas Workers' Compensation Act (Refs & Annos)
                Chapter 408. Workers' Compensation Benefits (Refs & Annos)
                    Subchapter J. Death and Burial Benefits (Refs & Annos)

V.T.C.A., Labor Code § 408.181

§ 408.181. Death Benefits

Currentness

(a) An insurance carrier shall pay death benefits to the legal beneficiary if a compensable injury to the employee results in death.

(b) Subject to Section 408.061, the amount of a death benefit is equal to 75 percent of the employee's average weekly wage.

(c) The commissioner by rule shall establish requirements for agreements under which death benefits may be paid monthly. Death benefits may be paid monthly only:

  (1) on the request of the legal beneficiary and the agreement of the legal beneficiary and the insurance carrier; and

  (2) in compliance with the requirements adopted by the commissioner.

(d) An insurance carrier may pay death benefits through an annuity if the annuity agreement meets the terms and conditions for annuity agreements adopted by the commissioner by rule. The establishment of an annuity under this subsection does not relieve the insurance carrier of the liability under this title for ensuring that the death benefits are paid.

**Credits**
Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993. Amended by Acts 1999, 76th Leg., ch. 1426, § 15, eff. Sept. 1, 1999; Acts 2005, 79th Leg., ch. 265, § 3.127, eff. Sept. 1, 2005.

V. T. C. A., Labor Code § 408.181, TX LABOR § 408.181
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

TAB HH

Vernon's Texas Statutes and Codes Annotated
  Labor Code (Refs & Annos)
    Title 5. Workers' Compensation (Refs & Annos)
      Subtitle A. Texas Workers' Compensation Act (Refs & Annos)
        Chapter 408. Workers' Compensation Benefits (Refs & Annos)
          Subchapter J. Death and Burial Benefits (Refs & Annos)

V.T.C.A., Labor Code § 408.182

§ 408.182. Distribution of Death Benefits

Currentness

(a) If there is an eligible child or grandchild and an eligible spouse, half of the death benefits shall be paid to the eligible spouse and half shall be paid in equal shares to the eligible children. If an eligible child has predeceased the employee, death benefits that would have been paid to that child shall be paid in equal shares per stirpes to the children of the deceased child.

(b) If there is an eligible spouse and no eligible child or grandchild, all the death benefits shall be paid to the eligible spouse.

(c) If there is an eligible child or grandchild and no eligible spouse, the death benefits shall be paid to the eligible children or grandchildren.

(d) If there is no eligible spouse, no eligible child, and no eligible grandchild, the death benefits shall be paid in equal shares to surviving dependents of the deceased employee who are parents, stepparents, siblings, or grandparents of the deceased.

(d-1) If there is no eligible spouse, no eligible child, and no eligible grandchild, and there are no surviving dependents of the deceased employee who are parents, siblings, or grandparents of the deceased, the death benefits shall be paid in equal shares to surviving eligible parents of the deceased. A payment of death benefits made under this subsection may not exceed one payment per household. Total payments under this section may not exceed 104 weeks regardless of the number of surviving eligible parents.

(d-2) Except as otherwise provided by this subsection, to be eligible to receive death benefits under Subsection (d-1), an eligible parent must file with the division or insurance carrier a claim for those benefits not later than the first anniversary of the date of the injured employee's death from the compensable injury. The claim must designate all eligible parents and necessary information for payment to the eligible parents. The insurance carrier is not liable for payment to any eligible parent not designated on the claim. Failure to file a claim in the time required bars the claim unless good cause exists for the failure to file a claim under this section.

(e) If an employee is not survived by legal beneficiaries or eligible parents, the death benefits shall be paid to the subsequent injury fund under Section 403.007.

(f) In this section:

(1) "Eligible child" means a child of a deceased employee if the child is:

(A) a minor;

(B) enrolled as a full-time student in an accredited educational institution and is less than 25 years of age; or

(C) a dependent of the deceased employee at the time of the employee's death.

(2) "Eligible grandchild" means a grandchild of a deceased employee who is a dependent of the deceased employee and whose parent is not an eligible child.

(3) "Eligible spouse" means the surviving spouse of a deceased employee unless the spouse abandoned the employee for longer than the year immediately preceding the death without good cause, as determined by the division.

(4) "Eligible parent" means the mother or the father of a deceased employee, including an adoptive parent or a stepparent. The term does not include a parent whose parental rights have been terminated.

**Credits**
Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993. Amended by Acts 2005, 79th Leg., ch. 265, § 3.128, eff. Sept. 1, 2005; Acts 2007, 80th Leg., ch. 1007, §§ 5, 6, eff. Sept. 1, 2007; Acts 2009, 81st Leg., ch. 344, § 1, eff. Sept. 1, 2009; Acts 2023, 88th Leg., ch. 502 (H.B. 2314), § 1, eff. June 10, 2023.

V. T. C. A., Labor Code § 408.182, TX LABOR § 408.182
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
    Labor Code (Refs & Annos)
        Title 5. Workers' Compensation (Refs & Annos)
            Subtitle A. Texas Workers' Compensation Act (Refs & Annos)
                Chapter 408. Workers' Compensation Benefits (Refs & Annos)
                    Subchapter J. Death and Burial Benefits (Refs & Annos)

V.T.C.A., Labor Code § 408.183

§ 408.183. Duration of Death Benefits

Currentness

(a) Entitlement to death benefits begins on the day after the date of an employee's death.

(b) An eligible spouse is entitled to receive death benefits for life or until remarriage. On remarriage, the eligible spouse is entitled to receive 104 weeks of death benefits, commuted as provided by commissioner rule.

(b-1) Notwithstanding Subsection (b), an eligible spouse who remarried is eligible for death benefits for life if the employee was a first responder, as defined by Section 504.055, or an individual described by Section 615.003(1), Government Code, or Section 501.001(5)(F), who suffered death in the course and scope of employment or while providing services as a volunteer. This subsection applies regardless of the date on which the death of the first responder or other individual occurred.

(c) A child who is eligible for death benefits because the child is a minor on the date of the employee's death is entitled to receive benefits until the child attains the age of 18.

(d) A child eligible for death benefits under Subsection (c) who at age 18 is enrolled as a full-time student in an accredited educational institution or a child who is eligible for death benefits because on the date of the employee's death the child is enrolled as a full-time student in an accredited educational institution is entitled to receive or to continue to receive, as appropriate, benefits until the earliest of:

(1) the date the child ceases, for a second consecutive semester, to be enrolled as a full-time student in an accredited educational institution;

(2) the date the child attains the age of 25; or

(3) the date the child dies.

(e) A child who is eligible for death benefits because the child is a dependent of the deceased employee on the date of the employee's death is entitled to receive benefits until the earlier of:

    (1) the date the child dies; or

    (2) if the child is dependent:

        (A) because the child is an individual with a physical or mental disability, the date the child no longer has the disability; or

        (B) because of a reason other than a physical or mental disability, the date of the expiration of 364 weeks of death benefit payments.

(f) An eligible grandchild is entitled to receive death benefits until the earlier of:

    (1) the date the grandchild dies; or

    (2) if the grandchild is:

        (A) a minor at the time of the employee's death, the date the grandchild ceases to be a minor; or

        (B) not a minor at the time of the employee's death, the date of the expiration of 364 weeks of death benefit payments.

(f-1) An eligible parent who is not a surviving dependent of the deceased employee is entitled to receive death benefits until the earlier of:

    (1) the date the eligible parent dies; or

    (2) the date of the expiration of 104 weeks of death benefit payments.

(g) Any other person entitled to death benefits is entitled to receive death benefits until the earlier of:

    (1) the date the person dies; or

    (2) the date of the expiration of 364 weeks of death benefit payments.

(h) Section 401.011(16) does not apply to the use of the term "disability" in this section.

**Credits**

Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993. Amended by Acts 2005, 79th Leg., ch. 265, § 3.129, eff. Sept. 1, 2005; Acts 2007, 80th Leg., ch. 1007, § 7, eff. Sept. 1, 2007; Acts 2015, 84th Leg., ch. 1018 (H.B. 1094), § 1, eff. Sept. 1, 2015; Acts 2017, 85th Leg., ch. 468 (H.B. 2119), § 1, eff. Sept. 1, 2017; Acts 2019, 86th Leg., ch. 821 (H.B. 2503), § 1, eff. Sept. 1, 2019.

V. T. C. A., Labor Code § 408.183, TX LABOR § 408.183

Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
   Labor Code (Refs & Annos)
      Title 5. Workers' Compensation (Refs & Annos)
         Subtitle A. Texas Workers' Compensation Act (Refs & Annos)
            Chapter 408. Workers' Compensation Benefits (Refs & Annos)
               Subchapter J. Death and Burial Benefits (Refs & Annos)

V.T.C.A., Labor Code § 408.184

§ 408.184. Redistribution of Death Benefits

Currentness

(a) If a legal beneficiary dies or otherwise becomes ineligible for death benefits, benefits shall be redistributed to the remaining legal beneficiaries as provided by Sections 408.182 and 408.183.

(b) If a spouse ceases to be eligible because of remarriage, the benefits payable to the remaining legal beneficiaries remain constant for 104 weeks. After the 104th week, the spouse's share of benefits shall be redistributed as provided by Sections 408.182 and 408.183.

(c) If all legal beneficiaries, other than the subsequent injury fund, cease to be eligible and the insurance carrier has not made 364 weeks of full death benefit payments, including the remarriage payment, the insurance carrier shall pay to the subsequent injury fund an amount computed by subtracting the total amount paid from the amount that would be paid for 364 weeks of death benefits.

**Credits**
Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993.

V. T. C. A., Labor Code § 408.184, TX LABOR § 408.184
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.  1

Vernon's Texas Statutes and Codes Annotated
    Labor Code (Refs & Annos)
        Title 5. Workers' Compensation (Refs & Annos)
            Subtitle A. Texas Workers' Compensation Act (Refs & Annos)
                Chapter 408. Workers' Compensation Benefits (Refs & Annos)
                    Subchapter J. Death and Burial Benefits (Refs & Annos)

V.T.C.A., Labor Code § 408.185

§ 408.185. Effect of Beneficiary Dispute; Attorney's Fees

Currentness

On settlement of a case in which the insurance carrier admits liability for death benefits but a dispute exists as to the proper beneficiary or beneficiaries, the settlement shall be paid in periodic payments as provided by law, with a reasonable attorney's fee not to exceed 25 percent of the settlement, paid periodically, and based on time and expenses.

**Credits**
Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993.

V. T. C. A., Labor Code § 408.185, TX LABOR § 408.185
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Labor Code (Refs & Annos)
    Title 5. Workers' Compensation (Refs & Annos)
      Subtitle A. Texas Workers' Compensation Act (Refs & Annos)
        Chapter 408. Workers' Compensation Benefits (Refs & Annos)
          Subchapter J. Death and Burial Benefits (Refs & Annos)

V.T.C.A., Labor Code § 408.186

§ 408.186. Burial Benefits

Currentness

(a) If the death of an employee results from a compensable injury, the insurance carrier shall pay to the person who incurred liability for the costs of burial the lesser of:

(1) the actual costs incurred for reasonable burial expenses; or

(2) $10,000.

(b) If the employee died away from the employee's usual place of employment, the insurance carrier shall pay the reasonable cost of transporting the body, not to exceed the cost of transporting the body to the employee's usual place of employment.

**Credits**

Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993. Amended by Acts 1999, 76th Leg., ch. 1426, § 16, eff. Sept. 1, 1999; Acts 2015, 84th Leg., ch. 192 (S.B. 653), § 1, eff. Sept. 1, 2015.

V. T. C. A., Labor Code § 408.186, TX LABOR § 408.186
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Labor Code (Refs & Annos)
    Title 5. Workers' Compensation (Refs & Annos)
      Subtitle A. Texas Workers' Compensation Act (Refs & Annos)
        Chapter 408. Workers' Compensation Benefits (Refs & Annos)
          Subchapter J. Death and Burial Benefits (Refs & Annos)

V.T.C.A., Labor Code § 408.187

§ 408.187. Autopsy

Currentness

(a) If in a claim for death benefits based on an occupational disease an autopsy is necessary to determine the cause of death, the commission may, after opportunity for hearing, order the legal beneficiaries of a deceased employee to permit an autopsy.

(b) A legal beneficiary is entitled to have a representative present at an autopsy ordered under this section.

(c) The commissioner shall require the insurance carrier to pay the costs of a procedure ordered under this section.

**Credits**
Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993. Amended by Acts 2005, 79th Leg., ch. 265, § 3.130, eff. Sept. 1, 2005.

V. T. C. A., Labor Code § 408.187, TX LABOR § 408.187
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

---

**End of Document**　　　　　　　　　　　　　　　　　　© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Labor Code (Refs & Annos)
    Title 5. Workers' Compensation (Refs & Annos)
      Subtitle A. Texas Workers' Compensation Act (Refs & Annos)
        Chapter 409. Compensation Procedures
          Subchapter A. Injury Reports, Claims, and Records (Refs & Annos)

V.T.C.A., Labor Code § 409.001

§ 409.001. Notice of Injury to Employer

Currentness

(a) An employee or a person acting on the employee's behalf shall notify the employer of the employee of an injury not later than the 30th day after the date on which:

(1) the injury occurs; or

(2) if the injury is an occupational disease, the employee knew or should have known that the injury may be related to the employment.

(b) The notice required under Subsection (a) may be given to:

(1) the employer; or

(2) an employee of the employer who holds a supervisory or management position.

(c) If the injury is an occupational disease, for purposes of this section, the employer is the person who employed the employee on the date of last injurious exposure to the hazards of the disease.

**Credits**
Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993.

V. T. C. A., Labor Code § 409.001, TX LABOR § 409.001
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

TAB II

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
    Labor Code (Refs & Annos)
        Title 5. Workers' Compensation (Refs & Annos)
            Subtitle A. Texas Workers' Compensation Act (Refs & Annos)
                Chapter 409. Compensation Procedures
                    Subchapter A. Injury Reports, Claims, and Records (Refs & Annos)

V.T.C.A., Labor Code § 409.002

§ 409.002. Failure to File Notice of Injury

Currentness

Failure to notify an employer as required by Section 409.001(a) relieves the employer and the employer's insurance carrier of liability under this subtitle unless:

(1) the employer, a person eligible to receive notice under Section 409.001(b), or the employer's insurance carrier has actual knowledge of the employee's injury;

(2) the division determines that good cause exists for failure to provide notice in a timely manner; or

(3) the employer or the employer's insurance carrier does not contest the claim.

**Credits**

Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993. Amended by Acts 2005, 79th Leg., ch. 265, § 3.134, eff. Sept. 1, 2005.

V. T. C. A., Labor Code § 409.002, TX LABOR § 409.002
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
   Labor Code (Refs & Annos)
     Title 5. Workers' Compensation (Refs & Annos)
       Subtitle A. Texas Workers' Compensation Act (Refs & Annos)
         Chapter 409. Compensation Procedures
           Subchapter A. Injury Reports, Claims, and Records (Refs & Annos)

V.T.C.A., Labor Code § 409.003

§ 409.003. Claim for Compensation

Currentness

An employee or a person acting on the employee's behalf shall file with the division a claim for compensation for an injury not later than one year after the date on which:

(1) the injury occurred; or

(2) if the injury is an occupational disease, the employee knew or should have known that the disease was related to the employee's employment.

**Credits**
Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993. Amended by Acts 2005, 79th Leg., ch. 265, § 3.135, eff. Sept. 1, 2005.

V. T. C. A., Labor Code § 409.003, TX LABOR § 409.003
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Labor Code (Refs & Annos)
    Title 5. Workers' Compensation (Refs & Annos)
      Subtitle A. Texas Workers' Compensation Act (Refs & Annos)
        Chapter 409. Compensation Procedures
          Subchapter A. Injury Reports, Claims, and Records (Refs & Annos)

V.T.C.A., Labor Code § 409.004

§ 409.004. Effect of Failure to File Claim for Compensation

Currentness

Failure to file a claim for compensation with the division as required under Section 409.003 relieves the employer and the employer's insurance carrier of liability under this subtitle unless:

(1) good cause exists for failure to file a claim in a timely manner; or

(2) the employer or the employer's insurance carrier does not contest the claim.

**Credits**
Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993. Amended by Acts 2005, 79th Leg., ch. 265, § 3.136, eff. Sept. 1, 2005.

V. T. C. A., Labor Code § 409.004, TX LABOR § 409.004
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Labor Code (Refs & Annos)
    Title 5. Workers' Compensation (Refs & Annos)
      Subtitle A. Texas Workers' Compensation Act (Refs & Annos)
        Chapter 409. Compensation Procedures
          Subchapter A. Injury Reports, Claims, and Records (Refs & Annos)

V.T.C.A., Labor Code § 409.005

§ 409.005. Report of Injury; Modified Duty Program Notice; Administrative Violation

Currentness

(a) An employer shall report to the employer's insurance carrier if:

(1) an injury results in the absence of an employee of that employer from work for more than one day; or

(2) an employee of the employer notifies that employer of an occupational disease under Section 409.001.

(b) The report under Subsection (a) must be made not later than the eighth day after:

(1) the employee's absence from work for more than one day due to an injury; or

(2) the day on which the employer receives notice under Section 409.001 that the employee has contracted an occupational disease.

(c) The employer shall deliver a written copy of the report under Subsection (a) to the injured employee at the time that the report is made to the insurance carrier.

(d) The insurance carrier shall file the report of the injury on behalf of the policyholder. Except as provided by Subsection (e), the insurance carrier must electronically file the report with the division not later than the seventh day after the date on which the carrier receives the report from the employer.

(e) The commissioner may waive the electronic filing requirement under Subsection (d) and allow an insurance carrier to mail or deliver the report to the division not later than the seventh day after the date on which the carrier receives the report from the employer.

(f) A report required under this section may not be considered to be an admission by or evidence against an employer or an insurance carrier in a proceeding before the division or a court in which the facts set out in the report are contradicted by the employer or insurance carrier.

(g) In addition to any information required under Subsection (h), the report provided to the injured employee under Subsection (c) must contain a summary written in plain language of the employee's statutory rights and responsibilities under this subtitle.

(h) The commissioner may adopt rules relating to:

(1) the information that must be contained in a report required under this section, including the summary of rights and responsibilities required under Subsection (g); and

(2) the development and implementation of an electronic filing system for injury reports under this section.

(i) An employer and insurance carrier shall file subsequent reports as required by commissioner rule.

(j) The employer shall, on the written request of the employee, a doctor, the insurance carrier, or the division, notify the employee, the employee's treating doctor if known to the employer, and the insurance carrier of the existence or absence of opportunities for modified duty or a modified duty return-to-work program available through the employer. If those opportunities or that program exists, the employer shall identify the employer's contact person and provide other information to assist the doctor, the employee, and the insurance carrier to assess modified duty or return-to-work options.

(k) This section does not prohibit the commissioner from imposing requirements relating to return-to-work under other authority granted to the division in this subtitle.

(l) A person commits an administrative violation if the person fails to comply with this section unless good cause exists.

**Credits**
Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993. Amended by Acts 1995, 74th Leg., ch. 980, § 1.29, eff. Sept. 1, 1995; Acts 2001, 77th Leg., ch. 1456, § 3.01, eff. June 17, 2001; Acts 2005, 79th Leg., ch. 265, § 3.137, eff. Sept. 1, 2005.

V. T. C. A., Labor Code § 409.005, TX LABOR § 409.005
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
    Labor Code (Refs & Annos)
        Title 5. Workers' Compensation (Refs & Annos)
            Subtitle A. Texas Workers' Compensation Act (Refs & Annos)
                Chapter 409. Compensation Procedures
                    Subchapter A. Injury Reports, Claims, and Records (Refs & Annos)

V.T.C.A., Labor Code § 409.006

§ 409.006. Record of Injuries; Administrative Violation

Currentness

(a) An employer shall maintain a record of each employee injury as reported by an employee or otherwise made known to the employer.

(b) The record shall be available to the division at reasonable times and under conditions prescribed by the commissioner.

(c) The commissioner may adopt rules relating to the information that must be contained in an employer record under this section.

(d) Information contained in a record maintained under this section is not an admission by the employer that:

(1) the injury did in fact occur; or

(2) a fact maintained in the record is true.

(e) A person commits an administrative violation if the person fails to comply with this section.

**Credits**
Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993. Amended by Acts 2005, 79th Leg., ch. 265, § 3.138, eff. Sept. 1, 2005.

V. T. C. A., Labor Code § 409.006, TX LABOR § 409.006
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

---

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Vernon's Texas Statutes and Codes Annotated
　Labor Code (Refs & Annos)
　　Title 5. Workers' Compensation (Refs & Annos)
　　　Subtitle A. Texas Workers' Compensation Act (Refs & Annos)
　　　　Chapter 409. Compensation Procedures
　　　　　Subchapter A. Injury Reports, Claims, and Records (Refs & Annos)

V.T.C.A., Labor Code § 409.007

§ 409.007. Death Benefit Claims

Currentness

(a) A person must file a claim for death benefits with the division or insurance carrier not later than the first anniversary of the date of the employee's death.

(b) Failure to file in the time required by Subsection (a) bars the claim unless:

　(1) the person is a minor or incompetent; or

　(2) good cause exists for the failure to file a claim under this section.

(c) A separate claim must be filed for each legal beneficiary unless the claim expressly includes or is made on behalf of another person.

(d) If a person files a claim for death benefits with an insurance carrier, at the time the carrier receives the claim the carrier shall, in the form and manner prescribed by the division:

　(1) create and maintain a record documenting receipt of the claim; and

　(2) provide written notice to the division that the person filed the claim.

**Credits**
Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993. Amended by Acts 2005, 79th Leg., ch. 265, § 3.139, eff. Sept. 1, 2005; Acts 2023, 88th Leg., ch. 502 (H.B. 2314), § 2, eff. June 10, 2023.

V. T. C. A., Labor Code § 409.007, TX LABOR § 409.007

Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

---

**End of Document**                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
    Labor Code (Refs & Annos)
        Title 5. Workers' Compensation (Refs & Annos)
            Subtitle A. Texas Workers' Compensation Act (Refs & Annos)
                Chapter 409. Compensation Procedures
                    Subchapter A. Injury Reports, Claims, and Records (Refs & Annos)

V.T.C.A., Labor Code § 409.008

§ 409.008. Failure to File Employer Report of Injury; Limitations Tolled

Currentness

If an employer or the employer's insurance carrier has been given notice or has knowledge of an injury to or the death of an employee and the employer or insurance carrier fails, neglects, or refuses to file the report under Section 409.005, the period for filing a claim for compensation under Sections 409.003 and 409.007 does not begin to run against the claim of an injured employee or a legal beneficiary until the day on which the report required under Section 409.005 has been furnished.

**Credits**
Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993.

V. T. C. A., Labor Code § 409.008, TX LABOR § 409.008
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Labor Code (Refs & Annos)
    Title 5. Workers' Compensation (Refs & Annos)
      Subtitle A. Texas Workers' Compensation Act (Refs & Annos)
        Chapter 409. Compensation Procedures
          Subchapter B. Payment of Benefits (Refs & Annos)

V.T.C.A., Labor Code § 409.021

§ 409.021. Initiation of Benefits; Insurance Carrier's Refusal; Administrative Violation

Currentness

(a) An insurance carrier shall initiate compensation under this subtitle promptly. Not later than the 15th day after the date on which an insurance carrier receives written notice of an injury, the insurance carrier shall:

(1) begin the payment of benefits as required by this subtitle; or

(2) notify the division and the employee in writing of its refusal to pay and advise the employee of:

(A) the right to request a benefit review conference; and

(B) the means to obtain additional information from the division.

(a-1) An insurance carrier that fails to comply with Subsection (a) does not waive the carrier's right to contest the compensability of the injury as provided by Subsection (c) but commits an administrative violation subject to Subsection (e).

(a-2) An insurance carrier is not required to comply with Subsection (a) if the insurance carrier has accepted the claim as a compensable injury and income or death benefits have not yet accrued but will be paid by the insurance carrier when the benefits accrue and are due.

(a-3) An insurance carrier is not required to comply with Subsection (a) if the claim results from an employee's disability or death for which a presumption is claimed to be applicable under Subchapter B, Chapter 607, Government Code, and, not later than the 15th day after the date on which the insurance carrier received written notice of the injury, the insurance carrier has provided the employee and the division with a notice that describes all steps taken by the insurance carrier to investigate the injury before the notice was given and the evidence the carrier reasonably believes is necessary to complete its investigation of the compensability of the injury. The commissioner shall adopt rules as necessary to implement this subsection.

TAB JJ

(b) An insurance carrier shall notify the division in writing of the initiation of income or death benefit payments in the manner prescribed by commissioner rules.

(c) If an insurance carrier does not contest the compensability of an injury on or before the 60th day after the date on which the insurance carrier is notified of the injury, the insurance carrier waives its right to contest compensability. The initiation of payments by an insurance carrier does not affect the right of the insurance carrier to continue to investigate or deny the compensability of an injury during the 60-day period.

(d) An insurance carrier may reopen the issue of the compensability of an injury if there is a finding of evidence that could not reasonably have been discovered earlier.

(e) An insurance carrier commits an administrative violation if the insurance carrier does not initiate payments or file a notice of refusal as required by this section.

<Text of subsec. (f) as added by Acts 2003, 78th Leg., ch. 939, § 1>

(f) For purposes of this section, "written notice" to a certified self-insurer occurs only on written notice to the qualified claims servicing contractor designated by the certified self-insurer under Section 407.061(c).

<Text of subsec. (f) as added by Acts 2003, 78th Leg., ch. 1100, § 1>

(f) For purposes of this section:

(1) a certified self-insurer receives notice on the date the qualified claims servicing contractor designated by the certified self-insurer under Section 407.061(c) receives notice; and

(2) a political subdivision that self-insures under Section 504.011, either individually or through an interlocal agreement with other political subdivisions, receives notice on the date the intergovernmental risk pool or other entity responsible for administering the claim for the political subdivision receives notice.

(g) to (i) Blank.

(j) Each insurance carrier shall establish a single point of contact in the carrier's office for an injured employee for whom the carrier receives a notice of injury.

**Credits**
Added by Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993. Amended by Acts 2003, 78th Leg., ch. 939, § 1, eff. Sept. 1, 2003; Acts 2003, 78th Leg., ch. 1100, § 1, eff. Sept. 1, 2003; Acts 2005, 79th Leg., ch. 265, § 3.145, eff. Sept. 1, 2005; Acts 2011, 82nd Leg., ch. 1162 (H.B. 2605), § 13, eff. Sept. 1, 2011; Acts 2019, 86th Leg., ch. 701 (S.B. 2551), § 3, eff. June 10, 2019.

V. T. C. A., Labor Code § 409.021, TX LABOR § 409.021
Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

LABOR CODE

TITLE 5. WORKERS' COMPENSATION

SUBTITLE A. TEXAS WORKERS' COMPENSATION ACT

CHAPTER 410. ADJUDICATION OF DISPUTES

SUBCHAPTER A. GENERAL PROVISIONS

Sec. 410.002.  LAW GOVERNING LIABILITY PROCEEDINGS.  A proceeding before the division to determine the liability of an insurance carrier for compensation for an injury or death under this subtitle is governed by this chapter.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.150, eff. September 1, 2005.


Sec. 410.003.  APPLICATION OF ADMINISTRATIVE PROCEDURE AND TEXAS REGISTER ACT.  Except as otherwise provided by this chapter, Chapter 2001, Government Code does not apply to a proceeding under this chapter.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 76, Sec. 5.95(49), eff. Sept. 1, 1995.


Sec. 410.005.  CONDUCTING ADMINISTRATIVE PROCEEDINGS.  (a)  Unless the division determines that good cause exists for the selection of a different location, a contested case hearing may not be conducted at a site more than 75 miles from the claimant's residence at the time of the injury.
    (b)  Unless the assigned arbitrator determines that good cause exists for the selection of a different location, arbitration may not be conducted at a site more than 75 miles from the claimant's residence at the time of the injury.
    (c)  All appeals panel proceedings shall be conducted in Travis County.
    (d)  The division may conduct a benefit review conference:
        (1)  telephonically;
        (2)  by videoconference; or

TAB KK

(3)  in person, on showing of good cause as determined by the division.

(e)  Unless the division determines that good cause exists for the selection of a different location, a benefit review conference conducted in person under Subsection (d)(3) may not be conducted at a site more than 75 miles from the claimant's residence at the time of the injury.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.151, eff. September 1, 2005.
Acts 2021, 87th Leg., R.S., Ch. 261 (H.B. 1752), Sec. 1, eff. June 4, 2021.
Acts 2021, 87th Leg., R.S., Ch. 261 (H.B. 1752), Sec. 2, eff. June 4, 2021.


Sec. 410.006.  REPRESENTATION AT ADMINISTRATIVE PROCEEDINGS.  (a)  A claimant may be represented at a benefit review conference, a contested case hearing, or arbitration by an attorney or may be assisted by an individual of the claimant's choice who does not work for an attorney or receive a fee.  An employee of an attorney may represent a claimant if that employee:
(1)  is a relative of the claimant;  and
(2)  does not receive a fee.
(b)  An insurance carrier may be represented by an attorney or adjuster.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 410.007.  INFORMATION LIST.  (a)  The division shall determine the type of information that is most useful to parties to help resolve disputes regarding income benefits. That information may include:
(1)  reports regarding the compensable injury;
(2)  medical information regarding the injured employee; and
(3)  wage records.
(b)  The division shall publish a list developed from the information described under Subsection (a) in appropriate media, including the division's Internet website, to provide guidance to a party to a dispute regarding the type of information the party should have available at a benefit review conference or a contested case hearing.

(c)  At the time a benefit review conference or contested case hearing is scheduled, the division shall make available a copy of the list developed under Subsection (b) to each party to the dispute.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.152, eff. September 1, 2005.


SUBCHAPTER B. BENEFIT REVIEW CONFERENCE

Sec. 410.021.  PURPOSE.  A benefit review conference is a nonadversarial, informal dispute resolution proceeding designed to:
        (1)  explain, orally and in writing, the rights of the respective parties to a workers' compensation claim and the procedures necessary to protect those rights;
        (2)  discuss the facts of the claim, review available information in order to evaluate the claim, and delineate the disputed issues; and
        (3)  mediate and resolve disputed issues by agreement of the parties in accordance with this subtitle and the policies of the division.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.153, eff. September 1, 2005.


Sec. 410.022.  BENEFIT REVIEW OFFICERS;  QUALIFICATIONS.  (a)  A benefit review officer shall conduct a benefit review conference.
        (b)  A benefit review officer must:
        (1)  be an employee of the division;
        (2)  be trained in the principles and procedures of dispute mediation; and
        (3)  have documentation satisfactory to the commissioner that evidences the completion by the officer of at least 40 classroom hours of training in dispute resolution techniques from an alternative dispute resolution organization recognized by the commissioner.
        (c)  The division shall institute and maintain an education and training program for benefit review officers and shall consult or contract with the Federal Mediation and Conciliation Service or other appropriate organizations for this purpose.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.154, eff. September 1, 2005.


Sec. 410.023.  REQUEST FOR BENEFIT REVIEW CONFERENCE.  (a)  On receipt of a request from a party or on its own motion, the division may direct the parties to a disputed workers' compensation claim to meet in a benefit review conference to attempt to reach agreement on disputed issues involved in the claim.

(b)  The division shall require the party requesting the benefit review conference to provide documentation of efforts made to resolve the disputed issues before the request was submitted.

(c)  The commissioner by rule shall:

(1)  adopt guidelines regarding the type of information necessary to satisfy the requirements of Subsection (b); and

(2)  establish a process through which the division evaluates the sufficiency of the documentation provided under Subsection (b).

(d)  The division may deny a request for a benefit review conference if the party requesting the benefit review conference does not provide the documentation required under Subsection (b).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.155, eff. September 1, 2005.
Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 14, eff. September 1, 2011.


Sec. 410.024.  BENEFIT REVIEW CONFERENCE AS PREREQUISITE TO FURTHER PROCEEDINGS ON CERTAIN CLAIMS.  (a)  Except as otherwise provided by law or commissioner rule, the parties to a disputed compensation claim are not entitled to a contested case hearing or arbitration on the claim unless a benefit review conference is conducted as provided by this subchapter.

(b)  The commissioner by rule shall adopt guidelines relating to claims that do not require a benefit review conference and may proceed directly to a contested case hearing or arbitration.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.156, eff. September 1, 2005.

Sec. 410.025.  SCHEDULING OF BENEFIT REVIEW CONFERENCE; NOTICE.  (a) The commissioner by rule shall prescribe the time within which a benefit review conference must be scheduled.

(b)  The division shall schedule a contested case hearing to be held not later than the 60th day after the date of the benefit review conference if the disputed issues are not resolved at the benefit review conference.

(c)  The division shall send written notice of the benefit review conference to the parties to the claim and the employer.

(d)  The commissioner by rule shall provide for expedited proceedings in cases in which compensability or liability for essential medical treatment is in dispute.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.157, eff. September 1, 2005.


Sec. 410.026.  POWERS AND DUTIES OF BENEFIT REVIEW OFFICER.  (a)  A benefit review officer shall:

(1)  mediate disputes between the parties and assist in the adjustment of the claim consistent with this subtitle and the policies of the division;

(2)  thoroughly inform all parties of their rights and responsibilities under this subtitle, especially in a case in which the employee is not represented by an attorney or other representative;

(3)  ensure that all documents and information relating to the employee's wages, medical condition, and any other information pertinent to the resolution of disputed issues are contained in the claim file at the conference, especially in a case in which the employee is not represented by an attorney or other representative; and

(4)  prepare a written report that details each issue that is not resolved at the benefit review conference, as required under Section 410.031, including any issue raised for the first time at the conclusion of an additional benefit review conference conducted under Subsection (b).

(b)  A benefit review officer may schedule an additional  benefit review conference if:

(1)  the benefit review officer determines that any available information pertinent to the resolution of disputed issues was not produced at the initial benefit review conference; and

(2)   a second benefit review conference has not already been conducted.

(c)   A benefit review officer may not take testimony but may direct questions to an employee, an employer, or a representative of an insurance carrier to supplement or clarify information in a claim file.

(d)   A benefit review officer may not make a formal record.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.158, eff. September 1, 2005.


Sec. 410.027.  RULES.  (a)  The commissioner shall adopt rules for conducting benefit review conferences.

(b)   A benefit review conference is not subject to common law or statutory rules of evidence or procedure.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.159, eff. September 1, 2005.


Sec. 410.028.  FAILURE TO ATTEND; ADMINISTRATIVE VIOLATION.  (a)  A scheduled benefit review conference shall be conducted even though a party fails to attend unless the benefit review officer determines that good cause, as defined by commissioner rule, exists to reschedule the conference.

(b)   If a party to a benefit review conference under Section 410.023 requests that the benefit review conference be rescheduled under this section, the party must submit a request in the same manner as an initial request under Section 410.023.  The division shall evaluate a request for a rescheduled benefit review conference received under this section in the same manner as an initial request received under Section 410.023.

(c)   If a party fails to request that a benefit review conference be rescheduled in the time required by commissioner rule or fails to attend a benefit review conference without good cause as defined by commissioner rule, the party forfeits the party's entitlement to attend a benefit review conference on the issue in dispute, unless a benefit review officer is authorized to schedule an additional benefit review conference under Section 410.026(b).

(d)  The commissioner shall adopt rules necessary to implement and enforce this section, including rules that:

(1)  define good cause; and

(2)  establish deadlines for requesting that a benefit review conference be rescheduled under Subsection (b).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.160, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 15, eff. September 1, 2011.


Sec. 410.029.  RESOLUTION AT BENEFIT REVIEW CONFERENCE;  WRITTEN AGREEMENT.  (a)  A dispute may be resolved either in whole or in part at a benefit review conference.

(b)  If the conference results in the resolution of some disputed issues by agreement or in a settlement, the benefit review officer shall reduce the agreement or the settlement to writing.  The benefit review officer and each party or the designated representative of the party shall sign the agreement or settlement.

(c)  A settlement takes effect on the date it is approved by the director in accordance with Section 408.005.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 410.030.  BINDING EFFECT OF AGREEMENT.  (a)  An agreement signed in accordance with Section 410.029 is binding on the insurance carrier through the conclusion of all matters relating to the claim, unless the division or a court, on a finding of fraud, newly discovered evidence, or other good and sufficient cause, relieves the insurance carrier of the effect of the agreement.

(b)  The agreement is binding on the claimant, if represented by an attorney, to the same extent as on the insurance carrier.  If the claimant is not represented by an attorney, the agreement is binding on the claimant through the conclusion of all matters relating to the claim while the claim is pending before the division, unless the commissioner for good cause relieves the claimant of the effect of the agreement.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.161, eff. September 1, 2005.


Sec. 410.031.  INCOMPLETE RESOLUTION; REPORT.  (a)  If a dispute is not entirely resolved at a benefit review conference, the benefit review officer shall prepare a written report that details each issue that is not resolved at the conference.

(b)  The report must also include:

(1)  a statement of each resolved issue;

(2)  a statement of each issue raised but not resolved;

(3)  a statement of the position of the parties regarding each unresolved issue;

(4)  a statement of the procedures required to request a contested case hearing or arbitration and a complete explanation of the differences in those proceedings and the rights of the parties to subsequent review of the determinations made in those proceedings; and

(5)  the date of the contested case hearing scheduled in accordance with Section 410.025(b).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.162, eff. September 1, 2005.


Text of section as amended by Acts 2007, 80th Leg., R.S., Ch. 1177 (H.B. 473), Sec. 1

For text of section as amended by Acts 2007, 80th Leg., R.S., Ch. 1150 (S.B. 1169), Sec. 4, see other Sec. 410.032.

Sec. 410.032. PAYMENT OF BENEFITS UNDER INTERLOCUTORY ORDER.  (a)  The benefit review officer who presides at the benefit review conference shall consider a request for an interlocutory order and shall give the opposing party the opportunity to respond before issuing an interlocutory order.

(b)  The interlocutory order may address the payment or suspension of accrued benefits, future benefits, or both accrued benefits and future benefits.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1999, 76th Leg., ch. 955, Sec. 2, eff. Sept. 1, 1999.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.162, eff. September 1, 2005.

Acts 2007, 80th Leg., R.S., Ch. 1177 (H.B. 473), Sec. 1, eff. September 1, 2007.

Text of section as amended by Acts 2007, 80th Leg., R.S., Ch. 1150 (S.B. 1169), Sec. 4

For text of section as amended by Acts 2007, 80th Leg., R.S., Ch. 1177 (H.B. 473), Sec. 1, see other Sec. 410.032.

Sec. 410.032.  PAYMENT OF BENEFITS UNDER INTERLOCUTORY ORDER.  (a) The benefit review officer who presides at the benefit review conference shall:

(1)  consider a written or verbal request for an interlocutory order for the payment of benefits; and

(2)  if the benefit review officer determines that issuance of an interlocutory order is appropriate, issue the interlocutory order not later than the third day after the date of receipt of the request under Subdivision (1).

(b)  The interlocutory order may address accrued benefits, future benefits, or both accrued benefits and future benefits.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1999, 76th Leg., ch. 955, Sec. 2, eff. Sept. 1, 1999.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.162, eff. September 1, 2005.

Acts 2007, 80th Leg., R.S., Ch. 1150 (S.B. 1169), Sec. 4, eff. September 1, 2007.

Sec. 410.033.  MULTIPLE CARRIERS.  (a)  If there is a dispute as to which of two or more insurance carriers is liable for compensation for one or more compensable injuries, the commissioner may issue an interlocutory order directing each insurance carrier to pay a proportionate share of benefits due pending a final decision on liability.  The proportionate share is computed by dividing the compensation due by the number of insurance carriers involved.

(b)  On final determination of liability, an insurance carrier determined to be not liable for the payment of benefits is entitled to

reimbursement for the share paid by the insurance carrier from any insurance carrier determined to be liable.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.163, eff. September 1, 2005.


    Sec. 410.034.  FILING OF AGREEMENT AND REPORT.  (a)  The benefit review officer shall file the signed agreement and the report with the division.
    (b)  The commissioner by rule shall prescribe the times within which the agreement and report must be filed.
    (c)  The division shall furnish a copy of the file-stamped report to:
        (1)  the claimant;
        (2)  the employer; and
        (3)  the insurance carrier.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.164, eff. September 1, 2005.


SUBCHAPTER C. ARBITRATION

    Sec. 410.101.  PURPOSE.  The purpose of arbitration is to:
        (1)  enter into formal, binding stipulations on issues on which the parties agree;
        (2)  resolve issues on which the parties disagree;  and
        (3)  render a final award with respect to all issues in dispute.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


    Sec. 410.102.  ARBITRATORS; QUALIFICATIONS.  (a)  An arbitrator must be an employee of the division, except that the division may contract with qualified arbitrators on a determination of special need.
    (b)  An arbitrator must:
        (1)  be a member of the National Academy of Arbitrators;
        (2)  be on an approved list of the American Arbitration Association or Federal Mediation and Conciliation Service; or
        (3)  meet qualifications established by the commissioner by rule.

(c)  The division shall require that each arbitrator have appropriate training in the workers' compensation laws of this state.  The commissioner shall establish procedures to carry out this subsection.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
     Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.165, eff. September 1, 2005.


Sec. 410.103.  DUTIES OF ARBITRATOR.  An arbitrator shall:
          (1)  protect the interests of all parties;
          (2)  ensure that all relevant evidence has been disclosed to the arbitrator and to all parties; and
          (3)  render an award consistent with this subtitle and the policies of the division.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
     Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.166, eff. September 1, 2005.


Sec. 410.104.  ELECTION OF ARBITRATION;  EFFECT.  (a)  If issues remain unresolved after a benefit review conference, the parties, by agreement, may elect to engage in arbitration in the manner provided by this subchapter.  Arbitration may be used only to resolve disputed benefit issues and is an alternative to a contested case hearing.  A contested case hearing scheduled under Section 410.025(b) is canceled by an election under this subchapter.
     (b)  To elect arbitration, the parties must file the election with the division not later than the 20th day after the last day of the benefit review conference.  The commissioner shall prescribe a form for that purpose.
     (c)  An election to engage in arbitration under this subchapter is irrevocable and binding on all parties for the resolution of all disputes arising out of the claims that are under the jurisdiction of the division.
     (d)  An agreement to elect arbitration binds the parties to the provisions of Chapter 408 relating to benefits, and any award, agreement, or settlement after arbitration is elected must comply with that chapter.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.167, eff. September 1, 2005.


Sec. 410.105.  LISTS OF ARBITRATORS.  (a)  The division shall establish regional lists of arbitrators who meet the qualifications prescribed under Sections 410.102(a) and (b).  Each regional list shall be initially prepared in a random name order, and subsequent additions to a list shall be added chronologically.

(b)  The commissioner shall review the lists of arbitrators annually and determine if each arbitrator is fair and impartial and makes awards that are consistent with and in accordance with this subtitle and the rules of the commissioner.  The commissioner shall remove an arbitrator if, after the review, the commissioner determines that the arbitrator is not fair and impartial or does not make awards consistent with this subtitle and commissioner rules.

(c)  The division's lists are confidential and are not subject to disclosure under Chapter 552, Government Code.  The lists may not be revealed by any division employee to any person who is not a division employee.  The lists are exempt from discovery in civil litigation unless the party seeking the discovery establishes reasonable cause to believe that a violation of the requirements of this section or Section 410.106, 410.107, 410.108, or 410.109(b) occurred and that the violation is relevant to the issues in dispute.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 76, Sec. 5.95(88), eff. Sept. 1, 1995.
Amended by:
Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.168, eff. September 1, 2005.


Sec. 410.106.  SELECTION OF ARBITRATOR.  The division shall assign the arbitrator for a particular case by selecting the next name after the previous case's selection in consecutive order.  The division may not change the order of names once the order is established under this subchapter, except that once each arbitrator on the list has been assigned to a case, the names shall be randomly reordered.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.169, eff. September 1, 2005.

Sec. 410.107.  ASSIGNMENT OF ARBITRATOR.  (a)  The division shall assign an arbitrator to a pending case not later than the 30th day after the date on which the election for arbitration is filed with the division.

(b)  When an arbitrator has been assigned to a case under Subsection (a), the parties shall be notified immediately.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.170, eff. September 1, 2005.


Sec. 410.108.  REJECTION OF ARBITRATOR.  (a)  Each party is entitled, in its sole discretion, to one rejection of the arbitrator in each case. If a party rejects the arbitrator, the division shall assign another arbitrator as provided by Section 410.106.

(b)  A rejection must be made not later than the third day after the date of notification of the arbitrator's assignment.

(c)  When all parties have exercised their right of rejection or if no rejection is registered, the assignment is final.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.171, eff. September 1, 2005.


Sec. 410.109.  SCHEDULING OF ARBITRATION.  (a)  The arbitrator shall schedule arbitration to be held not later than the 30th day after the date of the arbitrator's assignment and shall notify the parties and the division of the scheduled date.

(b)  If an arbitrator is unable to schedule arbitration in accordance with Subsection (a), the division shall appoint the next arbitrator on the applicable list.  Each party is entitled to reject the arbitrator appointed under this subsection in the manner provided under Section 410.108.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.172, eff. September 1, 2005.

Sec. 410.110.  CONTINUANCE.  (a)  A request by a party for a continuance of the arbitration to another date must be directed to the director.  The director may grant a continuance only if the director determines, giving due regard to the availability of the arbitrator, that good cause for the continuance exists.

(b)  If the director grants a continuance under this section, the rescheduled date may not be later than the 30th day after the original date of the arbitration.

(c)  Without regard to whether good cause exists, the director may not grant more than one continuance to each party.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 410.111.  RULES.  The commissioner shall adopt rules for arbitration consistent with generally recognized arbitration principles and procedures.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.173, eff. September 1, 2005.


Sec. 410.112.  EXCHANGE AND FILING OF INFORMATION;  ADMINISTRATIVE VIOLATION.  (a)  Not later than the seventh day before the first day of arbitration, the parties shall exchange and file with the arbitrator:

(1)  all medical reports and other documentary evidence not previously exchanged or filed that are pertinent to the resolution of the claim;  and

(2)  information relating to their proposed resolution of the disputed issues.

(b)  A party commits an administrative violation if the party, without good cause as determined by the arbitrator, fails to comply with Subsection (a).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.174, eff. September 1, 2005.


Sec. 410.113.  DUTIES OF PARTIES AT ARBITRATION;  ATTENDANCE;  ADMINISTRATIVE VIOLATION.  (a)  Each party shall attend the arbitration

prepared to set forth in detail its position on unresolved issues and the issues on which it is prepared to stipulate.

(b)  A party commits an administrative violation if the party does not attend the arbitration unless the arbitrator determines that the party had good cause not to attend.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.175, eff. September 1, 2005.


Sec. 410.114.  TESTIMONY;  RECORD.  (a)  The arbitrator may require witnesses to testify under oath and shall require testimony under oath if requested by a party.

(b)  The division shall make an electronic recording of the proceeding.

(c)  An official stenographic record is not required, but any party may at the party's expense make a stenographic record of the proceeding.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.176, eff. September 1, 2005.


Sec. 410.115.  EVIDENCE.  (a)  The parties may offer evidence as they desire and shall produce additional evidence as the arbitrator considers necessary to an understanding and determination of the dispute.

(b)  The arbitrator is the judge of the relevance and materiality of the evidence offered.  Conformity to legal rules of evidence is not required.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 410.116.  CLOSING STATEMENTS;  BRIEFS.  The parties may present closing statements as they desire, but the record may not remain open for written briefs unless requested by the arbitrator.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 410.117.  EX PARTE CONTACTS PROHIBITED.  A party and an arbitrator may not communicate outside the arbitration unless the

communication is in writing with copies provided to all parties or relates to procedural matters.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 410.118.  AWARD.  (a)  The arbitrator shall enter the arbitrator's award not later than the seventh day after the last day of arbitration.

(b)  The arbitrator shall base the award on the facts established at arbitration, including stipulations of the parties, and on the law as properly applied to those facts.

(c)  The award must:

(1)  be in writing;

(2)  be signed and dated by the arbitrator;  and

(3)  include a statement of the arbitrator's decision on the contested issues and the parties' stipulations on uncontested issues.

(d)  The arbitrator shall file a copy of the award as part of the permanent claim file at the division and shall notify the parties in writing of the decision.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.177, eff. September 1, 2005.


Sec. 410.119.  EFFECT OF AWARD.  (a)  An arbitrator's award is final and binding on all parties.  Except as provided by Section 410.121, there is no right to appeal.

(b)  An arbitrator's award is a final order of the division.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.178, eff. September 1, 2005.


Sec. 410.120.  CLERICAL ERROR.  For the purpose of correcting a clerical error, an arbitrator retains jurisdiction of the award for 20 days after the date of the award.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Sec. 410.121.  COURT VACATING AWARD.  (a)  On application of an aggrieved party, a court of competent jurisdiction shall vacate an arbitrator's award on a finding that:

        (1)  the award was procured by corruption, fraud, or misrepresentation;

        (2)  the decision of the arbitrator was arbitrary and capricious; or

        (3)  the award was outside the jurisdiction of the division.

    (b)  If an award is vacated, the case shall be remanded to the division for another arbitration proceeding.

    (c)  A suit to vacate an award must be filed not later than the 30th day after:

        (1)  the date of the award;  or

        (2)  the date the appealing party knew or should have known of a basis for suit under this section, but in no event later than 12 months after an order denying compensation or after the expiration of the income or death benefit period.

    (d)  Venue for a suit to vacate an award is in the county in which the arbitration was conducted.

    (e)  In a suit to vacate an arbitrator's award, only the court may make determinations, including findings of fact or conclusions of law.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.179, eff. September 1, 2005.


SUBCHAPTER D. CONTESTED CASE HEARING

    Sec. 410.151.  CONTESTED CASE HEARING;  SCOPE.  (a)  If arbitration is not elected under Section 410.104, a party to a claim for which a benefit review conference is held or a party eligible to proceed directly to a contested case hearing as provided by Section 410.024 is entitled to a contested case hearing.

    (b)  An issue that was not raised at a benefit review conference or that was resolved at a benefit review conference may not be considered unless:

        (1)  the parties consent; or

        (2)  if the issue was not raised, the commissioner determines that good cause existed for not raising the issue at the conference.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.180, eff. September 1, 2005.


    Sec. 410.152.  ADMINISTRATIVE LAW JUDGES; QUALIFICATIONS.  (a)  An administrative law judge shall conduct a contested case hearing.
    (b)  An administrative law judge must be licensed to practice law in this state.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2017, 85th Leg., R.S., Ch. 839 (H.B. 2111), Sec. 3, eff. September 1, 2017.


    Sec. 410.153.  APPLICATION OF ADMINISTRATIVE PROCEDURE ACT.  Chapter 2001, Government Code, applies to a contested case hearing to the extent that the commissioner finds appropriate, except that the following do not apply:
        (1)  Section 2001.054;
        (2)  Sections 2001.061 and 2001.062;
        (3)  Section 2001.202; and
        (4)  Subchapters F, G, I, and Z, except for Section 2001.141(c).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 76, Sec. 5.93, eff. Sept. 1, 1995.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.181, eff. September 1, 2005.


    Sec. 410.154.  SCHEDULING OF HEARING.  The division shall schedule a contested case hearing in accordance with Section 410.024 or 410.025(b).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.182, eff. September 1, 2005.


    Sec. 410.155.  CONTINUANCE.  (a)  A written request by a party for a continuance of a contested case hearing to another date must be directed to the division.

(b)  The division may grant a continuance only if the division determines that there is good cause for the continuance.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.183, eff. September 1, 2005.


    Sec. 410.156.  ATTENDANCE REQUIRED;  ADMINISTRATIVE VIOLATION.  (a)  Each party shall attend a contested case hearing.
    (b)  A party commits an administrative violation if the party, without good cause as determined by the administrative law judge, does not attend a contested case hearing.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.184, eff. September 1, 2005.
    Acts 2017, 85th Leg., R.S., Ch. 839 (H.B. 2111), Sec. 4, eff. September 1, 2017.


    Sec. 410.157.  RULES.  The commissioner shall adopt rules governing procedures under which contested case hearings are conducted.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.185, eff. September 1, 2005.


    Sec. 410.158.  DISCOVERY.  (a)  Except as provided by Section 410.162, discovery is limited to:
        (1)  depositions on written questions to any health care provider;
        (2)  depositions of other witnesses as permitted by the administrative law judge for good cause shown;  and
        (3)  interrogatories as prescribed by the commissioner.
    (b)  Discovery under Subsection (a) may not seek information that may readily be derived from documentary evidence described in Section 410.160.  Answers to discovery under Subsection (a) need not duplicate information that may readily be derived from documentary evidence described in Section 410.160.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.186, eff. September 1, 2005.
    Acts 2017, 85th Leg., R.S., Ch. 839 (H.B. 2111), Sec. 5, eff. September 1, 2017.


    Sec. 410.159.  STANDARD INTERROGATORIES.  (a)  The commissioner by rule shall prescribe standard form sets of interrogatories to elicit information from claimants and insurance carriers.
    (b)  Standard interrogatories shall be answered by each party and served on the opposing party within the time prescribed by commissioner rule, unless the parties agree otherwise.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.187, eff. September 1, 2005.


    Sec. 410.160.  EXCHANGE OF INFORMATION.  Within the time prescribed by commissioner rule, the parties shall exchange:
        (1)  all medical reports and reports of expert witnesses who will be called to testify at the hearing;
        (2)  all medical records;
        (3)  any witness statements;
        (4)  the identity and location of any witness known to the parties to have knowledge of relevant facts; and
        (5)  all photographs or other documents that a party intends to offer into evidence at the hearing.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.188, eff. September 1, 2005.


    Sec. 410.161.  FAILURE TO DISCLOSE INFORMATION.  A party who fails to disclose information known to the party or documents that are in the party's possession, custody, or control at the time disclosure is required by Sections 410.158-410.160 may not introduce the evidence at any subsequent proceeding before the division or in court on the claim unless

good cause is shown for not having disclosed the information or documents under those sections.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.189, eff. September 1, 2005.


    Sec. 410.162.  ADDITIONAL DISCOVERY.  For good cause shown, a party may obtain permission from the administrative law judge to conduct additional discovery as necessary.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2017, 85th Leg., R.S., Ch. 839 (H.B. 2111), Sec. 6, eff. September 1, 2017.


    Sec. 410.163.  POWERS AND DUTIES OF ADMINISTRATIVE LAW JUDGE.  (a)  At a contested case hearing the administrative law judge shall:
        (1)  swear witnesses;
        (2)  receive testimony;
        (3)  allow examination and cross-examination of witnesses;
        (4)  accept documents and other tangible evidence; and
        (5)  allow the presentation of evidence by affidavit.
    (b)  An administrative law judge shall ensure the preservation of the rights of the parties and the full development of facts required for the determinations to be made.  An administrative law judge may permit the use of summary procedures, if appropriate, including witness statements, summaries, and similar measures to expedite the proceedings.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2017, 85th Leg., R.S., Ch. 839 (H.B. 2111), Sec. 7, eff. September 1, 2017.


    Sec. 410.164.  RECORD.  (a)  The proceedings of a contested case hearing shall be recorded electronically.  A party may request a transcript of the proceeding and shall pay the reasonable cost of the transcription.
    (b)  A party may request that the proceedings of the contested case hearing be recorded by a court reporter.  The party making the request shall bear the cost.

(c)  At each contested case hearing, as applicable, the insurance carrier shall file with the administrative law judge and shall deliver to the claimant a single document stating the true corporate name of the insurance carrier and the name and address of the insurance carrier's registered agent for service of process.  The document is part of the record of the contested case hearing.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 2001, 77th Leg., ch. 1456, Sec. 11.01, eff. June 17, 2001.
Amended by:
    Acts 2017, 85th Leg., R.S., Ch. 839 (H.B. 2111), Sec. 8, eff. September 1, 2017.


    Sec. 410.165.  EVIDENCE.  (a)  The administrative law judge is the sole judge of the relevance and materiality of the evidence offered and of the weight and credibility to be given to the evidence.  Conformity to legal rules of evidence is not necessary.
    (b)  An administrative law judge may accept a written statement signed by a witness and shall accept all written reports signed by a health care provider.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2017, 85th Leg., R.S., Ch. 839 (H.B. 2111), Sec. 9, eff. September 1, 2017.


    Sec. 410.166.  STIPULATIONS.  A written stipulation or agreement of the parties that is filed in the record or an oral stipulation or agreement of the parties that is preserved in the record is final and binding.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


    Sec. 410.167.  EX PARTE CONTACTS PROHIBITED.  A party and an administrative law judge may not communicate outside the contested case hearing unless the communication is in writing with copies provided to all parties or relates to procedural matters.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2017, 85th Leg., R.S., Ch. 839 (H.B. 2111), Sec. 10, eff. September 1, 2017.

Sec. 410.168.  DECISION.  (a)  The administrative law judge shall issue a written decision that includes:

(1)  findings of fact and conclusions of law;

(2)  a determination of whether benefits are due; and

(3)  an award of benefits due.

(b)  The decision may address accrued benefits, future benefits, or both accrued benefits and future benefits.

(c)  The administrative law judge may enter an interlocutory order for the payment of all or part of medical benefits or income benefits.  The order may address accrued benefits, future benefits, or both accrued benefits and future benefits.  The order is binding during the pendency of an appeal to the appeals panel.

(d)  On a form that the commissioner by rule prescribes, the administrative law judge shall issue a separate written decision regarding attorney's fees and any matter related to attorney's fees.  The decision regarding attorney's fees and the form may not be made known to a jury in a judicial review of an award, including an appeal.

(e)  The commissioner by rule shall prescribe the times within which the administrative law judge must file the decisions with the division.

(f)  The division shall send a copy of the decision to each party.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1999, 76th Leg., ch. 955, Sec. 3, eff. Sept. 1, 1999.
Amended by:
Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.190, eff. September 1, 2005.
Acts 2017, 85th Leg., R.S., Ch. 839 (H.B. 2111), Sec. 11, eff. September 1, 2017.


Sec. 410.169.  EFFECT OF DECISION.  A decision of an administrative law judge regarding benefits is final in the absence of a timely appeal by a party and is binding during the pendency of an appeal to the appeals panel.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
Acts 2017, 85th Leg., R.S., Ch. 839 (H.B. 2111), Sec. 12, eff. September 1, 2017.

Sec. 410.201. APPEALS JUDGES; QUALIFICATIONS. (a) Appeals judges, in a three-member panel, shall conduct administrative appeals proceedings.

(b) An appeals judge must be licensed to practice law in this state.

(c) An appeals judge may not conduct a benefit review conference or a contested case hearing.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.191, eff. September 1, 2005.


Sec. 410.202. REQUEST FOR APPEAL; RESPONSE. (a) To appeal the decision of an administrative law judge, a party shall file a written request for appeal with the appeals panel not later than the 15th day after the date on which the decision of the administrative law judge is received from the division and shall on the same date serve a copy of the request for appeal on the other party.

(b) The respondent shall file a written response with the appeals panel not later than the 15th day after the date on which the copy of the request for appeal is served and shall on the same date serve a copy of the response on the appellant.

(c) A request for appeal or a response must clearly and concisely rebut or support the decision of the administrative law judge on each issue on which review is sought.

(d) Saturdays and Sundays and holidays listed in Section 662.003, Government Code, are not included in the computation of the time in which a request for an appeal under Subsection (a) or a response under Subsection (b) must be filed.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 2001, 77th Leg., ch. 1456, Sec. 12.01, eff. June 17, 2001.
Amended by:

Acts 2017, 85th Leg., R.S., Ch. 839 (H.B. 2111), Sec. 13, eff. September 1, 2017.


Sec. 410.203. POWERS AND DUTIES OF APPEALS PANEL; PRIORITY OF HEARING ON REMAND. (a) The appeals panel shall consider:

(1) the record developed at the contested case hearing; and

(2) the written request for appeal and response filed with the appeals panel.

(b) The appeals panel may:

(1) reverse the decision of the administrative law judge and render a new decision;

(2) reverse the decision of the administrative law judge and remand the case to the administrative law judge for further consideration and development of evidence; or

(3) affirm the decision of the administrative law judge in a case described by Section 410.204(a-1).

(c) The appeals panel may not remand a case under Subsection (b)(2) more than once.

(d) A hearing on remand shall be accelerated and the commissioner shall adopt rules to give priority to the hearing over other proceedings.

(e) The appeals panel shall issue and maintain a precedent manual. The precedent manual shall be composed of precedent-establishing decisions and may include other information as identified by the appeals panel.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.192, eff. September 1, 2005.
    Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 16, eff. September 1, 2011.
    Acts 2017, 85th Leg., R.S., Ch. 839 (H.B. 2111), Sec. 14, eff. September 1, 2017.


Sec. 410.204. DECISION. (a) The appeals panel shall review each request and issue a written decision on each reversed or remanded case. The appeals panel may issue a written decision on an affirmed case as described by Subsection (a-1). The decision must be in writing and shall be issued not later than the 45th day after the date on which the written response to the request for appeal is filed. The appeals panel shall file a copy of the decision with the commissioner.

(a-1) An appeals panel may only issue a written decision in a case in which the panel affirms the decision of an administrative law judge if the case:

(1) is a case of first impression;

(2) involves a recent change in law; or

(3) involves errors at the contested case hearing that require correction but do not affect the outcome of the hearing, including:

(A) findings of fact for which insufficient evidence exists;

(B) incorrect conclusions of law;

(C) findings of fact or conclusions of law regarding matters that were not properly before the administrative law judge; and

(D) legal errors not otherwise described by this subdivision.

(b) A copy of the decision of the appeals panel shall be sent to each party not later than the seventh day after the date the decision is filed with the division.

(c) If the appeals panel does not issue a decision in accordance with this section, the decision of the administrative law judge becomes final and is the final decision of the appeals panel.

(d) Each final decision of the appeals panel shall conclude with a separate paragraph stating: "The true corporate name of the insurance carrier is (NAME IN BOLD PRINT) and the name and address of its registered agent for service of process is (NAME AND ADDRESS IN BOLD PRINT)."

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 2001, 77th Leg., ch. 1456, Sec. 11.02, eff. June 17, 2001.
Amended by:
Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.193, eff. September 1, 2005.
Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 17, eff. September 1, 2011.
Acts 2017, 85th Leg., R.S., Ch. 839 (H.B. 2111), Sec. 15, eff. September 1, 2017.


Sec. 410.205. EFFECT OF DECISION. (a) A decision of the appeals panel regarding benefits is final in the absence of a timely appeal for judicial review.

(b) The decision of the appeals panel regarding benefits is binding during the pendency of an appeal under Subchapter F or G.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1999, 76th Leg., ch. 955, Sec. 4, eff. Sept. 1, 1999.
Amended by:
Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.194, eff. September 1, 2005.


Sec. 410.206. CLERICAL ERROR. The division may revise a decision in a contested case hearing on a finding of clerical error.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:

    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.195, eff. September 1, 2005.


    Sec. 410.207.  CONTINUATION OF DIVISION JURISDICTION.  During judicial review of the appeals panel decision on any disputed issue relating to a workers' compensation claim, the division retains jurisdiction of all other issues related to the claim.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:

    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.196, eff. September 1, 2005.


    Sec. 410.208.  JUDICIAL ENFORCEMENT OF ORDER OR DECISION; ADMINISTRATIVE VIOLATION.  (a)  If a person refuses or fails to comply with an interlocutory order, final order, or decision of the commissioner, the division may bring suit in Travis County to enforce the order or decision.
    (b)  If an insurance carrier refuses or fails to comply with an interlocutory order, a final order, or a decision of the commissioner, the claimant may bring suit in the county of the claimant's residence at the time of the injury, or death if the employee is deceased, or, in the case of an occupational disease, in the county in which the employee resided on the date disability began or any county agreed to by the parties.
    (c)  If the division brings suit to enforce an interlocutory order, final order, or decision of the commissioner, the division is entitled to reasonable attorney's fees and costs for the prosecution and collection of the claim, in addition to a judgment enforcing the order or decision and any other remedy provided by law.
    (d)  A claimant who brings suit to enforce an interlocutory order, final order, or decision of the commissioner is entitled to a penalty equal to 12 percent of the amount of benefits recovered in the judgment, interest, and reasonable attorney's fees for the prosecution and collection of the claim, in addition to a judgment enforcing the order or decision.
    (e)  A person commits an administrative violation if the person fails or refuses to comply with an interlocutory order, final order, or decision of the commissioner within 20 days after the date the order or decision becomes final.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 2003, 78th Leg., ch. 397, Sec. 1, eff. Sept. 1, 2003.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.197, eff. September 1, 2005.


Sec. 410.209.  REIMBURSEMENT FOR OVERPAYMENT.  The subsequent injury fund shall reimburse an insurance carrier for any overpayments of benefits made under an interlocutory order or decision if that order or decision is reversed or modified by final arbitration, order, or decision of the commissioner or a court.  The commissioner shall adopt rules to provide for a periodic reimbursement schedule, providing for reimbursement at least annually.

Added by Acts 1999, 76th Leg., ch. 955, Sec. 5, eff. Sept. 1, 1999.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.198, eff. September 1, 2005.


SUBCHAPTER F. JUDICIAL REVIEW--GENERAL PROVISIONS

Sec. 410.251.  EXHAUSTION OF REMEDIES.  A party that has exhausted its administrative remedies under this subtitle and that is aggrieved by a final decision of the appeals panel may seek judicial review under this subchapter and Subchapter G, if applicable.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 410.252.  TIME FOR FILING PETITION;  VENUE.  (a)  A party may seek judicial review by filing suit not later than the 45th day after the date on which the division mailed the party the decision of the appeals panel.  For purposes of this section, the mailing date is considered to be the fifth day after the date the decision of the appeals panel was filed with the division.

(b)  The party bringing suit to appeal the decision must file a petition with the appropriate court in:

(1)  the county where the employee resided at the time of the injury or death, if the employee is deceased;  or

(2)  in the case of an occupational disease, in the county where the employee resided on the date disability began or any county agreed to by the parties.

(c)  If a suit under this section is filed in a county other than the county described by Subsection (b), the court, on determining that it does not have jurisdiction to render judgment on the merits of the suit, shall transfer the case to a proper court in a county described by Subsection (b).  Notice of the transfer of a suit shall be given to the parties.  A suit transferred under this subsection shall be considered for all purposes the same as if originally filed in the court to which it is transferred.

(d)  If a suit is initially filed within the 45-day period in Subsection (a), and is transferred under Subsection (c), the suit is considered to be timely filed in the court to which it is transferred.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 2003, 78th Leg., ch. 663, Sec. 1, eff. Sept. 1, 2003.
Amended by:
    Acts 2009, 81st Leg., R.S., Ch. 1200 (H.B. 4545), Sec. 1, eff. September 1, 2009.
    Acts 2011, 82nd Leg., R.S., Ch. 1066 (S.B. 809), Sec. 1, eff. September 1, 2011.


Sec. 410.253.  SERVICE.  (a)  A party seeking judicial review shall simultaneously:
        (1)  file a copy of the party's petition with the court;
        (2)  serve any opposing party to the suit; and
        (3)  provide a copy of the party's petition to the division.
    (b)  A party may not seek judicial review under Section 410.251 unless the party has provided the copy of the petition to the division under Subsection (a)(3).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 2003, 78th Leg., ch. 397, Sec. 2, eff. Sept. 1, 2003.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.199, eff. September 1, 2005.
    Acts 2017, 85th Leg., R.S., Ch. 271 (H.B. 2061), Sec. 1, eff. September 1, 2017.


Sec. 410.254.  INTERVENTION.  On timely motion initiated by the commissioner, the division shall be permitted to intervene in any judicial proceeding under this subchapter or Subchapter G.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.200, eff. September 1, 2005.


Sec. 410.255.  JUDICIAL REVIEW OF ISSUES OTHER THAN COMPENSABILITY OR INCOME OR DEATH BENEFITS.  (a)  For all issues other than those covered under Section 410.301(a), judicial review shall be conducted in the manner provided for judicial review of a contested case under Subchapter G, Chapter 2001, Government Code.

(b)  Judicial review conducted under this section is governed by the substantial evidence rule.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 76, Sec. 5.95(53), eff. Sept. 1, 1995.


Sec. 410.256.  COURT APPROVAL OF SETTLEMENT.  (a)  A claim or issue may not be settled contrary to the provisions of the appeals panel decision issued on the claim or issue unless a party to the proceeding has filed for judicial review under this subchapter or Subchapter G.  The trial court must approve a settlement made by the parties after judicial review of an award is sought and before the court enters judgment.

(b)  The court may not approve a settlement except on a finding that:

(1)  the settlement accurately reflects the agreement between the parties;

(2)  the settlement adheres to all appropriate provisions of the law;  and

(3)  under the law and facts, the settlement is in the best interest of the claimant.

(c)  A settlement may not provide for:

(1)  payment of any benefits in a lump sum except as provided by Section 408.128;  or

(2)  limitation or termination of the claimant's right to medical benefits under Section 408.021.

(d)  A settlement or agreement that resolves an issue of impairment may not be made before the claimant reaches maximum medical improvement and must adopt one of the impairment ratings under Subchapter G, Chapter 408.

(e)  A party proposing a settlement before judgment is entered by the trial court may petition the court orally or in writing for approval of the settlement.

(f)  Settlement of a claim or issue under this section does not constitute a modification or reversal of the decision awarding benefits for the purpose of Section 410.209.

(g)  Settlement of a claim or issue must be in compliance with all appropriate provisions of the law, including this section and Section 410.258 of this subchapter.  A settlement which on its face does not comply with this section is void.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1997, 75th Leg., ch. 1267, Sec. 1, eff. Sept. 1, 1997;  Acts 2003, 78th Leg., ch. 397, Sec. 3, eff. Sept. 1, 2003.
Amended by:
     Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.2001, eff. September 1, 2005.


Sec. 410.257.  JUDGMENT AFTER JUDICIAL REVIEW.  (a)  A judgment entered by a court on judicial review of the appeals panel decision under this subchapter or Subchapter G  must comply with all appropriate provisions of the law.

(b)  A judgment under this section may not provide for:

(1)  payment of benefits in a lump sum except as provided by Section 408.128;  or

(2)  the limitation or termination of the claimant's right to medical benefits under Section 408.021.

(c)  A judgment that resolves an issue of impairment may not be entered before the date the claimant reaches maximum medical improvement. The judgment must adopt an impairment rating under Subchapter G, Chapter 408, except to the extent Section 410.307 applies.

(d)  A judgment under this section may not order reimbursement from the subsequent injury fund.

(e)  A judgment under this section based on default or on an agreement of the parties does not constitute a modification or reversal of a decision awarding benefits for the purpose of Section 410. 209.

(f)  A judgment that on its face does not comply with this section is void.

Added by Acts 1997, 75th Leg., ch. 1267, Sec. 2, eff. Sept. 1, 1997.
Amended by Acts 2003, 78th Leg., ch. 397, Sec. 4, eff. Sept. 1, 2003.
Amended by:
     Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.2002, eff. September 1, 2005.

Sec. 410.258.  NOTIFICATION OF DIVISION OF PROPOSED JUDGMENTS AND SETTLEMENTS; RIGHT TO INTERVENE.  (a)  The party who initiated a proceeding under this subchapter or Subchapter G must file any proposed judgment or settlement, including a proposed default judgment or proposed agreed judgment, with the division not later than the 30th day before the date on which the court is scheduled to enter the judgment or approve the settlement.

(a-1)  If the terms of the proposed settlement or proposed agreed judgment, including all payments to be made, are not described in the proposed settlement or proposed agreed judgment, the party must also file with the division at the time of filing the proposed settlement or proposed agreed judgment a separate document that fully describes the terms of the proposed settlement or proposed agreed judgment.

(a-2)  The proposed settlement or proposed agreed judgment and any separate document described by Subsection (a-1) must be mailed to the division by certified mail, return receipt requested.

(a-3)  The separate document filed with the division under Subsection (a-1) is not subject to disclosure under Chapter 552, Government Code.

(b)  The division may intervene in a proceeding under Subsection (a) not later than the 30th day after the date of receipt of the proposed judgment or settlement.

(c)  The commissioner shall review the proposed judgment or settlement to determine compliance with all appropriate provisions of the law.  If the commissioner determines that the proposal is not in compliance with the law, the division may intervene as a matter of right in the proceeding not later than the 30th day after the date of receipt of the proposed judgment or settlement.  The court may limit the extent of the division's intervention to providing the information described by Subsection (e).

(d)  If the division does not intervene before the 31st day after the date of receipt of the proposed judgment or settlement, the court shall enter the judgment or approve the settlement if the court determines that the proposed judgment or settlement is in compliance with all appropriate provisions of the law.

(e)  If the division intervenes in the proceeding, the commissioner shall inform the court of each reason the commissioner believes the proposed judgment or settlement is not in compliance with the law.  The court shall give full consideration to the information provided by the commissioner before entering a judgment or approving a settlement.

(f)  A judgment entered or settlement approved without complying with the requirements of this section is void.

Added by Acts 1997, 75th Leg., ch. 1267, Sec. 2, eff. Sept. 1, 1997.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.201, eff. September 1, 2005.
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.202, eff. September 1, 2005.
    Acts 2017, 85th Leg., R.S., Ch. 271 (H.B. 2061), Sec. 2, eff. September 1, 2017.


SUBCHAPTER G. JUDICIAL REVIEW OF ISSUES REGARDING COMPENSABILITY OR INCOME OR DEATH BENEFITS

    Sec. 410.301.  JUDICIAL REVIEW OF ISSUES REGARDING COMPENSABILITY OR INCOME OR DEATH BENEFITS.  (a)  Judicial review of a final decision of the appeals panel regarding compensability or eligibility for or the amount of income or death benefits shall be conducted as provided by this subchapter.
    (b)  A determination of benefits before a court shall be in accordance with this subtitle.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.203, eff. September 1, 2005.


    Sec. 410.302.  ADMISSIBILITY OF RECORDS; LIMITATION OF ISSUES.  (a)  The records of a contested case hearing conducted under this chapter are admissible in a trial under this subchapter in accordance with the Texas Rules of Evidence.
    (b)  A trial under this subchapter is limited to issues decided by the appeals panel and on which judicial review is sought.  The pleadings must specifically set forth the determinations of the appeals panel by which the party is aggrieved.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
    Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.204, eff. September 1, 2005.

Sec. 410.303. BURDEN OF PROOF. The party appealing the decision on an issue described in Section 410.301(a) has the burden of proof by a preponderance of the evidence.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 410.304. CONSIDERATION OF APPEALS PANEL DECISION. (a) In a jury trial, the court, before submitting the case to the jury, shall inform the jury in the court's instructions, charge, or questions to the jury of the appeals panel decision on each disputed issue described by Section 410.301(a) that is submitted to the jury.

(b) In a trial to the court without a jury, the court in rendering its judgment on an issue described by Section 410.301(a) shall consider the decision of the appeals panel.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.205, eff. September 1, 2005.


Sec. 410.305. CONFLICT WITH RULES OF CIVIL PROCEDURE. (a) To the extent that this subchapter conflicts with the Texas Rules of Civil Procedure or any other rules adopted by the supreme court, this subchapter controls.

(b) Notwithstanding Section 22.004, Government Code, or any other law, the supreme court may not adopt rules in conflict with or inconsistent with this subchapter.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 410.306. EVIDENCE. (a) Evidence shall be adduced as in other civil trials.

(b) The division on payment of a reasonable fee shall make available to the parties a certified copy of the division's record. All facts and evidence the record contains are admissible to the extent allowed under the Texas Rules of Evidence.

(c) Except as provided by Section 410.307, evidence of extent of impairment shall be limited to that presented to the division. The court or jury, in its determination of the extent of impairment, shall adopt one of the impairment ratings under Subchapter G, Chapter 408.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.206, eff. September 1, 2005.


Sec. 410.307.  SUBSTANTIAL CHANGE OF CONDITION.  (a)  Evidence of the extent of impairment is not limited to that presented to the division if the court, after a hearing, finds that there is a substantial change of condition.  The court's finding of a substantial change of condition may be based only on:

(1)  medical evidence from the same doctor or doctors whose testimony or opinion was presented to the division;

(2)  evidence that has come to the party's knowledge since the contested case hearing;

(3)  evidence that could not have been discovered earlier with due diligence by the party; and

(4)  evidence that would probably produce a different result if it is admitted into evidence at the trial.

(b)  If substantial change of condition is disputed, the court shall require the designated doctor in the case to verify the substantial change of condition, if any.  The findings of the designated doctor shall be presumed to be correct, and the court shall base its finding on the medical evidence presented by the designated doctor in regard to substantial change of condition unless the preponderance of the other medical evidence is to the contrary.

(c)  The substantial change of condition must be confirmable by recognized laboratory or diagnostic tests or signs confirmable by physical examination.

(d)  If the court finds a substantial change of condition under this section, new medical evidence of the extent of impairment must be from and is limited to the same doctor or doctors who made impairment ratings before the division under Section 408.123.

(e)  The court's finding of a substantial change of condition may not be made known to the jury.

(f)  The court or jury in its determination of the extent of impairment shall adopt one of the impairment ratings made under this section.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.207, eff. September 1, 2005.


Sec. 410.308.  CERTIFIED COPY OF NOTICE SECURING COMPENSATION.  (a) The division shall furnish any interested party in the claim with a certified copy of the notice of the employer securing compensation with the insurance carrier, filed with the division.

(b)  The certified copy of the notice is admissible in evidence on trial of the claim pending and is prima facie proof of the facts stated in the notice unless the facts are denied under oath by the opposing party.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.208, eff. September 1, 2005.

TITLE 28. INSURANCE

PART 2. TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION

CHAPTER 140. DISPUTE RESOLUTION--GENERAL PROVISIONS

§140.1. Definitions.

The following words and terms, when used in this part, shall have the following meanings, unless the context clearly indicates otherwise.

(1) Benefit dispute--A disputed issue arising under the Texas Workers' Compensation Act (Act) in a workers' compensation claim regarding compensability or eligibility for, or the amount of, income or death benefits.

(2) Benefit proceeding--A proceeding pursuant to the Act, Chapter 410, conducted by a presiding officer to resolve one or more benefit disputes. Benefit proceedings include benefit review conferences, benefit contested case hearings, appeals, and, after January 1, 1992, arbitration.

(3) Party to a proceeding--A person entitled to take part in a proceeding because of a direct legal interest in the outcome.

(4) Presiding officer--The division employee, or independent arbitrator, assigned to conduct a proceeding. Presiding officers include benefit review officers, administrative law judges, appeals panel judges, and arbitrators.

(5) Special accommodations--Individuals and equipment necessary to allow an individual who does not speak English or who has a physical, mental, or developmental handicap to participate in a proceeding. The term includes spoken language translators and sign language translators.

(6) Stipulation--A voluntary accord between parties to a benefit contested case hearing regarding any matter relating to the hearing that does not constitute an agreement, as defined by the Act, §401.011(3), or a settlement, as defined by the Act, §401.011(40).

TAB LL

TITLE 28. INSURANCE

PART 2. TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION

CHAPTER 141. DISPUTE RESOLUTION--BENEFIT REVIEW CONFERENCE

§141.1. Requesting and Setting a Benefit Review Conference.

(a) Prior Notification. Before requesting a benefit review conference, a disputing party must notify the other parties of the nature of the dispute and attempt to resolve the dispute.

(b) Who May Request. A request for a benefit review conference may be made by an injured employee, a subclaimant, or an insurance carrier. An employer may request a benefit review conference to contest compensability when the insurance carrier has accepted the claim as compensable.

(c) Subclaimant. A request for a benefit review conference made by a subclaimant under Labor Code §409.009 must also comply with the requirements of §140.6 of this title (relating to Subclaimant Status: Establishment, Rights, and Procedures).

(d) Request for Benefit Review Conference. A request for a benefit review conference must be made in the form and manner required by the division. The request must:

(1) identify and describe the disputed issues;

(2) provide details and supporting documentation of efforts made by the requesting party to resolve the disputed issues, including, but not limited to, copies of the notification provided in accordance with subsection (a) of this section, correspondence, emails, faxes, records of telephone contacts, or summaries of meetings or telephone conversations. For the purposes of this subsection, copies of the notification provided under subsection (a) of this section, correspondence, emails, faxes, records of telephone contacts, or summaries of meetings or telephone conversations should not include all attachments of pertinent information exchanged with the opposing parties as required by §141.4 of this title (relating to Sending and Exchanging Pertinent Information);

(3) contain the requesting party's signature to show that the party made reasonable efforts to resolve the disputed issues before requesting a benefit

TAB MM

review conference, and provide any pertinent information in their possession to the other parties as required by §141.4(c) of this title; and

(4) send the request to the division and opposing parties.

(e) Complete Request. A request that meets the requirements of subsection (d) of this section is a complete request for a benefit review conference. The division will schedule a benefit review conference if the request is complete and otherwise appropriate for a benefit review conference.

(f) Incomplete Request. A request for a benefit review conference that does not meet the requirements of subsection (d) of this section is an incomplete request. The division will deny an incomplete request.

(1) A denied request for a benefit review conference does not constitute a dispute proceeding, except as provided by subsection (g) of this section.

(2) If the division denies a request, it will provide notice to the parties and state the reasons for the denial.

(3) On notice from the division, the requesting party may submit a new request for a benefit review conference that meets the requirements of this section.

(g) Incomplete Request Denials. If a party disagrees with the division's determination that the request was incomplete, or if a party has good cause for failing to meet the requirements of subsection (d) of this section, the party may pursue an administrative appeal of the division's determination under Chapter 142 of this title (relating to Dispute Resolution--Benefit Contested Case Hearing). The party may also request an expedited contested case hearing under §140.3 of this title (relating to Expedited Proceedings).

(h) Setting. If a request meets the standards of subsection (e) of this section, the division will schedule a benefit review conference:

(1) within 40 days after the division received the request; and

(2) within 20 days after the division received the request, if the division determines that an expedited setting is needed.

(i) Notice. After setting the benefit review conference, the division must provide, by first class mail, electronic transmission, or personal delivery, written notice of the date, time, and location to the parties and the employer.

(j) Method for Conducting. The benefit review conference will be conducted by telephone or videoconference, unless the division determines that good cause exists for conducting the benefit review conference in person. Unless the division

determines that good cause exists for the selection of a different location, an in-person benefit review conference will be conducted at a site no more than 75 miles from the injured employee's residence at the time of injury.

TITLE 28. INSURANCE

PART 2. TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION

CHAPTER 141. DISPUTE RESOLUTION--BENEFIT REVIEW CONFERENCE

§141.5. Description of the Benefit Review Conference.

(a) Definitions. As used in this section, "participant" means an individual entitled or permitted to attend and take part in a benefit review conference. Participants include:

(1) the parties;

(2) the parties' representatives;

(3) the employer exercising the right to present evidence relevant to the disputed issue or issues; and

(4) any other individual, at the discretion of the benefit review officer.

(b) Overview of the benefit review conference. The benefit review conference consists of three parts: opening, mediation, and closing.

(c) Opening. The benefit review officer shall:

(1) identify the case and introduce the parties and other participants;

(2) thoroughly inform the parties and participants of their rights and responsibilities under the Texas Workers' Compensation Act;

(3) explain the purpose of the conference and the procedures and time frame to be observed;

(4) identify and describe the disputed issues to be mediated; and

(5) elicit each party's statement of position regarding each disputed issue.

(d) Mediation. The benefit review officer shall:

(1) ask and answer questions of the parties and other participants;

(2) encourage the parties to discuss the disputed issues and ask and answer questions;

(3) permit the employer to present evidence relevant to the disputed issues;

(4) permit other participants to discuss the disputed issues and ask and answer questions, to the extent the benefit review officer deems appropriate;

(5) if necessary, caucus individually with each party;

(6) assist the parties to agree on specific options for resolution; and

(7) assist the parties in resolving disputed issues by agreement or settlement.

(e) Closing. The benefit review officer shall:

(1) assist the parties in reducing agreements or settlements to writing;

(2) identify any issues left unresolved; and

(3) if available information pertinent to the resolution of the disputed issue(s) was not produced at the benefit review conference, require a second benefit review conference to be scheduled if a second one has not already been conducted.

TITLE 28. INSURANCE

PART 2. TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION

CHAPTER 141. DISPUTE RESOLUTION--BENEFIT REVIEW CONFERENCE

§141.7. Division Actions After a Benefit Review Conference.

(a) All Issues Resolved. Division actions if all issues are resolved at the benefit review conference.

(1) If all issues in dispute are resolved at the benefit review conference by agreement or settlement, the agreement or settlement must be reduced to writing and signed by each party and their designated representative, if any, and the benefit review officer.

(2) The benefit review officer shall make the agreement part of the claim file. If all issues in dispute are resolved at the benefit review conference by settlement, the benefit review officer shall submit the signed settlement to the commissioner or commissioner's designee for handling as provided by Chapter 147 of this title (relating to Dispute Resolution--Agreements, Settlements, Commutations). If the commissioner or commissioner's designee rejects the settlement, the parties may request:

(A) a second benefit review conference, if a second benefit review conference has not already been held; or

(B) a contested case hearing.

(b) Issues Not Resolved. Division actions if issues are not resolved at the benefit review conference.

(1) After First Benefit Review Conference. If all issues in dispute are not resolved at the first benefit review conference, the benefit review officer may set a second benefit review conference or a contested case hearing.

(2) After Second Benefit Review Conference. If all issues in dispute are not resolved at the second benefit review conference, a contested case hearing will be scheduled by the benefit review officer.

TAB OO

(c) Written Report. Within five days after the benefit review conference is closed, the benefit review officer shall submit the written report and any signed agreements to the division's central office in Austin in accordance with Labor Code §410.031 and §410.034.

(d) Copies of Report and Hearing Notice. The division shall send to the injured employee; injured employee's representative, if any; the insurance carrier; subclaimants; and the employer the following:

   (1) a file-stamped copy of the report; and

   (2) notice of the date, time, and location of the contested case hearing.

(e) Effective date. The effective date of this section is October 1, 2010.

TITLE 28. INSURANCE

PART 2. TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION

CHAPTER 142. DISPUTE RESOLUTION--BENEFIT CONTESTED CASE HEARING

§142.1. Application of the Administrative Procedure Act.

The following sections of the Government Code, apply to benefit contested case hearings: §2001.201, relating to enforcement of subpoenas.

TAB PP

TITLE 28. INSURANCE

PART 2. TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION

CHAPTER 142. DISPUTE RESOLUTION--BENEFIT CONTESTED CASE HEARING

§142.2. Authority of the Administrative Law Judge.

The administrative law judge is authorized to:

(1) issue subpoenas;

(2) rule on requests;

(3) issue orders, including interlocutory orders;

(4) use summary procedures as provided by §142.8 of this chapter (relating to Summary Procedures);

(5) direct parties to appear at a prehearing conference to resolve evidentiary and procedural issues;

(6) establish time limits for conducting a hearing;

(7) administer oaths;

(8) rule on the admissibility of evidence;

(9) determine the relevancy, materiality, weight, and credibility of evidence;

(10) request additional evidence;

(11) take official notice of the law of Texas and other jurisdictions, Texas city and county ordinances, the contents of the *Texas Register,* the rule of state agencies, facts that are judicially cognizable, and generally recognized facts within the division's specialized knowledge;

(12) examine parties and witnesses, and permit examination and cross-examination of parties and witnesses;

(13) recess, postpone, or dismiss a hearing; and

(14) take any other action as authorized by law, or as may facilitate the orderly conduct and disposition of the hearing.

TITLE 28. INSURANCE

PART 2. TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION

CHAPTER 142. DISPUTE RESOLUTION--BENEFIT CONTESTED CASE HEARING

§142.12. Subpoena.

(a) Definitions. The following words and terms, as used in this chapter, shall have the following meanings, unless the context clearly indicates otherwise:

(1) Evidence - Testimony or documents, including books, papers, and tangible things.

(2) Service - Delivery of a subpoena by an authorized individual to the person to whom it is addressed.

(3) Subpoena - A division order issued by the administrative law judge requiring a person to attend or to produce evidence at a deposition (deposition subpoena) or at a hearing (hearing subpoena).

(b) How issued. The division may issue a subpoena:

(1) on its own motion; or

(2) at the request of a party, if the administrative law judge determines the party has a good cause.

(c) Request for subpoena. A party may request a subpoena in the following manner:

(1) If the requester is a carrier, carrier representative, claimant represented by an attorney, or claimant assisted by OIEC, the request shall:

(A) be in writing;

(B) identify the evidence to be produced, and explain why it is relevant to a disputed issue;

(C) state whether the subpoena is for a deposition or a hearing;

TAB QQ

(D) be sent to the division; and

(E) be delivered to all parties, as provided by §142.4 of this chapter (relating to Delivery of Copies to All Parties).

(2) A claimant who is neither represented by an attorney nor assisted by OIEC may request a subpoena by contacting the division in any manner, and may also request the division to arrange for service, if service will be at no cost to the division.

(d) Special provisions for hearing subpoenas. A request for a hearing subpoena shall be sent to the division and delivered to the parties, as provided by §142.4 of this chapter (relating to Delivery of Copies to All Parties), no later than 10 days before the hearing. The administrative law judge may deny a request for a hearing subpoena upon a determination that the testimony may be adequately obtained by deposition or written affidavit.

(e) Service. Upon granting a request and issuing a subpoena, the administrative law judge shall:

(1) return it to the requester for service, according to §176.5, Texas Rules of Civil Procedure; or

(2) send it to the appropriate sheriff or constable, or any person who is not a party and is 18 years of age or older for service, if a claimant who is neither represented by an attorney nor assisted by OIEC has requested the division to arrange for service, as provided by subsection (c)(2) of this section.

(f) Costs.

(1) Except as provided by subsection (c)(2) of this section, the party requesting the subpoena is responsible for all costs associated with the subpoena, including service, witness fees, and mileage.

(2) A witness or deponent who is not a party and who is subpoenaed or otherwise compelled to attend a hearing or deposition to give testimony or produce documents is entitled to receive from the party requesting the subpoena:

(A) a fee of $30 a day for each day or part of a day the person is necessarily present as a witness or deponent;

(B) mileage at the rate set for state employees in the General Appropriations Act, for going to and returning from the place of the hearing or the place of the deposition, if the place is more than 25 miles from the person's place of residence; and

(C) fees for providing expert testimony relating to medical issues shall be paid according to guidelines established by the division pursuant to the Texas Labor Code, Chapter 413.

(g) A subpoena may be enforced in the manner provided by the Government Code §2001.201 and the Texas Labor Code.

TITLE 28. INSURANCE

PART 2. TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION

CHAPTER 142. DISPUTE RESOLUTION--BENEFIT CONTESTED CASE HEARING

§142.13. Discovery.

(a) Description of discovery. As used in this chapter, discovery is the process by which a party may, before the hearing, obtain evidence relating to the disputed issue or issues from the other parties and witnesses. If the evidence is not produced voluntarily, the party may request a subpoena, as provided in §142.12 of this title (relating to Subpoena). Discovery includes:

(1) parties' exchange of documentary evidence;

(2) interrogatories, as prescribed by §142.19 of this title (relating to Interrogatories); and

(3) witness depositions, as follows:

(A) a health care provider may be deposed only on written questions; and

(B) other witnesses may be deposed within their county of residence or employment, orally or on written questions, if the administrative law judge determines the party has good cause to request such testimony.

(b) Sequence of discovery. Parties shall exchange documentary evidence in their possession not previously exchanged, as described in subsection (c) of this section, before requesting additional discovery by interrogatory, as described in subsection (d) of this section, or deposition, as described in subsection (e) of this section. Additional discovery shall be limited to evidence not exchanged, or not readily derived from evidence exchanged.

(c) Parties' exchange of documentary evidence.

(1) Except as provided in subsection (g) of this section, no later than 15 days after the benefit review conference, parties shall exchange with one another the following information:

(A) all medical reports and reports of expert witnesses who will testify at the hearing;

(B) all medical records;

(C) any witness statements;

(D) the identity and location of any witness known to have knowledge of relevant facts; and

(E) all photographs or other documents which a party intends to offer into evidence at the hearing.

(2) Thereafter, parties shall exchange additional documentary evidence as it becomes available.

(3) Parties shall bring all documentary evidence not previously exchanged to the hearing in sufficient copies for exchange. The administrative law judge shall make a determination whether good cause exists for a party not having previously exchanged such information or documents to introduce such evidence at the hearing.

(d) Interrogatories.

(1) Interrogatories, as prescribed by §142.19 of this title (concerning Interrogatories), may be used by all parties, including subclaimants, to obtain information from any other party.

(2) Except as provided in subsection (g) of this section, interrogatories must be presented no later than 25 days before the hearing, unless otherwise agreed.

(3) Answers to interrogatories must be exchanged no later than 10 days after receipt of the interrogatories.

(4) Answers to interrogatories must be made under oath.

(e) Witness deposition. A party wishing to depose a witness shall request permission for deposition from the administrative law judge. The request shall:

(1) be made in writing;

(2) identify the witness to be deposed;

(3) state why the testimony is needed;

(4) propose a date, time, and place for taking the deposition;

(5) include a copy of the questions to be asked, if the deposition is to be on written questions;

(6) if needed, include a request for subpoena, as provided by §142.12 of this title (relating to Subpoena);

(7) be filed with the division no later than 10 days before the hearing; and

(8) be delivered to all parties, as provided by §142.4 of this title (relating to Delivery of Copies to All Parties).

(f) Additional discovery. The administrative law judge may grant a party permission to conduct discovery beyond that described previously upon a showing of good cause at a hearing held for this purpose.

(g) Time for discovery when the hearing is expedited or held without a prior benefit review conference. The notice setting an expedited hearing, or a hearing held without a prior benefit review conference, shall include time limits for completion of discovery.

TITLE 28. INSURANCE

PART 2. TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION

CHAPTER 142. DISPUTE RESOLUTION--BENEFIT CONTESTED CASE HEARING

§142.16. Decision.

(a) After the record closes, the administrative law judge shall issue a decision on benefits. The decision shall:

(1) be in writing;

(2) include findings of fact and conclusions of law; a determination of whether benefits are due; and, if so, an award of benefits due; and

(3) be signed by the administrative law judge.

(b) On a form prescribed by the division the administrative law judge shall issue a separate written decision regarding attorney's fees and any matter related to attorney fees. A decision on income or medical benefits may include an interlocutory order at the discretion of the administrative law judge.

(c) No later than the tenth day after the close of the hearing, the administrative law judge shall file all decisions with the division.

(d) No later than seven days after filing the decision, the division shall furnish to the parties, by first class mail or personal delivery:

(1) a file-stamped copy of the decision; and

(2) a statement specifying the place, manner, and time period within which an appeal must be filed.

(e) A decision issued under this section shall be effective and binding on the date signed by the administrative law judge unless superceded by an interlocutory order contained in the decision, if any.

TAB RR

(f) A decision regarding benefits not appealed to the appeals panel, as provided by the Texas Labor Code, §410.202 and Chapter 143 of this title, becomes final on the sixteenth day after the date received from the division of hearings. Parties shall comply with a final decision or order within 20 days of the date it becomes final as provided by the Texas Labor Code, §410.208.

(g) A decision regarding benefits appealed to the appeals panel as provided by the Texas Labor Code, §410.202 and Chapter 143 of this title, is binding on the parties and payable during an appeal to the appeals panel unless superceded by an interlocutory order contained in the decision, if any.

(h) Parties shall comply with a decision regarding benefits appealed to the appeals panel that does not contain an interlocutory order by issuing and delivering payment of accrued and unpaid income benefits no later than the fifth day after filing a written request for appeal with the appeals panel as provided by the Texas Labor Code, §410.202, and Chapter 143 of this title.

(i) Payment of accrued and unpaid income benefits paid in accordance with a decision shall include interest pursuant to the Texas Labor Code, §408.064 and §408.081.

(j) Payment of medical benefits pursuant to a decision shall be made in accordance with Chapters 408 and 413 of the Texas Labor Code.

TITLE 28. INSURANCE

PART 2. TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION

CHAPTER 143. DISPUTE RESOLUTION REVIEW BY THE APPEALS PANEL

§143.1. Definitions.

The following words and terms, when used in this chapter, shall have the following meanings, unless the context clearly indicates otherwise.

(1) Appellant--A party to a benefit contested case hearing who is dissatisfied with the decision of the administrative law judge, and files a request for review of that decision by the appeals panel.

(2) Request--The appellant's written appeal for review of the decision of an administrative law judge.

(3) Respondent--The other party to a benefit contested case hearing who must file a response to the appellant's request.

(4) Response--The respondent's written answer to the appellant's request.

TITLE 28. INSURANCE

PART 2. TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION

CHAPTER 143. DISPUTE RESOLUTION REVIEW BY THE APPEALS PANEL

§143.2. Description of the Appeal Proceeding.

(a) To review the decision of the administrative law judge, the appeals panel considers the appellant's request, the respondent's response, and the record of the benefit contested case hearing. The parties do not appear in person before the panel.

(b) The appeals panel may:

(1) reverse the decision of the administrative law judge and render a new decision;

(2) reverse the decision of the administrative law judge and remand to the administrative law judge for a second benefit contested case hearing, which shall be set as provided by §142.18 of this title (relating to Special Provisions for Cases on Remand from the Appeals Panel). The appeals panel may not remand a case more than once; or

(3) affirm the decision of an administrative law judge in a case as described by Labor Code §410.204(a-1).

TITLE 28. INSURANCE

PART 2. TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION

CHAPTER 143. DISPUTE RESOLUTION REVIEW BY THE APPEALS PANEL

§143.3. Requesting the Appeals Panel to Review the Decision of the Administrative Law Judge.

(a) A party to a benefit contested case hearing who is dissatisfied with the decision of the administrative law judge may request the appeals panel to review that decision. The request shall:

(1) be in writing;

(2) clearly and concisely rebut each issue in the administrative law judge's decision that the appellant wants reviewed, and state the relief the appellant wants granted;

(3) be filed with the Chief Clerk of Proceedings in the division's central office in Austin not later than the 15th day after receipt of the administrative law judge's decision. The administrative law judge's decision is deemed to have been received by the parties in accordance with §102.5 (relating to General Rules for Written Communications To and From the Commission) and §102.3 (relating to Computation of Time) of this title. Requests that are timely submitted to a division location other than the Chief Clerk of Proceedings, such as a local field office of the division, will be considered timely filed and forwarded to the division's appeals panel for consideration, but this may result in delay in the processing of the request. Untimely requests, regardless of whether they are filed with the Chief Clerk of Proceedings in the division's central office or in a different division field office, do not invoke the jurisdiction of the appeals panel and will not be reviewed by the appeals panel;

(4) be served on the other party or parties on the same day filed with the division; and

(5) contain a statement certifying that a copy has been served on the other party or parties in person, mailed by certified mail, return receipt requested, or transmitted by verifiable means. A certificate in substantially the following form

shall be used: "I hereby certify that I have on this _____ day of _____, _____, served a copy of the attached request for appeal on _____ (state the name of the other party or parties on whom a copy was served) by _____ (state the manner of service)." _____ Signature

(b) If it is not clear from the request for review that the party has properly served a copy of the request on the other party or parties, the division will provide a copy of the request expeditiously.

(c) A party may make a conditional request for review by the appeals panel even if the overall contested case hearing decision is favorable. A timely request that indicates that the filing party seeks consideration only if the opposing party files a request for review will not be treated as a request for review unless an opposing party timely files a request. If an opposing party does file a timely request, the conditional request will be treated as a cross-appeal.

(d) A request for review by the appeals panel shall be filed not later than the 15th day after the appealing party is deemed to have received the administrative law judge's decision. Saturdays and Sundays and holidays listed in Government Code §662.003 are not included in the computation of this 15-day period. A request made under this section shall be presumed to be timely filed or timely served with the division if it is:

(1) mailed on or before the 15th day after the date of deemed receipt of the administrative law judge's decision, as provided in subsection (a) of this section; and

(2) received by the division not later than the 20th day after the date of deemed receipt of the administrative law judge's decision.

---

Vernon's Texas Statutes and Codes Annotated
  Civil Practice and Remedies Code (Refs & Annos)
    Title 2. Trial, Judgment, and Appeal
      Subtitle D. Appeals
        Chapter 51. Appeals
          Subchapter B. Appeals from County or District Court (Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 51.014

§ 51.014. Appeal from Interlocutory Order

Currentness

(a) A person may appeal from an interlocutory order of a district court, county court at law, statutory probate court, or county court that:

(1) appoints a receiver or trustee;

(2) overrules a motion to vacate an order that appoints a receiver or trustee;

(3) certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure;

(4) grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction as provided by Chapter 65;

(5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state;

(6) denies a motion for summary judgment that is based in whole or in part upon a claim against or defense by a member of the electronic or print media, acting in such capacity, or a person whose communication appears in or is published by the electronic or print media, arising under the free speech or free press clause of the First Amendment to the United States Constitution, or Article I, Section 8, of the Texas Constitution, or Chapter 73;

(7) grants or denies the special appearance of a defendant under Rule 120a, Texas Rules of Civil Procedure, except in a suit brought under the Family Code;

(8) grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001;

TAB TT

---

(9) denies all or part of the relief sought by a motion under Section 74.351(b), except that an appeal may not be taken from an order granting an extension under Section 74.351;

(10) grants relief sought by a motion under Section 74.351(l);

(11) denies a motion to dismiss filed under Section 90.007;

(12) denies a motion to dismiss filed under Section 27.003;

(13) denies a motion for summary judgment filed by an electric utility regarding liability in a suit subject to Section 75.0022;

(14) denies a motion filed by a municipality with a population of 500,000 or more in an action filed under Section 54.012(6) or 214.0012, Local Government Code;

(15) makes a preliminary determination on a claim under Section 74.353;

(16) overrules an objection filed under Section 148.003(d) or denies all or part of the relief sought by a motion under Section 148.003(f); or

(17) grants or denies a motion for summary judgment filed by a contractor based on Section 97.002.

(b) An interlocutory appeal under Subsection (a), other than an appeal under Subsection (a)(4) or in a suit brought under the Family Code, stays the commencement of a trial in the trial court pending resolution of the appeal. An interlocutory appeal under Subsection (a)(3), (5), (8), or (12) also stays all other proceedings in the trial court pending resolution of that appeal.

(c) A denial of a motion for summary judgment, special appearance, or plea to the jurisdiction described by Subsection (a) (5), (7), or (8) is not subject to the automatic stay under Subsection (b) unless the motion, special appearance, or plea to the jurisdiction is filed and requested for submission or hearing before the trial court not later than the later of:

(1) a date set by the trial court in a scheduling order entered under the Texas Rules of Civil Procedure; or

(2) the 180th day after the date the defendant files:

(A) the original answer;

(B) the first other responsive pleading to the plaintiff's petition; or

(C) if the plaintiff files an amended pleading that alleges a new cause of action against the defendant and the defendant is able to raise a defense to the new cause of action under Subsection (a)(5), (7), or (8), the responsive pleading that raises that defense.

(d) On a party's motion or on its own initiative, a trial court in a civil action may, by written order, permit an appeal from an order that is not otherwise appealable if:

(1) the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion; and

(2) an immediate appeal from the order may materially advance the ultimate termination of the litigation.

(d-1) Subsection (d) does not apply to an action brought under the Family Code.

(e) An appeal under Subsection (d) does not stay proceedings in the trial court unless:

(1) the parties agree to a stay; or

(2) the trial or appellate court orders a stay of the proceedings pending appeal.

(f) An appellate court may accept an appeal permitted by Subsection (d) if the appealing party, not later than the 15th day after the date the trial court signs the order to be appealed, files in the court of appeals having appellate jurisdiction over the action an application for interlocutory appeal explaining why an appeal is warranted under Subsection (d). If the court of appeals accepts the appeal, the appeal is governed by the procedures in the Texas Rules of Appellate Procedure for pursuing an accelerated appeal. The date the court of appeals enters the order accepting the appeal starts the time applicable to filing the notice of appeal.

(g) If a court of appeals does not accept an appeal under Subsection (f), the court shall state in its decision the specific reason for finding that the appeal is not warranted under Subsection (d).

(h) The supreme court may review a decision by a court of appeals not to accept an appeal under Subsection (f) de novo. If the supreme court concludes that the requirements to permit an appeal under Subsection (d) are satisfied, the court may direct the court of appeals to accept the appeal.

**Credits**

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985. Amended by Acts 1987, 70th Leg., ch. 167, § 3.10, eff. Sept. 1, 1987; Acts 1989, 71st Leg., ch. 915, § 1, eff. June 14, 1989; Acts 1993, 73rd Leg., ch. 855, § 1, eff. Sept. 1, 1993; Acts 1997, 75th Leg., ch. 1296, § 1, eff. June 20, 1997; Acts 2001, 77th Leg., ch. 1389, § 1, eff. Sept. 1, 2001; Acts 2003, 78th Leg., ch. 204,

§ 1.03, eff. Sept. 1, 2003; Acts 2005, 79th Leg., ch. 97, § 5, eff. Sept. 1, 2005; Acts 2005, 79th Leg., ch. 1051, §§ 1, 2, eff. June 18, 2005; Acts 2011, 82nd Leg., ch. 203 (H.B. 274), § 3.01, eff. Sept. 1, 2011; Acts 2013, 83rd Leg., ch. 44 (H.B. 200), § 1, eff. May 16, 2013; Acts 2013, 83rd Leg., ch. 604 (S.B. 1083), § 1, eff. Sept. 1, 2013; Acts 2013, 83rd Leg., ch. 916 (H.B. 1366), § 1, eff. Sept. 1, 2013; Acts 2013, 83rd Leg., ch. 961 (H.B. 1874), § 1, eff. Sept. 1, 2013; Acts 2013, 83rd Leg., ch. 1042 (H.B. 2935), § 4, eff. June 14, 2013; Acts 2015, 84th Leg., ch. 1236 (S.B. 1296), §§ 3.001, 3.002, eff. Sept. 1, 2015; Acts 2019, 86th Leg., ch. 1273 (H.B. 36), § 1, eff. June 14, 2019; Acts 2021, 87th Leg., ch. 167 (S.B. 232), § 1, eff. Sept. 1, 2021; Acts 2021, 87th Leg., ch. 528 (S.B. 6), § 1, eff. June 14, 2021; Acts 2021, 87th Leg., ch. 813 (H.B. 2086), § 1, eff. June 16, 2021; Acts 2023, 88th Leg., ch. 209 (S.B. 1603), § 1, eff. Sept. 1, 2023. Reenacted and amended by Acts 2023, 88th Leg., ch. 768 (H.B. 4595), § 4.002, eff. Sept. 1, 2023.

V. T. C. A., Civil Practice & Remedies Code § 51.014, TX CIV PRAC & REM § 51.014

Current through legislation effective July 1, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

served. However, a person whose appearance or production at a deposition may be compelled by notice alone under Rules 199.3 or 200.2 may be required to appear and produce documents or other things at any location permitted under Rules 199.2(b)(2).

(b)     **Use for discovery.**   A subpoena may not be used for discovery to an extent, in a manner, or at a time other than as provided by the rules governing discovery.

## 176.4  Who May Issue.

A subpoena may be issued by:

(a)     the clerk of the appropriate district, county, or justice court, who must provide the party requesting the subpoena with an original and a copy for each witness to be completed by the party;

(b)     an attorney authorized to practice in the State of Texas, as an officer of the court; or

(c)     an officer authorized to take depositions in this State, who must issue the subpoena immediately on a request accompanied by a notice to take a deposition under Rules 199 or 200, or a notice under Rule 205.3, and who may also serve the notice with the subpoena.

## 176.5  Service.

(a)     **Manner of service.**   A subpoena may be served at any place within the State of Texas by any sheriff or constable of the State of Texas, or any person who is not a party and is 18 years of age or older. A subpoena must be served by delivering a copy to the witness and tendering to that person any fees required by law. If the witness is a party and is represented by an attorney of record in the proceeding, the subpoena may be served on the witness's attorney of record.

(b)     **Proof of service.**   Proof of service must be made by filing either:

(1)     the witness's signed written memorandum attached to the subpoena showing that the witness accepted the subpoena; or

(2)     a statement by the person who made the service stating the date, time, and manner of service, and the name of the person served.

## 176.6  Response.

(a)     **Compliance required.**   Except as provided in this subdivision, a person served with a subpoena must comply with the command stated therein unless discharged by the court or by the party summoning such witness. A person commanded to appear and give testimony

(1)     information discoverable under Rule 192.3 concerning experts, trial witnesses, witness statements, and contentions;

(2)     trial exhibits ordered disclosed under Rule 166 or Rule 190.4;

(3)     the name, address, and telephone number of any potential party or any person with knowledge of relevant facts;

(4)     any photograph or electronic image of underlying facts (e.g., a photograph of the accident scene) or a photograph or electronic image of any sort that a party intends to offer into evidence; and

(5)     any work product created under circumstances within an exception to the attorney-client privilege in Rule 503(d) of the Rules of Evidence.

(d)     **Privilege.**   For purposes of these rules, an assertion that material or information is work product is an assertion of privilege.

## 192.6   Protective Order.

(a)     **Motion.**   A person from whom discovery is sought, and any other person affected by the discovery request, may move within the time permitted for response to the discovery request for an order protecting that person from the discovery sought. A person should not move for protection when an objection to written discovery or an assertion of privilege is appropriate, but a motion does not waive the objection or assertion of privilege. If a person seeks protection regarding the time or place of discovery, the person must state a reasonable time and place for discovery with which the person will comply. A person must comply with a request to the extent protection is not sought unless it is unreasonable under the circumstances to do so before obtaining a ruling on the motion.

(b)     **Order.**   To protect the movant from undue burden, unnecessary expense, harassment, annoyance, or invasion of personal, constitutional, or property rights, the court may make any order in the interest of justice and may - among other things - order that:

(1)     the requested discovery not be sought in whole or in part;

(2)     the extent or subject matter of discovery be limited;

(3)     the discovery not be undertaken at the time or place specified;

(4)     the discovery be undertaken only by such method or upon such terms and conditions or at the time and place directed by the court;

(5)     the results of discovery be sealed or otherwise protected, subject to the provisions of Rule 76a.

TAB VV

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Shauna O'Brien on behalf of Russell Morris
Bar No. 24099150
shauna@mf-txlaw.com
Envelope ID: 103527266
Filing Code Description: Response
Filing Description: Real Party in Interest Joshua Heiliger's Response to Writ and Appendix
Status as of 7/24/2025 12:18 PM CST

Associated Case Party: Fort Bend County

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Mary Markantonis | | mmarkantonis@dgplawfirm.com | 7/24/2025 12:08:32 PM | SENT |
| Marilyn Allen | 24025225 | mallen@dgplawfirm.com | 7/24/2025 12:08:32 PM | SENT |
| Dean Pappas | | dpappas@dgplawfirm.com | 7/24/2025 12:08:32 PM | SENT |
| Jacquelyn Compton | | admin@dgplawfirm.com | 7/24/2025 12:08:32 PM | SENT |
| Hope Burnett-Furlow | | hfurlow@dgplawfirm.com | 7/24/2025 12:08:32 PM | SENT |
| Lisa M.Teachey | | lteachey@dgplawfirm.com | 7/24/2025 12:08:32 PM | SENT |
| Tanisha Doublin | | tdoublin@dgplawfirm.com | 7/24/2025 12:08:32 PM | SENT |

Associated Case Party: Judge Kristen B. Hawkins

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Veronica Gonzalez | | veronica_gonzalez@justex.net | 7/24/2025 12:08:32 PM | SENT |

Associated Case Party: JoshuaDavidHeiliger, et al.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Andrew Bruce | 24113627 | serv.andrew@mf-txlaw.com | 7/24/2025 12:08:32 PM | SENT |
| Russell Morris | 24099150 | serv.russell@mf-txlaw.com | 7/24/2025 12:08:32 PM | SENT |
| Pablo Franco | 24121625 | serv.pablo@mf-txlaw.com | 7/24/2025 12:08:32 PM | SENT |
| Joshua DavidHeiliger, et al. | | serv.russell@mf-txlaw.com | 7/24/2025 12:08:32 PM | SENT |

Associated Case Party: FrancescaOkonkwo, ALJ TDI-DWC

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Shauna O'Brien on behalf of Russell Morris
Bar No. 24099150
shauna@mf-txlaw.com
Envelope ID: 103527266
Filing Code Description: Response
Filing Description: Real Party in Interest Joshua Heiliger's Response to Writ and Appendix
Status as of 7/24/2025 12:18 PM CST

Associated Case Party: FrancescaOkonkwo, ALJ TDI-DWC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Meridith Fischer | | Meridith.Fischer@oag.texas.gov | 7/24/2025 12:08:32 PM | SENT |
| James Brazell | 2930100 | james.brazell@oag.texas.gov | 7/24/2025 12:08:32 PM | SENT |
| Sherlyn Harper | 24093176 | sherlyn.harper@oag.texas.gov | 7/24/2025 12:08:32 PM | SENT |
| Catherine Hughes | | catherine.hughes@oag.texas.gov | 7/24/2025 12:08:32 PM | SENT |

Associated Case Party: Greater Houston Psychiatric Associates PLLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Laverne Chang | 783819 | chang@cardwellchang.com | 7/24/2025 12:08:32 PM | SENT |